# 19-3457-CV

## United States Court of Appeals
*for the*
## Second Circuit

LYNDA BEIERWALTES and WILLIAM BEIERWALTES,

*Plaintiffs-Appellants,*

— v. —

L'OFFICE FEDERALE DE LA CULTURE DE LA CONFEDERATION SUISSE, Federal Office of Culture of The Swiss Confederation, L'ADMINISTRATION FEDERALE DES DOUANES DE LA CONFEDERATION SUISSE, Federal Customs Administration of The Swiss Confederation, LA REPUBLIQUE ET CANTON DE GENEVE, Republic and Canton of Geneva,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
### Volume 1 of 3 (Pages A-1 to A-211)

ROBERT REEVES ANDERSON
MARCUS A. ASNER
ARNOLD & PORTER
  KAYE SCHOLER LLP
*Attorneys for Defendant-Appellee*
  *Republic and Canton of Geneva*
370 Seventeenth Street, Suite 4400
Denver, Colorado 80202
(303) 863-1000

ANJU UCHIMA
WILLIAM G. PEARLSTEIN
PEARLSTEIN & MCCULLOUGH, LLP
*Attorneys for Plaintiffs-Appellants*
641 Lexington Avenue, Suite 1327
New York, New York 10022
(646) 762-7263

STEPHAN E. BECKER
MICHAEL E. JAFFE
PILLSBURY WINTHROP SHAW PITTMAN LLP
*Attorneys for Defendants-Appellees*
  *L'Administration Federale des Douanes de*
  *la Confederation Suisse and L'Office*
  *Federale de la Culture de la Confederation*
  *Suisse*
1200 17th Street NW
Washington, DC 20036
(202) 663-8000

i

# TABLE OF CONTENTS

**Page**

District Court Docket Entries ..................................... A-1

Complaint, dated August 6, 2018............................. A-16

    Exhibit A to Complaint -
    Geneva Prosecutor Search Warrant, dated
    February 24, 2017 .................................... A-41

    Exhibit B to Complaint -
    Swiss Customs Administration Seizure Order,
    executed February 28, 2017 ................................... A-51

    Exhibit C to Complaint -
    Letter from Pearlstein McCullough & Lederman
    LLP to Claudio Mascotto, *Procureur, Pouvoir*
    *judiciare, Ministere public*, dated May 7, 2018 ..... A-75

    Exhibit D to Complaint -
    Letter from Claudio Mascotto, *Procureur,*
    *Pouvoir judiciare, Ministere public* to Pearlstein
    McCullough & Lederman LLP, dated
    May 11, 2018 ......................................... A-78

    Exhibit E to Complaint -
    Letter from Pearlstein McCullough & Lederman
    LLP to Claudio Mascotto, *Procureur, Pouvoir*
    *judiciare, Ministere public*, dated June 6, 2018 ..... A-86

    Exhibit F to Complaint -
    Letter from Claudio Mascotto, *Procureur,*
    *Pouvoir judiciare, Ministere public* to Pearlstein
    McCullough & Lederman LLP, dated
    June 12, 2018 ......................................... A-89

Complaint Cover Sheet............................................. A-97

ii

                                                           **Page**

Complaint in Aboutaam Matter
(Omitted herein)

Exhibit E to Complaint -
Letters, dated July 5, 2018, from Pearlstein
McCullough & Lederman LLP to Dr. Christian
Bock, *Directeur*, Swiss Customs Administration;
Mr. Pierre Maudet, *Président du Conseil d'État*,
Canton of Geneva; Mr. Ueli Maurer, *Conseiller
Fédéral, Département Fédéral des Finances*; and
Mr. Olivier Jornot, *Procureur general, Pouvoir
judiciare, Ministère public* .................................... A-99

Exhibit F to Complaint -
Letter, dated July 20, 2018, from Mr. Christian
Bock, *Directeur*, Swiss Customs Administration .. A-116

Exhibit G to Complaint -
Letter, dated August 2, 2018, from Mr. Pierre
Maudet, *Président du Conseil d'État*, Canton of
Geneva ................................................................. A-124

Exhibit H to Complaint -
Letter, dated August 2, 2018, from Claudio
Mascotto, *Procurer, Pouvoir judiciare, Ministère
public* ................................................................. A-126

Memo Endorsement and Joint Management Plan,
dated December 7, 2018 ........................................ A-134

Notice of Motion by Defendants, for an Order to
Dismiss the Complaint, dated January 25, 2019.... A-137

Declaration of Stephen E. Becker, for Defendants,
in Support of Motion, dated January 25, 2019 ...... A-140

iii

Page

Exhibit 1 to Becker Declaration -
Screenshot from the website of the *L'Office
Federal De La Culture De La Confederation
Suisse* ("Swiss Federal Customs
Administration"), available at
https://www.ezv.admin.ch/ezv/en/home.html ........    A-143

Exhibit 2 to Becker Declaration -
Screenshot from the website of *L'administration
Federale Des Douanes De La Confederation
Suisse* ("Swiss Federal Office of Culture"),
available at
https://www.bak.admin.ch/bak/en/home.html .......    A-146

Exhibit 3 to Becker Declaration -
Switzerland's Annex 1 to the World Trade
Organization's Government Procurement
Agreement Coverage Schedules ...........................    A-149

Exhibit 4 to Becker Declaration -
Screenshot from the website of the Swiss Federal
Customs Administration entitled "Mandate,"
available at
https://www.ezv.admin.ch/ezv/en/home/the-
fca/mandate.html ...................................................    A-159

Exhibit 5 to Becker Declaration -
Screenshot of the Website of the Swiss Federal
Office of Culture entitled "Mission," available at
https://www.bak.admin.ch/bak/en/home/the-foe/
mission.html...........................................................    A-163

Exhibit 6 to Becker Declaration -
Publication of U.S. Customs and Border
Protection, *Bonded Warehouse,* available at
https://www.cbp.gov/sites/default/files/document
s/bonded_20wh2_2.pdf...........................................    A-165

iv

**Page**

Exhibit 7 to Becker Declaration -
Article published in the New York Times on June
24, 2004, titled "Art Dealer Pleads Guilty In
Import Case," available at
https://www.nytimes.com/2004/06/24/arts/art-
dealer-pleads-guilty-in-import-case.html ............... A-170

Exhibit 8 to Becker Declaration -
Press Release of the District Attorney for New
York County, titled "Manhattan District
Attorney's Office Returns Three Ancient Statues
to Lebanese Republic," available at https://www.
manhattanda.org/manhattan-district-attorneys-
office-returnsthree-ancient-statues-lebanese-
republic/ ................................................................. A-173

Declaration of Hans Georg Nussbaum, dated
January 24, 2019 .................................................... A-178

Exhibit 1 to Nussbaum Declaration -
Articles 21 and 25 of *Loi sur les douanes du 19
mars 2005* (the Customs Act of 18 March 2005)
("Customs Act") (SR 631.0) .................................. A-183

Exhibit 2 to Nussbaum Declaration -
Articles 50-53 of the *Loi federale regissant la
taxe sur la valeur ajoutee du 12 juin 2009*
(Federal Act on Value Added Tax of 12 June
2009) ("VAT Act") (SR 641.20)............................ A-191

Exhibit 3 to Nussbaum Declaration -
Articles 26, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54,
55, 56, 57, 58, 59, 60, 92 de 313.0 *Loi federale
sur le droit pénal administratif* ............................ A-198

Exhibit 4 to Nussbaum Declaration -
*Decision de Perception subsequente - 2 protomes
I no d'inventaire* TR.PR0.009................................ A-212

v

**Page**

Notice of Motion by Defendant *La République et Canton de Genève,* for an Order to Dismiss the Complaint, dated January 25, 2019 ...................... A-239

Declaration of Kevin N. Ainsworth, for Plaintiff, in Opposition to Motion, dated March 29, 2019 ........ A-241

Exhibit 1 to Ainsworth Declaration - UNESCO Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property, adopted November 14, 1970 ................. A-245

Exhibit 2 to Ainsworth Declaration - Report titled "International Transfer of Cultural Objects: UNESCO Convention of 1970 and Unidroit Convention of 1995: Report of the Working Group" ..................................................... A-269

Exhibit 3 to Ainsworth Declaration - English language version of Switzerland's Cultural Property Transfer Act............................... A-323

Exhibit 4 to Ainsworth Declaration - English language version of Switzerland's Cultural Property Transfer Ordinance ................... A-336

Exhibit 5 to Ainsworth Declaration - Fact Sheet concerning Bilateral Agreements published by the FOC ............................................ A-348

Exhibit 6 to Ainsworth Declaration - Memorandum published by the FOC and titled Import, Transit and Export of Cultural Property ... A-350

Exhibit 7 to Ainsworth Declaration - Excerpts from the Federal Constitution of the Swiss Confederation ............................................. A-357

vi

**Page**

Exhibit 8 to Ainsworth Declaration -
Association of Art Museum Directors' "New
Report on Acquisition of Archaeological
Materials and Ancient Art," dated June 4, 2008 ....   A-369

Exhibit 9 to Ainsworth Declaration -
Association of Art Museum Directors' Guidelines
on the Acquisition of Archaeological Material
and Ancient Art (revised 2013) ..............................   A-376

Exhibit 10 to Ainsworth Declaration -
Collection of *New York Times* articles regarding
antiquities ...............................................................   A-386

Exhibit 11 to Ainsworth Declaration -
*New York Times* article, dated February 3, 2006,
titled "The Met, Ending 30-Year Stance, Is Set to
Yield Prized Vase to Italy." ...................................   A-411

Exhibit 12 to Ainsworth Declaration -
Printout from United States Copyright Office
showing registration of a copyright in the name
of "Swiss Federal Office of Culture" for a book
titled "Tschumi on architecture: conversations
with Enrique Walker." ...........................................   A-416

Exhibit 13 to Ainsworth Declaration -
Printout from Amazon.com showing the book
titled "Tschumi on architecture: conversations
with Enrique Walker" ............................................   A-418

Exhibit 14 to Ainsworth Declaration -
Printout from Amazon.com showing a number of
books that list the Swiss Federal Office of
Culture as either the author, publisher, or editor....   A-421

vii

**Page**

Exhibit 15 to Ainsworth Declaration - Articles dated September 11, 2017, from the website swissinfo.ch, with the title "Priceless Roman sarcophagus heads home after legal saga." ................................................................... A-470

Exhibit 16 to Ainsworth Declaration - Article, dated January 24, 2018, from the website www.letemps.ch, titled: "Teodorin Obiang inquiry: a rejected Geneva prosecutor.".................. A-477

Exhibit 17 to Ainsworth Declaration - Article, dated May 13, 2018, printed from the website www.letemps.ch, with the title: "*A Genève, des antiquités séquestrées par la justice ont été volées*"........................................................ A-481

Exhibit 18 to Ainsworth Declaration - Article, dated August 17, 2018, printed from the website www.letemps.ch with the title: "*La justice genevoise rend 5000 oeuvres à un marchand d'art.*".................................................... A-491

Exhibit 19 to Ainsworth Declaration - Article, dated August 31, 2018, printed from the website of www.theartnewspaper.com titled: "Swiss Prosecutor returns 'Mesopotamian' terracotta animal made by dealer's 11-year-old-daughter—along with 5,000 seized antiquities".... A-501

Exhibit 20 to Ainsworth Declaration - Letter (with certified translation) from the Public Prosecutor of Geneva to attorney Didier Bottge, Esq. (attorney for Ali Aboutaam), dated August 8, 2018.................................................... A-507

viii

**Page**

Exhibit 21 to Ainsworth Declaration -
Excerpts from the FOC's 2017 Annual Report, as
well as translations of the excerpts ........................ A-515

Exhibit 22 to Ainsworth Declaration -
Mission Statement printed from the FOC's
website ...................................................................... A-547

Letter from Mintz, Levin, Cohen, Ferris, Glovsky
and Popeo, P.C. to the Honorable Ronnie
Abrams, dated May 7, 2019 ................................... A-552

Exhibit A to Ainsworth Letter -
Letter from Federal Department of Finances DFF
to Inanna Art Services SA, dated April 11, 2019 ... A-556

Exhibit B to Ainsworth Letter -
Letter from Federal Department of Finances DFF
to Phoenix Ancient Art SA, dated April 3, 2019.... A-565

Exhibit C to Ainsworth Letter -
Mandate of Expertise, dated April 5, 2017 ............ A-570

Letter from Pillsbury Winthrop Shaw Pittman, LLP
to the Honorable Ronnie Abrams, dated
May 15, 2019 ........................................................ A-579

Letter from Arnold & Porter to the Honorable
Ronnie Abrams, dated May 15, 2019 ................... A-582

Letter from Mintz, Levin, Cohen, Ferris, Glovsky
and Popeo, P.C. to the Honorable Ronnie
Abrams, dated May 21, 2019 ................................ A-586

Exhibit A to Marmur Letter -
Minutes of the Public Prosecutor's hearing on
August 29, 2018 ..................................................... A-588

ix

**Page**

Letter from Mintz, Levin, Cohen, Ferris, Glovsky
    and Popeo, P.C. to the Honorable Ronnie
        Abrams, dated July 11, 2019.................................. A-596

Letter from Pillsbury Winthrop Shaw Pittman, LLP
    to the Honorable Ronnie Abrams, dated
        July 12, 2019.......................................................... A-599

Transcript of Proceedings held before the
    Honorable Ronnie Abrams, dated July 8, 2019 ..... A-601

Notice of Appeal, dated October 22, 2019................. A-646

A-1

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

CLOSED,APPEAL,ECF,RELATED

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:18-cv-11167-RA

Beierwaltes et al v. LOffice Fdrale De La Culture De La
Confdration Suisse et al
Assigned to: Judge Ronnie Abrams
Demand: $9,999,000
Related Case: 1:18-cv-08248-RA
Case in other court: Colorado, 1:18-cv-02011
Cause: 28:1605 Foreign Sovereign Immunities Act of 1976

Date Filed: 11/30/2018
Date Terminated: 09/25/2019
Jury Demand: None
Nature of Suit: 380 Personal Property:
Other
Jurisdiction: Federal Question

**Plaintiff**

**Lynda Beierwaltes**                    represented by    **Andrew C Lillie**
Hogan Lovells Us LLP (Denver)
1601 Wewatta Street, Suite 900
Denver, CO 80202
(303)-899-7339
Fax: (303)-899-7333
Email: andrew.lillie@hoganlovells.com
*TERMINATED: 01/11/2019*

**Andrew Martin Nussbaum**
Hogan Lovells US LLP-Denver
1601 Wewatta Street
Suite 900
Denver, CO 80202
303-899-7300
Fax: 303-899-7333
Email:
andrew.nussbaum@hoganlovells.com
*TERMINATED: 01/11/2019*

**Georges Gilbert Lederman**
Pearlstein McCullough & Lederman
LLP
641 Lexington Avenue
Suite 1327
New York, NY 10022
646-762-2833
Email: glederman@pmcounsel.com
*TERMINATED: 02/19/2019*

A-2

**Jessica Black Livingston**
Hogan Lovells US LLP-Denver
1601 Wewatta Street
Suite 900
Denver, CO 80202
303-899-7300
Fax: 303-899-7333
Email:
jessica.livingston@hoganlovells.com
*TERMINATED: 01/11/2019*

**Nathaniel Z Marmur**
The Law Offices of Nathaniel Z.
Marmur, PLLC
500 5th Avenue
New York, NY 10110
212-257-4894
Email: nmarmur@marmurlaw.com
*ATTORNEY TO BE NOTICED*

**William George Pearlstein**
Pearlstein McCullough & Lederman
LLP
641 Lexington Avenue
Suite 1327
New York, NY 10022
646-762-7263
Email: wpearlstein@pmcounsel.com
*TERMINATED: 02/19/2019*

**Plaintiff**

**William Beierwaltes**        represented by **Andrew C Lillie**
                                (See above for address)
                                *TERMINATED: 01/11/2019*

                                **Andrew Martin Nussbaum**
                                (See above for address)
                                *TERMINATED: 01/11/2019*

                                **Georges Gilbert Lederman**
                                (See above for address)
                                *TERMINATED: 02/19/2019*

                                **Jessica Black Livingston**
                                (See above for address)
                                *TERMINATED: 01/11/2019*

                                **Nathaniel Z Marmur**
                                (See above for address)

A-3

*ATTORNEY TO BE NOTICED*

**William George Pearlstein**
(See above for address)
*TERMINATED: 02/19/2019*

V.

**Defendant**

**LOffice Federale De La Culture De
La Confederation Suisse**
*Federal Office of Culture of the Swiss
Confederation*

represented by  **John Patrick Chamberlain**
Pillsbury Winthrop Shaw Pittman LLP
(DC)
1200 Seventeenth Street, NW
Washington, DC 20036
(202)-663-8153
Email:
john.chamberlain@pillsburylaw.com
*ATTORNEY TO BE NOTICED*

**Michael Evan Jaffe**
Pillsbury Winthrop Shaw Pittman LLP
(DC)
1200 Seventeenth Street, NW
Washington, DC 20036
(202) 663-8068
Fax: (202) 354-5261
Email: michael.jaffe@pillsburylaw.com
*ATTORNEY TO BE NOTICED*

**Stephan Becker**
Pillsbury Winthrop Shaw Pittman LLP
1200 17th Street, NW
Washington, DC 20036
202-663-8277
Email:
stephan.becker@pillsburylaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**LAdministration Federale Des
Douanes De La Confederation Suisse**
*Federal Customs Administration of the
Swiss Confederation*

represented by  **John Patrick Chamberlain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Evan Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephan Becker**

A-4

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**La Republique et Canton de Geneve**     represented by     **Marcus Aaron Asner**
*Republic and Canton of Geneva*                                      Arnold & Porter Kaye Scholer LLP
(NYC)
250 West 55th Street
New York, NY 10019
212-836-8000
Fax: 212-836-8689
Email: marcus.asner@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A DeRise**
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001
202-942-6029
Email: robert.derise@aporter.com
*TERMINATED: 08/30/2019*
*LEAD ATTORNEY*

**Edwin Packard Aro**
Arnold & Porter Kaye Scholer LLP-
Denver
370 Seventeenth Street
Suite 4400
Denver, CO 80202-1370
303-863-1000
Fax: 303-832-0428
*ATTORNEY TO BE NOTICED*

**Mathieu M Coquelet-Ruiz**
Arnold & Porter Kaye Scholer
250 W. 55 street
New York, NY 10019
212-836-7241
Email:
mathieu.coquelet.ruiz@arnoldporter.com
*ATTORNEY TO BE NOTICED*

**Robert Reeves Anderson**
Arnold & Porter LLP
555 Twelfth St., Nw
Washington, DC 20004
(202)-942-6126
Fax: (202)-942-5999

Email: reeves.anderson@aporter.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/08/2018 | 1 | COMPLAINT against L'ADMINISTRATION FEDERALE DES DOUANES DE LA CONFEDERATION SUISSE, L'OFFICE FEDERALE DE LA CULTURE DE LA CONFEDERATION SUISSE, LA REPUBLIQUE ET CANTON DE GENEVE (Filing fee $ 400,Receipt Number 1082-6237060) Attorney Jessica Black Livingston added to party Lynda Beierwaltes(pty:pla), Attorney Jessica Black Livingston added to party William Beierwaltes(pty:pla), filed by Lynda Beierwaltes, William Beierwaltes. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Civil Cover Sheet)(Livingston, Jessica) [Transferred from Colorado on 11/30/2018.] (Entered: 08/08/2018) |
| 08/08/2018 | 2 | Case assigned to Chief Judge Marcia S. Krieger and drawn to Magistrate Judge Michael E. Hegarty. Text Only Entry. (rvill, ) [Transferred from Colorado on 11/30/2018.] (Entered: 08/08/2018) |
| 08/09/2018 | 3 | Magistrate Judge consent form issued pursuant to 28 U.S.C. 636(c). (rvill, ) [Transferred from Colorado on 11/30/2018.] (Entered: 08/09/2018) |
| 08/09/2018 | 4 | NOTICE of Entry of Appearance *for Andrew C. Lillie* by Andrew Christopher Lillie on behalf of Lynda Beierwaltes, William BeierwaltesAttorney Andrew Christopher Lillie added to party Lynda Beierwaltes(pty:pla), Attorney Andrew Christopher Lillie added to party William Beierwaltes(pty:pla) (Lillie, Andrew) [Transferred from Colorado on 11/30/2018.] (Entered: 08/09/2018) |
| 08/09/2018 | 5 | NOTICE of Entry of Appearance *Andrew M. Nussbaum* by Andrew Martin Nussbaum on behalf of Lynda Beierwaltes, William BeierwaltesAttorney Andrew Martin Nussbaum added to party Lynda Beierwaltes(pty:pla), Attorney Andrew Martin Nussbaum added to party William Beierwaltes(pty:pla) (Nussbaum, Andrew) [Transferred from Colorado on 11/30/2018.] (Entered: 08/09/2018) |
| 08/09/2018 | 6 | SUMMONS REQUEST as to Defendant Republic and Canton of Geneva re 1 Complaint,, by Plaintiffs Lynda Beierwaltes, William Beierwaltes. (Livingston, Jessica) [Transferred from Colorado on 11/30/2018.] (Entered: 08/09/2018) |
| 08/09/2018 | 7 | SUMMONS REQUEST as to Defendant Federal Customs Administration of the Swiss Confederation re 1 Complaint,, by Plaintiffs Lynda Beierwaltes, William Beierwaltes. (Livingston, Jessica) [Transferred from Colorado on 11/30/2018.] (Entered: 08/09/2018) |
| 08/09/2018 | 8 | SUMMONS REQUEST as to Defendant Federal Office of Culture of the Swiss Confederation re 1 Complaint,, by Plaintiffs Lynda Beierwaltes, William Beierwaltes. (Livingston, Jessica) [Transferred from Colorado on 11/30/2018.] (Entered: 08/09/2018) |
| 08/10/2018 | 9 | SUMMONSES issued by Clerk. (dkals, ) [Transferred from Colorado on 11/30/2018.] (Entered: 08/10/2018) |

| 08/10/2018 | 10 | SUMMONSES issued by Clerk. (dkals, ) [Transferred from Colorado on 11/30/2018.] (Entered: 08/10/2018) |
|---|---|---|
| 08/10/2018 | 11 | NOTICE of Entry of Appearance by Georges Gilbert Lederman on behalf of All Plaintiffs Attorney Georges Gilbert Lederman added to party Lynda Beierwaltes (pty:pla), Attorney Georges Gilbert Lederman added to party William Beierwaltes(pty:pla) (Lederman, Georges) [Transferred from Colorado on 11/30/2018.] (Entered: 08/10/2018) |
| 08/10/2018 | 12 | NOTICE of Entry of Appearance by William George Pearlstein on behalf of All Plaintiffs Attorney William George Pearlstein added to party Lynda Beierwaltes (pty:pla), Attorney William George Pearlstein added to party William Beierwaltes(pty:pla) (Pearlstein, William) [Transferred from Colorado on 11/30/2018.] (Entered: 08/10/2018) |
| 08/13/2018 | 13 | ORDER REFERRING CASE to Magistrate Judge Michael E. Hegarty: **IT IS ORDERED** that pursuant to 28 U.S.C. 636(b)(1)(A) and (B) and FED. R. CIV. P. 72(a) and (b), this matter is referred to the assigned United States Magistrate Judge to: (1)Convene a scheduling conference under FED. R. CIV. P. 16(b), enter a Scheduling Order meeting the requirements of D.C.COLO.LCivR 16.2, enter such orders as appropriate to enforce the Scheduling Order, and resolve discovery matters; (2)ADR: Court sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. Early Neutral Evaluation is approved. On the informal request of the magistrate judge or on the request of the parties by motion, the Court may direct the parties to engage in a settlement conference conducted by the magistrate judge if the parties have engaged in an Early Neutral Evaluation and are unable to afford or otherwise attain private settlement assistance; (3)Hear and determine referred matters in accordance with 28 U.S.C. 636(b)(1)(A) and (B). by Chief Judge Marcia S. Krieger on 8/13/18. Text Only Entry (msksec, ) [Transferred from Colorado on 11/30/2018.] (Entered: 08/13/2018) |
| 09/27/2018 | 14 | SUMMONS Returned Executed upon defendant(s) LAdministration Federale Des Douanes De La Confederation Suisse served on 9/11/2018, answer due 11/13/2018; LOffice Federale De La Culture De La Confederation Suisse served on 9/11/2018, answer due 11/13/2018. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Livingston, Jessica) [Transferred from Colorado on 11/30/2018.] (Entered: 09/27/2018) |
| 10/16/2018 | 15 | SUMMONS Returned Executed upon defendant(s) La Republique et Canton De Geneve served on 9/19/2018, answer due 11/19/2018. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Livingston, Jessica) [Transferred from Colorado on 11/30/2018.] (Entered: 10/16/2018) |
| 10/23/2018 | 16 | AFFIDAVIT/RETURN of Service of Amended Request for Service Abroad of Judicial or Extrajudicial Documents upon LAdministration fdrale des douanes de la Confdration Suisse on 10/18/2018, filed by Plaintiffs Lynda Beierwaltes, |

| | | |
|---|---|---|
| | | William Beierwaltes (Attachments: # 1 Exhibit 1 - Amended Proof of Service) (Livingston, Jessica) [Transferred from Colorado on 11/30/2018.] (Entered: 10/23/2018) |
| 11/06/2018 | 17 | AFFIDAVIT/RETURN of Service of Amended Request for Service Aboad of Judicial or Extrajudicial Documents upon LOffice fdrale de la culture de la Confdration Suisse on 10/8/2018, filed by Plaintiffs Lynda Beierwaltes, William Beierwaltes (Attachments: # 1 Exhibit 1)(Livingston, Jessica) [Transferred from Colorado on 11/30/2018.] (Entered: 11/06/2018) |
| 11/09/2018 | 18 | Unopposed MOTION to Transfer Case *to the United States District Court for the Southern District of New York* by Defendant La Republique et Canton De Geneve. (Attachments: # 1 Proposed Order (PDF Only))(Aro, Edwin) [Transferred from Colorado on 11/30/2018.] (Entered: 11/09/2018) |
| 11/09/2018 | 19 | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint,, by Defendant La Republique et Canton De Geneve. (Attachments: # 1 Proposed Order (PDF Only))(Aro, Edwin) [Transferred from Colorado on 11/30/2018.] (Entered: 11/09/2018) |
| 11/13/2018 | 20 | ORDER granting 18 Motion to Transfer Case: The Court finds that, pursuant to 28 USC 1404(a), the convenience of parties and witnesses and the interests of justice are served by transferring this case. Upon the parties' agreement and consent, the Court grants the motion. The Clerk of the Court shall transfer this case to the United States District Court for the Southern District of New York and shall thereafter close this case. By Chief Judge Marcia S. Krieger on 11/13/18. Text Only Entry (msklc2, ) [Transferred from Colorado on 11/30/2018.] (Entered: 11/13/2018) |
| 11/30/2018 | 21 | CASE TRANSFERRED IN from the United States District Court - District of Colorado; Case Number: 1:18-cv-02011. Original file certified copy of transfer order and docket entries received. (sjo) (Entered: 11/30/2018) |
| 11/30/2018 | | Case Designated ECF. (sjo) (Entered: 11/30/2018) |
| 11/30/2018 | | NOTE TO OUT OF STATE ATTORNEYS: Please visit the Court's website at http://www.nysd.uscourts.gov for information regarding admission to the S.D.N.Y. Bar and the CM/ECF Rules & Filing Instructions. (sjo) (Entered: 11/30/2018) |
| 11/30/2018 | | CASE REFERRED TO Judge Ronnie Abrams as possibly related to 1:18-cv-8248. (sjo) (Entered: 11/30/2018) |
| 11/30/2018 | 22 | STATEMENT OF RELATEDNESS re: that this action be filed as related to 18 civ 8248. Document filed by La Republique et Canton de Geneve.(Asner, Marcus) (Entered: 11/30/2018) |
| 12/06/2018 | 23 | NOTICE OF APPEARANCE by Marcus Aaron Asner on behalf of La Republique et Canton de Geneve. (Asner, Marcus) (Entered: 12/06/2018) |
| 12/07/2018 | 24 | LETTER addressed to Judge Ronnie Abrams from Marcus A. Asner dated 12/07/2018 re: Joint Letter Regarding Case Management. Document filed by La Republique et Canton de Geneve.(Asner, Marcus) (Entered: 12/07/2018) |
| | | |

A-8

| 12/11/2018 | 25 | MOTION for Mathieu M. Coquelet Ruiz to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16035446. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by La Republique et Canton de Geneve. (Attachments: # 1 Text of Proposed Order, # 2 Affidavit, # 3 NY Bar Certificate of Good Standing)(Coquelet-Ruiz, Mathieu) (Entered: 12/11/2018) |
|---|---|---|
| 12/11/2018 |  | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 25 MOTION for Mathieu M. Coquelet Ruiz to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16035446. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (ma)** (Entered: 12/11/2018) |
| 12/13/2018 | 26 | MOTION for Robert Reeves Anderson to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16050363. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by La Republique et Canton de Geneve. (Attachments: # 1 Affidavit, # 2 Exhibit Certificates of Good Standing, # 3 Text of Proposed Order)(Anderson, Robert) (Entered: 12/13/2018) |
| 12/13/2018 |  | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 26 MOTION for Robert Reeves Anderson to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16050363. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (jc)** (Entered: 12/13/2018) |
| 12/14/2018 |  | CASE ACCEPTED AS RELATED. Create association to 1:18-cv-08248-RA. Notice of Assignment to follow. (jc) (Entered: 12/14/2018) |
| 12/14/2018 |  | NOTICE OF CASE REASSIGNMENT to Judge Ronnie Abrams. Judge Unassigned is no longer assigned to the case. (jc) (Entered: 12/14/2018) |
| 12/14/2018 |  | Magistrate Judge Barbara C. Moses is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (jc) (Entered: 12/14/2018) |
| 12/14/2018 | 27 | MEMO ENDORSEMENT on re: (24 in 1:18-cv-11167-RA) Letter filed by La Republique et Canton de Geneve, (26 in 1:18-cv-08248-RA) Letter filed by La Republique et Canton de Geneve. ENDORSEMENT: Application granted. Briefing on the anticipated motions to dismiss shall follow the schedule outlined above. Discovery is stayed pending resolution of the anticipated motions to dismiss. If Plaintiffs require jurisdictional discovery, they may submit a letter to the Court. The Clerk of Court is respectfully directed to place this Order on the dockets of both related actions, 18-cv-8248 and 18-cv-11167. SO ORDERED. (Motions due by 1/25/2019, Responses due by 3/15/2019, Replies due by 4/15/2019) (Signed by Judge Ronnie Abrams on 12/14/2018) (ne) (Entered: 12/14/2018) |
| 12/18/2018 | 28 |  |

| | | |
|---|---|---|
| | | NOTICE OF APPEARANCE by Nathaniel Z Marmur on behalf of Lynda Beierwaltes, William Beierwaltes. (Marmur, Nathaniel) (Entered: 12/18/2018) |
| 12/19/2018 | 29 | ORDER granting 25 Motion for Mathieu M. Coquelet to Appear Pro Hac Vice (HEREBY ORDERED by Judge Ronnie Abrams)(Text Only Order) (Abrams, Ronnie) (Entered: 12/19/2018) |
| 12/19/2018 | 30 | ORDER granting 26 Motion for Robert Reeves Anderson to Appear Pro Hac Vice (HEREBY ORDERED by Judge Ronnie Abrams)(Text Only Order) (Abrams, Ronnie) (Entered: 12/19/2018) |
| 01/10/2019 | 31 | MOTION for Stephan E. Becker to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16169711. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse. (Attachments: # 1 Declaration of Stephan E. Becker, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Becker, Stephan) (Entered: 01/10/2019) |
| 01/10/2019 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 31 MOTION for Stephan E. Becker to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16169711. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 01/10/2019) |
| 01/11/2019 | 32 | ORDER granting 31 Motion for Stephan E. Becker to Appear Pro Hac Vice (HEREBY ORDERED by Judge Ronnie Abrams)(Text Only Order) (arc) (Entered: 01/11/2019) |
| 01/11/2019 | 33 | MOTION for Michael Evan Jaffe to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16178037. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse. (Attachments: # 1 Declaration of Michael Evan Jaffe, # 2 Certificates of Good Standing, # 3 Text of Proposed Order)(Jaffe, Michael) (Entered: 01/11/2019) |
| 01/11/2019 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 33 MOTION for Michael Evan Jaffe to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16178037. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 01/11/2019) |
| 01/11/2019 | 34 | ENDORSED LETTER addressed to Judge Ronnie Abrams from Jessica Black Livingston dated 1/10/2019 re: We seek to withdraw as counsel of record for the Beierwaltes because we have been discharged. ENDORSEMENT: Application granted. SO ORDERED. (Attorney Andrew Martin Nussbaum; Andrew C Lillie and Jessica Black Livingston terminated.) (Signed by Judge Ronnie Abrams on 1/11/2019) (anc) (Entered: 01/11/2019) |
| 01/11/2019 | 35 | ORDER granting 33 Motion for Michael Evan Jaffe to Appear Pro Hac Vice (HEREBY ORDERED by Judge Ronnie Abrams)(Text Only Order) (arc) (Entered: 01/11/2019) |

| 01/22/2019 | 36 | NOTICE OF APPEARANCE by John Patrick Chamberlain on behalf of LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse. (Chamberlain, John) (Entered: 01/22/2019) |
|---|---|---|
| 01/25/2019 | 37 | MOTION to Dismiss *Notice of Motion*. Document filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse. Responses due by 3/15/2019(Chamberlain, John) (Entered: 01/25/2019) |
| 01/25/2019 | 38 | MEMORANDUM OF LAW in Support re: 37 MOTION to Dismiss *Notice of Motion*. . Document filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse. (Chamberlain, John) (Entered: 01/25/2019) |
| 01/25/2019 | 39 | AFFIDAVIT of Stephan E. Becker in Support re: 37 MOTION to Dismiss *Notice of Motion*.. Document filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8) (Chamberlain, John) (Entered: 01/25/2019) |
| 01/25/2019 | 40 | AFFIDAVIT of Hans Georg Nussbaum in Support re: 37 MOTION to Dismiss *Notice of Motion*.. Document filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Chamberlain, John) (Entered: 01/25/2019) |
| 01/25/2019 | 41 | MOTION to Dismiss *NOTICE OF MOTION TO DISMISS OF THE REPUBLIC AND CANTON OF GENEVA*. Document filed by La Republique et Canton de Geneve.(Asner, Marcus) (Entered: 01/25/2019) |
| 01/25/2019 | 42 | MEMORANDUM OF LAW in Support re: 41 MOTION to Dismiss *NOTICE OF MOTION TO DISMISS OF THE REPUBLIC AND CANTON OF GENEVA*. . Document filed by La Republique et Canton de Geneve. (Asner, Marcus) (Entered: 01/25/2019) |
| 02/19/2019 | 43 | MEMO ENDORSEMENT on re: (41 in 1:18-cv-08248-RA) Letter filed by Hicham Aboutaam. ENDORSEMENT: APPLICATION GRANTED. SO ORDERED. Attorney William George Pearlstein; Georges Gilbert Lederman and William George Pearlstein terminated. (Signed by Judge Ronnie Abrams on 2/19/2019) (kv) (Entered: 02/19/2019) |
| 03/11/2019 | 44 | JOINT LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Ronnie Abrams from Nathaniel Z. Marmur dated March 11, 2019. Document filed by Lynda Beierwaltes, William Beierwaltes.(Marmur, Nathaniel) (Entered: 03/11/2019) |
| 03/12/2019 | 45 | ORDER granting 44 Letter Motion for Extension of Time to File Response/Reply re 41 MOTION to Dismiss *NOTICE OF MOTION TO DISMISS OF THE REPUBLIC AND CANTON OF GENEVA*, 37 MOTION to Dismiss *Notice of Motion*. Responses due by 3/29/2019 Replies due by 4/29/2019. Application granted. The Clerk of Court is respectfully directed to |

| | | file this letter endorsement on the dockets of both related case, 18-cv-8248 and 18-cv-11167. (Signed by Judge Ronnie Abrams on 3/12/2019) (rro) (Entered: 03/12/2019) |
|---|---|---|
| 03/29/2019 | 46 | MEMORANDUM OF LAW in Opposition re: 37 MOTION to Dismiss *Notice of Motion.*, 41 MOTION to Dismiss *NOTICE OF MOTION TO DISMISS OF THE REPUBLIC AND CANTON OF GENEVA.* . Document filed by Lynda Beierwaltes, William Beierwaltes. (Marmur, Nathaniel) (Entered: 03/29/2019) |
| 04/25/2019 | 47 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Robert A. DeRise to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16768794. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by La Republique et Canton de Geneve. (Attachments: # 1 Declaration of Robert A. DeRise, # 2 Exhibit A - Certificates of Good Standing, # 3 Text of Proposed Order)(DeRise, Robert) Modified on 4/26/2019 (bcu). (Entered: 04/25/2019) |
| 04/26/2019 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 47 MOTION for Robert A. DeRise to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-16768794. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from Supreme Court of Virginia;. Re-file the motion as a Corrected Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (bcu)** (Entered: 04/26/2019) |
| 04/29/2019 | 48 | REPLY MEMORANDUM OF LAW in Support re: 37 MOTION to Dismiss *Notice of Motion.* . Document filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse. (Chamberlain, John) (Entered: 04/29/2019) |
| 04/29/2019 | 49 | REPLY MEMORANDUM OF LAW in Support re: 41 MOTION to Dismiss *NOTICE OF MOTION TO DISMISS OF THE REPUBLIC AND CANTON OF GENEVA.* . Document filed by La Republique et Canton de Geneve. (Asner, Marcus) (Entered: 04/29/2019) |
| 05/02/2019 | 50 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Robert A. DeRise to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by La Republique et Canton de Geneve. (Attachments: # 1 Declaration of Robert A. DeRise, # 2 Exhibit A - Certificate of Good Standing, # 3 Text of Proposed Order)(DeRise, Robert) Modified on 5/3/2019 (wb). (Entered: 05/02/2019) |
| 05/03/2019 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 50 MOTION for Robert A. DeRise to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from Supreme Court of Virginia;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid** |

| | | |
|---|---|---|
| | | **Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (wb)** (Entered: 05/03/2019) |
| 05/03/2019 | 51 | MOTION for Robert A. DeRise to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by La Republique et Canton de Geneve. (Attachments: # 1 Declaration of Robert A. DeRise, # 2 Exhibit A - Certificates of Good Standing, # 3 Text of Proposed Order)(DeRise, Robert) (Entered: 05/03/2019) |
| 05/03/2019 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 51 MOTION for Robert A. DeRise to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 05/03/2019) |
| 05/07/2019 | 52 | ORDER granting 51 Motion for Robert A. DeRise to Appear Pro Hac Vice (HEREBY ORDERED by Judge Ronnie Abrams)(Text Only Order) (arc) (Entered: 05/07/2019) |
| 05/07/2019 | 53 | LETTER addressed to Judge Ronnie Abrams from Nathaniel Z. Marmur dated May 7, 2019 re: jurisdictional discovery. Document filed by Lynda Beierwaltes, William Beierwaltes. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Marmur, Nathaniel) (Entered: 05/07/2019) |
| 05/08/2019 | 54 | LETTER addressed to Judge Ronnie Abrams from Marcus A. Asner dated May 8th, 2019 re: Plaintiffs' May 7th, 2019 Letter. Document filed by La Republique et Canton de Geneve.(Asner, Marcus) (Entered: 05/08/2019) |
| 05/08/2019 | 55 | MEMO ENDORSEMENT on re: (53 in 1:18-cv-08248-RA) Letter filed by Hicham Aboutaam, (53 in 1:18-cv-11167-RA) Letter, filed by William Beierwaltes, Lynda Beierwaltes. ENDORSEMENT: Application granted. The Clerk of Court is respectfully directed to file this letter endorsement on the docket of both related cases, 18-v-8248 and 18-cv-11167. SO ORDERED. (Signed by Judge Ronnie Abrams on 5/8/2019) (ne) (Entered: 05/08/2019) |
| 05/15/2019 | 56 | LETTER addressed to Judge Ronnie Abrams from Stephan E. Becker dated 5/15/2019 re: Response to Plaintiffs' May 7, 2019 letter (ECF No. 53). Document filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse. (Chamberlain, John) (Entered: 05/15/2019) |
| 05/15/2019 | 57 | LETTER addressed to Judge Ronnie Abrams from Marcus A. Asner dated May 15, 2019 re: Response to Plaintiffs' May 7, 2019 letter. Document filed by La Republique et Canton de Geneve.(Asner, Marcus) (Entered: 05/15/2019) |
| 05/16/2019 | 58 | LETTER MOTION for Leave to File Reply in Support of Letter Requesting Jurisdictional Discovery addressed to Judge Ronnie Abrams from Nathaniel Z. Marmur dated May 16, 2019. Document filed by Lynda Beierwaltes, William Beierwaltes.(Marmur, Nathaniel) (Entered: 05/16/2019) |
| 05/17/2019 | 59 | LETTER addressed to Judge Ronnie Abrams from Stephan E. Becker dated 5/17/2019 re: Response to Plaintiffs' Request for Leave to Reply (ECF 58). Document filed by LAdministration Federale Des Douanes De La Confederation |

A-13

| | | |
|---|---|---|
| | | Suisse, LOffice Federale De La Culture De La Confederation Suisse. (Chamberlain, John) (Entered: 05/17/2019) |
| 05/17/2019 | 60 | ORDER granting 58 Letter Motion for Leave to File Document. Application granted. The Clerk of Court is respectfully directed to file this endorsement on the dockets of both related actions. 18-cv-8248 and 18-cv-11167. (Signed by Judge Ronnie Abrams on 5/17/2019) (ne) (Entered: 05/17/2019) |
| 05/21/2019 | 61 | LETTER addressed to Judge Ronnie Abrams from Nathaniel Z. Marmur dated May 21, 2019 re: Further support of their request for jurisdictional discovery. Document filed by Lynda Beierwaltes, William Beierwaltes. (Attachments: # 1 Exhibit A)(Marmur, Nathaniel) (Entered: 05/21/2019) |
| 06/03/2019 | 62 | ORDER: Counsel for all parties shall appear for oral argument on the pending motions to dismiss, and Plaintiffs' request for jurisdictional discovery, on July 8, 2019 at 3:00 p.m. SO ORDERED. (Oral Argument set for 7/8/2019 at 03:00 PM before Judge Ronnie Abrams.) (Signed by Judge Ronnie Abrams on 6/3/2019) (ne) (Entered: 06/03/2019) |
| 07/08/2019 | | Minute Entry for proceedings held before Judge Ronnie Abrams: Motion Hearing held on 7/8/2019 re: 37 MOTION to Dismiss *Notice of Motion.* filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse, 41 MOTION to Dismiss *NOTICE OF MOTION TO DISMISS OF THE REPUBLIC AND CANTON OF GENEVA.* filed by La Republique et Canton de Geneve. (Court Reporter Steven Griffing) (arc) (Entered: 07/08/2019) |
| 07/11/2019 | 63 | LETTER addressed to Judge Ronnie Abrams from Nathaniel Z. Marmur dated July 11, 2019 re: we write to respond to a question you asked at oral argument on July 8, 2019. Document filed by Lynda Beierwaltes, William Beierwaltes. (Marmur, Nathaniel) (Entered: 07/11/2019) |
| 07/12/2019 | 64 | LETTER addressed to Judge Ronnie Abrams from Swiss Confederation Defendants dated July 12, 2019 re: Reference to Plaintiff's 7-11-19 letter. Document filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse.(Jaffe, Michael) (Entered: 07/12/2019) |
| 08/29/2019 | 65 | NOTICE of Withdrawal of Appearance. Document filed by La Republique et Canton de Geneve. (DeRise, Robert) (Entered: 08/29/2019) |
| 08/29/2019 | 66 | DECLARATION of Robert DeRise in Support re: 65 Notice (Other). Document filed by La Republique et Canton de Geneve. (DeRise, Robert) (Entered: 08/29/2019) |
| 08/30/2019 | 67 | MEMO ENDORSEMENT: on NOTICE OF WITHDRAWAL OF APPEARANCE re: 65 Notice (Other) filed by La Republique et Canton de Geneve: ENDORSEMENT: Application Granted. SO ORDERED., Attorney Robert A DeRise terminated. (Signed by Judge Ronnie Abrams on 8/30/2019) (ama) (Entered: 08/30/2019) |
| 09/24/2019 | 68 | OPINION & ORDER re: (35 in 1:18-cv-08248-RA) MOTION to Dismiss *Notice of Motion.* filed by L'Administration Federale des Douanes de la |

| | | |
|---|---|---|
| | | Confederation Suisse, L'Office Federale de la Culture de la Confederation Suisse, (39 in 1:18-cv-08248-RA) MOTION to Dismiss *NOTICE OF MOTION TO DISMISS OF THE REPUBLIC AND CANTON OF GENEVA*. filed by La Republique et Canton de Geneve, (37 in 1:18-cv-11167-RA) MOTION to Dismiss *Notice of Motion*. filed by LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse, (41 in 1:18-cv-11167-RA) MOTION to Dismiss *NOTICE OF MOTION TO DISMISS OF THE REPUBLIC AND CANTON OF GENEVA*. filed by La Republique et Canton de Geneve. For the foregoing reasons, Defendants' motions to dismiss are granted. Plaintiffs' request for jurisdictional discovery is denied. The Clerk of Court is respectfully directed to terminate all pending motions and to close these cases. SO ORDERED. (Signed by Judge Ronnie Abrams on 9/24/2019) (rj) Transmission to Orders and Judgments Clerk for processing. (Entered: 09/24/2019) |
| 09/25/2019 | 69 | CLERK'S JUDGMENT re: 68 Memorandum & Opinion. in favor of LAdministration Federale Des Douanes De La Confederation Suisse, LOffice Federale De La Culture De La Confederation Suisse, La Republique et Canton de Geneve against Lynda Beierwaltes, William Beierwaltes. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated September 24, 2019, Defendants' motions to dismiss are granted; Plaintiffs' request for jurisdictional discovery is denied; accordingly, these cases are closed. (Signed by Clerk of Court Ruby Krajick on 09/25/2019) (Attachments: # 1 Notice of Right to Appeal)(dt) (Entered: 09/25/2019) |
| 10/22/2019 | 70 | NOTICE OF APPEAL from 69 Clerk's Judgment,, 68 Memorandum & Opinion,,,,. Document filed by Lynda Beierwaltes, William Beierwaltes. Filing fee $ 505.00, receipt number ANYSDC-17812504. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Marmur, Nathaniel) (Entered: 10/22/2019) |
| 10/22/2019 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 70 Notice of Appeal. (tp) (Entered: 10/22/2019) |
| 10/22/2019 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 70 Notice of Appeal, filed by William Beierwaltes, Lynda Beierwaltes were transmitted to the U.S. Court of Appeals. (tp) (Entered: 10/22/2019) |
| 01/23/2020 | 71 | TRANSCRIPT of Proceedings re: CONFERENCE held on 7/8/2019 before Judge Ronnie Abrams. Court Reporter/Transcriber: Steven Griffing, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/13/2020. Redacted Transcript Deadline set for 2/24/2020. Release of Transcript Restriction set for 4/22/2020.(McGuirk, Kelly) (Entered: 01/23/2020) |
| 01/23/2020 | 72 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 7/8/19 has been filed by the court reporter/transcriber in the above-captioned matter. The parties |

A-15

| | | have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 01/23/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 01/28/2020 12:42:53 | | | |
| PACER Login: | cpnycpara17 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:18-cv-11167-RA |
| Billable Pages: | 12 | Cost: | 1.20 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

LYNDA BEIERWALTES, and
WILLIAM BEIERWALTES

      Plaintiffs,

v.

L'OFFICE FEDERALE DE LA CULTURE DE LA CONFEDERATION SUISSE, Federal
Office of Culture of the Swiss Confederation,
L'ADMINISTRATION FEDERALE DES DOUANES DE LA CONFEDERATION SUISSE,
Federal Customs Administration of the Swiss Confederation, and
LA REPUBLIQUE ET CANTON DE GENÈVE, Republic and Canton of Geneva,

      Defendants.

---

## COMPLAINT

---

      Plaintiffs Lynda and William Beierwaltes (collectively "Plaintiffs" or "Beierwaltes"),

through their undersigned counsel, bring this complaint ("Complaint") for declaratory judgment

as to title, conversion, unjust enrichment and civil theft against defendants L'Office fédérale de

la culture de la Confédération Suisse (referred to individually as the "Swiss Office of Culture");

L'Administration fédérale des douanes de la Confédération Suisse (referred to individually as the

"Swiss Customs Administration"); and La République et canton de Genève (referred to

individually as the "Canton of Geneva")[1] (collectively, "Defendants") and allege as follows:

---
[1] Unofficially translated as the "Federal Office of Culture of the Swiss Confederation"; the "Federal Customs Administration of the Swiss Confederation"; and the "Republic and Canton of Geneva," respectively.

A-17

## NATURE OF THE ACTION

1.       The Beierwaltes are art enthusiasts. They have, for most of their adult lives,
acquired, managed, and sold an extremely extensive and valuable body of fine art and
antiquities. Over the years, they have found a great deal of personal satisfaction and enjoyment
in the business of buying, displaying, and selling works of fine art and antiquities. They have a
long history as collectors, and their home once served as their gallery. By the late 1990s, the
Beierwaltes' collection was considered one of, if not, the finest private collections of antiquities
in the United States.

2.       This case concerns 18 antiquities belonging to the Beierwaltes, which are located
in Geneva, Switzerland (the "Beierwaltes Property"). The Beierwaltes Property is primarily of
Greek, Roman and Egyptian origin and has a fair market value in the aggregate of approximately
$8 million. Originally, the Beierwaltes displayed the Beierwaltes Property at their home in
Loveland, Colorado. However, after determining that the Beierwaltes Property should be sold,
the Beierwaltes consigned the Beierwaltes Property to a gallery run by their exclusive art dealer
in Geneva, Switzerland.

3.       The Defendants violated international law by wrongfully seizing[2] the Beierwaltes
Property at a Geneva warehouse on February 28, 2017, and by failing to pay the Beierwaltes just
compensation for these objects.

---

[2] The Defendants have not removed the Beierwaltes Property from the Geneva warehouse in which it is stored.
Beginning in February 2017, as explained in detail below, the Defendants took concerted action pursuant to the
applicable Swiss statute against the Beierwaltes and their exclusive art dealer that has "frozen" the Beierwaltes
Property. Because this action amounts to a seizure of the property, the Complaint uses the terms "freeze," "seize,"
"seizure," and their derivations interchangeably.

2

4.      Through their communications with the Beierwaltes' counsel, Defendants have failed to assert any proper legal basis for the seizure of the Beierwaltes Property pursuant to international or Swiss law. Both the Ministère public du canton de Genève (the "Geneva Prosecutor"),[3] which operates pursuant to authority vested by the Canton of Geneva, and the Swiss Customs Administration have asserted that the *Code pénal suisse* (the "Swiss Penal Code") provides the basis for seizure, but they have failed to cite any provision under that statute to support this assertion. The Geneva Prosecutor and the Swiss Customs Administration attempt to avail themselves of the *Loi fédérale sur le transfert international des biens culturels, LTBC, du 20 juin 2003* (the "LTBC"),[4] Switzerland's law governing the international transfer of cultural property, which the Swiss Office of Culture administers, but they also have failed to cite any provision under that statute as support.

5.      No individual or foreign sovereign, and no other third party, has asserted any claim of ownership whatsoever over the Beierwaltes Property. Instead, Defendants simply seized the Beierwaltes Property without valid legal basis or justification. Upon information and belief, Defendants intend to solicit as-yet-unidentified third parties to whom the Beierwaltes Property will be "repatriated." To put it plainly, Defendants' actions amount to a seizure in search of a crime.

6.      Plaintiffs respectfully seek (i) a declaratory judgment that title to the Beierwaltes Property belongs solely to the Beierwaltes, because no individual or foreign sovereign or any other third party has asserted any claim of ownership as to the Beierwaltes Property, and (ii) a

---

[3] Unofficially translated as the "Ministry of Public Affairs of the Canton of Geneva."

[4] Unofficially translated as the "Federal Act on the International Transfer of Cultural Property, CPTA, dated June 20, 2003."

judgment in the Beierwaltes' favor on their claims of conversion, unjust enrichment, and civil

theft against the Defendants, who have expropriated the Beierwaltes Property for their own

political benefit and to the detriment of the Beierwaltes without just compensation in clear

violation of the LTBC and of the underlying 1970 Convention on the Means of Prohibiting and

Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property (the

"UNESCO Convention").[5]

7.      This action is ripe for judgment:   there now exists an actual and justiciable

controversy between the parties that is capable of judicial resolution.

## THE PARTIES

8.      Plaintiffs are citizens of the State of Colorado and residents of Larimer County.

9.      Defendant Swiss Office of Culture, whose principal offices are located in Bern,

Switzerland, is an administrative unit of the Swiss government's Federal Department of Home

Affairs and an instrumentality of the Swiss government. The Swiss Office of Culture is

responsible for promoting Swiss culture and preserving Switzerland's cultural heritage. Its

mission includes advising and aiding all prosecutions and seizures under Section 7, Article 18 of

the LTBC. It also includes an extensive role in the import of cultural property. Specifically, the

Office of Culture oversees and regulates the procedures for the import and seizure of cultural

artifacts such as the Beierwaltes Property.

---

[5] Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property, Paris, 14 November 1970. The UNESCO Convention is the leading convention governing the international transfer of antiquities and other cultural property. One-hundred thirty-seven nations have accepted or acceded to UNESCO and have become "State Parties" thereunder, including the United States and Switzerland. United Nations Education, Scientific and Cultural Organization (UNESCO), *States Parties: Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property*, *available at* http://www.unesco.org/eri/la/convention.asp?KO=13039&language=E&order=alpha (last visited June 25, 2018).

10.     Defendant Swiss Customs Administration, whose principal offices are located in Bern, Switzerland, is an administrative unit of Switzerland's Federal Department of Finance and an instrumentality of the Swiss government. It is responsible for, among other tasks, the control of the import and export of certain goods, border security, and the imposition of customs duties. Pursuant to the LTBC,[6] the Swiss Customs Administration acts at the direction of, and in concert with, the Swiss Office of Culture in matters arising under the LTBC, including the seizure of the Beierwaltes Property.

11.     Defendant Canton of Geneva, a territorial division in Switzerland, vests authority in the Geneva Prosecutor to prosecute criminal acts occurring within the jurisdiction of the Canton of Geneva. Pursuant to the LTBC,[7] the Canton of Geneva acts at the direction of, and in concert with, the Swiss Office of Culture in all prosecutions arising under the LTBC in the Canton of Geneva, including the seizure of the Beierwaltes Property.

## JURISDICTION AND VENUE

12.     Subject to existing international agreements to which the United States is a party, the Foreign Sovereign Immunities Act ("FSIA") provides an exception to the general immunity from suit granted to foreign states under 28 U.S.C. § 1604 where an agency or instrumentality of the foreign state, which engages in commercial activity in the United States, seizes property held by a United States citizen under circumstances such as those presented in this case without just compensation in violation of international law. 28 U.S.C. § 1605(a)(3). This exception to the FSIA applies here, and thus the Defendants are not immune from suit in this Court.

---

[6] *See* LTBC Articles 18, 19 and 21.

[7] *See* LTBC Articles 17, 18, 20 and 21.

5

**A.      Defendants are not immune from suit under 28 U.S.C. § 1605(a)(3).**

13.      The Court has subject-matter and personal jurisdiction over the Defendants under 28 U.S.C. § 1330 because the Defendants are not entitled to immunity under 28 U.S.C. § 1605.

14.      A foreign state and its agencies and instrumentalities are not immune from suit under the FSIA where "rights in property taken in violation of international law are in issue and . . . that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3).

15.      Defendants' seizure of the Beierwaltes Property without paying just compensation violates international law.

16.      This action concerns rights in the Beierwaltes Property that were arbitrarily taken from the Beierwaltes without just compensation paid.

17.      The Swiss Office of Culture is an agency or instrumentality of a foreign state within the meaning of 28 U.S.C. § 1603(b).

18.      The Swiss Customs Administration is an agency or instrumentality of a foreign state within the meaning of 28 U.S.C. § 1603(b).

19.      The Canton of Geneva is an agency or instrumentality of a foreign state within the meaning of 28 U.S.C. § 1603(b).

20.      Upon information and belief, The Swiss Office of Culture is engaged in commercial activity in the United States, including the following:

      a.      The Swiss Office of Culture coordinates all cultural activities of the Swiss government, including the Swiss National Library, multiple museums, and other cultural

6

programs. The Swiss Office of Culture's activities include promoting Swiss culture in the United States for the purpose of boosting economic and cultural exchange between the United States and Switzerland.

       b.      The Swiss Office of Culture, through the many national museums it operates, regularly purchases art from United States artists and museums.

       c.      The Swiss Office of Culture, through the many national museums it operates, also regularly places exhibits on temporary display in the United States. For example, the Swiss Office of Culture through the Museum Oskar Reinhart am Stadtgarten, which it operates, has profited from exhibiting artwork in United States museums. From February to April 1994, the Museum Oskar Reinhart am Stadtgarten placed on temporary exhibition over 150 paintings and drawings at the Metropolitan Museum of Art in New York in an exhibition entitled, "Caspar David Friedrich to Ferdinand Hödler: A Romantic Tradition." The same exhibition was on display in the Los Angeles County Museum of Art from September 1993 to January 1994. Through ticket sales and related sale of merchandise, the Swiss Office of Culture profited from these exhibitions.

       d.      The Swiss Office of Culture also actively promotes Swiss film to American audiences. In 2016, for example, the Swiss Office of Culture entered a film entitled "Iraqi Odyssey" in the United States Academy Awards.

       e.      Each year, the Swiss Office of Culture awards monetary prizes to artists to recognize cultural achievement. The Swiss Office of Culture regularly awards these prizes to artists residing and working in the United States. In 2017, for example, the

7

Swiss Office of Culture awarded a Swiss Art Award to Tobias Madison, who lives and works in New York. And in 2016, the Swiss Office of Culture awarded a Swiss Design Award to Christophe Guberan, who lives and works in Boston.

  f.  Through its various cultural activities in the United States, the Swiss Office of Culture promotes Swiss cultural enterprises in the United States. This constitutes commercial activity within the meaning of 28 U.S.C. § 1605(a)(3).

  21.  Upon information and belief, the Swiss Customs Administration acts at the direction of, and in concert with, the Swiss Office of Culture in matters arising under the LTBC.

  22.  Upon information and belief, the Canton of Geneva acts at the direction of, and in concert with, the Swiss Office of Culture in matters arising under the LTBC in the Canton of Geneva.[8]

  23.  The commercial activity of the Swiss Office of Culture is attributable to the Swiss Customs Administration and the Canton of Geneva in this matter because, as explained below, the Swiss Office of Culture has initiated and overseen the seizure of the Beierwaltes Property. The Swiss Office of Culture administers prosecutions arising under the LTBC, which is the alleged legal basis for seizure of the Beierwaltes Property. The Swiss Office of Culture invoked the LTBC when it issued the complaint giving rise to the seizure of the Beierwaltes Property.

---

[8] Concerted action between these Swiss agencies is required by Swiss law. The LTBC mandates the interagency relationship between the Federal Office of Culture, on the one hand, and the Swiss Customs Administrator and the Geneva Prosecutor, on the other. Specifically, articles 17, 19, 20 and 21 of the LTBC expressly require the Geneva Prosecutor and the Swiss Customs Administration to act at the direction of the Federal Office of Culture. *See* LTBC, art. 17 ("When [a body of the Federal Office of Culture] has reasonable suspicion that criminal activity is present under this Act, the specialized body will file a complaint with the competent prosecution authorities."); *id.* art. 19 (requiring the Swiss Customs Administration to inspect antiquities upon entry to the country); *id.* art. 20 § 1 (requiring "competent criminal prosecution authorities" to order the seizure of cultural property referred by the Federal Office of Culture); *id.* art. 21 ("The competent authorities from the . . . Cantons . . . provide all the data required for the execution of this Act to each other as well as the appropriate oversight authorities.").

The Swiss Customs Administration and the Canton of Geneva have effectuated the mandates of that complaint by issuing documentation and implementing the seizure.

**B.      Venue is Proper in the District of Colorado under 28 U.S.C. § 1391(f)(1).**

24.      Venue is proper in this district under 28 U.S.C. § 1391(f)(1) because a substantial part of the events giving rise to the claim occurred here.

## INTERNATIONAL LAW BACKGROUND

25.      The United States is a signatory ("State Party") to the UNESCO Convention. The United States implemented the UNESCO Convention by enacting the Convention on Cultural Property Implementation Act ("CPIA"), which became effective on April 12, 1983. Switzerland—and, by extension, Defendants as instrumentalities of the government of Switzerland or a territorial division in Switzerland—became a State Party under the UNESCO Convention in 1975 and implemented it by enacting the LTBC, which became effective on June 20, 2003. Defendants purport to have seized the Beierwaltes Property with a view to repatriating it to certain additional State Parties or other third parties, which have not yet even been identified and which have not asserted any claim to or ownership interest in the Beierwaltes Property. Hence, Defendants' conduct is a clear violation of the UNESCO Convention and the rights of the Beierwaltes, who are the true, lawful and exclusive owners of the Beierwaltes Property.

26.      The UNESCO Convention provides that a State Party requesting the return of cultural property imported after the entry into force of the UNESCO Convention shall pay just

9

compensation to an innocent purchaser or to a person with valid title to the property.[9]  Greece, Italy and Egypt—the countries to which the Defendants presumably would seek to repatriate the Beierwaltes Property because the Beierwaltes Property is of Greek, Roman, and Egyptian origin—are each State Parties as well and similarly would be bound by the requirement to pay the Beierwaltes just compensation for the Beierwaltes Property.

27.     By seizing the Beierwaltes Property, the Geneva Prosecutor necessarily invoked the Swiss Penal Code as a basis for the seizure. Despite requests by the Beierwaltes' counsel to provide them legal support for the seizure, the Geneva Prosecutor failed to cite any provision under the Swiss Penal Code justifying the seizure. By its unauthorized action, the Geneva Prosecutor has violated both Swiss and international law.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**A.     The Beierwaltes Property and Related Proceedings**

28.     The Beierwaltes are a married couple who, since the 1990s, have been involved in the curation, display, publication and sale of a valuable collection of antiquities. Most of these antiquities originated from ancient Greek, Roman and Egyptian civilizations within their cultural ambit.

29.     By the early 2000s, the Beierwaltes suffered a reversal of fortune and decided to liquidate their antiquities collection to satisfy the claims of creditors. To that end, they developed a relationship with the premier international dealer of high-value antiquities, Phoenix Ancient Art S.A. ("Phoenix"), with galleries located in Geneva, Switzerland and a gallery in New York

---

[9] UNESCO Convention, Article 7(b)(ii). *See infra* n.17, and accompanying text, regarding the requirement to pay just compensation under the bilateral agreements entered pursuant to the LTBC between Switzerland and each of Italy, Egypt and Greece.

City owned and managed by Electrum, an affiliated entity acting as the exclusive agent for Phoenix ("Electrum").

30.     In June 2006, the Beierwaltes entered into an Exclusive Dealer Agreement with Phoenix (the "Exclusive Dealer Agreement"), granting Phoenix the exclusive right to sell their antiquities collection. The Exclusive Dealer Agreement lists the Beierwaltes' inventory of antiquities and includes the Beierwaltes Property.

31.     One of the Beierwaltes creditors is Bill R. Putman, a resident of the State of Colorado. In April 2013, Mr. Putman obtained a judgment against the Beierwaltes of approximately $5 million. To satisfy this judgment, the Beierwaltes faced the prospect of a fire-sale liquidation of their assets, including their antiquities. To avert this result and preserve the value of their assets for the benefit of them and their creditors, on May 21, 2013, the Beierwaltes filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado. On April 7, 2014, the Beierwaltes filed a Disclosure Statement for Plan of Reorganization (the "Plan").[10]

32.     The Plan listed the Beierwaltes' collection of antiquities as the couple's most valuable asset. The Bankruptcy Court appointed Phoenix as the bankruptcy estate's designated antiquities dealer to sell the Beierwaltes' collection for the benefit of the estate's creditors, and the Bankruptcy Court confirmed the Exclusive Dealer Agreement for this purpose. Pursuant to the Plan and the Exclusive Dealer Agreement, the Beierwaltes consigned their antiquities collection to Phoenix for sale.

---

[10] *See* Plan of Reorganization, dated April 7, 2014, Case No. 13-18655-SBB, U.S. Bankruptcy Court, D. Colo., Dkt. Nos. 185 & 186.

11

33.     The bankruptcy proceeding ultimately settled, the Chapter 11 petition was dismissed, and the liens of the secured creditors were satisfied. Phoenix was able to sell some, but not all, of the Beierwaltes' antiquities and generate proceeds for the benefit of the Beierwaltes' creditors. The remaining unsold 18 objects now constitute the Beierwaltes Property and were in Phoenix's possession in Geneva at the time of their seizure by the Geneva Prosecutor and the Swiss Customs Administration.

34.     Mr. Putman, however, was unable to benefit fully from the settlement of the bankruptcy proceeding. Following the settlement, the Beierwaltes still owed Mr. Putman approximately $3.67 million. At this time, approximately $1.8 million of his judgment remains unsatisfied. Prior to Defendants' unlawful actions, the Beierwaltes were still engaged with Phoenix pursuant to the Exclusive Dealer Agreement to sell the Beierwaltes Property, whose proceeds would be used to satisfy Mr. Putman's judgment. Defendants' unlawful seizure of the Beierwaltes Property, however, has thwarted the efforts by Phoenix and the Beierwaltes to make a citizen of this state financially whole.

**B.     The Unlawful Seizure of the Beierwaltes Property**

35.     On January 17, 2017, the Swiss Office of Culture presented the Swiss Customs Administration with a complaint identifying seven antiquities, none of which belongs to the Beierwaltes, whose provenance[11] is allegedly in question. Certain parties had been under

---

[11] In the art world, the term "provenance" is commonly understood to mean an art work's history of ownership or chain of title. *See* Provenance, Oxford English Dictionary (3d ed. 2007) ("The history of the ownership of a work of art or an antique, used as a guide to authenticity or quality; a documented record of this."). The term "provenience" is commonly understood to mean an object's country of origin or archeological place of discovery or "find spot." *See* Provenience, Oxford English Dictionary (3d ed. 2007) ("Origin, derivation."). Like other art work, but unlike other asset classes such as real estate or securities, the ownership and transfer of antiquities historically never has been recorded in any title registries or transfer ledgers. Thus, as with other movable personal property, the

investigation by the Geneva Prosecutor in connection with the purchase, possession and concealment of archaeological objects suspected of having been acquired, transported and possessed contrary to Swiss law. The objects were stored in Geneva in a warehouse, which Phoenix partly controlled.

36.     On February 24, 2017, the Geneva Prosecutor issued an Ordonnance de Perquisition et de Séquestre—a search warrant to seize these objects.[12] The Ordonnance refers to the complaint—the "denunciation de l'Office federal de la Culture"—given by the Swiss Office of Culture to the Swiss Customs Administration on January 17, 2017.  Four days later, on February 28, 2017 the Swiss Customs Administration issued a Mandat de perquisition, its own seizure order, and seized 111 objects from the Geneva warehouse.[13] The Beierwaltes Property is among the 111 objects that were seized.

37.     The Beierwaltes Property includes the following 18 antiquities:

a.      A bronze figure of an attacking lion of Greek origin;

b.      A marble head of a man of Greek origin;

c.      A large terracotta standing figure of Greek origin;

d.      A composite seated divinity of Mesopotamian origin;

---

determination of the provenience and provenance of such as antiquities is often uncertain, imprecise and unknowable. The LTBC acknowledges this reality. Article 16 of the LTBC imposes a duty of diligence on "persons active in the art trade and auctioning." Among other things, Section (c) of the second sentence of Article 16 requires such persons to "maintain written records on the acquisition of cultural property by specifically recording the origin of the cultural property, *to the extent known* . . . ." It is unclear whether persons subject to Article 16 include both art dealers and consignors; it is similarly unclear whether the Beierwaltes are currently subject to Article 16 given the reduced scope of their remaining holdings of antiquities and their status as passive sellers. What is clear, however, is that both the Beierwaltes and Phoenix have satisfied all elements of the duty of diligence under Article 16 of the LTBC with respect to the Beierwaltes Property. *See infra* n.14 and accompanying text.

[12] *See* Geneva Prosecutor search warrant, dated February 24, 2017, annexed hereto as "Exhibit A."

[13] *See* Swiss Customs Administration seizure order, executed February 28, 2017, annexed hereto as "Exhibit B."

e.      A complete mosaic floor from a villa of Roman origin;

f.      A bronze Pegasus protome of Greek origin;

g.      A terracotta pair of protomes of Greek origin;

h.      A fine serpentine bust of Maat of Egyptian origin;

i.      A bronze figure of Osiris of Egyptian origin;

j.      A large alabaster jar of Mesopotamian origin;

k.      A bronze ram protome of Greek origin;

l.      A marble head of a ram of Greek origin;

m.      A bronze figure of a reclining goat of Greek origin;

n.      An outstretched hare of Greek origin;

o.      A faience figure on a lion throne of Greek origin;

p.      An Apulian flask in the shape of a monkey face of Greek origin;

q.      A vase in the shape of a phallus of Greek origin;

r.      An Ionian phallus of Greek origin;

38.     Although the complaint of the Swiss Office of Culture issued for execution to the Swiss Customs Administration refers to seven objects whose provenance is in question as the basis for the seizure, none of the items constituting the Beierwaltes Property is identified as being among those seven objects. Notwithstanding the complete absence of any specific information linking the Beierwaltes Property to any Swiss customs violation or other offense, the Swiss Customs Administration's seizure order unequivocally states that the seizure is being executed for the purpose of restitution, confiscation and satisfaction of any claims. Shockingly, Defendants propose to expropriate the Beierwaltes Property and deliver it to one or more yet-to-

14

be-determined foreign countries, even without any challenge to the provenance of any of the objects included in the Beierwaltes Property or any determination as to the provenience of the objects. In other words, Defendants are bartering the Beierwaltes Property for their own political gain.

39.    By letter dated May 7, 2018 to the Geneva Prosecutor, New York counsel for the Beierwaltes demanded the immediate release of the Beierwaltes Property (the "May 7th Letter"). In support of the Beierwaltes' position that the seizure was made illegally, counsel explained that the Beierwaltes Property had been purchased from leading, well-known international art dealers in New York and London, as well as from prominent international auction houses. In each case, the Beierwaltes were *bona fide* purchasers for value with no notice of any adverse claims by any third party, including those of any country of origin. The Beierwaltes purchased each object in reliance on express or implied representations from reputable dealers and auction houses in the absence of any thefts reported to publicly available databases of stolen art, such as the Art Loss Register. In purchases from dealers in the United States, the Beierwaltes also relied on statutory warranties of title and merchantability under the Uniform Commercial Code ("UCC"). In purchases at public auction, the Beierwaltes relied on warranties of title and "authorship" from the auction house.[14]

_____

[14] *See* Letter, dated May 7, 2018, from Pearlstein McCullough & Lederman LLP to Claudio Mascotto, Procureur, Pouvoir judiciare, Ministère public, annexed hereto as "Exhibit C." The first sentence of LTBC Article 16 provides that "persons active in the art trade and auctioning" can transfer cultural property only when the transferor "may assume under the circumstances, that the cultural property was not stolen, illegally excavated or illicitly imported." Upon information and belief, neither Phoenix nor the Beierwaltes have ever had any "red flags" of illegality with respect to the Beierwaltes Property and each has at all times satisfied the requirements of LTBC Article 16 with respect to the Beierwaltes Property.

15

40.     Counsel further explained to the Geneva Prosecutor that Phoenix, which has partial control over the warehouse from which the Beierwaltes Property was seized, had been contracted as the Beierwaltes' exclusive art dealer to assist the Beierwaltes in marketing and selling their art collection to raise funds for the payment to creditors. By seizing the Beierwaltes Property, the Geneva Prosecutor has prevented Phoenix from marketing and selling the Beierwaltes Property, thwarting the ability of the Beierwaltes to pay Mr. Putman, their Colorado-based judgment creditor. Counsel requested that the Geneva Prosecutor set forth the legal basis for his actions.

41.     By letter dated May 11, 2018, the Geneva Prosecutor responded to counsel's May 7th Letter (the "May 11th Letter").[15]  Without presenting any supporting evidence or citing any applicable provision under the Swiss Penal Code, the Geneva Prosecutor stated that the Beierwaltes Property is suspected of being in violation of the LTBC. The Geneva Prosecutor further stated that he seeks to depose the Beierwaltes in Geneva. Once again, however, he provided no basis under either Swiss or international law for the questioning of a United States citizen in the absence of any formal legal proceedings pending before any court or tribunal.

42.     By letter dated June 6, 2018, counsel responded to the Geneva Prosecutor's May 11th Letter (the "June 6th Letter").[16] Counsel indicated that the Geneva Prosecutor failed to provide any legal basis for his actions and made only vague, unsupported allegations of suspected violations of the LTBC. Counsel further noted that it appears that the Beierwaltes

---

[15] *See* Letter, dated May 11, 2018, from Claudio Mascotto, Procureur, Pouvoir judiciare, Ministère public, to Pearlstein McCullough & Lederman LLP, annexed hereto as "Exhibit D."

[16] *See* Letter, dated June 6, 2018, from Pearlstein McCullough & Lederman LLP to Claudio Mascotto, Procureur, Pouvoir judiciare, Ministère public, annexed hereto as "Exhibit E."

Property is being held for an indeterminate period, at the end of which the objects will be

repatriated to some arbitrarily selected countries of origin at the discretion of the Geneva

Prosecutor.[17] Finally, counsel reiterated its demand that the Geneva Prosecutor immediately and

unconditionally release the Beierwaltes Property and that the failure to do so would prompt the

filing of the instant action.

---

[17] Article 9 of the LTBC provides for "Repatriation Claims based on Agreements." Pursuant to the LBTC, Switzerland has entered into bilateral agreements with Italy (effective April 27, 2008); Egypt (effective February 20, 2011); and Greece (effective April 13, 2011). *See Bilateral Agreements to the LTBC*, Federal Office of Culture, *available at* https://www.bak.admin.ch/bak/en/home/cultural-heritage/transfer-of-cultural-property/bilateral-agreements.html (last visited July 24, 2018).

These agreements respectively provide, among other things, for restitution of antiquities illegally excavated from Italy, Egypt and Greece. These are the three countries to which Switzerland would presumably return the Beierwaltes Property. Article 9 imposes substantial hurdles on a country demanding restitution. Among other things, the claimant must show that the cultural property is of "significant importance to its cultural heritage" and was imported illicitly (of which there is no indication here); the claimant must carry the costs of repatriation; claims are subject to a one-year statute of limitations after the claimant gains knowledge of where and with whom the property is located, subject to a maximum of 30 years after illegal export; and good-faith purchasers required to return property have a claim for compensation at the time of repatriation, with the owner retaining the property until payment. Each of the bilateral agreements generally reflects these hurdles (*see* Italian agreement Article IV(3) and V(2); Egyptian agreement Article 4(5) and 6; Greek agreement Article IV(2) and V(2)). Each of the bilateral agreements also provides that the claimant must demonstrate that the object was illicitly imported into Switzerland after the effective date of such agreement (*see* Italian agreement Article IV(1)(b); Egyptian agreement Article 4(4); Greek agreement Article IV(1)(b)).

Upon information and belief, the Beierwaltes exported three of the 18 objects included in the Beierwaltes Property from Colorado directly to Phoenix in August and October 2006, prior to the effective date of any of the bilateral agreements. Upon information and belief, the Beierwaltes exported the remaining 15 objects included in the Beierwaltes Property from Colorado to Electrum in New York on various dates between June 2006 and September 2011, and Electrum exported these objects on various dates after receipt to Phoenix in Geneva. Any objects imported to Switzerland prior to the effective date of the applicable bilateral agreement are exempt from a claim thereunder. Under the circumstances, it is hard to see how Italy, Greece or Egypt could make a successful claim under LTBC Article 9 or their respective bilateral agreements for the return of any of the Beierwaltes Property. Even if they managed to overcome the hurdles imposed by Article 9 and the bilateral agreements, it is clear that the Beierwaltes are good-faith purchasers who would be entitled to retain their property pending payment by the claimant. *See Bilateral Agreements to the LTBC*, Federal Office of Culture, *available at* https://www.bak.admin.ch/bak/en/home/cultural-heritage/transfer-of-cultural-property/bilateral-agreements.html (last visited July 24, 2018).

43.     By letter dated June 12, 2018, the Geneva Prosecutor responded to counsel's June 6th Letter.[18] The Geneva Prosecutor explained that the Beierwaltes Property was seized while in possession of a third party and that the Beierwaltes should reach out to this third party to intercede on their behalf. The Geneva Prosecutor renewed his demand for the production of any documents pertaining to the Beierwaltes Property; only then would his office undertake further review as to the continued detention of the Beierwaltes Property. The Geneva Prosecutor reiterated that this matter is subject to Swiss criminal procedure law, though he omitted any references to such law specifically justifying the seizure and freezing of the Beierwaltes Property.

44.     To date, the Beierwaltes Property has not been released and remains in the exclusive possession of the Defendants. As a result, the Beierwaltes and their Colorado-based judgment creditor have been deprived of the use and enjoyment, and proceeds, of the Beierwaltes Property. This ongoing illegal and arbitrary deprivation has caused the Beierwaltes and their Colorado-based judgment creditor substantial monetary injury.

## COUNT I

### Declaratory Judgment as to Title

45.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "44" of this Complaint with the same force and effect as if herein set forth in full.

---

[18] See Letter, dated June 12, 2018, from Claudio Mascotto, Procureur, Pouvoir judiciare, Ministère public, to Pearlstein McCullough & Lederman LLP, annexed hereto as "Exhibit F."

46.     The Beierwaltes purchased all objects that constitute the Beierwaltes Property from leading, well-known international art dealers in New York and London, as well as from prominent international auction houses.

47.     The Beierwaltes are *bona fide* purchasers for value of the Beierwaltes Property with no notice of any adverse claims by any third party, including those of any country of origin or State Party.

48.     The Beierwaltes purchased all objects that constitute the Beierwaltes Property in reliance on express or implied representations from reputable dealers and auction houses and in reliance on the absence of any thefts reported to publicly available databases of stolen art, such as the Art Loss Register.

49.     In purchases from dealers in the United States of those objects that constitute, in part, the Beierwaltes Property, the Beierwaltes also relied on statutory warranties of title and merchantability under the UCC.

50.     In purchases at public auction of those objects that constitute, in part, the Beierwaltes Property, the Beierwaltes relied on warranties of title and "authorship" from the auction house.

51.     No individual, foreign sovereign, State Party or any other third party has asserted any claim to, ownership interest in or rights to the Beierwaltes Property pursuant to UNESCO or otherwise, based on a violation of its own or any other law.

52.     Switzerland has no claim to, ownership interest in or rights to the Beierwaltes Property pursuant to UNESCO or the LTBC.

53.     No individual, foreign sovereign, State Party, or any other third party has presented any evidence disputing the provenance of the Beierwaltes Property.

54.     Defendants have failed to offer any factual or legal support justifying the seizure, retention and prospective repatriation to source countries of the Beierwaltes Property.

55.     The Beierwaltes are the true, lawful and exclusive owners of the Beierwaltes Property.

56.     To the extent that any party, including the Swiss Office of Culture, the Swiss Customs Administration, and the Canton of Geneva, claims any interest in the Beierwaltes Property, such claim is without foundation or right and is void as a matter of law.

57.     The Beierwaltes request that the Court enter an Order declaring the Beierwaltes to be the true, lawful, and exclusive owners of the Beierwaltes Property and requiring the Defendants to relinquish possession of the Beierwaltes Property and immediately return the Beierwaltes Property to the Beierwaltes' exclusive art dealer, Phoenix, for purposes of unrestricted marketing and sale (including import to and export from Switzerland).

## COUNT II

### Conversion

58.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "57" of this Complaint with the same force and effect as if herein set forth in full.

59.     The Beierwaltes are *bona fide* purchasers for value of the Beierwaltes Property.

60.     The Beierwaltes are the true, lawful and exclusive owners of the Beierwaltes Property.

61.     No individual, foreign sovereign, State Party, or any other third party has asserted any claim to, ownership interest in or rights to the Beierwaltes Property.

62.     Switzerland has no claim to, ownership interest in or rights to the Beierwaltes Property.

63.     By seizing and freezing the Beierwaltes Property, Defendants have deprived the Beierwaltes of their right and ability to market and sell, through Phoenix as their exclusive art dealer, the Beierwaltes Property, whose proceeds are intended for the benefit of the Beierwaltes' judgment creditor in the United States, specifically in Colorado.

64.     By seizing the Beierwaltes Property, Defendants have exercised dominion and control over the Beierwaltes Property, including by expropriating it for their own use and political purpose, namely the prospective repatriation of the Beierwaltes Property to as yet undetermined and unidentified source countries at Defendants' sole discretion.

65.     Defendants' actions constitute a *de facto* forfeiture of the Beierwaltes Property without due process and in violation of international law.

66.     Defendants' exercise of dominion and control over the Beierwaltes Property was unauthorized.

67.     The Beierwaltes, through their counsel, demanded the return of the Beierwaltes Property.

68.     Defendants refused to return the Beierwaltes Property.

69.     The Beierwaltes are entitled to damages representing the full amount of the aggregate fair-market value of the Beierwaltes Property.

21

70.     Consequently, the Beierwaltes have been damaged in the amount of at least $8 million, together with statutory interest.

## COUNT III

### Unjust Enrichment

71.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "70" of this Complaint with the same force and effect as if herein set forth in full.

72.     The Beierwaltes are the true, lawful and exclusive owners of the Beierwaltes Property.

73.     No individual, foreign sovereign, State Party, or any other third party has asserted any claim to, ownership interest in or rights to the Beierwaltes Property.

74.     Switzerland has no claim to, ownership interest in or rights to the Beierwaltes Property.

75.     By seizing the Beierwaltes Property, Defendants have received a benefit, including having expropriated the Beierwaltes Property for their own use and political or other purpose, namely the prospective repatriation to source countries of the Beierwaltes Property. Defendants are bartering the Beierwaltes Property for their own political gain.

76.     By expropriating the Beierwaltes Property for their own use and political purpose, Defendants have been unjustly enriched, at the Beierwaltes' expense, by continuing to possess property to which they have no claim, interest or right.

77.     Defendants' actions constitute a *de facto* forfeiture of the Beierwaltes Property without due process and in violation of international law.

78.     Equity and good conscience demand that the Defendants pay damages to the Beierwaltes because Defendants' unlawful seizing and prospective repatriation of the Beierwaltes Property make it unjust for Defendants to retain the benefit of their actions without just and commensurate compensation to the Beierwaltes.

79.     The Beierwaltes are entitled to damages representing the full amount of the aggregate fair-market value of the Beierwaltes Property.

80.     Consequently, the Beierwaltes have been damaged in the amount of at least $8 million, together with statutory interest.

## COUNT IV

### Civil Theft

81.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in Paragraphs "1" through "80" of this Complaint with the same force and effect as if herein set forth in full.

82.     The Beierwaltes are the true, lawful and exclusive owners of the Beierwaltes Property.

83.     No individual, foreign sovereign, State Party, or any other third party has asserted any claim to, ownership interest in or rights to the Beierwaltes Property.

84.     The Defendants have no claim to, ownership interest in or rights to the Beierwaltes Property. By seizing the Beierwaltes Property, Defendants have expropriated it for their own use and political or other purpose, namely the prospective repatriation to undetermined foreign countries of the Beierwaltes Property.

85.     The Defendants knowingly obtained control over the Beierwaltes Property without authorization and in violation of international law.

86.     The Defendants seized the Beierwaltes Property intending to deprive permanently the Beierwaltes of the benefit and use of the Beierwaltes Property, including by repatriating the Beierwaltes Property to source countries or other third parties.

87.     Under Colorado law, the Beierwaltes are entitled to recovery of three times the amount of their actual damages.

88.     The Beierwaltes have been damaged in the amount of at least $8 million. Consequently, the Beierwaltes are entitled to recover damages in the amount of at least $24 million, together with statutory interest, attorneys' fees and costs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in favor of Plaintiffs as follows:

(A)     On Count I of the Complaint, a declaratory judgment that the Beierwaltes are the true, lawful and exclusive owners of the Beierwaltes Property, and that Defendants must relinquish possession of the Beierwaltes Property and immediately return the Beierwaltes Property to the Beierwaltes' exclusive art dealer, Phoenix, for purposes of unrestricted marketing and sale (including import to and export from Switzerland);

(B)     On Count II of the Complaint, damages to be determined at trial, but in no case less than $8 million;

(C)     On Count III of the Complaint, damages to be determined at trial, but in no case less than $8 million;

24

(D)     On Count IV of the Complaint, damages to be determined at trial, including treble

damages, in no case less than $24 million;

(E)     Interest, costs and disbursements, including reasonable attorneys' fees and

disbursements, incurred in this action; and

(F)     Such other and further relief as this Court deems just and proper.

Dated: August 6, 2018

/s/ Jessica Black Livingston
Jessica Black Livingston
Andrew C. Lillie
Andrew M. Nussbaum
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, CO 80202
Telephone: (303) 899-7300
Fax: (303) 899-7333
Email: jessica.livingston@hoganlovells.com
       andrew.lillie@hoganlovells.com
       andrew.nussbaum@hoganlovells.com

Georges G. Lederman (application for admission forthcoming)
William G. Pearlstein (application for admission forthcoming)
PEARLSTEIN MCCULLOUGH &
LEDERMAN LLP
641 Lexington Avenue, Suite 1327
New York, NY 10022
Telephone: (646) 762-2833/(646) 762-7264
Email: glederman@pmcounsel.com
       wpearlstein@pmcounsel.com

Attorneys for Plaintiffs

# EXHIBIT A

A-42



REPUBLIQUE ET CANTON DE GENEVE
Pouvoir judiciaire
**Ministère public**

Route de Chancy 6B
Case postale 3565
1211 Genève 3

| Réf : | P/2949/2017 - MSC & OCG<br>n° décision: SEQMP/503/2017<br>à rappeler lors de toute communication. |

Genève, le 24 février 2017

## ORDONNANCE DE PERQUISITION ET DE SÉQUESTRE
### (art. 263 ss, 241 ss CPP)

Vu la procédure pénale P/2949/2017 contre :

| Prévenus: | *Inanna Art Services SA*, Ali ABOU TAAM; Biliana ABOU TAAM; Carlos ALEXANDRE NOVO; Cynthia PEROTTI; Walter HABERKORN; Jeffrey SUCKOW; Charles ANSERMET *et al.* |

Date de naissance:    ---

Défenseur (principal):    ---

Repr. légal / mandataire:    ---

Vu la dénonciation de l'Office fédéral de la Culture remise le 17 janvier 2017 à l'Administration Fédérale des Douanes (AFD) et portant sur sept objets de provenance ou d'origine suspecte détenues par *Inanna Art Services SA*, et transmise par l'AFD au Ministère public genevois le 7 février 2017 ;

Vu par ailleurs la dénonciation de l'AFD du 10 février 2017 portant sur le déménagement subit et suspect à fin décembre 2016, par l'entourage d'*Inanna Art Services SA*, soit notamment Biljana ABOU TAAM, Manuel ALEXANDRE NOVO, Roben DIB, Walther HABERKORN, Charles Roland ANSERMET et Jeffrey SUCKOW, de nombre de biens culturels entreposés hors douane dans un dépôt à Genève ;

Attendu que les prévenus susmentionnés sont suspectés par le Ministère public genevois de recel (art. 160 CP) et d'infraction à l'article 24 LTBC en relation avec l'achat, la détention respectivement la dissimulation de pièces archéologiques suspectées d'avoir été acquises, transportées respectivement exportées et détenues sans droit ;

Qu'il y a lieu de présumer que:

- locaux détenus ou utilisés directement ou indirectement par *Inanna Art Services* ou les société contrôlées par Ali ABOU TAAM dans le canton de Genève, aux Ports-Francs ou ailleurs, et notamment des locaux de *Inanna Art Services* aux Ports-Francs et de *Phoenix Ancient Art* rue Verdaine ;

- les autres locaux professionnels des prévenus ;

- les domiciles ou les lieux de séjour habituel des prévenus, soit notamment la rue des Battoirs 9 pour Jeffrey SUCKOW, la rue Firmin-Massot 4 pour Ali et Biliana ABOU TAAM, le chemin des Râclerets 22 à Chancy pour Walther HABERKORN, et la rue des Berthoudes 68 à 2000 Neuchâtel pour Charles Roland ANSERMET ;

contiennent des informations, des pièces ou des objets susceptibles d'être séquestrés ;

Qu'en effet l'instruction porte d'une part sur des objets désignés par les douanes comme étant entreposés aux Ports-Francs, d'autre part sur des objets déplacés notamment de nuit d'un entrepôt à Genève vers un lieu à ce jour inconnu – ainsi que sur la documentation les concernant, dont la localisation est elle aussi incertaine ;

Qu'il se justifie dès lors de procéder à une perquisition des

-    locaux détenus ou utilisés directement ou indirectement par *Inanna Art Services* ou les société contrôlées par Ali ABOU TAAM dans le canton de Genève, aux Ports-Francs ou ailleurs, et notamment des locaux de *Inanna Art Services* aux Ports-Francs et de *Phoenix Ancient Art* rue Verdaine ;

-    autres locaux professionnels des prévenus ;

-    domiciles ou les lieux de séjour habituel des prévenus, soit notamment la rue des Battoirs 9 pour Jeffrey SUCKOW, la rue Firmin-Massot 4 pour Ali et Biliana ABOU TAAM, le chemin des Râclerets 22 à Chancy pour Walther HABERKORN, et la rue des Berthoudes 68 à 2000 Neuchâtel pour Charles Roland ANSERMET ;

aux fins de mise sous séquestre de tous objets, documents ou valeurs pouvant être

-    restitués aux lésés,

-    confisqués,

-    séquestrés en vue d'exécution d'une créance compensatrice,

-    utilisés comme moyens de preuve,

Que la perquisition pourra s'étendre à tous autres lieux où cela s'avérerait utile, soit notamment greniers, caves, dépendances et véhicules;

**Par ces motifs**

**Le Ministère public**

-    Ordonne une perquisition des

  -    locaux détenus ou utilisés directement ou indirectement par *Inanna Art Services* ou les société contrôlées par Ali ABOU TAAM dans le canton de Genève, aux Ports-Francs ou ailleurs, et notamment des locaux de *Inanna Art Services* aux Ports-Francs et de *Phoenix Ancient Art* rue Verdaine ;

  -    domiciles ou lieux de séjour habituel des prévenus, soit notamment la rue des Battoirs 9 pour Jeffrey SUCKOW, la rue Firmin-Massot 4 pour Ali et Biliana ABOU TAAM, le chemin des Râclerets 22 à Chancy pour Walther HABERKORN, et la rue des Berthoudes 68 à 2000 Neuchâtel pour Charles Roland ANSERMET ;

  -    autres locaux professionnels des prévenus ;

-    Dit que cette perquisition s'étendra à tous autres lieux où cela s'avérerait utile, soit notamment greniers, caves, dépendances, véhicules et appareils électroniques ;

-    Ordonne la mise sous séquestre de tous objets, appareils électroniques, documents ou valeurs pouvant être

  -    restitués aux lésés,

  -    confisqués,

  -    séquestrés en vue d'exécution d'une créance compensatrice,

A-44

- utilisés comme moyens de preuve,

- Informe le prévenu, le détenteur de documents et objets susceptibles de contenir des informations couvertes par le secret de fonction, le secret professionnel, la protection des sources des professionnels des médias ou d'autres devoirs de discrétion reconnus par la loi, ainsi que l'ayant droit de ces mêmes secrets, de leur droit de demander la mise sous scellés des documents et objets, en se manifestant immédiatement.

- Dit que cette perquisition sera exécutée par les soussignés, respectivement déléguée à la Police judiciaire (BFIN + BPTS), en fonction des lieux.

Ilir BAJRAMI
Greffier

Claudio MASCOTTO & Gregory ORCI
Procureurs

**La présente décision peut faire l'objet d'un recours formé auprès de la chambre pénale de recours de la Cour de justice, case postale 3108, 1211 Genève 3, par le dépôt de conclusions écrites et motivées dans un délai de 10 jours dès la notification de la présente décision (art. 393 al. 1 let. a CPP).**

## NOTIFICATION

Pris connaissance et reçu un exemplaire: le ....................................... à ...................................

Signature: ...............................................................................................................

Pris connaissance et reçu un exemplaire: le ....................................... à ...................................

Signature: ...............................................................................................................

Pris connaissance et reçu un exemplaire: le ....................................... à ...................................

Signature: ...............................................................................................................

Pris connaissance et reçu un exemplaire: le ....................................... à ...................................

Signature: ...............................................................................................................

Pris connaissance et reçu un exemplaire: le ....................................... à ...................................

Signature: ...............................................................................................................

A-45

# EXHIBIT A

REPUBLIC AND CANTON OF GENEVA
Judicial Power
**Public Prosecutor's Office**

Route de Chancy 6B
P.O. Box 3565
1211 Geneva 3

Reference: P/2949/2017 – MSC & OCG                    Geneva, February 24, 2017
Ruling No.: SEQMP/503/2017
To be used during all communications.

**SEARCH AND SEIZURE ORDER**
**(Article 263 ss, 241 ss of the Criminal Procedure Code)**

In view of the criminal procedure P/2949/2017 against:

Defendants:                  *Inanna Art Services SA,* Ali ABOU TAAM; Biliana ABOU TAAM;
                             Carlos ALEXANDRE NOVO; Cynthia PEROTTI; Walter
                             HABERKORN; Jeffrey SUCKOW; Charles ANSERMET *et al.*
Date of birth:               ---
Defender (main):             ---
Legal representative/proxy:  ---

In view of the Federal Office of Culture's denunciation issued on January 17, 2017 to the Federal Customs
Administration (AFD) regarding seven objects of suspicious provenance or origin held by *Inanna Art Services
SA* and transferred by the AFD to the Public Prosecutor's Office of Geneva on February 7, 2017;

Furthermore, in view of the AFD's February 10, 2017 denunciation regarding the sudden and suspicious
move at the end of December 2016 by those close to *Inanna Art Services SA*, specifically by Biljana ABOU
TAAM, Manuel ALEXANDRE NOVO, Roben DIB, Walther HABERKORN, Charles Roland
ANSERMET, and Jeffrey SUCKOW, of a number of articles of cultural property stored outside of customs
in a depot in Geneva;

Whereas the aforementioned defendants are suspected by the Public Prosecutor's Office of Geneva of
receiving stolen goods (Article 160 of the Criminal Code) and of the infraction of Article 24 of the LTBC
with regard to the purchase, detention, or dissimulation of archeological articles suspected of having been
acquired, transported, or exported and possessed illegally;

Whereas there are grounds for presuming that :

- locations possessed or used directly or indirectly by *Inanna Art Services* or the companies controlled by Ali
ABOU TAAM within the canton of Geneva, in the Freeport or elsewhere, specifically the *Inanna Art Services*
located in the Freeport and *Phoenix Ancient Art* and rue Verdaine;
- other profession locations of the defendants;
- the domiciles or usual places of residence of the defendants, specifically, rue des Battoirs 9 for Jeffrey
SUCKOW, rue Firmin-Massot 4 for Ali and Biliana ABOU TAAM, chemin des Râclerets 22 in Chancy for
Walther HABERKORN, and rue des Berthoudes 68 to 2000 Neuchâtel for Charles Roland ANSERMET;

contain information, articles, or objects likely to being seized;

Order from the Public Prosecutor's Office dated February 24, 2017 – page 2/3

Whereas, in fact, the directive focuses in part on objects designated by customs as being stored in the Freeport, and in part on objects moved by night from a warehouse in Geneva to a place that is unknown at present – as well as on the documentation in question, the location of which is also unclear;

Whereas there is consequently justification for proceeding to a search of the:

- locations possessed or used directly or indirectly by *Inanna Art Services* or the companies controlled by Ali ABOU TAAM within the canton of Geneva, in the Freeport or elsewhere, specifically the *Inanna Art Services* located in the Freeport and *Phoenix Ancient Art* and rue Verdaine;
- other profession locations of the defendants;
- the domiciles or usual places of residence of the defendants, specifically, rue des Battoirs 9 for Jeffrey SUCKOW, rue Firmin-Massot 4 for Ali and Biliana ABOU TAAM, chemin des Râclerets 22 in Chancy for Walther HABERKORN, and rue des Berthoudes 68 to 2000 Neuchâtel for Charles Roland ANSERMET;

for the purposes of seizing all objects, documents, or assets that might be

- restored to the injured parties,
- confiscated
- seized with a view to executing a compensation claim,
- used as evidence,

Whereas the search may extend to any other location that might prove useful, specifically, attics, cellars, outbuildings, and vehicles;

**Therefore**
**The Public Prosecutor**

 - Orders a search of

- locations possessed or used directly or indirectly by *Inanna Art Services* or the companies controlled by Ali ABOU TAAM within the canton of Geneva, in the Freeport or elsewhere, specifically the *Inanna Art Services* located in the Freeport and *Phoenix Ancient Art* and rue Verdaine;
- the domiciles or usual places of residence of the defendants, specifically, rue des Battoirs 9 for Jeffrey SUCKOW, rue Firmin-Massot 4 for Ali and Biliana ABOU TAAM, chemin des Râclerets 22 in Chancy for Walther HABERKORN, and rue des Berthoudes 68 to 2000 Neuchâtel for Charles Roland ANSERMET;
- other profession locations of the defendants;

- Declares that this search may extend to any other location that might prove useful, specifically, attics, cellars, outbuildings, vehicles, and electronic devices;

- Orders the seizure of all objects, electronic devices, documents, or assets that might be
  - restored to the injured parties,
  - confiscated
  - seized with a view to executing a compensation claim,

A-48

Order from the Public Prosecutor's Office dated February 24, 2017 – page 3/3

   - used as evidence,

- Informs the defendant, the holder of the documents and objects likely to contain information covered by official secrecy, professional secrecy, the protection of sources by media professionals, or other legally recognized confidentiality duties, as well as the beneficiary of these secrets, of their right to request that these documents and objects be sealed by coming forward immediately.

- Declares that this search shall be carried out by the undersigned persons who were respectively appointed to the Judiciary Police (BFIN + BPTS) depending on the locations.

|  |  |  |
|---|---|---|
| [Signature] | [Public Prosecutor's Seal] | [Signature] |
| Ilir BAJRAMI | | Claudio MASCOTTO & Gregory ORCI |
| Court Clerk | | Prosecutors |

**This decision may be subject to an appeal formulated at the criminal board of appeals of the Court of justice, P.O. Box 3108, 1211 Geneva 3, by filing the written and justifiable conclusions within a period of 10 days of being notified of this decision (Article 393, paragraph 1, letter a of the Criminal Procedure Code).**

## NOTIFICATION

Took note of and received a form on: 02/28/2017 at [Illegible]_____

Signature: refused to sign _____

Took note of and received a form on: _____ at_____

Signature:_____

Took note of and received a form on: _____ at_____

Signature:_____

Took note of and received a form on: _____ at_____

Signature:_____

Took note of and received a form on: _____ at_____

Signature:_____



**AMERICAN LANGUAGE SERVICES**

*Making the World Smaller*

## CERTIFICATION OF TRANSLATION
### AFFIDAVIT FOR TRANSLATION OF SAID DOCUMENT

American Language Services, a company specializing in the translation of documents, certifies the following:

- American Language Services has retained a professional translator for the attached French into English document.  The document is referred to as:

**"EXHIBITS FOR BEIERWALTES, ET AL. V. FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION, ET AL.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO"**

- I affirm that such translation has been prepared by a duly qualified translator, who has confirmed that such translation is, to the best of their knowledge and belief, a true and accurate translation in English of the corresponding French document.

- I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Notwithstanding the foregoing affirmations, no liability is assumed for errors and omissions in the translation of the attached document.

- Executed on this Thirty-First day of July, 2018, at Los Angeles, California.

REUBEN TRUJEQUE
AMERICAN LANGUAGE SERVICES

1849 SAWTELLE BLVD. SUITE 600      LOS ANGELES, CALIFORNIA 90025
TEL (310) 829-0741 FAX (310) 829-3222
translation@alsglobal.net
www.alsglobal.net

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**    GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____

Signature of Document Signer No. 1          Signature of Document Signer No. 2 (if any)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____ LOS ANGELES _____

"EXHIBITS FOR BEIERWALTES, ET AL. V. FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION, ET AL. UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO"

RAMON DELGADO JR.
Commission # 2107172
Notary Public - California
Los Angeles County
My Comm. Expires Apr 16, 2019

*Place Notary Seal and/or Stamp Above*

Subscribed and sworn to (or affirmed) before me

on this 31st day of July , 20 18 ,
by       Date              Month         Year

(1)  REUBEN TRUJEQUE

(and (2) _____ ),
                  Name(s) of Signer(s)

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____
                  Signature of Notary Public

———————————————— OPTIONAL ————————————————

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____ See above _____

Document Date: _____ See attached _____   Number of Pages: _____ 27 _____

Signer(s) Other Than Named Above: _____

©2017 National Notary Association

A-51

# EXHIBIT B

A-52

 Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

Département fédéral des finances DFF

**Administration fédérale des douanes AFD**
Direction d'arrondissement Genève
Section antifraude douanière

Dossier no 71-2016.19036

## Mandat de perquisition

Se fondant sur les articles 48 - 50 de la loi fédérale du 22 mars 1974 sur le droit pénal administratif, le Directeur de l'arrondissement des douanes de Genève
ordonne qu'une

### Perquisition

soit opérée

Chez     Biliana Kirilova Abou Taam

à        rue Firmin-Massot 4, 1204 Genève
         De même que tous les autres objets ou locaux, ainsi que les véhicules auxquels Mme Biliana Kirilova Abou Taam a accès

par      Section antifraude douanière, Avenue Louis-Casaï 84, 1216 Cointrin – mandataire de la perquisition.
Motif : Importation sans annonce / recel de biens archéologiques / antiques

Le 20.12.2016, vers 17.10 heures, arrivant de France à bord du véhicule de marque Land Rover, couleur gris, immatriculé GE 777'994 au nom de la société Phoenix Ancient Art SA, rue Verdaine 6 à 1204 Genève, MM. ALEXANDRE NOVO Carlos (conducteur) et DIB Roben (passager) sont entrés en Suisse par la route à trafic toléré de Veyrier. Ils ont été interpellés en retrait du poste frontière de Veyrier par une patrouille de gardes-frontière. Le contrôle des deux personnes a permis de constater que M. DIB était en possession d'une lampe à huile antique, importée en fraude. La vérification de la voiture a révélé la présence de 3 quittances pour la location de deux box auprès de la société Flexbox Self Stockage, route du Nant-d'Avril 40 à 1214 Vernier, libellées au nom de Walter HABERKORN, chemin des Raclerets 22 à 1284 Chancy. Ces deux personnes ont été entendues dans le cadre de l'importation sans annonce de cette lampe et ont été libérées à environ 02.15 heures le 21.12.2016. Notre enquête auprès de la société FLEXBOX a permis d'établir que, suite à cette interception, de nombreux mouvements de marchandises ont été constatés dès le petit matin du 21.12.2016. Mme Biliana Abou Taam a été identifiée sur les caméras de surveillance à cette occasion. Il existe ainsi un fort soupçon que d'autres importations frauduleuses de biens archéologiques ont eu lieu et qu'ils ont été entreposés dans ces locaux.

Une enquête pénale douanière est menée pour :
*    Infraction à la loi sur les douanes du 18 mars 2005 (LD ; RS 631.0) ainsi que pour
*    Infraction à la loi sur la TVA du 12 juin 2009 (LTVA ; RS 641.20) et pour
*    Infraction à la loi fédérale du 22 mars 1974 sur le droit pénal administratif (DPA ; RS 313.0), notamment à l'article 14 alinéa 4

But de la perquisition : Recherche et mise en sûreté de :

*    Marchandises importées en fraude,
*    Documents et objets relatifs à des importations sans annonce de marchandises, constituant des moyens de preuve

Perquisition / contrôle sommaire des moyens de télécommunication, de multimédias et de tout matériel informatique en vue de la recherche de contacts et de liens relatifs à des importations sans annonce de marchandises constituant des moyens de preuve et ou tous autres moyens de preuve y relatifs

Le Directeur de l'arrondissement des douanes

Reçu une copie du mandat de perquisition

Lieu et date :

Signature de l'occupant des locaux :

Form 31 17 f 01 07

Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

Département fédéral des finances DFF
**Administration fédérale des douanes AFD**
Direction d'arrondissement Genève
Section antifraude douanière, Office Genève

No du dossier:
71-2016. 14036

## Procès-verbal de séquestre de gage douanier

Lieu et date  GENEVE, LE, 28/2/2017          heure  15 00

chez ( nom et adresse)
Mme BILIANA KIRILOVA ABOU TAAM, RUE FIRMIN-MASSOT 4, 1206 GENEVE

### Décision de séquestre

En vertu des articles 82 et 83 de la loi sur les douanes du 18 mars 2005, les objets suivants ont été séquestrés en tant que gage douanier:

111 OBJETS D'ART ET/OU ANTIQUITES SELON LISTE ANNEXEE. + 1 MARBRE.

☒ Les objets séquestrés sont en outre des pièces à conviction au sens de l'article 212 alinéa 2 de l'ordonnance sur les douanes du 1er novembre 2006 (OD ; RS 631.01).

### Mode de procédure

☐ L'autorité qui a ordonné le séquestre a mis les objets en lieu sûr.
☒ Les objets séquestrés sont laissés à leur détenteur avec défense d'en disposer (voir au verso).

### Droits revendiqués par des tiers sur le gage douanier

(Mentionner si et par qui des objets sont revendiqués à titre de propriété ou de gage, ou sont déjà saisis, séquestrés ou versés à la masse d'une faillite en exécution de la loi sur la poursuite)

Un double du présent procès-verbal de séquestre a été délivré au détenteur des objets séquestrés.

Le fonctionnaire qui opère le séquestre          Le détenteur des objets séquestrés

**Voir les indications des voies de droit au verso!**

### Restitution des objets séquestrés

Le soussigné certifie avoir reçu en retour, en bon état, tous les objets séquestrés.

........................................          ........................................
(lieu et date)          (signature)

Form. 31,14 f 02.09

Défense de disposer [1]

Le gage douanier est laissé provisoirement en votre possession; il vous est toutefois *interdit* d'en disposer. Si des mesures quelconques s'imposent, vous devez avertir l'office mentionné au recto et attendre sa décision. Les infractions seront punies comme détournement du gage douanier au sens de l'art. 122 de la loi sur les douanes. L'administration des douanes se réserve le droit de prendre en tout temps sous sa garde le gage douanier.

Pris connaissance:

..........................................................
1) biffer ce qui ne convient pas

───────────────────────────────

Extrait de la loi sur les douanes du 18 mars 2005 :

**Art. 122** Détournement du gage douanier
1   Est puni d'une amende pouvant atteindre le quintuple de la valeur des marchandises quiconque:
a. détruit une marchandise ou une chose saisie par l'administration des douanes  à titre de gage douanier, qui est laissée en sa possession, ou
b. en dispose sans l'assentiment de l'administration des douanes.
2   La valeur des marchandises correspond à leur cours sur le marché intérieur lors de la découverte du détournement du gage douanier. Si ce cours n'est pas connu, la valeur des marchandises est déterminée par des experts.

**Art. 82** Contenu du droit de gage douanier

1   La Confédération a un droit de gage légal (droit de gage douanier):
a. sur les marchandises passibles de droits de douane;
b. sur les marchandises et les choses ayant servi à commettre une infraction à la législation douanière ou aux actes législatifs de la Confédération autres que douaniers que l'administration des douanes exécute.
2   Si le gage douanier ne couvre pas toutes les créances garanties, le débiteur peut préciser quelles dettes il entend éteindre grâce au produit de la réalisation du gage.
Si le débiteur ne se prononce pas dans le délai fixé, les créances garanties par le gage douanier sont éteintes dans l'ordre fixé par le Conseil fédéral.
3   Le droit de gage douanier naît avec la créance douanière qu'il garantit et prime tous les autres droits réels afférents au gage.

**Art. 83** Séquestre

1   L'administration des douanes fait valoir son droit de gage par le séquestre.
2   Le séquestre s'exerce par la mainmise sur le gage ou par l'interdiction faite au possesseur des marchandises ou des choses d'en disposer.

**Art. 84** Restitution

1   Les marchandises ou les choses séquestrées peuvent être restituées à l'ayant droit contre sûretés.
2   Les marchandises ou les choses sont restituées sans sûreté si le propriétaire:
a. ne répond pas personnellement de la créance douanière garantie, et
b. prouve que les marchandises ou les choses ont été utilisées sans sa faute pour commettre une infraction ou qu'il en a acquis la propriété ou le droit de devenir propriétaire avant le séquestre sans savoir que les obligations douanières n'étaient pas remplies.

Extrait de l'ordonnance sur les douanes du 1er novembre 2006 :

**Art. 212** But
(art. 82 LD)
1   Le gage douanier sert à garantir le recouvrement des créances mentionnées à l'art. 200 [soit droits de douane et intérêts; redevances et intérêts perçus en vertu des actes législatifs de la Confédération autres que douaniers; amendes; émoluments, frais de procédure et autres frais].
2   Il sert en outre de moyen de conservation des preuves dans une procédure pénale ou dans une procédure pénale administrative.

**Art. 214** Objet du séquestre
(art. 83 LD)
1   Le séquestre peut aussi porter sur des marchandises ou des choses:
a. sur lesquelles des tiers ont des droits de propriété ou de gage, ou
b. qui sont mises en gage en vertu du droit des poursuites, séquestrées ou intégrées dans une masse de faillite.
2   Si les tiers sont connus, l'administration des douanes les informe du séquestre.

**Art. 215** Décision de séquestre
(art. 83 LD)
1   L'administration des douanes dresse un procès-verbal du séquestre d'un gage douanier et rend une décision en la matière. Un recours contre ce séquestre n'a pas d'effet suspensif.

**Art. 216** Destinataire de la décision
(art. 83, al. 2, LD)
Le destinataire de la décision de séquestre est la personne chez laquelle se trouve, en possession ou en garde, la marchandise ou la chose à séquestrer.

Voie de droit

Le séquestre est susceptible de recours. Le recours doit être adressé par écrit dans le délai de 30 jours dès notification de la décision à la Direction d'arrondissement, Case postale, 1211 Genève 28.

Inventaire opération Agénor

| Localisation | N° de l'objet | Descriptif | Matériau | Dimensions (haut x larg x prof) en cm |
|---|---|---|---|---|
| Salon | 1 | buste de femme avec toge | marbre | 90 x 70 |
| Salon | 2 | tête de femme | pierre (grès?) | 17.5 x 16 |
| Salon | 3 | tête de femme | pierre (grès?) | 20 x 16 |
| Salon | 4 | tête de statue (homme égyptien) | marbre | 30 x 22 |
| Salon | 5 | idole | grès | 21 x 8 |
| Salon | 6 | tête de statue | pierre | 25 x 28 |
| Salon | 7 | torse avec toge de statue | pierre | 15 x 21 |
| Salon | 8 | vase | pierre | 15 x 10 |
| Salon | 9 | statue | marbre | 10.7 x 21 |
| Salon | 10 | collier composé de plusieurs pièces | pierre | diamètre 30cm |
| Salon | 11 | vase à libation | céramique | 15 x 19 |
| Salon | 12 | vase de type grec | céramique | 36 x 13.5 |
| Salon | 13 | sarcophage miniature (reproduction) | pierre | 20 x 10 |
| Salon | 14 | amphore à 2 anses | bronze | 48 x 40 |
| Salle de séjour | 15 | statue | marbre | 70 x 28.5 |

Page 1

A-56

Case 19-3457, Document 50, 01/31/2020, 2767011, Page66 of 221

# Inventaire opération Agénor

| | | | | |
|---|---|---|---|---|
| Salle de séjour | 16 | bouclier avec umbo en cône | bronze | diamètre 76cm |
| Salle de séjour | 17 | pot avec décors de type indien | métal | 19 x 12 |
| Salle de séjour | 18 | récipient à décors "cygnes" | pierre | 14 x 7.5 |
| Salle de séjour | 19 | coupe | pierre | diamètre 14cm |
| Salle de séjour | 20 | vase | albatre | 38 x 30 |
| Salle à séjour | 21 | vase à figures noires | céramique | 28 x 14 |
| Salle de séjour | 22 | plat | pierre | diamètre 22.5cm |
| Salle de séjour | 23 | coupelle | albatre (?) | diamètre 15cm |
| Salle de séjour | 24 | tête de femme casquée (Athéna ?) | marbre | 42 x 18 |
| Salle de séjour | 25 | vase à figures noires (fond blanc) | céramique | 24.5 x 15 |
| Salle de séjour | 26 | tête de philosophe (Aristote ?) | marbre | 41 x 21 |
| Salle de séjour | 27 | pichet à figures rouges (décors de poissons) | céramique | céramique |
| Salle de séjour | 28 | vase à figures rouges | céramique | 38 x 42 |
| Salle de séjour | 29 | tête de femme | pierre | 34 x 29 |
| Salle de séjour | 30 | plat rectangulaire | marbre | 26.5 x 11 |
| Salle de séjour | 31 | plat rectangulaire | marbre | 32 x 15 |

Case 19-3457, Document 50, 01/31/2020, 2767011, Page67 of 221

Inventaire opération Agénor

| Lieu | N° | Description | Matière | Dimensions |
|---|---|---|---|---|
| Salle de séjour | 32 | 1 fragment de céramique à figures rouges | céramique | 5 x 5 |
| Salle de séjour | 33 | pot à décors géométrique | céramique | 48 x 30 |
| Coin à manger | 34 | vase avec 2 personnages | bronze | 50 x 40 |
| Coin à manger / Etagère gauche | 35 | vase à figures rouges | céramique | 26 x 20 |
| Coin à manger / Etagère gauche | 36 | 1 bras de statue | bois | 37 cm de long |
| Coin à manger / Etagère gauche | 37 | amphore à figures rouges avec satyre | céramique | 29 x 14 |
| Coin à manger / Etagère gauche | 38 | idole de la fertilité | marbre | 20 x 18 |
| Coin à manger / Etagère gauche | 39 | statuette de femme | bronze | 27,5 x 18 |
| Coin à manger / Etagère gauche | 40 | statuette d'homme | bronze | 11 x 7 |
| Coin à manger / Etagère gauche | 41 | petit vase à col long | céramique | 9 x 6 |
| Coin à manger / Etagère gauche | 42 | figurine d'oiseau | bronze | 6 x 5 |
| Coin à manger / Etagère gauche | 43 | boîte circulaire | pierre | diamètre 11cm |
| Coin à manger / Etagère gauche | 44 | buste de personnage couronné (roi ?) | bronze | 40 x 30 |
| Coin à manger / Etagère gauche | 45 | visage miniature | lapis lazuli | 3 x 4 |
| Coin à manger / Etagère gauche | 46 | fiole | verre | 7 x 4 |
| Coin à manger / Etagère gauche | 47 | médaille en forme de croix | or | 4 x 3 |

Case 19-3457, Document 50, 01/31/2020, 2767011, Page68 of 221

Inventaire opération Agénor

| | | | | |
|---|---|---|---|---|
| Coin à manger / Etagère gauche | 48 | figurine de sphynx | bronze | 8 x 7 |
| Coin à manger / Etagère gauche | 49 | buste miniature d'homme | bronze | 9 x 7 |
| Coin à manger / Etagère gauche | 50 | petit médaillon | argent | 2,5 x 2,5 |
| Coin à manger / Etagère gauche | 51 | figurine anthropomorphe | pierre | 19 x 5 |
| Coin à manger / Etagère gauche | 52 | médaillon | or | 5 x 8 |
| Coin à manger / Etagère gauche | 53 | figurine égyptienne | céramique / pierre | 25 x 13 |
| Coin à manger / Etagère gauche | 54 | buste d'homme barbu | verre | 9,5 x 9 |
| Coin à manger / Etagère gauche | 55 | rython | céramique | 5 x 13 |
| Coin à manger / Etagère gauche | 56 | rython | céramique | 5,5 x 14 |
| Coin à manger / Etagère gauche | 57 | statuette d'homme sur un chameau | bronze | 15 x 4 |
| Coin à manger / Etagère gauche | 58 | tête de statue | pierre | 7 x 9 |
| Coin à manger / Etagère gauche | 59 | petite tortue | pâte de verre | 4 x 4 |
| Coin à manger / Etagère gauche | 60 | bol bleu | verre | diamètre 12cm |
| Coin à manger / Etagère gauche | 61 | médaillon avec tête d'Athéna | bronze | diamètre 9cm |
| Coin à manger / Etagère gauche | 62 | vase à col long en forme de canard | céramique | 9 x 8 |
| Coin à manger / Etagère gauche | 63 | médaillon avec tête d'Apollon | bronze | diamètre 8cm |

Case 19-3457, Document 50, 01/31/2020, 2767011, Page69 of 221

## Inventaire opération Agénor

| Emplacement | N° | Objet | Matière | Dimensions |
|---|---|---|---|---|
| Coin à manger / Étagère gauche | 64 | statuette de lion avec yeux blancs | pierre | 21 x 7 |
| Coin à manger | 65 | gobelet | céramique | hauteur 9cm diamètre 7cm |
| Coin à manger / Étagère gauche | 66 | tête de satyre barbu | bronze | 3 x 5 |
| Coin à manger / Étagère gauche | 67 | coupe | verre | 15 x 16 |
| Coin à manger / Étagère gauche | 68 | vase à col long | verre | 8 x 11 |
| Coin à manger / Étagère gauche | 69 | petite statuette de tortue | céramique | 4 x 3 |
| Coin à manger / Étagère gauche | 70 | jeton avec décors de personnages | os | diamètre 4,5cm |
| Coin à manger / Étagère gauche | 71 | boîte circulaire | pierre | diamètre 7,5cm |
| Coin à manger / Étagère gauche | 72 | fiole avec décors de tête barbue | verre | 19 x 6 |
| Coin à manger / Étagère gauche | 73 | fiole à décors géométriques | verre | 18 x 7 |
| Coin à manger / Étagère droite | 74 | fragment de bas-relief | pierre | 21,5 x 24 |
| Coin à manger / Étagère droite | 75 | fragment de tête de statue (visage) | pierre | 20 x 10 |
| Coin à manger / Étagère droite | 76 | fiole alongée bleue | céramique | 23 x 4 |
| Coin à manger / Étagère droite | 77 | miroir | bronze | diamètre 26cm |
| Coin à manger / Étagère droite | 78 | statuette de divinité | bronze | 14 x 5 |
| Coin à manger / Étagère droite | 79 | idole de la fertilité | pierre | 16 x 7 |

Case 19-3457, Document 50, 01/31/2020, 2767011, Page70 of 221

## Inventaire opération Agénor

| Location | # | Description | Matériau | Dimensions |
|---|---|---|---|---|
| Coin à manger / Étagère droite | 80 | petite figurine de singe (?) | pierre | 6 x 2 |
| Coin à manger / Étagère droite | 81 | figurine anthropomorphe | pierre | 5 x 4 |
| Coin à manger / Étagère droite | 82 | vase avec bec verseur | céramique | 15 x 14 |
| Coin à manger / Étagère droite | 83 | coupe à décors floraux | verre | diamètre 14cm |
| Coin à manger / Étagère droite | 84 | statuette de Gorgone | bronze | 14 x 17 |
| Coin à manger / Étagère droite | 85 | tête miniature d'homme | céramique | 3.5 x 3 |
| Coin à manger / Étagère droite | 86 | caméo avec tête de femme | pierre | diamètre 3.5cm |
| Coin à manger / Étagère droite | 87 | statuette alongée avec tête à cornes | bronze | 19.5 x 7 |
| Coin à manger / Étagère droite | 88 | coupe | verre | diamètre 17cm |
| Coin à manger / Étagère droite | 89 | vase avec bec verseur | pierre | 24 x 14 |
| Coin à manger / Étagère droite | 90 | statuette à tête barbue | bronze | 13 x 3 |
| Coin à manger / Étagère droite | 91 | médaillon de saint (fragmenté) | bronze | |
| Coin à manger / Étagère droite | 92 | statuette d'ours avec ouverture sur la tête (charnière) | bronze | 10 x 5 |
| Coin à manger / Étagère droite | 93 | figurine de jeune homme ailé | bronze | 12 x 3 |
| Coin à manger / Étagère droite | 94 | petite récipient circulaire | céramique | 3 x 5 |
| Hall d'entrée | 95 | Plat à figures rouges | céramique | diamètre 58cm |
| Hall d'entrée | 96 | Chapiteau de colone à décors floraux | marbre | 46 x74 |
| Hall d'entrée | 97 | fragment de bas-relief | pierre | 47 x 67 |

Case 19-3457, Document 50, 01/31/2020, 2767011, Page71 of 221

## Inventaire opération Agénor

| | | | | |
|---|---|---|---|---|
| Chambre à coucher | 98 | Vase à figures rouges | céramique | 53 x 45 |
| Chambre à coucher | 99 | Statuette de chien (chacal ?) fragmentée | terre cuite | 10 x 8 |
| Chambre à coucher | 100 | Tête de femme couronnée | pierre | 21 x 25 |
| Chambre à coucher | 101 | Tête de femme (statue) | marbre | 32 x 26 |
| Chambre à coucher | 102 | figurine avec de grands yeux | pierre | 6.5 x 2.5 |
| Chambre d'ami | 103 | Statuette d'Ibis | bois et bronze | 23 x 54 |
| Chambre d'ami | 104 | sceau à empreinte | pierre | 3.5 x 5.5 |
| Chambre d'ami | 105 | idole de la fertilité | terre cuite | 7 x 5 |
| Chambre d'ami | 106 | statuette de colombe (tête manquante) | céramique | 6 x 5 |
| Chambre d'ami | 107 | statuette (bas du corps) assise | terre cuite | 7 x 6.5 |
| Chambre d'ami | 108 | fragment de tête de statue | terre cuite | 5 x 2 |
| Chambre d'ami | 109 | statuette (uniquement le corps) | terre cuite | 7 x 8 |
| Chambre d'ami | 110 | Tête de statue | terre cuite | 5 x 4 |
| Chambre à coucher | 111 | Lot de pièces de monnaie en vrac | | |

A-62

# EXHIBIT B

Swiss Confederation

Federal Department of Finance DFF

**Federal Customs Administration, AFD**
Geneva Arrondissement Office
Customs Anti-Fraud Section

File No. 71-2016.19036

**Search Warrant**

Based upon Articles 48 – 50 of the Federal Law dated March 22, 1974 regarding administrative criminal law, the Director of the Customs Arrondissement of Geneva
hereby orders that a

**Search**

be performed

of the home of    Biliana Kirilova Abou Taam

located at         rue Firmin-Massot 4, 2014 Geneva
                   As well as any other objects or locations, as well as the vehicles to which Ms. Biliana Kirilova
                   Abou Taam has access

by the            Customs Anti-Fraud Section, Avenue Louis-Casaï 84, 1216 Cointrin – agent authorized to carry
                   out the search.
Reason: Importation without declaration/fencing archeological property/antiques

On 12/20/2016, at approximately 5:10 PM, Mr. Carlos ALEXANDRE NOVO (the driver) and Roben DIB (the passenger) arrived from France in a gray Land Rover registered under No. GE777994 to the company Phoenix Ancient Art SA, which is located at rue Verdaine 6 in 1204 Geneva. They entered Switzerland using the approved Veyrier traffic route. A border patrol officer stopped them as they were leaving the Veyrier border checkpoint. An inspection of the two people allowed the officer to certify that Mr. DIB was in possession of an antique oil lamp that had been fraudulently imported. An inspection of the car revealed the presence of 3 receipts for the rental of two storage units at the company Flexbox Self Storage, route du Nant-d'Avril 40 in 1214 Vernier, in the name of Walter HABERKORN, chemin des Raclerets 22 in 1284 Chancy. These two people were heard within the context of the importation without declaration of this lamp, and they were freed at approximately 2:15 AM on 12/21/2016. Our inquiry at the company FLEXBOX allowed us to establish that, following this interception, several movements of merchandise were certified beginning in the early hours of 12/21/2016. Ms. Biliana Abou Taam was identified on the surveillance cameras on this occasion. There is also a strong suspicion that other fraudulent importations of archeological property may have occurred and that they were stored on these premises.

A criminal customs inquiry is being conducted for:
* Infraction of the customs law dated March 15, 2005 (LD; RS 631.0), as well as for
* Infraction of the law on VAT dated June 12, 2009 (LTVA; RS 641.20), and for
* Infraction of the federal law fated March 22, 1974 on administrative criminal law (DPA; RS 313.0), specifically Article 14, paragraph 4 thereof;

Goal of the search: To investigate and secure:
* Fraudulently imported merchandise,
* Documents and objects related to the undeclared importation of merchandise that constitute evidence

Search/summary investigation of the means of telecommunication, multimedia, and all computer material with a view to investigate any contacts and connections related to the undeclared importation of merchandise that might constitute evidence and any other evidence relating thereto.

The director of customs in the arrondissement
[Signature]

**Received a copy of the search warrant**
Place and date: Geneva, 02/28/2017
Signature of the occupant of the premises: [Signature]

Form 31.17 f 01.07

Swiss Confederation                                    Federal Department of Finance DFF

                                                       **Federal Customs Administration, AFD**
                                                       Geneva Arrondissement Office
                                                       Customs Anti-Fraud Section

                                                                      File No. 71-2016.19036

## Customs lien seizure report

Place and date: GENEVA, 2/28/2017                    Time: 3:00 PM
At the home of (name and address):
Ms. BILIANA KIRILOVA ABOU TAAM, RUE FIRMIN-MASSOT 4, 1206 GENEVA

### Seizure decision

By virtue of Articles 82 and 83 of the customs law dated March 18, 2005, the following objects were seized as a customs lien:

111 PIECES OF ART AND/OR ANTIQUES ACCORDING TO THE ATTACHED LIST + 1 MARBLE STATUE.

[X] The objects seized are in addition to the exhibits, as defined by Article 212, paragraph 2 of the order regarding customs dated November 1, 2006 (OD; RS 631.01).

### Procedural Method

[] The authority ordering the search has placed the items in a secure location.
[X] The objects that were seized have been left with their holder, who is prohibited from disposing of them (see reverse).

**Rights claimed by third parties on the customs lien**
(State whether and by whom the objects are claimed, whether as property or as a lien, or whether they have already been seized, sequestered, or paid to cover bankruptcy in execution of the law of pursuance).

A copy of this seizure report has been delivered to the holder of the objects seized.

The official carrying out the seizure               The holder of the seized objects
[Signature]                                          [Signature]
**See the instructions regarding your legal rights on the back!**

### Restitution of seized objects

The undersigned person hereby certifies that he has been returned all of the seized objects, which are in good condition:

_____                    _____
(place and date)                          (signature)

Form 31.17 f 01.07

**Prohibition to dispose[1]**

**This customs lien is being left temporarily in your possession; nevertheless, you are _forbidden_ to dispose of it. If any measures should be binding, you must notify the office mentioned on the reverse and await their decision. Infractions shall be punished as misappropriations of customs liens as defined in Article 122 of the customs law. The customs administration reserves the right to take the customs lien into its own custody at any time.**

**Notice received:**
[Signature]

1) cross out any irrelevant item

Extract from the customs law dated March 18, 2005:

**Article 122. Misappropriation of the customs lien**
1. Shall be punished with a fine of up to five times the value of any of the merchandise:
a. when merchandise or an item seized by the customs administration as a customs lien but left in the holder's possession is destroyed, or
b. when the holder disposes of the merchandise or item without the consent of the customs administration.
2. The value of the merchandise corresponds to its exchange rate on the internal market at the time that a misappropriation of customs liens has been discovered. If this price is not known, the value of the merchandise shall be determined by experts.

**Article 82. Contents of the right to a customs lien**
1. The Swiss Confederation has the right to a legal lien (right to a customs lien):
a. On merchandise subject to customs laws;
b. On merchandise and items that have been used to commit an infraction of customs legislation or legislative acts of the Confederation other than customs acts that the customs administration carries out.
2. If the customs lien does not cover all of the secured claims, the debtor may specify which debts he intends to erase using the proceeds from the fulfillment of the lien.
   If the debtor does not make this announcement by the established deadline, the claims secured by the customs lien shall be erased in the order established by the Federal board.
3. The right to a customs lien originates with the customs claim, which he guarantees and which takes precedence over any other title related to the lien.

**Article 83. Seizure**
1. The customs administration shall avail itself of its right to a lien by means of a seizure.
2. Seizures may be carried out by taking over the lien or by prohibiting the holder of merchandise or items from disposing of said merchandise or items.

**Article 84. Restitution.**
1. The seized merchandise or items may be restored to the assignee against sureties.
2. The merchandise or items are restored without sureties if the owner:
a. Does not answer for the guaranteed customs claim, and
b. Proves that the merchandise or items have been used, through no fault of his own, to commit an infraction, or that he acquired the property or right to become the owner before the seizure without knowing that the customs obligations had not been fulfilled.

Extract from the customs order dated November 1, 2006:

**Article 212. Goal**
(Article 82 LD)
1. Customs liens serve to guarantee the recovery of the claims mentioned in Article 200 [whether customs fees and interests; fees and interest arising from legislative acts of the Confederation other than customs acts; fines; emoluments; procedural charges; and other charges].
2. Additionally, they serve as a way to conserve evidence during a criminal procedure or during an administrative criminal procedure.

**Article 214. Objects seized**
(Article 83 LD)
1. Seizure may also bear on merchandise or items:
a. For which third parties hold property or lien rights, or
b. Which were pledged as liens due to the law of pursuance, seized, or included in bankruptcy proceedings.
2. If the third parties are known, the customs administration shall inform them of the seizure.

**Article 215. Seizure decision**
(Article 83 LD)
1. The customs administration shall draft a customs lien seizure report and issue a decision pertaining thereto. Appeals against this seizure shall not have suspensive effect.

**Article 216. Intended recipient of the decision**
(Article 83, paragraph 2, LD)
The intended recipient of the seizure decision is the person in whose home, possession, or custody the merchandise or item being seized is found.

**Legal recourse**

**Seizure is subject to appeal. The appeal must be addressed in writing within a deadline of 30 days from the notification of the decision to the Arrondissement Office, P.O. Box 1211, Geneva 28.**

A-66

Operation Agénor Inventory

| Location | Object No. | Description | Material | Dimensions (height x length x depth) in cm |
|---|---|---|---|---|
| Lounge | 1 | Bust of a woman in a toga | Marble | 90 x 70 |
| Lounge | 2 | Woman's head | Stone (sandstone?) | 17.5 x 16 |
| Lounge | 3 | Woman's head | Stone (sandstone?) | 20 x 16 |
| Lounge | 4 | Head of a statue (Egyptian man) | Marble | 30 x 22 |
| Lounge | 5 | Idol | Sandstone | 21 x 8 |
| Lounge | 6 | Head of a statue | Stone | 25 x 28 |
| Lounge | 7 | Torso of a statue in a toga | Stone | 15 x 21 |
| Lounge | 8 | Vase | Stone | 15 x 10 |
| Lounge | 9 | Statue | Marble | 10.7 x 21 |
| Lounge | 10 | Necklace made of several pieces | Stone | diameter of 30 cm |
| Lounge | 11 | Libation vase | Ceramic | 15 x 19 |
| Lounge | 12 | Grecian vase | Ceramic | 36 x 13.5 |
| Lounge | 13 | Miniature sarcophagus (replica) | Stone | 20 x 10 |
| Lounge | 14 | Amphora with 2 handles | Bronze | 48 x 40 |
| Living room | 15 | Statue | Marble | 70 x 28.5 |

Page 1

A-67

Operation Agénor Inventory

| | | | | |
|---|---|---|---|---|
| Living room | 16 | Shield with conical boss | Bronze | diameter of 76 cm |
| Living room | 17 | Pot with Indian decoration | Metal | 19 x 12 |
| Living room | 18 | Vessel with swan decoration | Stone | 14 x 7.5 |
| Living room | 19 | Goblet | Stone | diameter of 14 cm |
| Living room | 20 | Vase | Alabaster | 38 x 30 |
| Living room | 21 | Vase with black figures | Ceramic | 28 x 14 |
| Living room | 22 | Dish | Stone | diameter of 22.5 cm |
| Living room | 23 | Cup | Alabaster (?) | diameter of 15 cm |
| Living room | 24 | Head of woman wearing a helmet (Athena?) | Marble | 42 x 18 |
| Living room | 25 | Vase with black figures (white background) | Ceramic | 24.5 x 15 |
| Living room | 26 | Head of a philosopher (Aristotle?) | Marble | 41 x 21 |
| Living room | 27 | Pitcher with red figures (fish decoration) | Ceramic | ceramic |
| Living room | 28 | Vase with red figures | Ceramic | 38 x 42 |
| Living room | 29 | Head of a woman | Stone | 34 x 29 |
| Living room | 30 | Rectangular dish | Marble | 26.5 x 11 |
| Living room | 31 | Rectangular dish | Marble | 32 x 15 |

Page 2

A-68

Operation Agénor Inventory

| | | | | |
|---|---|---|---|---|
| Living room | 32 | 1 ceramic fragment with red figures | Ceramic | 5 x 5 |
| Living room | 33 | Pot with geometric decoration | Ceramic | 48 x 30 |
| Dining nook | 34 | Vase with 2 people | Bronze | 50 x 40 |
| Dining nook | 35 | Vase with red figures | Ceramic | 26 x 20 |
| Dining nook Left shelving unit | 36 | 1 arm of a statue | Wood | 37 cm long |
| Dining nook Left shelving unit | 37 | Amphora with red figures with a satyr | Ceramic | 29 x 14 |
| Dining nook Left shelving unit | 38 | Fertility idol | Marble | 20 x 18 |
| Dining nook Left shelving unit | 39 | Statuette of a woman | Bronze | 27.5 x 18 |
| Dining nook Left shelving unit | 40 | Statuette of a man | Bronze | 11 x 7 |
| Dining nook Left shelving unit | 41 | Small long-necked vase | Ceramic | 9 x 6 |
| Dining nook Left shelving unit | 42 | Figurine of a bird | Bronze | 6 x 5 |
| Dining nook Left shelving unit | 43 | Circular box | Stone | diameter of 11 cm |
| Dining nook Left shelving unit | 44 | Bust of a person wearing a crown (king?) | Bronze | 40 x 30 |
| Dining nook Left shelving unit | 45 | Miniature face | Lapis lazuli | 3 x 4 |
| Dining nook Left shelving unit | 46 | Phial | Glass | 7 x 4 |
| Dining nook Left shelving unit | 47 | Medallion in the shape of a cross | Gold | 4 x 3 |

Page 3

A-69

Operation Agénor Inventory

| | | | | |
|---|---|---|---|---|
| Dining nook Left shelving unit | 48 | Figurine of a sphynx | Bronze | 8 x 7 |
| Dining nook Left shelving unit | 49 | Miniature bust of a man | Bronze | 9 x 7 |
| Dining nook Left shelving unit | 50 | Small medallion | Silver | 2.5 x 2.5 |
| Dining nook Left shelving unit | 51 | Anthropomorphic figurine | Stone | 19 x 5 |
| Dining nook Left shelving unit | 52 | Medallion | Gold | 5 x 8 |
| Dining nook Left shelving unit | 53 | Egyptian figurine | Ceramic/stone | 25 x 13 |
| Dining nook Left shelving unit | 54 | Bust of a bearded man | Glass | 9.5 x 9 |
| Dining nook Left shelving unit | 55 | Rhyton | Ceramic | 5 x 3 |
| Dining nook Left shelving unit | 56 | Rhyton | Ceramic | 5.5 x 14 |
| Dining nook Left shelving unit | 57 | Statuette of a man on a camel | Bronze | 15 x 4 |
| Dining nook Left shelving unit | 58 | Head of a statue | Stone | 7 x 9 |
| Dining nook Left shelving unit | 59 | Small tortoise | Pâte de verre | 4 x 4 |
| Dining nook Left shelving unit | 60 | Blue bowl | Glass | diameter of 12 cm |
| Dining nook Left shelving unit | 61 | Medallion with head of Athena | Bronze | diameter of 9 cm |
| Dining nook Left shelving unit | 62 | Long-necked, duck-shaped vase | Ceramic | 9 x 8 |
| Dining nook Left shelving unit | 63 | Medallion with the head of Apollo | Bronze | diameter of 8 cm |

Page 4

**A-70**

Operation Agénor Inventory

| | | | | |
|---|---|---|---|---|
| Dining nook Left shelving unit | 64 | Statuette of a lion with white eyes | Stone | 21 x 7 |
| Dining nook Left shelving unit | 65 | Tumbler | Ceramic | height of 9 cm diameter of 7 cm |
| Dining nook Left shelving unit | 66 | Head of a bearded satyr | Bronze | 3 x 5 |
| Dining nook Left shelving unit | 67 | Goblet | Glass | 15 x 16 |
| Dining nook Left shelving unit | 68 | Long-necked vase | Glass | 8 x 11 |
| Dining nook Left shelving unit | 69 | Small statuette of a tortoise | Ceramic | 4 x 3 |
| Dining nook Left shelving unit | 70 | Token coin with decorative figures | Bone | diameter 4.5 cm |
| Dining nook Left shelving unit | 71 | Circular box | Stone | diameter of 7.5 cm |
| Dining nook Left shelving unit | 72 | Phial decorated with a bearded head | Glass | 19 x 6 |
| Dining nook Left shelving unit | 73 | Phial with geometric design | Glass | 18 x 7 |
| Dining nook Right shelving unit | 74 | Bas-relief fragment | Stone | 21.5 x 24 |
| Dining nook Right shelving unit | 75 | Fragment of the head of a statue (face) | Stone | 20 x 10 |
| Dining nook Right shelving unit | 76 | Elongated blue phial | Ceramic | 23 x 4 |
| Dining nook Right shelving unit | 77 | Mirror | Bronze | diameter of 26 cm |
| Dining nook Right shelving unit | 78 | Divinity statue | Bronze | 14 x 5 |
| Dining nook Right shelving unit | 79 | Fertility idol | Stone | 16 x 7 |

Page 5

Operation Agénor Inventory

| | | | | |
|---|---|---|---|---|
| Dining nook Right shelving unit | 80 | Small figurine of a monkey | Stone | 6 x 2 |
| Dining nook Right shelving unit | 81 | Anthropomorphic figurine | Stone | 5 x 4 |
| Dining nook Right shelving unit | 82 | Vase with a spout | Ceramic | 15 x 14 |
| Dining nook Right shelving unit | 83 | Goblet with floral decoration | Glass | diameter of 14 cm |
| Dining nook Right shelving unit | 84 | Statuette of a Gorgon | Bronze | 14 x 17 |
| Dining nook Right shelving unit | 85 | Miniature head of a man | Ceramic | 3.5 x 3 |
| Dining nook Right shelving unit | 86 | Cameo with the head of a woman | Stone | diameter of 3.5 cm |
| Dining nook Right shelving unit | 87 | Elongated statuette with a horned head | Bronze | 19.5 x 7 |
| Dining nook Right shelving unit | 88 | Goblet | Glass | diameter of 17 cm |
| Dining nook Right shelving unit | 89 | Vase with a spout | Stone | 24 x 14 |
| Dining nook Right shelving unit | 90 | Statuette with a bearded head | Bronze | 13 x 3 |
| Dining nook Right shelving unit | 91 | Saint's medallion (fragmented) | Bronze | |
| Dining nook Right shelving unit | 92 | Statuette of a bear with an opening on the head (hinged) | Bronze | 10 x 5 |
| Dining nook Right shelving unit | 93 | Figurine of a winged young man | Bronze | 12 x 3 |
| Entrance hall | 94 | Small circular container | Ceramic | 3 x 5 |
| Entrance hall | 95 | Dish with red figures | Ceramic | diameter of 58 cm |
| Entrance hall | 96 | Chapiter of a column with floral decoration | Marble | 46 x 74 |
| Entrance hall | 97 | Bas-relief fragment | Stone | 47 x 67 |

Page 6

A-72

Operation Agénor Inventory

| | | | | |
|---|---|---|---|---|
| Bedroom | 98 | Vase with red figures | Ceramic | 53 x 45 |
| Bedroom | 99 | Fragmented statuette of a dog (jackal?) | Terra cotta | 10 x 8 |
| Bedroom | 100 | Crowned head of a woman | Stone | 21 x 25 |
| Bedroom | 101 | Head of a woman (statue) | Marble | 32 x 26 |
| Bedroom | 102 | Figurine with large eyes | Stone | 6.5 x 2.5 |
| Guest room | 103 | Statuette of an ibis | Wood and bronze | 23 x 54 |
| Guest room | 104 | Seal | Stone | 3.5 x 5.5 |
| Guest room | 105 | Fertility idol | Terra cotta | 7 x 5 |
| Guest room | 106 | Statuette of a dove (missing its head) | Ceramic | 6 x 5 |
| Guest room | 107 | Seated statuette (bottom half of the body) | Terra cotta | 7 x 6.5 |
| Guest room | 108 | Fragment of the head of a statue | Terra cotta | 5 x 2 |
| Guest room | 109 | Statuette (only the body) | Terra cotta | 7 x 8 |
| Guest room | 110 | Head of a statue | Terra cotta | 5 x 4 |
| Bedroom | 111 | Assorted coins | | |

Page 7



AMERICAN LANGUAGE SERVICES

*Making the World Smaller*

## CERTIFICATION OF TRANSLATION
### AFFIDAVIT FOR TRANSLATION OF SAID DOCUMENT

American Language Services, a company specializing in the translation of documents, certifies the following:

- American Language Services has retained a professional translator for the attached French into English document.  The document is referred to as:

**"EXHIBITS FOR BEIERWALTES, ET AL. V. FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION, ET AL.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO"**

- I affirm that such translation has been prepared by a duly qualified translator, who has confirmed that such translation is, to the best of their knowledge and belief, a true and accurate translation in English of the corresponding French document.

- I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Notwithstanding the foregoing affirmations, no liability is assumed for errors and omissions in the translation of the attached document.

- Executed on this Thirty-First day of July, 2018, at Los Angeles, California.

REUBEN TRUJEQUE
AMERICAN LANGUAGE SERVICES

1849 SAWTELLE BLVD. SUITE 600      LOS ANGELES, CALIFORNIA 90025
TEL (310) 829-0741 FAX (310) 829-3222
translation@alsglobal.net
www.alsglobal.net

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____

Signature of Document Signer No. 1          Signature of Document Signer No. 2 (if any)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____ LOS ANGELES _____

"EXHIBITS FOR BEIERWALTES, ET AL. V. FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION, ET AL. UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO"

RAMON DELGADO JR.
Commission # 2107172
Notary Public - California
Los Angeles County
My Comm. Expires Apr 16, 2019

*Place Notary Seal and/or Stamp Above*

Subscribed and sworn to (or affirmed) before me

on this 31st day of July, 20 18,

by          *Date*          *Month*          *Year*

(1)   REUBEN TRUJEQUE

(and (2) _____ ),

*Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____

*Signature of Notary Public*

────────────────────── OPTIONAL ──────────────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____ See above _____

Document Date: _____ See attached _____   Number of Pages: _____ 27 _____

Signer(s) Other Than Named Above: _____

©2017 National Notary Association

A-75

# EXHIBIT C

# Pearlstein McCullough & Lederman LLP

641 Lexington Avenue ▪ Suite 1327 ▪ New York, NY  10022 ▪ T: 646.762.7263 ▪ F: 866.941.7720 ▪ wpearlstein@pmcounsel.com

May 7, 2018

By FedEx
Republique et Canton de Genève
Pouvoir judiciare
Ministère Public
Route de Chancy 6B
Case Postale 3565
1211 Genève 3
Attn:   M. Claudio Mascotto,
        Procureur

Demand for Release of Antiquities
Consigned to Phoenix Ancient Art S.A. by William and Lynda Beierwaltes

Dear Sirs:

We are counsel to William and Lynda Beierwaltes (the "*Beierwaltes*"). The Beierwaltes are citizens of the United States and residents of the State of Colorado.

**Background.**

During the 1990's the Beierwaltes acquired a large collection of ancient art or "antiquities," largely composed of objects originating from what are now the modern nations of Greece, Italy and Egypt, and from regions that fell within the cultural influence of those civilizations during ancient times. At one time, the Beierwaltes' collection was considered one of the finest private collections of ancient art in the United States.

The Beierwaltes purchased their antiquities from leading, well-known international private art dealers in New York and London and, in some cases, from leading international auction houses. In each case, the Beierwaltes were *bona fide* purchasers with no notice of adverse claims by any third party, including any country of origin. The Beierwaltes purchased each object in reliance on representations from reputable dealers and the absence of any thefts reported to publicly-available databases of stolen art, such as the Art Loss Register. In purchases from dealers in the United States, the Beierwaltes also relied on statutory warranties of title and authenticity under the Uniform Commercial Code. In purchases at public auction, the Beierwaltes relied on warranties of title and "authorship" from the auction house.

On June 1, 2006, the Beierwaltes signed an "Exclusive Dealer Agreement" with Phoenix Ancient Art S.A. ("*Phoenix*").  Phoenix was then and remains now a leading international dealer

1

of antiquities, based in Geneva, Switzerland. Pursuant to the Exclusive Dealer Agreement, the Beierwaltes consigned substantially their entire antiquities collection to Phoenix for sale.

In May 2013, the Beierwaltes filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Colorado. In July 2013, the Bankruptcy Court approved the employment of Phoenix as art brokers to assist the Beierwaltes in marketing and selling their art collection. The Beierwaltes' art collection was then and remains now the Beierwaltes' largest liquid asset. The Beierwaltes' Plan of Reorganization became effective in June 2014 after it was approved by their creditors. Central to the Plan is the ability of Phoenix to market and sell the Beierwaltes' antiquities to raise funds for the payment of their creditors. A list of the objects that remain on consignment by the Beierwaltes to Phoenix (the "*Consigned Objects*") is attached to this Letter as <u>Schedule A.</u>

**<u>Demand for Release of Objects Consigned to Phoenix.</u>**

Commencing in early 2017, you have taken action against Phoenix that has "frozen" the Consigned Objects in Geneva, prevented Phoenix from marketing and selling them, and prevented the Beierwaltes from paying their creditors with the proceeds of sale. Your actions against Phoenix amount to a forfeiture or seizure of the Beierwaltes' personal property without due process of law. The legal basis for your actions against the Beierwaltes is unclear and without merit.

On behalf of the Beierwaltes, we hereby demand that you immediately and unconditionally release to Phoenix all of the Consigned Objects, and allow Phoenix to resume marketing, selling, shipping and exporting those on behalf of the Beierwaltes on an unrestricted basis.

All rights and remedies are hereby reserved under the laws of Colorado, New York and Switzerland.

I look forward to your prompt reply. Please feel free to contact us by email to set up a telephone call.

Very truly yours,

William Pearlstein

cc:     William and Lynda Beierwaltes
        Georges Lederman, Esq.

# EXHIBIT D

République et canton de Genève
**POUVOIR JUDICIAIRE**
**Ministère public**

Genève, le 11 mai 2018

P/2949/2017 MSC

Ministère public
Route de Chancy 6 B
Case postale 3565
CH - 1211 GENEVE 3
www.ge.ch/justice

**R**   R P371 37218 4 CH

*LAPOSTE*
Please scan - Signature required
Veuillez scanner - Remise contre signature

PEARLSETEIN
MCCULLOUGH&LEDERMAN
Lexington Avenue 641
Suite 1327
10022 New York
ÉTATS-UNIS

Réf : **P/2949/2017** MSC
à rappeler lors de toute communication

**Concerne** :  époux BEIERWALTES

Maître,

Je fais suite à votre courrier du 7 mai 2018, que je reçois ce jour.

Il est pris note que vous vous êtes constitué pour Wiliam et Lynda BEIERWALTES, en leur qualité de tiers touchés par un séquestre.

Je vous invite à me faire tenir à votre meilleure convenance une procuration écrite et signée de vos clients, respectivement de l'administrateur ou du liquidateur de leur faillite, attestant de votre mandat.

Je vous invite également à produire, pour chacun des objets dont vos clients revendiquent la propriété :

- la documentation complète relative à l'acquisition de l'objet par vos clients et au paiement de son prix ;

- la documentation complète relative à la provenance licite de l'objet (*due diligence*) ;

- la documentation complète relative à la remise par vos clients de l'objet à *Phoenix Ancient Art*, soit tout contrat, correspondance écrit et par courriel, documentation de voyage et d'assurance, quittances et autres reçus relatifs à la remise de chaque objet pris individuellement ;

- une copie de la procédure de faillite personnelle ouverte en mai 2013 par vos clients, et en particulier toute documentation relative aux objets que vos clients indiquent avoir confié à *Phoenix Ancient Art*.

Je souhaite par ailleurs interroger vos clients et vous remercie de m'indiquer leurs disponibilités pour être entendus en juin ou en août 2018 à Genève.

J'attire encore votre attention sur le fait que des séquestres douaniers, distincts des séquestres pénaux, pèsent également sur tout ou partie des objets revendiqués, et qu'il vous appartient de vous adresser à l'autorité administrative compétente en ce qui les concerne.

Enfin, vous apparaissez représenter dans cette même procédure une autre personne, ce que vous m'avez fait savoir par courrier séparé du 7 mai 2018 également.

J'attire votre attention sur le fait qu'il pourrait y avoir un conflit de mandats au regard des règles de procédure et d'éthique professionnelle applicables en Suisse.

Je vous remercie de me faire connaître dans les meilleurs délais votre détermination sur ce point.

Les objets séquestrés sont suspectés d'être le produit d'infractions contre le patrimoine respectivement contre la loi suisse sur le transfert de biens culturels. Des analyses et des expertises sont en cours. Dans l'attente des clarifications sollicitées et de votre détermination sur le conflit de mandats, il ne peut être donné suite dans l'immédiat à votre demande de levée de séquestre.

Toute personne s'estimant lésée par la présente décision peut recourir par le dépôt de conclusions écrites et motivées au Greffe de la Chambre Pénale de Recours de la Cour de Justice dans un délai de dix jours à compter de la réception de la présente, en application des articles 393 et suivants du code de procédure pénale suisse.

Je vous prie de croire, Maître, en l'assurance de ma parfaite considération.

Claudio MASCOTTO
Procureur

# EXHIBIT D

**A-82**

Republic and Canton of Geneva
**JUDICIAL POWER**
**Public Prosecutor's Office**

Geneva, May 11, 2018

P/2949/2017 MSC

Public Prosecutor's Office
Route de Chancy 6B
P.O. Box 3565
Switzerland - 1211 GENEVA 3
www.ge.ch/justice

**R**   R P 371 37218 4 CH

POST OFFICE                     Please Scan

                                Signature Required

PEARLSTEIN
MCCULLOUGH & LEDERMAN
Lexington Avenue 641
Suite 1327
10022 New York
UNITED STATES

> Reference: **P/2949/2017** – MSC
> To be used during all communications.

**Regarding**: The BEIERWALTES

Dear Sir,

I am replying to your May 7, 2018 letter, which I received today.

It has been noted that you were appointed by William and Lynda BEIERWALTES, in their capacities as third parties affected by a seizure.

I ask that, at your earliest convenience, you provide me with a power of attorney attesting to your proxy. This power of attorney should be written and signed by your clients or by the administrator or liquidator of their bankruptcy.

I also ask that, for each of the items for which your clients claim ownership, you provide:

- Complete documentation related to your clients' acquisition of the object and the payment of the price;
- Complete documentation related to the legal provenance of the object (due diligence);
- Complete documentation related to your clients' remittance of the object to *Phoenix Ancient Art*, that is, any contract, written or electronic correspondence, travel and insurance document, receipt, and other vouchers related to the remittance of each individual object;
- A copy of the personal bankruptcy proceedings filed in May 2013 by your clients, specifically, any document related to the objects that your clients state they have conferred upon *Phoenix Ancient Art*.

Furthermore, I hope to question your clients and would be grateful if you would tell me their availability for questioning in June or August 2018 in Geneva.

Once again, I would like to draw your attention to the fact that customs seizures, contrary to criminal seizures, weigh equally upon all or part of the claimed items, and that it is up to you to address the appropriate administrative authority in that regard.

Finally, you appear to be representing another person in these same proceedings, of which you informed me with a separate correspondence also sent on May 7, 2018.

I would like to draw your attention to the fact that there could be a conflict of interest with regard to the applicable Swiss rules regarding procedure and professional ethics.

I would be grateful if you could give me your determination on this point as soon as possible.

The objects that have been seized are suspected to be the products of property infractions or of infractions against the Swiss law on the transfer of cultural property. Analyses and expert opinions are being made. Until such time as these explanations are made and your determination regarding the conflict of interest is provided, your request for the seizure to be lifted cannot be immediately granted.

All persons deemed to have been injured by this decision may have file written and justifiable conclusions with the Court Clerk of the Criminal Appeal Chambers of the Court of Justice within a period of ten days from the receipt of this letter, pursuant to Articles 393 and all following articles of the Swiss Criminal Procedure Code.

Best regards,

[Signature]
Claudio MASCOTTO
Prosecutor
[Public Prosecutor's Office Seal]



# CERTIFICATION OF TRANSLATION
### AFFIDAVIT FOR TRANSLATION OF SAID DOCUMENT

American Language Services, a company specializing in the translation of documents, certifies the following:

- American Language Services has retained a professional translator for the attached French into English document.  The document is referred to as:

**"EXHIBITS FOR BEIERWALTES, ET AL. V. FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION, ET AL.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO"**

- I affirm that such translation has been prepared by a duly qualified translator, who has confirmed that such translation is, to the best of their knowledge and belief, a true and accurate translation in English of the corresponding French document.

- I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Notwithstanding the foregoing affirmations, no liability is assumed for errors and omissions in the translation of the attached document.

- Executed on this Thirty-First day of July, 2018, at Los Angeles, California.


REUBEN TRUJEQUE
AMERICAN LANGUAGE SERVICES

1849 SAWTELLE BLVD. SUITE 600      LOS ANGELES, CALIFORNIA 90025
TEL (310) 829-0741 FAX (310) 829-3222
translation@alsglobal.net
www.alsglobal.net

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____

_Signature of Document Signer No. 1_          _Signature of Document Signer No. 2 (if any)_

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
                LOS ANGELES
County of _____

"EXHIBITS FOR BEIERWALTES, ET AL. V. FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION, ET AL. UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO"

Subscribed and sworn to (or affirmed) before me

on this 31st day of July, 20 18,
by            _Date_          _Month_          _Year_
(1) REUBEN TRUJEQUE

(and (2) _____ ),
                _Name(s) of Signer(s)_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____
                _Signature of Notary Public_

**RAMON DELGADO JR.**
Commission # 2107172
Notary Public - California
Los Angeles County
My Comm. Expires Apr 16, 2019

_Place Notary Seal and/or Stamp Above_

━━━━━━━━━━━━━━━ OPTIONAL ━━━━━━━━━━━━━━━

_Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**
                                See above
Title or Type of Document: _____
                                See attached                                                    27
Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

©2017 National Notary Association

A-86

# EXHIBIT E

A-87

# Pearlstein McCullough & Lederman LLP

641 Lexington Avenue ▪ Suite 1327 ▪ New York, NY  10022 ▪ T: 646.762.7263 ▪ F: 866.941.7720 ▪ wpearlstein@pmcounsel.com

June 6, 2018

By Fax and Registered Mail
Republique et Canton de Genève
Pouvoir judiciare
Ministère Public
Route de Chancy 6B
Case Postale 3565
1211 Genève 3
Attn:   M. Claudio Mascotto,
        Procureur

Re: Demand for Release of Antiquities
William and Lynda Beierwaltes

Dear M. Mascotto:

Thank you for your letters to us of May 11, 2018 in response to our letters to you of May 8, 2018.

In our letters, we stated that your actions against Phoenix Ancient Art S.A. amount to the wrongful forfeiture or seizure of antiquities acquired in good faith and lawfully owned by our clients, William and Lynda Beierwaltes.[1] We asked you to state the legal basis for your actions.

You have failed to so do. Instead, you have made only vague, unsupported allegations of suspected violations of the Swiss "Loi sur le transfert des biens culturels" ("*LTBC*"). You have failed to specify what provisions of the LTBC have been violated or to allege any specific facts relating to any of the frozen objects that violate the LTBC. You intend to hold the objects indefinitely pending the outcome of your ongoing investigation of Phoenix. At the end of your investigation you will restitute the objects without compensation to some arbitrarily selected countries of origin. We have been advised by Swiss counsel that none of the frozen antiquities violates the LTBC and that your demands for information and your 10 day deadline are without legal basis. In sum, your response amounts to nothing more than an exercise in delay, evasion and prosecutorial abuse.

---

[1] We acknowledge your concern that a conflict of interest may arise under Swiss law out of our joint representation of Mr. and Mrs. Beierwaltes and Hicham Aboutaam. Please be assured that no such conflict of interest exists under New York law. If and to the extent that a conflict of interest exists under Swiss law, then, for purposes of this letter, please be advised that we represent the Beierwaltes only and not Mr. Aboutaam.

A-88

We hereby repeat our demand that you immediately and unconditionally release all of the objects owned by our clients and allow Phoenix to resume marketing, selling and shipping those objects on an unrestricted basis. If you fail to do so, we intend to commence litigation against the Canton de Genève (acting through the Ministère Public) in United States District Court in Colorado and New York. We may also sue the Département fédéral des finances, Administration fédéral des douanes. Our causes of action will include, among others, wrongful seizure, conversion and a request for declaratory judgment as to title. We will seek monetary damages against your office equal to the fair market value of the antiquities that you have seized (approximately US $8 million in the case of the Beierwaltes).

I look forward to your reply within 10 days after your receipt of this letter.

All rights and remedies are hereby reserved under the laws of Colorado, New York and Switzerland.

Je vous prie de croire, Maître, en l'assurance de ma parfaite considération.

Very truly yours,

/s/ *William Pearlstein*

cc:    William and Lynda Beierwaltes
       Hicham Aboutaam
       Georges Lederman, Esq.

2

A-89

# EXHIBIT F



REPUBLIQUE ET CANTON DE GENEVE
POUVOIR JUDICIAIRE
**Ministère public**

Ministère public
Route de Chancy 6B
Case postale 3565
1211 Genève 3

N/réf : P/2949/2017 - MSC

Monsieur William PEARLSTEIN
Avocat
PEARLSTEIN MCCULLOUGH &
LEDERMAN
Lexington Avenue 641
Suite 1327
10022 New York
ÉTATS-UNIS

Genève, le 12 juin 2018

**Epoux William & Lynda BEIERWALTES**

Maître,

Je fais suite à votre courrier du 6 juin écoulé, que je reçois ce jour par poste.

Il est pris note que vous représentez exclusivement les époux BEIERWALTES.

La loi de procédure suisse exige que vous justifiiez votre mandat de représentation par une procuration écrite de vos mandants, et je renouvelle mon invitation à me faire parvenir à votre meilleure convenance un tel document.

Votre requête est traitée comme une demande de levée de séquestre formée par un tiers dans la procédure pénale.

Les objets que vous désignez ont été séquestrés en mains d'*Inanna*, et cette dernière est, sinon le propriétaire, du moins le possesseur des objets.

Le Ministère public s'est tourné vers *Inanna* pour obtenir sa détermination et les documents qui établiraient les droits de vos mandants, et attend une réponse de son avocat.

La coopération d'*Inanna* ne dispense pas vos clients de l'incombance de documenter les droits qu'ils allèguent sur les objets.

A cet égard, la liste illustrée des objets qui accompagnaient votre premier courrier semble être une extraction de la banque de données tenue par *Inanna*.

Ceci étant précisé, aussitôt que vous aurez pu documenter vos prétentions, nous pourrons vérifier si les objets que vous désignez sont toujours séquestrés, décider si leur séquestre doit être maintenu ou levé, et vous en informer.

Enfin, le délai de 10 jours mentionné dans mon précédent courrier ne vous est pas imparti pour produire la documentation que je sollicite, mais correspond au délai de recours pour contester devant la Cour de justice un refus de lever les scellés.

**A-91**

C'est dire qu'il vous est loisible de me faire tenir les documents que je vous réclame à votre convenance.

Comme indiqué, les documents que vous m'enverrez seront examinés dès réception et une nouvelle décision sera prise au sujet des séquestres.

Je saisis l'occasion pour vous suggérer d'inviter de votre côté *Inanna* à prendre position par écrit auprès du Ministère public au sujet des objets que lui auraient confiés les époux BEIERWALTES, étant précisé que votre requête est versée à la procédure pénale et est accessible à l'avocat d'*Inanna* et de M. Ali ABOU TAAM.

J'espère avoir pu, avec ces lignes, vous éclairer sur la procédure à suivre.

N'hésitez pas à m'appeler si vous deviez souhaiter des informations complémentaires. Vous pouvez appeler ma greffière sur sa ligne directe +41 22 327 68 05.

En vous souhaitant bonne réception de la présente, je vous prie de croire, Maître, en l'assurance de ma parfaite considération.

Claudio MASCOTTO
Procureur

# EXHIBIT F

A-93

Republic and Canton of Geneva
JUDICIAL POWER
**Public Prosecutor's Office**

Public Prosecutor's Office
Route de Chancy 6B
P.O. Box 3565
1211 GENEVA 3

Reference: P/2949/2017 – MSC

Mr. William PEARLSTEIN
Attorney
PEARLSTEIN MCCULLOUGH &
LEDERMAN
Lexington Avenue 641
Suite 1327
10022 New York
UNITED STATES

Geneva, June 12, 2018

**Mr. and Mrs. William & Lynda BEIERWALTES**

Dear Sir,

I am replying to your June 6, 2018 letter, which I received today.

It has been noted that you exclusively represent the BEIERWALTES.

Swiss procedural law requires that you prove your power of representation through a written power of attorney from your clients, and I once again ask that you send me this document at your earliest convenience.

Your request is being treated as a request to lift a seizure filed by a third party in the criminal procedure.

The objects that you pointed out have been seized from the hands of *Inanna*, which is, if not the owner, at least the holder of the objects.

The Public Prosecutor is turning to *Inanna* to make its determination and the documents that establish the rights of your clients, and is awaiting a reply from its attorney.

*Inanna*'s cooperation does not free your clients from their responsibility to document the rights that they are asserting over the objects.

In this regard, the illustrated list of objects that accompanied your first correspondence appears to have been extracted from the data base held by *Inanna*.

This having been stated, as soon as you are able to document your claims, we will be able to verify whether the objects you are pointing out are still under seizure, decide whether their seizure should be maintained or lifted, and inform you of our determination.

Finally, the 10-day period mentioned in my previous correspondence was not the period given for you to produce the documentation that I requested, but rather the period to contest a refusal to lift the seals before the Court of Justice.

A-94

**Letter from the Public Prosecutor's Office dated June 12, 2018                    page 2/2**

That is to say that you are free to provide the documents that I ask of you at your convenience.

As stated, the documents that you send to me shall be inspected upon their receipt and a new decision shall be made with regard to the seizures.

I would like to take this opportunity to suggest that you ask *Inanna* to take a position in writing before the Public Prosecutor's Office with regard to the objects conferred upon them by the BEIERWALTES, given that your request has been put into the criminal procedure and is accessible to *Inanna*'s attorney and to Mr. Ali ABOU TAAM.

I hope that these few lines will have clarified the procedure to come.

Please do not hesitate to call me if you should wish for additional information. You may call my clerk on the direct line at +41 22 327 68 05.

I hope this letter finds you well.

Best regards,

[Signature]
Claudio MASCOTTO
Prosecutor
[Public Prosecutor's Office Seal]



## CERTIFICATION OF TRANSLATION
### AFFIDAVIT FOR TRANSLATION OF SAID DOCUMENT

American Language Services, a company specializing in the translation of documents, certifies the following:

- American Language Services has retained a professional translator for the attached French into English document.  The document is referred to as:

**"EXHIBITS FOR BEIERWALTES, ET AL. V. FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION, ET AL.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO"**

- I affirm that such translation has been prepared by a duly qualified translator, who has confirmed that such translation is, to the best of their knowledge and belief, a true and accurate translation in English of the corresponding French document.

- I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Notwithstanding the foregoing affirmations, no liability is assumed for errors and omissions in the translation of the attached document.

- Executed on this Thirty-First day of July, 2018, at Los Angeles, California.

REUBEN TRUJEQUE
AMERICAN LANGUAGE SERVICES

1849 SAWTELLE BLVD. SUITE 600        LOS ANGELES, CALIFORNIA 90025
TEL (310) 829-0741 FAX (310) 829-3222
translation@alsglobal.net
www.alsglobal.net

A-96

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____

Signature of Document Signer No. 1            Signature of Document Signer No. 2 (if any)

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_____

"EXHIBITS FOR BEIERWALTES, ET AL. V. FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION, ET AL. UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO"

RAMON DELGADO JR.
Commission # 2107172
Notary Public - California
Los Angeles County
My Comm. Expires Apr 16, 2019

*Place Notary Seal and/or Stamp Above*

Subscribed and sworn to (or affirmed) before me

on this _31st_ day of _July_____, 20_18_,

by          _Date_          _Month_          _Year_

(1) _REUBEN TRUJEQUE_____

(and (2) _____ ),
                        *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____

*Signature of Notary Public*

———————————————— **OPTIONAL** ————————————————

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _See above_____

Document Date: _See attached_____ Number of Pages: _27____

Signer(s) Other Than Named Above: _____

©2017 National Notary Association

A-97

JS 44  (Rev. 06/17)   District of Colorado Form

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS
LYNDA BEIERWALTES and WILLIAM BEIERWALTES

**(b)**   County of Residence of First Listed Plaintiff   Larimer County, Colorado
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*

Jessica Black Livingston
Andrew C. Lillie
Andrew M. Nussbaum
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, CO 80202
Telephone: (303) 899-7300
Fax: (303) 899-7333

Georges G. Lederman *(application for admission forthcoming)*
William G. Pearlstein *(application for admission forthcoming)*
PEARLSTEIN MCCULLOUGH & LEDERMAN LLP
641 Lexington Ave, Suite 1327
New York, NY 10022
Telephone: (646) 762-2833 (646) 762-7264

## DEFENDANTS
L'OFFICE FEDERALE DE LA CULTURE DE LA CONFEDERATION SUISSE, Federal Office of Culture of the Swiss Confederation, L'ADMINISTRATION FEDERALE DES DOUANES DE LA CONFEDERATION SUISSE, Federal Customs Administration of the Swiss Confederation, and LA REPUBLIQUE ET CANTON DE GENEVE, Republic and Canton of Geneva

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ❑ 1  U.S. Government Plaintiff | X' 3  Federal Question *(U.S. Government Not a Party)* | | |
| ❑ 2  U.S. Government Defendant | ' 4  Diversity *(Indicate Citizenship of Parties in Item III)* | | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ' 1 | ' 1 | Incorporated *or* Principal Place of Business In This State | ' 4 | ' 4 |
| Citizen of Another State | ' 2 | ' 2 | Incorporated *and* Principal Place of Business In Another State | ' 5 | ' 5 |
| Citizen or Subject of a Foreign Country | ' 3 | ' 3 | Foreign Nation | ' 6 | ' 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 625 Drug Related Seizure of Property 21 USC 881 | ❑ 422 Appeal 28 USC 158 | ❑ 375 False Claims Act |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 365 Personal Injury - | ❑ 690 Other | ❑ 423 Withdrawal 28 USC 157 | ' 376 Qui Tam (31 USC 3729(a)) |
| ❑ 130 Miller Act | ❑ 315 Airplane Product Liability | Product Liability | | | ❑ 400 State Reapportionment |
| ❑ 140 Negotiable Instrument | ❑ 320 Assault, Libel & | ❑ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ❑ 410 Antitrust |
| ❑ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | | ❑ 820 Copyrights | ❑ 430 Banks and Banking |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' Liability | Product Liability | | ❑ 830 Patent | ❑ 450 Commerce |
| ❑ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❑ 340 Marine | ❑ 368 Asbestos Personal Injury Product | | ❑ 835 Patent - Abbreviated New Drug Application | ❑ 460 Deportation |
| | ❑ 345 Marine Product Liability | Liability | | ❑ 840 Trademark | ❑ 470 Racketeer Influenced and Corrupt Organizations |
| ❑ 153 Recovery of Overpayment of Veteran's Benefits | ❑ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❑ 480 Consumer Credit |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle Product Liability | ❑ 370 Other Fraud | ❑ 710 Fair Labor Standards Act | ' 861 HIA (1395ff) | ❑ 490 Cable/Sat TV |
| ❑ 190 Other Contract | ❑ 360 Other Personal Injury | ❑ 371 Truth in Lending | ❑ 720 Labor/Management Relations | ' 862 Black Lung (923) | ❑ 850 Securities/Commodities/ Exchange |
| ❑ 195 Contract Product Liability | ❑ 362 Personal Injury - Medical Malpractice | ❑ 380 Other Personal Property Damage | ❑ 740 Railway Labor Act | ' 863 DIWC/DIWW (405(g)) | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | | ❑ 385 Property Damage Product Liability | ' 751 Family and Medical Leave Act | ' 864 SSID Title XVI | ❑ 891 Agricultural Acts |
| | | | ❑ 790 Other Labor Litigation | ' 865 RSI (405(g)) | ❑ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❑ 895 Freedom of Information Act |
| ❑ 210 Land Condemnation | ❑ 440 Other Civil Rights | **Habeas Corpus:** | | ❑ 870 Taxes (U.S. Plaintiff or Defendant) | ❑ 896 Arbitration |
| ❑ 220 Foreclosure | ❑ 441 Voting | ❑ 463 Alien Detainee | | ❑ 871 IRS—Third Party 26 USC 7609 | ❑ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❑ 230 Rent Lease & Ejectment | ❑ 442 Employment | ❑ 510 Motions to Vacate Sentence | | | |
| ❑ 240 Torts to Land | ❑ 443 Housing/ Accommodations | ❑ 530 General | | | ❑ 950 Constitutionality of State Statutes |
| ❑ 245 Tort Product Liability | ❑ 445 Amer. w/Disabilities - Employment | X 535 Death Penalty | **IMMIGRATION** | | |
| ❑ 290 All Other Real Property | ❑ 446 Amer. w/Disabilities - Other | **Other:** | ❑ 462 Naturalization Application | | |
| | ❑ 448 Education | ❑ 540 Mandamus & Other | ❑ 465 Other Immigration Actions | | |
| | | ❑ 550 Civil Rights | | | |
| | | ❑ 555 Prison Condition | | | |
| | | ❑ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| 'x 1  Original Proceeding | ❑ 2  Removed from State Court | ❑ 3  Remanded from Appellate Court | ❑ 4  Reinstated or Reopened | ' 5  Transferred from Another District *(specify)* | ❑ 6  Multidistrict Litigation - Transfer | ❑ 8  Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1605 & 2201.

Brief description of cause:
❑ Declaratory judgment as to title and other property torts for seizure of 18 antiquities

## VII. REQUESTED IN COMPLAINT:
❑ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND** $40,000,000 and declaratory judgment

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ' Yes  X'No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  8/8/2018

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | | | | |

\\DE - 753343/000001 - 3225273 v1

JS 44 Reverse (Rev. 06/17)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)   Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)   County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)   Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.   Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions</u>.

**V.   Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.   Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

\\DE - 753343/000001 - 3225273 v1

A-99

# EXHIBIT E

A-100

# Pearlstein McCullough & Lederman LLP

641 Lexington Avenue • Suite 1327 • New York, NY 10022 • T: 646.762.7263 • F: 866.941.7720 • wpearlstein@pmcounsel.com

July 5, 2018

By Registered Mail
Administration fédérale des douanes
Monbijoustrasse 40
3011 Berne
Attn:  Dr. Christian BOCK, Directeur

Re: Demand for Release of Antiquities;
Notice of Threatened Litigation

Dear Directeur:

We are counsel to William and Lynda Beierwaltes (the "*Beierwaltes*"). The Beierwaltes are citizens of the United States and residents of the State of Colorado. We are also counsel to Hicham Aboutaam. Hicham Aboutaam is a citizen of the United States and a resident of the State of New York.

As stated in more detail below, this is to demand that you cause the release of approximately $98 million in antiquities owned by our clients, failing which we will commence litigation in U.S. court against the Swiss federal government and the Canton of Geneva.

**Background**

**The Beierwaltes.** Through the 1990s the Beierwaltes assembled one of the world's leading private collections of ancient art. The Beierwaltes acquired this material in good faith from reputable international dealers and auction houses. On June 1, 2006, the Beierwaltes signed an Exclusive Dealer Agreement (the "*2006 Agreement*") with Phoenix Ancient Art S.A. ("*Phoenix*"). Phoenix is perhaps the world's leading dealer of antiquities and ancient art. Under the 2006 Agreement, the Beierwaltes consigned substantially all their collection to Phoenix for sale and shipped the material from Colorado to Geneva.

In May 2013, the Beierwaltes filed a voluntary bankruptcy petition under the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Colorado. In July 2013, the Bankruptcy Court approved the engagement of Phoenix to assist the Beierwaltes in marketing and selling their art collection. The Beierwaltes' art collection was then and remains now the Beierwaltes' largest liquid asset. The Beierwaltes' Plan of Reorganization became effective in June 2014 after it was approved by their creditors. Central to the Plan is the ability of Phoenix to market and sell the Beierwaltes' antiquities to raise funds for the payment of their creditors. Eighteen (18) objects with a fair market value of about $8 million remain on consignment with Phoenix.

**Hicham Aboutaam**. Hicham Aboutaam and his brother, Ali Aboutaam, founded Phoenix in Geneva in the mid-1990's with their father, Sleiman Aboutaam. Sleiman started the family business in 1968 in Beirut, Lebanon. Today, Ali Aboutaam manages Phoenix's gallery in Geneva (with two locations) and Hicham manages the gallery in New York operated by a New York company d/b/a Electrum ("*Electrum*"), as Exclusive Agent of Phoenix.

Hicham and Ali Aboutaam inherited a large collection of ancient art from their father. This included Greek, Roman and Hellenistic material, material from Ancient Egypt, Near Eastern material, and material from regions that fell within the cultural influence of those civilizations during ancient times. Since they founded the business in Geneva with their father, Hicham and Ali Aboutaam have increased the inventory of their business, bought and sold thousands of objects on the international market, exhibited material openly at both galleries, exhibited material openly in numerous art fairs in Europe and America, published dozens of catalogues of their inventory, and maintain three web-sites with an extensive on-line catalogue of more than 1,000 objects in their inventory with the history of exhibition and publication of each piece. The Aboutaams have been distinguished by their scholarship, the exceptional quality of their material and their transparency.

The Aboutaams have also been distinguished by the care they take to establish the provenance (history of ownership or chain of title) and provenience (country of origin or place of discovery or excavation) of the material that they offer for sale. Since the late 1990's, museums and auction houses in the U.S. and Europe have become increasingly careful about accepting only well-provenanced antiquities as gifts, loans or consignments. These stricter institutional standards have necessarily been reflected in the private market among collectors and dealers. Phoenix and Electrum thus employ a full-time staff of highly-qualified curators who are trained to the highest academic standards of provenance research, and they are careful to comply with (or exceed) the standard of care required by leading international dealer associations in the antiquities field.

The Aboutaams generally acquire their material from well-known international private art dealers in New York or Europe, leading international auction houses, or private collectors (often old family collections). Because of the public scrutiny under which they operate, they take care to be *bona fide* purchasers with no notice of adverse claims by any third party, including any country of origin. They purchase each object in reliance on representations from their sellers and the absence of any thefts reported to publicly-available databases of stolen art, such as the Art Loss Register. In purchases from dealers in the United States, the Aboutaams rely on statutory warranties of title and merchantability under the Uniform Commercial Code. In purchases at public auction, they rely on warranties of title and "authorship" from the auction house. They are extremely careful to avoid material that is likely to have been freshly looted, illegally excavated, or stolen. Their pre-purchase "due-diligence" on potential acquisitions focusses on identifying any "red flags" that might call into question the legality of the material.

We are informed that Hicham Aboutaam inherited from his father all of the "frozen" objects that he has stored with or consigned for sale to Phoenix in Geneva. Mr. Aboutaam has owned all of this material for at least 20 years. All of these objects are "old and cold." The fair market value of this material is approximately $90 million.

A-102

**The Denunciation and the Freezing Orders**. Commencing in February 2017, the Canton de Genève (acting through its Ministère Public ("*MP*")) and the Département fédéral des finances, Administration fédérale des douanes ("*AFD*") have taken action against Phoenix that has "frozen" all of the material owned by the Beierwaltes and Hicham Aboutaam. In particular, the AFD issued a Mandat de perquisition dated February 28, 2017 and the MP issued an Ordonnance de Perquisition et de Séquestre dated February 24, 2017. The Ordonnance refers to a "denunciation de l'Office fédéral de la Culture" ("*OFC*") given to the AFD on January 17, 2017.

We believe that the OFC issued the denunciation on the basis of unfounded and possibly slanderous allegations made against Phoenix by certain anti-market Swiss and German archeologists. These allegations are based on the incorrect assumption that all archeological material has been illegally looted and must be returned to some indeterminate country of origin.

The actions of the AFD, OFC and MP have prevented Phoenix from marketing and selling the material owned by the Beierwaltes and Mr. Aboutaam. In the Beirwaltes' case, they have prevented the Beierwaltes from paying their creditors with the proceeds of sale, thus frustrating the purposes of the U.S. Bankruptcy Court. These actions against Phoenix amount to a forfeiture or seizure of personal property acquired in good faith and lawfully owned by our clients in violation of Swiss law and international law.

Attached for your review are copies of the following: two letters dated May 7, 2018 from me[1] on behalf of the Beierwaltes and Mr. Aboutaam to Claudio Mascotto, a prosecutor for the MP; two letters dated May 11, 2018 from Mr. Mascotto to me; my letter dated June 6, 2018 to Mr. Mascotto; and Mr. Mascotto's letter to me dated June 12, 2018.

As you can see from the letters, Mr. Mascotto has failed to state a legal basis for his actions. Instead, he has made only vague, unsupported allegations of suspected violations of the Swiss "Loi sur le transfert des biens culturels" ("*LTBC*"). He has failed to specify what provisions of the LTBC have been violated or to allege any specific facts relating to any of the frozen objects that violate the LTBC. We have been advised by Swiss counsel that none of the frozen antiquities violates the LTBC and that Mr. Mascotto's demands for information from our clients are without legal basis. In sum, Mr. Mascotto's response amounts to nothing more than an exercise in delay, evasion and prosecutorial abuse.

We believe that the MP intends to hold the objects indefinitely pending the outcome of the ongoing investigation of Phoenix, and then, at some future date, restitute the objects without compensation to some arbitrarily selected countries of origin.

---

[1] I have not included the schedules of objects confiscated from the Beierwaltes and Mr. Aboutaam attached to these letters; the lists of Mr. Aboutaam's property are voluminous.

A-103

**Demand for Release; Notice of Pending Litigation**

We hereby repeat our demand that you immediately and unconditionally cause the release all of the objects owned by our clients and allow Phoenix to resume marketing, selling and shipping those objects on an unrestricted basis.

If you fail to do so within 10 days after your receipt of this letter, we intend to commence litigation against the Canton de Genève (acting through the Ministère Public) and the Confédération helvétique (acting through the AFD and the OFC) in federal or state courts in the United States. Our causes of action will include, among others, wrongful seizure, conversion, replevin, theft, and a request for declaratory judgment as to title. We will seek monetary damages equal to the fair market value of the antiquities that have been seized; i.e., approximately US $8 million with respect to the Beierwaltes and $90 million with respect to Hicham Aboutaam.

Please be advised that copies of this letter have been sent to the following persons: Monsieur Olivier Jornot, Procureur général, République et Canton de Genève; Monsieur Pierre Maudet, Président du Conseil d'Etat, République et Canton de Genève; Monsieur Ueli Maurer, Conseiller Fédéral, Département Fédéral des Finances.

I look forward to your reply.

All rights and remedies are hereby reserved under the laws of Colorado, New York and Switzerland.

Very truly yours,

Pearlstein McCullough & Lederman LLP

4

# Pearlstein McCullough & Lederman LLP

641 Lexington Avenue • Suite 1327 • New York, NY 10022 • T: 646.762.7263 • F: 866.941.7720 • wpearlstein@pmcounsel.com

July 5, 2018

By Registered Mail
République et Canton de Genève
Conseil d'Etat
Département Présidentiel
Rue de l'Hôtel-de-Ville 2
Case postale 3964
1211 Genève 3
Attn:   Monsieur Pierre MAUDET
        Président du Conseil d'Etat

Re: Demand for Release of Antiquities;
Notice of Threatened Litigation

Dear Président du Conseil d'Etat:

We are counsel to William and Lynda Beierwaltes (the "*Beierwaltes*"). The Beierwaltes are citizens of the United States and residents of the State of Colorado. We are also counsel to Hicham Aboutaam. Hicham Aboutaam is a citizen of the United States and a resident of the State of New York.

As stated in more detail below, this is to demand that you cause the release of approximately $98 million in antiquities owned by our clients, failing which we will commence litigation in U.S. court against the Swiss federal government and the Canton of Geneva.

**Background**

**The Beierwaltes.** Through the 1990s the Beierwaltes assembled one of the world's leading private collections of ancient art. The Beierwaltes acquired this material in good faith from reputable international dealers and auction houses. On June 1, 2006, the Beierwaltes signed an Exclusive Dealer Agreement (the "*2006 Agreement*") with Phoenix Ancient Art S.A. ("*Phoenix*"). Phoenix is perhaps the world's leading dealer of antiquities and ancient art. Under the 2006 Agreement, the Beierwaltes consigned substantially all their collection to Phoenix for sale and shipped the material from Colorado to Geneva.

In May 2013, the Beierwaltes filed a voluntary bankruptcy petition under the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Colorado. In July 2013, the Bankruptcy Court approved the engagement of Phoenix to assist the Beierwaltes in marketing and selling their art collection. The Beierwaltes' art collection was then and remains now the Beierwaltes' largest liquid asset. The Beierwaltes' Plan of Reorganization

1

became effective in June 2014 after it was approved by their creditors. Central to the Plan is the ability of Phoenix to market and sell the Beierwaltes' antiquities to raise funds for the payment of their creditors. Eighteen (18) objects with a fair market value of about $8 million remain on consignment with Phoenix.

**Hicham Aboutaam**. Hicham Aboutaam and his brother, Ali Aboutaam, founded Phoenix in Geneva in the mid-1990's with their father, Sleiman Aboutaam. Sleiman started the family business in 1968 in Beirut, Lebanon. Today, Ali Aboutaam manages Phoenix's gallery in Geneva (with two locations) and Hicham manages the gallery in New York operated by a New York company d/b/a Electrum ("*Electrum*"), as Exclusive Agent of Phoenix.

Hicham and Ali Aboutaam inherited a large collection of ancient art from their father. This included Greek, Roman and Hellenistic material, material from Ancient Egypt, Near Eastern material, and material from regions that fell within the cultural influence of those civilizations during ancient times. Since they founded the business in Geneva with their father, Hicham and Ali Aboutaam have increased the inventory of their business, bought and sold thousands of objects on the international market, exhibited material openly at both galleries, exhibited material openly in numerous art fairs in Europe and America, published dozens of catalogues of their inventory, and maintain three web-sites with an extensive on-line catalogue of more than 1,000 objects in their inventory with the history of exhibition and publication of each piece. The Aboutaams have been distinguished by their scholarship, the exceptional quality of their material and their transparency.

The Aboutaams have also been distinguished by the care they take to establish the provenance (history of ownership or chain of title) and provenience (country of origin or place of discovery or excavation) of the material that they offer for sale. Since the late 1990's, museums and auction houses in the U.S. and Europe have become increasingly careful about accepting only well-provenanced antiquities as gifts, loans or consignments. These stricter institutional standards have necessarily been reflected in the private market among collectors and dealers. Phoenix and Electrum thus employ a full-time staff of highly-qualified curators who are trained to the highest academic standards of provenance research, and they are careful to comply with (or exceed) the standard of care required by leading international dealer associations in the antiquities field.

The Aboutaams generally acquire their material from well-known international private art dealers in New York or Europe, leading international auction houses, or private collectors (often old family collections). Because of the public scrutiny under which they operate, they take care to be *bona fide* purchasers with no notice of adverse claims by any third party, including any country of origin. They purchase each object in reliance on representations from their sellers and the absence of any thefts reported to publicly-available databases of stolen art, such as the Art Loss Register. In purchases from dealers in the United States, the Aboutaams rely on statutory warranties of title and merchantability under the Uniform Commercial Code. In purchases at public auction, they rely on warranties of title and "authorship" from the auction house. They are extremely careful to avoid material that is likely to have been freshly looted, illegally excavated, or stolen. Their pre-purchase "due-diligence" on potential acquisitions focusses on identifying any "red flags" that might call into question the legality of the material.

A-106

We are informed that Hicham Aboutaam inherited from his father all of the "frozen" objects that he has stored with or consigned for sale to Phoenix in Geneva. Mr. Aboutaam has owned all of this material for at least 20 years. All of these objects are "old and cold." The fair market value of this material is approximately $90 million.

**The Denunciation and the Freezing Orders**. Commencing in February 2017, the Canton de Genève (acting through its Ministère Public ("*MP*")) and the Département fédéral des finances, Administration fédérale des douanes ("*AFD*") have taken action against Phoenix that has "frozen" all of the material owned by the Beierwaltes and Hicham Aboutaam. In particular, the AFD issued a Mandat de perquisition dated February 28, 2017 and the MP issued an Ordonnance de Perquisition et de Séquestre dated February 24, 2017. The Ordonnance refers to a "denunciation de l'Office fédéral de la Culture" ("*OFC*") given to the AFD on January 17, 2017.

We believe that the OFC issued the denunciation on the basis of unfounded and possibly slanderous allegations made against Phoenix by certain anti-market Swiss and German archeologists. These allegations are based on the incorrect assumption that all archeological material has been illegally looted and must be returned to some indeterminate country of origin.

The actions of the AFD, OFC and MP have prevented Phoenix from marketing and selling the material owned by the Beierwaltes and Mr. Aboutaam. In the Beirwaltes' case, they have prevented the Beierwaltes from paying their creditors with the proceeds of sale, thus frustrating the purposes of the U.S. Bankruptcy Court. These actions against Phoenix amount to a forfeiture or seizure of personal property acquired in good faith and lawfully owned by our clients in violation of Swiss law and international law.

Attached for your review are copies of the following: two letters dated May 7, 2018 from me[1] on behalf of the Beierwaltes and Mr. Aboutaam to Claudio Mascotto, a prosecutor for the MP; two letters dated May 11, 2018 from Mr. Mascotto to me; my letter dated June 6, 2018 to Mr. Mascotto; and Mr. Mascotto's letter to me dated June 12, 2018.

As you can see from the letters, Mr. Mascotto has failed to state a legal basis for his actions. Instead, he has made only vague, unsupported allegations of suspected violations of the Swiss "Loi sur le transfert des biens culturels" ("*LTBC*"). He has failed to specify what provisions of the LTBC have been violated or to allege any specific facts relating to any of the frozen objects that violate the LTBC. We have been advised by Swiss counsel that none of the frozen antiquities violates the LTBC and that Mr. Mascotto's demands for information from our clients are without legal basis. In sum, Mr. Mascotto's response amounts to nothing more than an exercise in delay, evasion and prosecutorial abuse.

We believe that the MP intends to hold the objects indefinitely pending the outcome of the ongoing investigation of Phoenix, and then, at some future date, restitute the objects without compensation to some arbitrarily selected countries of origin.

---

[1] I have not included the schedules of objects confiscated from the Beierwaltes and Mr. Aboutaam attached to these letters; the lists of Mr. Aboutaam's property are voluminous.

A-107

**Demand for Release; Notice of Pending Litigation**

      We hereby repeat our demand that you immediately and unconditionally cause the release all of the objects owned by our clients and allow Phoenix to resume marketing, selling and shipping those objects on an unrestricted basis.

      If you fail to do so within 10 days after your receipt of this letter, we intend to commence litigation against the Canton de Genève (acting through the Ministère Public) and the Confédération helvétique (acting through the AFD and the OFC) in federal or state courts in the United States. Our causes of action will include, among others, wrongful seizure, conversion, replevin, theft, and a request for declaratory judgment as to title. We will seek monetary damages equal to the fair market value of the antiquities that have been seized; i.e., approximately US $8 million with respect to the Beierwaltes and $90 million with respect to Hicham Aboutaam.

      Please be advised that copies of this letter have been sent to the following persons: Monsieur Olivier Jornot, Procureur général, République et Canton de Genève; Dr. Christian Bock, Directeur, Administration féderale des douanes; Monsieur Ueli Maurer, Conseiller Fédéral, Département Fédéral des Finances.

      I look forward to your reply.

      All rights and remedies are hereby reserved under the laws of Colorado, New York and Switzerland.

                  Very truly yours,

                  Pearlstein McCullough & Lederman LLP

4

A-108

# Pearlstein McCullough & Lederman LLP

641 Lexington Avenue • Suite 1327 • New York, NY 10022 • T: 646.762.7263 • F: 866.941.7720 • wpearlstein@pmcounsel.com

July 5, 2018

By Registered Mail
Département Fédéral des Finances
By des gases 3
3003 Berne
Attn:  Monsieur Ueli MAURER,
       Conseiller Fédéral

Re: Demand for Release of Antiquities;
Notice of Threatened Litigation

Dear Conseiller Fédéral:

We are counsel to William and Lynda Beierwaltes (the "*Beierwaltes*"). The Beierwaltes are citizens of the United States and residents of the State of Colorado. We are also counsel to Hicham Aboutaam. Hicham Aboutaam is a citizen of the United States and a resident of the State of New York.

As stated in more detail below, this is to demand that you cause the release of approximately $98 million in antiquities owned by our clients, failing which we will commence litigation in U.S. court against the Swiss federal government and the Canton of Geneva.

**Background**

**The Beierwaltes.** Through the 1990s the Beierwaltes assembled one of the world's leading private collections of ancient art. The Beierwaltes acquired this material in good faith from reputable international dealers and auction houses. On June 1, 2006, the Beierwaltes signed an Exclusive Dealer Agreement (the "*2006 Agreement*") with Phoenix Ancient Art S.A. ("*Phoenix*"). Phoenix is perhaps the world's leading dealer of antiquities and ancient art. Under the 2006 Agreement, the Beierwaltes consigned substantially all their collection to Phoenix for sale and shipped the material from Colorado to Geneva.

In May 2013, the Beierwaltes filed a voluntary bankruptcy petition under the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Colorado. In July 2013, the Bankruptcy Court approved the engagement of Phoenix to assist the Beierwaltes in marketing and selling their art collection. The Beierwaltes' art collection was then and remains now the Beierwaltes' largest liquid asset. The Beierwaltes' Plan of Reorganization became effective in June 2014 after it was approved by their creditors. Central to the Plan is the ability of Phoenix to market and sell the Beierwaltes' antiquities to raise funds for the payment

1

of their creditors. Eighteen (18) objects with a fair market value of about $8 million remain on consignment with Phoenix.

**Hicham Aboutaam**. Hicham Aboutaam and his brother, Ali Aboutaam, founded Phoenix in Geneva in the mid-1990's with their father, Sleiman Aboutaam. Sleiman started the family business in 1968 in Beirut, Lebanon. Today, Ali Aboutaam manages Phoenix's gallery in Geneva (with two locations) and Hicham manages the gallery in New York operated by a New York company d/b/a Electrum ("*Electrum*"), as Exclusive Agent of Phoenix.

Hicham and Ali Aboutaam inherited a large collection of ancient art from their father. This included Greek, Roman and Hellenistic material, material from Ancient Egypt, Near Eastern material, and material from regions that fell within the cultural influence of those civilizations during ancient times. Since they founded the business in Geneva with their father, Hicham and Ali Aboutaam have increased the inventory of their business, bought and sold thousands of objects on the international market, exhibited material openly at both galleries, exhibited material openly in numerous art fairs in Europe and America, published dozens of catalogues of their inventory, and maintain three web-sites with an extensive on-line catalogue of more than 1,000 objects in their inventory with the history of exhibition and publication of each piece. The Aboutaams have been distinguished by their scholarship, the exceptional quality of their material and their transparency.

The Aboutaams have also been distinguished by the care they take to establish the provenance (history of ownership or chain of title) and provenience (country of origin or place of discovery or excavation) of the material that they offer for sale. Since the late 1990's, museums and auction houses in the U.S. and Europe have become increasingly careful about accepting only well-provenanced antiquities as gifts, loans or consignments. These stricter institutional standards have necessarily been reflected in the private market among collectors and dealers. Phoenix and Electrum thus employ a full-time staff of highly-qualified curators who are trained to the highest academic standards of provenance research, and they are careful to comply with (or exceed) the standard of care required by leading international dealer associations in the antiquities field.

The Aboutaams generally acquire their material from well-known international private art dealers in New York or Europe, leading international auction houses, or private collectors (often old family collections). Because of the public scrutiny under which they operate, they take care to be *bona fide* purchasers with no notice of adverse claims by any third party, including any country of origin. They purchase each object in reliance on representations from their sellers and the absence of any thefts reported to publicly-available databases of stolen art, such as the Art Loss Register. In purchases from dealers in the United States, the Aboutaams rely on statutory warranties of title and merchantability under the Uniform Commercial Code. In purchases at public auction, they rely on warranties of title and "authorship" from the auction house. They are extremely careful to avoid material that is likely to have been freshly looted, illegally excavated, or stolen. Their pre-purchase "due-diligence" on potential acquisitions focusses on identifying any "red flags" that might call into question the legality of the material.

We are informed that Hicham Aboutaam inherited from his father all of the "frozen" objects that he has stored with or consigned for sale to Phoenix in Geneva. Mr. Aboutaam has owned all of this material for at least 20 years. All of these objects are "old and cold." The fair market value of this material is approximately $90 million.

**The Denunciation and the Freezing Orders.** Commencing in February 2017, the Canton de Genève (acting through its Ministère Public ("*MP*")) and the Département fédéral des finances, Administration fédérale des douanes ("*AFD*") have taken action against Phoenix that has "frozen" all of the material owned by the Beierwaltes and Hicham Aboutaam. In particular, the AFD issued a Mandat de perquisition dated February 28, 2017 and the MP issued an Ordonnance de Perquisition et de Séquestre dated February 24, 2017. The Ordonnance refers to a "denunciation de l'Office fédéral de la Culture" ("*OFC*") given to the AFD on January 17, 2017.

We believe that the OFC issued the denunciation on the basis of unfounded and possibly slanderous allegations made against Phoenix by certain anti-market Swiss and German archeologists. These allegations are based on the incorrect assumption that all archeological material has been illegally looted and must be returned to some indeterminate country of origin.

The actions of the AFD, OFC and MP have prevented Phoenix from marketing and selling the material owned by the Beierwaltes and Mr. Aboutaam. In the Beirwaltes' case, they have prevented the Beierwaltes from paying their creditors with the proceeds of sale, thus frustrating the purposes of the U.S. Bankruptcy Court. These actions against Phoenix amount to a forfeiture or seizure of personal property acquired in good faith and lawfully owned by our clients in violation of Swiss law and international law.

Attached for your review are copies of the following: two letters dated May 7, 2018 from me[1] on behalf of the Beierwaltes and Mr. Aboutaam to Claudio Mascotto, a prosecutor for the MP; two letters dated May 11, 2018 from Mr. Mascotto to me; my letter dated June 6, 2018 to Mr. Mascotto; and Mr. Mascotto's letter to me dated June 12, 2018.

As you can see from the letters, Mr. Mascotto has failed to state a legal basis for his actions. Instead, he has made only vague, unsupported allegations of suspected violations of the Swiss "Loi sur le transfert des biens culturels" ("*LTBC*"). He has failed to specify what provisions of the LTBC have been violated or to allege any specific facts relating to any of the frozen objects that violate the LTBC. We have been advised by Swiss counsel that none of the frozen antiquities violates the LTBC and that Mr. Mascotto's demands for information from our clients are without legal basis. In sum, Mr. Mascotto's response amounts to nothing more than an exercise in delay, evasion and prosecutorial abuse.

We believe that the MP intends to hold the objects indefinitely pending the outcome of the ongoing investigation of Phoenix, and then, at some future date, restitute the objects without compensation to some arbitrarily selected countries of origin.

---

[1] I have not included the schedules of objects confiscated from the Beierwaltes and Mr. Aboutaam attached to these letters; the lists of Mr. Aboutaam's property are voluminous.

A-111

**Demand for Release; Notice of Pending Litigation**

We hereby repeat our demand that you immediately and unconditionally cause the release all of the objects owned by our clients and allow Phoenix to resume marketing, selling and shipping those objects on an unrestricted basis.

If you fail to do so within 10 days after your receipt of this letter, we intend to commence litigation against the Canton de Genève (acting through the Ministère Public) and the Confédération helvétique (acting through the AFD and the OFC) in federal or state courts in the United States. Our causes of action will include, among others, wrongful seizure, conversion, replevin, theft, and a request for declaratory judgment as to title. We will seek monetary damages equal to the fair market value of the antiquities that have been seized; i.e., approximately US $8 million with respect to the Beierwaltes and $90 million with respect to Hicham Aboutaam.

Please be advised that copies of this letter have been sent to the following persons: Monsieur Olivier Jornot, Procureur général, République et Canton de Genève; Monsieur Pierre Maudet, Président du Conseil d'Etat, République et Canton de Genève; Dr. Christian Bock, Directeur, Administration fédérale des douanes.

I look forward to your reply.

All rights and remedies are hereby reserved under the laws of Colorado, New York and Switzerland.

Very truly yours,

Pearlstein McCullough & Lederman LLP

4

**A-112**

# Pearlstein McCullough & Lederman LLP

641 Lexington Avenue • Suite 1327 • New York, NY 10022 • T: 646.762.7263 • F: 866.941.7720 • wpearlstein@pmcounsel.com

July 5, 2018

<u>By Registered Mail</u>
République et Canton de Genève
Pouvoir judiciaire
Ministère Public
Route de Chancy 6B
Case Postale 3565
1211 Genève 3
Attn:   Monsieur Olivier JORNOT
         Procureur général

Re: Demand for Release of Antiquities;
<u>Notice of Threatened Litigation</u>

Dear Procureur général:

We are counsel to William and Lynda Beierwaltes (the "*Beierwaltes*"). The Beierwaltes are citizens of the United States and residents of the State of Colorado. We are also counsel to Hicham Aboutaam. Hicham Aboutaam is a citizen of the United States and a resident of the State of New York.

As stated in more detail below, this is to demand that you cause the release of approximately $98 million in antiquities owned by our clients, failing which we will commence litigation in U.S. court against the Swiss federal government and the Canton of Geneva.

**Background**

**The Beierwaltes.** Through the 1990s the Beierwaltes assembled one of the world's leading private collections of ancient art. The Beierwaltes acquired this material in good faith from reputable international dealers and auction houses. On June 1, 2006, the Beierwaltes signed an Exclusive Dealer Agreement (the "*2006 Agreement*") with Phoenix Ancient Art S.A. ("*Phoenix*"). Phoenix is perhaps the world's leading dealer of antiquities and ancient art. Under the 2006 Agreement, the Beierwaltes consigned substantially all their collection to Phoenix for sale and shipped the material from Colorado to Geneva.

In May 2013, the Beierwaltes filed a voluntary bankruptcy petition under the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Colorado. In July 2013, the Bankruptcy Court approved the engagement of Phoenix to assist the Beierwaltes in marketing and selling their art collection. The Beierwaltes' art collection was then and remains now the Beierwaltes' largest liquid asset. The Beierwaltes' Plan of Reorganization

1

became effective in June 2014 after it was approved by their creditors. Central to the Plan is the ability of Phoenix to market and sell the Beierwaltes' antiquities to raise funds for the payment of their creditors. Eighteen (18) objects with a fair market value of about $8 million remain on consignment with Phoenix.

**Hicham Aboutaam**. Hicham Aboutaam and his brother, Ali Aboutaam, founded Phoenix in Geneva in the mid-1990's with their father, Sleiman Aboutaam. Sleiman started the family business in 1968 in Beirut, Lebanon. Today, Ali Aboutaam manages Phoenix's gallery in Geneva (with two locations) and Hicham manages the gallery in New York operated by a New York company d/b/a Electrum ("*Electrum*"), as Exclusive Agent of Phoenix.

Hicham and Ali Aboutaam inherited a large collection of ancient art from their father. This included Greek, Roman and Hellenistic material, material from Ancient Egypt, Near Eastern material, and material from regions that fell within the cultural influence of those civilizations during ancient times. Since they founded the business in Geneva with their father, Hicham and Ali Aboutaam have increased the inventory of their business, bought and sold thousands of objects on the international market, exhibited material openly at both galleries, exhibited material openly in numerous art fairs in Europe and America, published dozens of catalogues of their inventory, and maintain three web-sites with an extensive on-line catalogue of more than 1,000 objects in their inventory with the history of exhibition and publication of each piece. The Aboutaams have been distinguished by their scholarship, the exceptional quality of their material and their transparency.

The Aboutaams have also been distinguished by the care they take to establish the provenance (history of ownership or chain of title) and provenience (country of origin or place of discovery or excavation) of the material that they offer for sale. Since the late 1990's, museums and auction houses in the U.S. and Europe have become increasingly careful about accepting only well-provenanced antiquities as gifts, loans or consignments.  These stricter institutional standards have necessarily been reflected in the private market among collectors and dealers. Phoenix and Electrum thus employ a full-time staff of highly-qualified curators who are trained to the highest academic standards of provenance research, and they are careful to comply with (or exceed) the standard of care required by leading international dealer associations in the antiquities field.

The Aboutaams generally acquire their material from well-known international private art dealers in New York or Europe, leading international auction houses, or private collectors (often old family collections). Because of the public scrutiny under which they operate, they take care to be *bona fide* purchasers with no notice of adverse claims by any third party, including any country of origin. They purchase each object in reliance on representations from their sellers and the absence of any thefts reported to publicly-available databases of stolen art, such as the Art Loss Register. In purchases from dealers in the United States, the Aboutaams rely on statutory warranties of title and merchantability under the Uniform Commercial Code. In purchases at public auction, they rely on warranties of title and "authorship" from the auction house. They are extremely careful to avoid material that is likely to have been freshly looted, illegally excavated, or stolen. Their pre-purchase "due-diligence" on potential acquisitions focusses on identifying any "red flags" that might call into question the legality of the material.

We are informed that Hicham Aboutaam inherited from his father all of the "frozen" objects that he has stored with or consigned for sale to Phoenix in Geneva. Mr. Aboutaam has owned all of this material for at least 20 years. All of these objects are "old and cold." The fair market value of this material is approximately $90 million.

**The Denunciation and the Freezing Orders**. Commencing in February 2017, the Canton de Genève (acting through its Ministère Public ("*MP*")) and the Département fédéral des finances, Administration fédérale des douanes ("*AFD*") have taken action against Phoenix that has "frozen" all of the material owned by the Beierwaltes and Hicham Aboutaam. In particular, the AFD issued a Mandat de perquisition dated February 28, 2017 and the MP issued an Ordonnance de Perquisition et de Séquestre dated February 24, 2017. The Ordonnance refers to a "denunciation de l'Office fédéral de la Culture" ("*OFC*") given to the AFD on January 17, 2017.

We believe that the OFC issued the denunciation on the basis of unfounded and possibly slanderous allegations made against Phoenix by certain anti-market Swiss and German archeologists. These allegations are based on the incorrect assumption that all archeological material has been illegally looted and must be returned to some indeterminate country of origin.

The actions of the AFD, OFC and MP have prevented Phoenix from marketing and selling the material owned by the Beierwaltes and Mr. Aboutaam. In the Beirwaltes' case, they have prevented the Beierwaltes from paying their creditors with the proceeds of sale, thus frustrating the purposes of the U.S. Bankruptcy Court. These actions against Phoenix amount to a forfeiture or seizure of personal property acquired in good faith and lawfully owned by our clients in violation of Swiss law and international law.

Attached for your review are copies of the following: two letters dated May 7, 2018 from me[1] on behalf of the Beierwaltes and Mr. Aboutaam to Claudio Mascotto, a prosecutor for the MP; two letters dated May 11, 2018 from Mr. Mascotto to me; my letter dated June 6, 2018 to Mr. Mascotto; and Mr. Mascotto's letter to me dated June 12, 2018.

As you can see from the letters, Mr. Mascotto has failed to state a legal basis for his actions. Instead, he has made only vague, unsupported allegations of suspected violations of the Swiss "Loi sur le transfert des biens culturels" ("*LTBC*"). He has failed to specify what provisions of the LTBC have been violated or to allege any specific facts relating to any of the frozen objects that violate the LTBC. We have been advised by Swiss counsel that none of the frozen antiquities violates the LTBC and that Mr. Mascotto's demands for information from our clients are without legal basis. In sum, Mr. Mascotto's response amounts to nothing more than an exercise in delay, evasion and prosecutorial abuse.

We believe that the MP intends to hold the objects indefinitely pending the outcome of the ongoing investigation of Phoenix, and then, at some future date, restitute the objects without compensation to some arbitrarily selected countries of origin.

---

[1] I have not included the schedules of objects confiscated from the Beierwaltes and Mr. Aboutaam attached to these letters; the lists of Mr. Aboutaam's property are voluminous.

**Demand for Release; Notice of Pending Litigation**

We hereby repeat our demand that you immediately and unconditionally cause the release all of the objects owned by our clients and allow Phoenix to resume marketing, selling and shipping those objects on an unrestricted basis.

If you fail to do so within 10 days after your receipt of this letter, we intend to commence litigation against the Canton de Genève (acting through the Ministère Public) and the Confédération helvétique (acting through the AFD and the OFC) in federal or state courts in the United States. Our causes of action will include, among others, wrongful seizure, conversion, replevin, theft, and a request for declaratory judgment as to title. We will seek monetary damages equal to the fair market value of the antiquities that have been seized; i.e., approximately US $8 million with respect to the Beierwaltes and $90 million with respect to Hicham Aboutaam.

Please be advised that copies of this letter have been sent to the following persons: Monsieur Pierre Maudet, President du Conseil d'Etat, République et Canton de Genève; Dr. Christian Bock, Directeur, Administration fédérale des douanes; Monsieur Ueli Maurer, Conseiller Fédéral, Département Fédéral des Finances.

I look forward to your reply.

All rights and remedies are hereby reserved under the laws of Colorado, New York and Switzerland.

Very truly yours,

Pearlstein McCullough & Lederman LLP

4

A-116

# EXHIBIT F

**A-117**



Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

Département fédéral des finances DFF

**Administration fédérale des douanes AFD**

<u>CH-3003 Berne, EZV, EZV/STRB</u>

Pearlstein McCullough & Lederman LLP
Lexington Avenue 641
Suite 1327
10022 New York
United States

Dossier traité par: BIM/EsF
Berne, le 20 juillet 2018

Re : Demand(s) for Release of Antiquities ;
<u>Notice of Threatened Litigation</u>

Maître,

Votre écrit du 5 juillet 2018 a retenu ma meilleure attention.

La langue de la procédure pénale administrative en cause est le français. Dès lors, au nom de Monsieur le Conseiller fédéral Ulrich Maurer et de moi-même, je me permets de vous répondre en cette langue.

Comme vous le relevez à juste titre, l'une des questions essentielles qui se pose dans l'affaire mentionnée est de clarifier si, en bref, les biens saisis, ou une partie d'entre eux, répondent à la définition légale de biens culturels au sens de la LTBC[1] et devraient être restitués à l'Etat dont ils proviennent. Cette question relève de la compétence exclusive du Ministère public du Canton de Genève, en collaboration avec l'Office fédéral de la culture. Je ne saurais dès lors prendre position à cet égard et vous renvoie respectueusement aux lignes que vous a adressées Monsieur le Procureur Claudio Mascotto.

S'agissant de l'aspect de l'affaire relevant de la compétence de l'Administration fédérale des douanes (AFD), il s'agit de déterminer si les biens concernés ont été dûment annoncés et déclarés à leur entrée en Suisse selon la législation douanière en vigueur et ont fait l'objet des formalités qui s'imposaient au vu des circonstances du cas. Si tel n'a pas été le cas ou qu'il existe des doutes fondés à cet égard, les biens peuvent être retenus comme moyens de preuve de l'irrespect des règles légales en matière d'importation et comme garantie pour le paiement des redevances d'entrée en jeu ainsi que des amendes susceptibles d'être prononcées pour sanctionner ledit irrespect (art. 46 DPA[2] et 82-83 LD[3]).

---

[1] Loi fédérale du 20 juin 2003 sur le transfert international des biens culturels (LTBC ; RS 444.1)
[2] Loi fédérale du 22 mars 1974 sur le droit pénal administratif ; RS 313.0
[3] Loi sur les douanes du 18 mars 2005 ; RS 631.0

Administration fédérale des douanes, Secrétariat de direction
+41 58 466 89 23
Monbijoustrasse 40, 3003 Berne

A-118

Dans l'attente de la détermination des responsabilités pour les éventuelles irrégularités réalisées à l'importation des marchandises, ces dernières peuvent être retenues même si, par exemple, le propriétaire n'est pas l'auteur de l'importation.

Dans l'intervalle, en ce qui concerne la procédure de l'AFD, rien n'empêche vos mandants respectifs, premièrement, d'apporter la preuve indubitable, par titre ou par autre moyen, de leur propriété légitime sur les objets saisis, et secondement, de remettre tout document douanier en leur possession attestant l'importation correcte en Suisse desdites marchandises.

Si vos mandants souhaitent intervenir dans la procédure de l'AFD par votre intermédiaire selon ce qui précède, je vous invite à nous faire parvenir, conjointement aux moyens de preuve de propriété ainsi qu'aux documents douaniers, la procuration écrite attestant vos pouvoirs de représenter Monsieur Hicham ABOU TAAM ainsi que Monsieur et Madame William et Lynda BEIERWALTES.

En vous souhaitant bonne réception de la présente, je vous prie d'agréer, Maître, l'assurance de ma considération distinguée.


Administration fédérale des douanes

i.V. *[signature]*

Christian Bock
Directeur

---

Copies (pour information) :
- au Ministère public de la République et Canton de Genève, Monsieur Claudio Mascotto, Procureur, Case postale 3565, 1211 Genève 3 ;
- au Secrétariat général du Département fédéral des finances, Madame Rahel von Kaenel, Secrétaire générale, Bundesgasse 3, 3003 Berne.

A-119

# EXHIBIT F

**A-120**

Swiss Confederation

Federal Department of Finance, DFF

**Federal Customs Administration, AFD**

<u>CH-3003 Bern, EZV, EZV/STRB</u>
Pearlstein, McCullough & Lederman LLP
Lexington Avenue 641
Suite 1327
10022 New York
United States

Dossier handled by: BIM/EsF
Bern, July 20, 2018

Re: Demand for Release of Antiquities
<u>Notice of Threatened Litigation</u>

Dear Sir:

I have carefully reviewed your letter dated July 5, 2018.

The language of the administrative criminal procedure in question is French. Accordingly, in the name of Federal Councilor Ulrich Maurer, and in my own name, I am taking the liberty of replying to you in that language.

As you rightfully note, one of the essential questions brought up in the aforementioned matter is the determination of whether, in short, the seized property (or any portion thereof) meets the legal definition of cultural property within the meaning of the Swiss Cultural Property Transfer Act (*"LTBC"*)[1] and must be returned to the nation from which it originates. This question falls within the purview of the Public Prosecutor of the Canton of Geneva, in collaboration with the Federal Office of Culture. Therefore, I would not be able to take a position in this matter and respectfully refer you to the lines that you have addressed to Prosecutor Claudio Mascotto.

With regard to the matter for which the Federal Customs Administration (AFD) is responsible, it must be determined whether the goods in question were duly announced and declared upon their entry into Switzerland according to the customs legislation in effect and were subject to the formalities imposed in view of the circumstances of the case. If this was not the case, or if there are any doubts as to whether this was the case, the property may be retained as proof of the disrespect of the legal rules regarding importation, and as a guarantee of the payment of the entry fee in question, as well as any fines likely to be declared to punish the aforementioned disrespect of the law (Article 46 DPA[2] and 82-83 LD[3]).

---

[1] Federal Law dated June 20, 2003 regarding the international transfer of cultural property (LTBC; RS 444.1)
[2] Federal Law dated March 22, 1974 regarding administrative criminal law; RS 313.0
[3] Customs law dated March 18, 2005; RS 631.0

Federal Customs Administration, Secretarial Office
+ 41 58 466 89 23
Monbijoustrasse 40, 3003 Bern
www.ezy.admin.ch

In anticipation of the determination of responsibility for any possible irregularity in the importation of these merchandise, they may be retained even if, for example, the owner was not the one who imported them.

In the meantime, with regard to the AFD procedure, nothing is preventing your respective clients, firstly, from providing unmistakable proof their legitimate ownership of the seized objects, whether through a title or through other means, or, secondly, from submitting all customs documents in their possession which attest to the proper importation of the aforementioned merchandise into Switzerland.

If, based on the above, your clients should wish to act in the AFD's suit with you acting as an intermediary, I invite you to send us the written power of attorney attesting to your power to represent Mr. Hicham ABOU TAAM as well as Mr. and Mrs. William and Lynda BEIERWALTES, along with proof of ownership and customs documents.

Best regards,

Federal Customs Administration
[Signature]
Christian Bock
Director

Copies (for reference purposes):
- to the Public Prosecutor's Office of the Republic and Canton of Geneva, Mr. Claudio Mascotto, Prosecutor, P.O. Box 3565, 1211 Geneva 3;
- to the General Secretary's Office of the Federal Department of Finance, Ms. Rahel von Kaenal, General Secretary, Bundesgasse 3, 3003 Bern.



AMERICAN LANGUAGE SERVICES

*Making the World Smaller*

# CERTIFICATION OF TRANSLATION
## AFFIDAVIT FOR TRANSLATION OF SAID DOCUMENT

American Language Services, a company specializing in the translation of documents, certifies the following:

- American Language Services has retained a professional translator for the attached French into English document.  The document is referred to as:

**"EXHIBIT FOR ABOUTAAM V. FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION ET AL.**
**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK"**

- I affirm that such translation has been prepared by a duly qualified translator, who has confirmed that such translation is, to the best of their knowledge and belief, a true and accurate translation in English of the corresponding French document.

- I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Notwithstanding the foregoing affirmations, no liability is assumed for errors and omissions in the translation of the attached document.

- Executed on this Tenth day of September, 2018, at Los Angeles, California.

REUBEN TRUJEQUE
AMERICAN LANGUAGE SERVICES

1849 SAWTELLE BLVD. SUITE 600        LOS ANGELES, CALIFORNIA 90025
TEL (310) 829-0741 FAX (310) 829-3222
translation@alsglobal.net
www.alsglobal.net

A-123

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____
   *Signature of Document Signer No. 1*          *Signature of Document Signer No. 2 (if any)*

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of   LOS ANGELES

"Exhibit for Aboutaam v. Federal Office of Culture of the Swiss Confederation et al. United States District Court for the Southern District of New York"

Subscribed and sworn to (or affirmed) before me

on this 10th day of September, 2018
by     *Date*            *Month*          *Year*
(1)   REUBEN TRUJEQUE

(and 2) _____ ),
              *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

**RAMON DELGADO JR.**
Commission # 2107172
Notary Public - California
Los Angeles County
My Comm. Expires Apr 16, 2019

*Place Notary Seal and/or Stamp Above*

Signature _____
              *Signature of Notary Public*

──────────────── **OPTIONAL** ────────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
                    see above
Title or Type of Document: _____

Document Date: _____ See attached _____      Number of Pages: \_\_\_\_ 2 \_\_\_\_

Signer(s) Other Than Named Above: _____

©2017 National Notary Association

A-124

# EXHIBIT G

**A-125**



REPUBLIQUE ET CANTON DE GENEVE
Département présidentiel
**Le Président**

PRE
Case postale 3962
1211 Genève 3

Pearlstein McCullough & Lederman LPP
Attn Mr.William Pearlstein
641 Lexington Avenue, suite 1327
New York, NY 10022
United States of America

*101039-2018*

Geneva, August 2nd 2018

**Demand for the Release of Antiquities**

Dear Sir,

Your letter dated July 5th has been brought to my attention.

After further investigations, the antiquities have been sequestrated by the Federal Customs Administration (AFD) and the Public Ministry of Geneva. Therefore, according to the principles of the separation of powers, the presidential department can not interfere in the matter and do not have the authority to release your client's assets.

To demand such a release, you must contact the Public Ministry, which will, in turn, make the request to the Federal Customs Administration.

Should you be interested in having further explanations on public law requirements, I would recommend you to call Mr Claudio Mascotto, prosecutor at the Public Ministry of Geneva. You can reach his clerk on phone number: +41 22 327 68 06.

Yours faithfully,



Pierre Maudet

A-126

# EXHIBIT H

**A-127**

République et canton de Genève
**POUVOIR JUDICIAIRE**
**Ministère public**

Genève, le 2 août 2018

P/2949/2017 MSC

Ministère public
Route de Chancy 6 B
Case postale 3565
CH - 1211 GENEVE 3
www.ge.ch/justice

**R** ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
R P371 38621 0 CH
Please scan - Signature required
Veuillez scanner - Remise contre
signature

PEARLSETEIN
MCCULLOUGH&LEDERMAN
Lexington Avenue 641
Suite 1327
10022 New York
ÉTATS-UNIS

Réf : **P/2949/2017 MSC**
à rappeler lors de toute communication

**Époux Beierwaltes — votre courrier comminatoire du 5 juillet 2018**

Maître,

Le Ministère public genevois fait suite à votre courrier du 5 juillet écoulé.

Il réitère la demande qui vous avait été adressée le 11 mai 2018 déjà de coopérer à l'instruction de votre requête de levée de scellés, et qui est restée à ce jour sans réponse.

Sans votre coopération, le Ministère public ne pourra tout simplement pas se prononcer sur votre demande.

Votre attention est attirée sur le fait que :

➤ la liste des 18 objets que les époux Beierwaltes auraient selon vous confié à M. ABOU TAAM ou à ses sociétés et qui seraient séquestrés ne correspond qu'en partie à la liste des objets enregistrés comme étant liés aux époux Beierwaltes, respectivement à l'inventaire des pièces effectivement séquestrées en Suisse ;

➤ ce constat — issu des premières vérifications que nous avons conduites, dans l'attente que vous nous remettiez la preuve que vous agissez pour vos clients — fait naître l'hypothèse que (a) une ou plusieurs pièces auraient pu être aliénées à l'insu de vos clients, (b) toutes les pièces effectivement confiées n'ont pas été déclarées dans la procédure de faillite personnelle aux USA et (c) alternativement, que nombre de pièces sont enregistrées à tort en relation avec les époux Beierwaltes et à l'insu de ces derniers.

Ministère public - Tél : +41 22 327 64 63/64 - Fax : +41 22 327 65 00

Nous n'avons par ailleurs pas trouvé à ce jour de contrat signé dans la documentation que nous avons saisie, et nos demandes de coopération à M. ABOU TAAM et à ses sociétés sont restées elles aussi sans réponse.

Nous espérons vous avoir convaincu, avec ces lignes, que votre collaboration est essentielle à l'établissement des faits.

C'est bien *dans la procédure pénale suisse* qu'il appartient à vos clients d'agir, en qualité de tiers touchés, soit de parties. La requête en restitution (*replevin*) que vous envisagez indique si besoin est que cela ne vous a pas échappé. Nous comprenons de vos précédents courriers que vous avez déjà consulté un avocat genevois, et vous confirmons qu'il serait approprié de mandater un confrère du barreau de Genève pour représenter vos clients dans la procédure citée en marge.

Nous avons enfin pris note que vous menacez l'État de Genève et la Confédération suisse de poursuites civiles (*notice of threatened litigation*) en dommages-intérêts aux États-Unis, pour plusieurs dizaines de millions de USD, en portant notamment des accusations de vol (*theft*), si la levée des séquestres n'était pas ordonnée dans les dix jours.

En procédant de la sorte, vous tenteriez de vous affranchir des obligations que la loi suisse impose aux parties à une procédure pénale, et de circonvenir l'égalité des armes et la protection que le droit suisse accorde aux ayant-droit (propriétaire, possesseur, tiers revendiquant, créancier gagiste, etc.).

~~Vous semblez également qualifier de crime (vol, *theft*) l'accomplissement par les autorités~~ judiciaires et administratives étatiques suisses de leurs fonctions et compétences dans le cadre de la loi.

Nous doutons que ce type de procédé soit compatible avec les principes régissant les relations entre la Suisse et les États-Unis, et nous saisirons au besoin l'Office Fédéral de la Justice et le US Department of Justice.

En toute hypothèse, veuillez noter que la compétence géographique et matérielle des tribunaux américains, la légitimation passive des autorités suisses et le bien fondé des actions civiles que vous menacez d'intenter seront contestés.

Copie de la présente est adressée à l'Administration fédérale des douanes et à l'avocat de M. Ali ABOU TAAM et de ses sociétés, pour information.

Veuillez agréer, Maître, nos salutations distinguées.



Claudio MASCOTTO
Procureur

A-129

# EXHIBIT H

Republic and Canton of Geneva
**JUDICIAL POWER**
Public Prosecutor's Office

Geneva, August 2, 2018

P/2949/2017 MSC

Public Prosecutor's Office
Route de Chancy 6B
P.O. Box 3565
Switzerland - 1211 GENEVA 3
www.ge.ch/justice

**R** [Barcode]
R P371 38621 0 CH

POST OFFICE          Please Scan

                     Signature Required

PEARLSTEIN
MCCULLOUGH & LEDERMAN
Lexington Avenue 641
Suite 1327
10022 New York
UNITED STATES

Reference: P/2949/2017 – MSC
To be used during all communications.

Regarding: The BEIERWALTES – Your minatory letter dated July 5, 2018

Dear Sir,

The Public Prosecutor's Office of Geneva is following up on your letter dated this past July 5.

The Public Prosecutor's Office of Geneva reiterates its request, already addressed to you on May 11, 2018, to cooperate, which follows your request that the seals be lifted, and which has not been answered to this day.

Without your cooperation, the Public Prosecutor's Office will simply not be able to rule upon your request.

We would like to draw your attention to the fact that:

-   The list of the 18 objects which, according to you, the Beierwaltes entrusted to Mr. ABOU TAAM or his companies and which are sequestered, only correspond partially to the list of objects registered as being connected to the Beierwaltes, with respect to the inventory of items effectively sequestered in Switzerland;

-   This assessment - born of the first verifications that we carried out in the hopes that you would submit proof that you were acting on behalf of your clients – gave rise to the hypothesis that (a) one or several of the items could have become separated, unbeknownst to your clients, (b) not all of the items effectively entrusted were declared during the personal bankruptcy suit in the USA, and (c) alternatively, a number of items are registered incorrectly to the Beierwaltes, unbeknownst to them.

*P/2949/2017 c/ - Reply to Mr. Pearlstein*                                                                 *page 2*

Furthermore, to date, we have not found any signed contracts within the documentation that we seized, and our requests for **Mr.** ABOU TAAM and his companies to cooperate also remain unanswered.

We hope that we have convinced you with these lines that your collaboration is essential to the establishment of the facts.

Of course, in *Swiss criminal proceedings,* it is the responsibility of clients to act, whether in their capacity as affected third parties, or as parties. The request for restitution (replevin) that you are considering indicates, if necessary, that this has not escaped you. From your previous letters, we understand that you have already appointed a Genevan attorney, and we confirm that it would be appropriate to assign a colleague from the bar of Geneva to represent your clients in the suit mentioned in the margin.

Finally, we note that you are threatening the State of Geneva and Swiss Confederation with civil proceedings (notice of threatened litigation) for damages in the United States in the amount of dozens of millions of United States dollars, specifically, with accusations of theft if the sequesters are not ordered to be lifted within ten days.

In doing so, you would be attempting to free yourself of the obligations that Swiss law imposes upon parties in criminal proceedings, and to circumvent the principle of equality of arms and the protection that Swiss law accords to claimants (owners, possessors, third-party claimants, secured creditors, etc.).

You also seem to consider the Swiss State legal and administrative authorities' performance of their functions and duties within the scope of the law to be a crime (theft).

We doubt that this type of suit is compatible with the principles governing relations between Switzerland and the United States, and, if necessary, we shall refer to the Swiss Federal Office of Justice and to the US Department of Justice.

In any case, please note that the geographical and material jurisdiction of the American courts, the legal standing of the Swiss authorities, and the legitimacy of the civil suits that you are threatening to file shall be contested.

A copy of this letter has been addressed to the Federal Customs Administration and to the attorney of Mr. Ali ABOU TAAM and his companies, for reference purposes.

Best regards,

[Signature]
Claudio MASCOTTO
Prosecutor
[Public Prosecutor's Office Seal]



# CERTIFICATION OF TRANSLATION
### AFFIDAVIT FOR TRANSLATION OF SAID DOCUMENT

American Language Services, a company specializing in the translation of documents, certifies the following:

- American Language Services has retained a professional translator for the attached French into English document.  The document is referred to as:

**"EXHIBIT FOR ABOUTAAM V. FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION ET AL.**
**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK"**

- I affirm that such translation has been prepared by a duly qualified translator, who has confirmed that such translation is, to the best of their knowledge and belief, a true and accurate translation in English of the corresponding French document.

- I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Notwithstanding the foregoing affirmations, no liability is assumed for errors and omissions in the translation of the attached document.

- Executed on this Tenth day of September, 2018, at Los Angeles, California.

REUBEN TRUJEQUE
AMERICAN LANGUAGE SERVICES

1849 SAWTELLE BLVD. SUITE 600       LOS ANGELES, CALIFORNIA 90025
TEL (310) 829-0741 FAX (310) 829-3222
translation@alsglobal.net
www.alsglobal.net

A-133

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**        GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____

*Signature of Document Signer No. 1*          *Signature of Document Signer No. 2 (if any)*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of   LOS ANGELES

"Exhibit for Aboutaam v. Federal Office of Culture of the Swiss Confederation et al. United States District Court for the Southern District of New York"

RAMON DELGADO JR.
Commission # 2107172
Notary Public - California
Los Angeles County
My Comm. Expires Apr 16, 2019

*Place Notary Seal and/or Stamp Above*

Subscribed and sworn to (or affirmed) before me

on this 10th day of September , 2018 ,
by    *Date*          *Month*          *Year*
(1)  REUBEN TRUJEQUE _____

(and (2) _____ ),
*Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____
*Signature of Notary Public*

━━━━━━━━━━━━━━━ OPTIONAL ━━━━━━━━━━━━━━━

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
                              see above
Title or Type of Document: _____

Document Date: ____See attached____          Number of Pages: ___2___

Signer(s) Other Than Named Above: _____

©2017 National Notary Association

A-134



December 7, 2018

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/14/18.

**VIA ECF**

Honorable Ronnie Abrams, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:  *Aboutaam v. L'Office Federale de la Culture de la Confederation Suisse, et al.*, 18-cv-8248-RA (S.D.N.Y.); and *Beierwaltes v. L'Office Federale de la Culture de la Confederation Suisse, et al.*, 18-cv-11167-UA (S.D.N.Y.)

Dear Judge Abrams:

The parties in the two cases referenced above jointly submit this letter in response to your Memorandum Endorsement dated November 16, 2018, in the *Aboutaam* case (ECF 18). In the Memorandum Endorsement, you instructed the parties to submit a joint proposed case-management plan and scheduling order by December 7, 2018. Given the common defendants and similar procedural and substantive issues in these cases, as outlined below, the parties have conferred and jointly submit the following case description, offer a proposed briefing schedule on the defendants' upcoming motions to dismiss, and ask the Court to stay discovery, subject to the reservations stated below, pending resolution of the motions to dismiss.

These two cases—*Aboutaam v. L'Office Federale de la Culture de la Confederation Suisse, et al.*, 18-cv-8248-RA (S.D.N.Y.), and *Beierwaltes v. L'Office Federale de la Culture de la Confederation Suisse, et al.*, 18-cv-11167-UA (S.D.N.Y.)— arise from events that took place in Switzerland in 2017 and 2018. They involve common defendants and common issues of law relating to defendants' alleged actions and the properties at issue. The *Aboutaam* case was filed in this Court on September 11, 2018. The *Beierwaltes* case was originally filed in the District of Colorado on August 8, 2018. Given the similarities between the cases and to preserve judicial and party resources, the parties in the *Beierwaltes* case jointly moved to transfer that case from the District of Colorado to this Court for coordination with the *Aboutaam* action. The *Beierwaltes* case was received in this Court on November 30, 2018. The parties in the *Beierwaltes* case have filed a Notice of Relatedness (ECF 22) requesting that the case be assigned to Your Honor. Accordingly, the discussion below relates to both cases.

The cases implicate the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–11. The three defendants are L'Office Federale de la Culture de la Confederation Suisse, L'Administration Federale des Douanes de la Confederation Suisse, and La République et Canton de Genève (collectively, the "Swiss Defendants").

Case 19-3457, Document 50, 01/31/2020, 2767011, Page145 of 221

A-135

Case 1:18-cv-11167-RA   Document 27   Filed 12/14/18   Page 2 of 3
Case 1:18-cv-08248-RA   Document 26   Filed 12/07/18   Page 2 of 3

December 7, 2018
Page 2

The Swiss Defendants assert that they are foreign states within the meaning of 28 U.S.C. § 1603(a). The plaintiffs in each case allege in their complaints that each defendant is an agency or instrumentality of a foreign state within the meaning of Section 1603(b).

The gravamen of the two complaints is an allegation that the Swiss Defendants seized collections of antiquities stored in Geneva, Switzerland, in February 2017, asserting concerns regarding the provenance or legality of the antiquities. The plaintiff in *Aboutaam*, Mr. Hicham Aboutaam, claims an interest in approximately 1,200 such antiquities, and the plaintiffs in *Beierwaltes*, Lynda and William Beierwaltes, claim an interest in 18 antiquities. Plaintiffs in both actions allege that the seizure actions were unlawful. Each plaintiff seeks declaratory judgment as to title and asserts claims for conversion and unjust enrichment. The Beierwaltes also assert a claim for civil theft.

The Swiss Defendants contest this Court's subject-matter jurisdiction. The FSIA, in 28 U.S.C. § 1604, provides that a "foreign state shall be immune from the jurisdiction of the courts of the United States ... except as provided in sections 1605 to 1607" of Title 28. Plaintiffs rely upon the so-called "expropriation exception" to immunity in Section 1605(a)(3). The Swiss Defendants dispute the applicability of the expropriation exception and assert their immunity from U.S. jurisdiction, among other grounds for dismissal.

The parties agree that threshold questions of jurisdiction should be resolved before this case proceeds further. Consideration of merits discovery and other case logistics would be premature at this time, particularly because the disposition of a motion to dismiss on sovereign immunity grounds is immediately appealable. *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 105 (2d Cir. 2016).

The parties propose the following briefing schedule on the Swiss Defendants' motions to dismiss; this schedule would apply to both cases:

January 25, 2019: Defendants' motions to dismiss

March 15, 2019: Plaintiffs' oppositions

April 15, 2019: Defendants' replies

Plaintiffs do not agree that this schedule would be adequate if Defendants' motions were to raise issues requiring jurisdictional discovery. Accordingly, Plaintiffs respectfully reserve the rights to seek jurisdictional discovery, if necessary, and to request to revise this schedule, with the Court's permission, after receiving Defendants' motions to dismiss. The Swiss Defendants reserve their rights to respond accordingly.

Case 19-3457, Document 50, 01/31/2020, 2767011, Page146 of 221

A-136

Case 1:18-cv-11167-RA Document 27 Filed 12/14/18 Page 3 of 3
Case 1:18-cv-08248-RA Document 26 Filed 12/07/18 Page 3 of 3

December 7, 2018
Page 3

The parties appreciate the Court's consideration of this joint case management plan and respectfully request an order adopting the briefing schedule set forth above and staying merits discovery and case-management deadlines pending resolution of the motions to dismiss.

Respectfully submitted,

For the plaintiffs:

/s/ Kevin N. Ainsworth
Kevin N. Ainsworth
Mintz, Levin, Cohn, Ferris, Glovsky and
    Popeo, P.C.
666 Third Avenue, New York, NY 10017
(212) 692-6745

Georges G. Lederman
Pearlstein McCullough & Lederman LLP
641 Lexington Avenue, Suite 1327
New York, NY 10022
(646) 762-2833

*Counsel for Hicham Aboutaam*

/s/ Andrew C. Lillie
Andrew C. Lillie
Jessica Black Livingston
Andrew Nussbaum
Hogan Lovells US LLP
1601 Wewatta St., Suite 900
Denver CO 80202
(303) 899-7339

*Counsel for Lynda and William
Beierwaltes*

For the defendants:

/s/ Marcus A. Asner
Marcus A. Asner
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710
(212) 836-7222

*Counsel for La République et Canton de
Genève*

/s/ Stephan E. Becker
Stephan E. Becker
Michael Evan Jaffe
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036-3006
(202) 663-8068

*Counsel for L'Office Federale de la
Culture de la Confederation Suisse and
L'Administration Federale des Douanes de
la Confederation Suisse*

Application granted. Briefing on the anticipated motions to dismiss shall follow the schedule outlined above. Discovery is stayed pending resolution of the anticipated motions to dismiss. If Plaintiffs require jurisdictional discovery, they may submit a letter to the Court. The Clerk of Court is respectfully directed to place this Order on the dockets of both related actions, 18-cv-8248 and 18-cv-11167.
SO ORDERED.

Hon. Ronnie Abrams
12/14/2018

**A-137**

### UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF NEW YORK

LYNDA BEIERWALTES, and
WILLIAM BEIERWALTES,

        Plaintiff,

        *-against-*

L'OFFICE FEDERAL DE LA CULTURE DE
LA CONFEDERATION SUISSE, et al.,

        Defendants.

Civ. Action No. 1:18 Civ. 11167 (RA-BCM)

### NOTICE OF MOTION TO DISMISS OF DEFENDANTS L'OFFICE
### FEDERAL DE LA CULTURE DE LA CONFEDERATION SUISSE AND
### L'ADMINISTRATION FEDERALE DES DOUANES DE LA
### CONFEDERATION SUISSE

PLEASE TAKE NOTICE that Defendants L'office Federal De La Culture De La

Confederation Suisse ("Swiss Federal Office of Culture") and L'Administration Federale Des

Douanes De La Confederation Suisse, ("Swiss Federal Customs Administration") (collectively,

the "Swiss Confederation"), hereby move the Court to dismiss the Complaint of Plaintiffs Lynda

& William Beierwaltes.

The Swiss Confederation brings this motion pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(3) and Local Rules 7.1 and 11.1, based on the following grounds:

1.      The Court lacks subject matter jurisdiction under the Foreign Sovereign

Immunities Act, 28 U.S.C. §§ 1330, 1602–1611.  The Swiss Confederation is a foreign sovereign

immune to suit in this Court unless an exception to sovereign immunity applies.   Here, even if

the well-pleaded allegations of the Complaint are accepted as true, no exception applies.  The

Court must therefore dismiss the Complaint.

**A-138**

2.      The Act of State doctrine and principles of international comity require dismissal. Plaintiffs ask this Court to undermine the Swiss government's legitimate exercise of its police and tax powers.  The Court should decline to interfere with Swiss sovereignty.

In support of this motion, the Swiss Confederation submits its Memorandum of Law, the Declaration of Stephan E. Becker and Exhibits 1 through 8 thereto, and the Declaration of Hans Georg Nussbaum and Exhibits 1 through 4 thereto.

Respectfully submitted,

Dated: January 25, 2019

By: s/ Stephan E. Becker
Stephan E. Becker (Pro Hac Vice)
Michael Evan Jaffe (Pro Hac Vice)
John Chamberlain
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:  202.663.8000
Facsimile:  202.663.8007

*Attorneys for Defendants L'Office Federal De La Culture De La Confederation Suisse and L'Administration Federale Des Douanes De La Confederation Suisse*

A-139

**CERTIFICATE OF SERVICE**

On January 25, 2019, I caused the foregoing **NOTICE OF MOTION TO DISMISS OF DEFENDANTS L'OFFICE FEDERAL DE LA CULTURE DE LA CONFEDERATION SUISSE AND L'ADMINISTRATION FEDERALE DES DOUANES DE LA CONFEDERATION SUISSE** to be served upon counsel of record in this matter by filing it with the Court's electronic filing system.

By: s/ John Chamberlain
John Chamberlain
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:  202.663.8000
Facsimile:  202.663.8007

*Attorney for Defendants L'office Federal De La Culture De La Confederation Suisse and L'Administration Federale Des Douanes De La Confederation Suisse*

A-140

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HICHAM ABOUTAAM,<br><br>               Plaintiff,<br><br>       *-against-*<br><br>L'OFFICE FEDERAL DE LA CULTURE DE LA CONFEDERATION SUISSE, et al.,<br><br>           Defendants. | Civ. Action No. 1:18 Civ. 08248 (RA-BCM) |
| LYNDA BEIERWALTES, and<br>WILLIAM BEIERWALTES,<br><br>               Plaintiff,<br><br>       *-against-*<br><br>L'OFFICE FEDERAL DE LA CULTURE DE LA CONFEDERATION SUISSE, et al.,<br><br>           Defendants. | Civ. Action No. 1:18 Civ. 11167 (RA-BCM) |

### DECLARATION OF STEPHAN E. BECKER

My name is Stephan E. Becker.  I am a partner at the law firm Pillsbury Winthrop Shaw

Pittman LLP.  I submit this declaration to provide the Court with certain documents and

information referenced in the Memorandum of Law of Defendants L'office Federal De La

Culture De La Confederation Suisse and L'administration Federale Des Douanes De La

Confederation Suisse in Support of Their Motion to Dismiss.

A-141

1.      Attached hereto at Exhibit 1 a screenshot from the website of the L'office Federal De La Culture De La Confederation Suisse ("Swiss Federal Customs Administration"), available at https://www.ezv.admin.ch/ezv/en/home.html.

2.      Attached hereto at Exhibit 2 is a screenshot from the website of the L'administration Federale Des Douanes De La Confederation Suisse ("Swiss Federal Office of Culture"), available at https://www.bak.admin.ch/bak/en/home.html.

3.      Attached hereto as Exhibit 3 is Switzerland's Annex 1 to the World Trade Organization's Government Procurement Agreement Coverage Schedules.

4.      Attached hereto as Exhibit 4 is a screenshot of from the website of the Swiss Federal Customs Administration entitled "Mandate", available at https://www.ezv.admin.ch/ezv/en/home/the-fca/mandate.html.

5.      Attached hereto as Exhibit 5 is a screenshot of from the website of the Swiss Federal Office of Culture entitled "Mission," available at https://www.bak.admin.ch/bak/en/home/the-foc/mission.html.

6.      Attached hereto as Exhibit 6 is a publication of U.S. Customs and Border Protection, *Bonded Warehouse*, available at https://www.cbp.gov/sites/default/files/documents/bonded_20wh2_2.pdf.

7.      Attached hereto as Exhibit 7 is an article published in the New York Times on June 24, 2004 titled "Art Dealer Pleads Guilty In Import Case", available at https://www.nytimes.com/2004/06/24/arts/art-dealer-pleads-guilty-in-import-case.html.

2

8.      Attached hereto as Exhibit 8 is a press release of the District Attorney for New

County, titled "Manhattan District Attorney's Office Returns Three Ancient Statues to Lebanese

Republic," available at https://www.manhattanda.org/manhattan-district-attorneys-office-returns-

three-ancient-statues-lebanese-republic/.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 25th day of January 2019 in Washington, D.C.

Stephan E. Becker

# Exhibit 1



| The Federal Council | FDF | FCA | | | | | | Shopping cart  Homepage  Contact  Media  Jobs  Site map | DE  FR  IT  EN |

Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

**Federal Customs Administration**

| News | Topics | Information companies | Information individuals | Customs declaration | Documentation | The FCA |

Swiss Customs Administration  >  The FCA



### Management

The Customs Administration is the largest administration unit in the Finance Department with 4000 employees. Here you will find the management staff.



### Mandate

We make a considerable contribution to the security and protection of the population, the economy, the Swiss state and plants and animals.



### Organization

We are in a process of change. The organisational charts which are being updated continuously, show our organisation in Switzerland.



### Legal basis

We operate on the basis of Article 133 of the Federal Constitution and the Customs Act. According to these, the Confederation is responsible for customs duties and other duties.



### Careers and training

We train customs experts, border guards and assayers and provide various types of apprenticeships and internships.



### Top-class sport in the FCA

The FCA sponsors top-ranking Swiss sportsmen and sportswomen. It provides support for them in combining their work and sports careers.



### Job opportunities

Job vacancies in the Confederation (Stellenangebot des Bundes) provides information on vacancies with us and in other federal authorities.The content is available in German, French or Italian.



### Customs Museum

Opening season at the Customs Museum april 15th 2016



### Contact

We have various support units and contact points on different topics and systems such as for example foreign trade statistics, general customs questions and freight applications.

| News | Topics | Information companies |
|------|--------|----------------------|
| Media information | Free trade agreements, origin | Most searched keywords |
| General news | Foreign trade statistics | Customs Tariff - Tares |
| Specialist announcements | Taxes and fees | Taxes and duties |
| Trade show calendar | Precious Metal Control | Exemptions, reliefs, preferential tariffs and export contributions |

1

Subscribing to

Foreign assignments

Referenzparagraphen für
Standardinhalte

Alcohol

Schengen

Bans, restrictions and conditions

Declaring goods

Transport, travel documents, road
taxes

Opening hours and holidays

## Information individuals

Most searched keywords

Documents for travellers and
road taxes

Travel and purchases, allowances
and duty-free limit

Online shopping, mail and
courier consignments

Personal property, students,
holiday homes, getting married
and inheritance

Road vehicles and watercraft

Animals and plants

Bans, restrictions and
authorisations

Declaring goods

Opening hours and holidays

## Customs declaration

Declaration companies

Declaration private individuals

Customs Tariff - Tares

Support

Appeals

## Documentation

Legal foundations

Regulations

Fact sheets

Publications

E-Shop

E-Learning of the FCA

Media informations

## The FCA

Management

Mandate

Organization

Legal basis

Careers and training

Top-class sport in the FCA

Job opportunities

Customs Museum

Contact

Federal Customs Administration FCA

Contact   Legal framework   Publication Details

2

A-146

# Exhibit 2



Federal Administration    FDHA    FOC

Contact    Homepage    Site map    DE  FR  IT  RM  EN

Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

**Federal Office of Culture**

News | Topics | Cultural Creativity | Languages and society | Cultural heritage | Documentation | The FOC



**Die Kunstsammlungen des Bundes gehen online**

Die Kunstsammlungen des Bundes enthalten wichtige Werke des Schweizer Kunst- und Designschaffens. Seit über 100 Jahren bereichern sie die Ausstellungen von Kunst- und Designmuseen in der Schweiz sowie die Gebäude der Eidgenossenschaft.

**The FOC**

Welcome to the Federal Office of Culture website!

Direction

Organisation

Contact points

Address and map

| Die Kunstsammlungen des Bundes gehen online | Kulturerbe für alle: Das Bundesamt für Kultur unterstützt 19 Projekte | Erste gesamtschweizerische Denkmalstatistik | Der Bundesrat will den schulischen Austausch in der Schweiz stärken |







**Cultural Heritage Year 2018**

In 2018, Switzerland celebrates Cultural Heritage Year. It is part of the European Year of Cultural Heritage and highlights the fundamental importance of cultural heritage to all areas of society.

**Culture Dispatch**

The Culture Dispatch for the years 2016 to 2020 sets out the Federal Council's cultural policy strategy. It focuses on three main action areas: cultural participation, social cohesion, and creation and innovation.

**Culture statistics**

Compiled by the Federal Office of Culture and the Federal Statistical Office, "Statistical Data on Culture" contains facts and figures on culture and the cultural economy in Switzerland.

**Links to FOC's thematic websites**

Awards

Museums and collections

www.living-traditions.ch ⧉

**Current calls for submissions**

Information on current calls for submissions from the Federal Office of Culture.

Press releases



Sonderausstellung



**Publications**

The Federal Office of Culture produces a large number of

1

A-148



Im Rahmen der Sonderausstellung «Klingendes Gold» werden im Museum für Musikautomaten in Seewen noch bis am 31. Januar 2019 traumhafte Meisterwerke der Uhrmacher- und Automatenkunst gezeigt.

publications. You can find an overview of FOC publications and brochures here.

Federal Office of Culture FOC

Legal framework

2

A-149

# Exhibit 3

A-150

| APPENDIX I | **SWITZERLAND** | ANNEX 1 | *French* | Page 1/9 |
|---|---|---|---|---|

**SUISSE**

(La version française fait foi)

ANNEXE 1

*Entités du gouvernement fédéral qui passent des marchés*
*conformément aux dispositions du présent accord*

| | | |
|---|---|---|
| **Fournitures** | *Valeur de seuil:* | 130 000 DTS |
| **Services** (spécifiés à l'Annexe 4) | *Valeur de seuil:* | 130 000 DTS |
| **Services de construction** (spécifiés à l'Annexe 5) | *Valeur de seuil:* | 5 000 000 DTS |

*Liste des entités couvrant tous les Départements fédéraux suisses*:

1.    Chancellerie fédérale (CF):

        Chancellerie fédérale
        Bibliothèque centrale du Parlement et de l'Administration fédérale
        Préposé fédéral à la protection des données
        Services du Parlement

2.    Département fédéral des affaires étrangères (DFAE):

        Secrétariat général du Département fédéral des affaires étrangères
        Direction du développement et de la coopération
        Direction du droit international public
        Direction politique
        Secrétariat d'État du Département fédéral des affaires étrangères

3.    Département fédéral de l'intérieur (DFI):

        Secrétariat général du Département fédéral de l'intérieur
        Archives fédérales
        Bureau fédéral de l'égalité entre femmes et hommes
        Conseil des écoles polytechniques fédérales
        Écoles polytechniques fédérales et établissements annexes
        Groupement de la science et de la recherche
        Institut fédéral de recherches sur la forêt, la neige et le paysage
        Institut fédéral pour l'aménagement, l'épuration et la protection des eaux
        Institut Paul Scherrer
        Institut suisse de météorologie
        Laboratoire fédéral d'essai des matériaux et de recherches

*29 September 2000 (WT/Let/356)*

| APPENDIX I | **SWITZERLAND** | ANNEX 1 | *French* | Page 2/9 |

Office fédéral de l'assurance militaire[1]
Office fédéral de l'éducation et de la science
Office fédéral de la culture
Office fédéral de la santé publique
Office fédéral de la statistique
Office fédéral des assurances sociales

4.  Département fédéral de la justice et police (DFJP):

Secrétariat général du Département fédéral de la justice et police
Institut suisse de droit comparé
Institut suisse de la propriété intellectuelle
Ministère public de la Confédération
Office fédéral de la justice
Office fédéral de la police
Office fédéral de l'aménagement du territoire
Office fédéral de métrologie
Office fédéral des assurances privées
Office fédéral des étrangers
Office fédéral des réfugiés

5.  Département fédéral de la défense, de la protection de la population et des sports (DDPS):

Secrétariat général du Département fédéral de la défense, de la protection de la population et des sports[1]
Administration centrale du groupement de l'armement[1]
Commandement des écoles d'état-major et de commandants[1]
Commandement du Corps des gardes fortification[1]
État-Major de l'instruction opérative[1]
État-Major général[1]
Groupe de l'état-major général[1]
Groupe de la logistique de l'état-major général[1]
Groupe de la promotion de la paix et de la coopération en matière de sécurité[1]
Groupe de la Direction de l'instruction des forces terrestres[1]
Groupe de la planification de l'état-major général[1]
Groupe de l'aide au commandement de l'état-major général[1]
Groupe des affaires sanitaires de l'état-major général[1]
Groupe des opérations de l'état-major général[1]
Groupe des opérations des forces aériennes[1]
Groupe du personnel de l'armée de l'état-major général[1]
Groupe du personnel enseignant des forces terrestres[1]
Groupe des renseignements de l'état-major général[1]
Office de l'auditeur en chef[1]
Office des exploitations des forces terrestres[1]
Office fédéral de la protection civile[1]
Office fédéral de la topographie
Office fédéral de l'instruction des forces aériennes[1]

---

[1] Pour les marchés passés par les offices du Département militaire fédéral mentionnés, voir liste des matériels civils de la défense et de la protection civile en annexe.  (Il en est de même de l'Administration fédérale des douanes en ce qui concerne l'équipement des gardes frontière et des douaniers.)

*29 September 2000 (WI/Lei/356)*

| APPENDIX I | **SWITZERLAND** | ANNEX 1 | *French* | Page 3/9 |
| --- | --- | --- | --- | --- |

Office fédéral des armes de combat[1]
Office fédéral des armes et des services d'appui[1]
Office fédéral des armes et des services de la logistique[1]
Office fédéral des exploitations des forces aériennes[1]
Office fédéral des systèmes d'armes des forces aériennes et des systèmes de commandement[1]
Office fédéral des systèmes d'armes et des munitions[1]
Office fédéral du matériel d'armée et des constructions[1]
Office fédéral du sport
Services centraux de l'état-major général[1]
Services centraux des forces aériennes[1]
Services centraux des forces terrestres[1]

6.   Département fédéral des finances (DFF):

Secrétariat général du Département fédéral des finances
Administration fédérale des contributions
Administration fédérale des douanes[1]
Administration fédérale des finances
Caisse fédérale d'assurance
Commission fédérale des banques
Contrôle fédéral des finances
Monnaie officielle de la Confédération suisse
Office fédéral de l'informatique
Office fédéral des constructions et de la logistique
Office fédéral du personnel
Régie fédérale des alcools

7.   Département fédéral de l'économie (DFE):

Secrétariat général du Département fédéral de l'économie
Commission de la concurrence
Office fédéral de l'agriculture
Office fédéral de la formation professionnelle et de la technologie
Office fédéral du logement
Office fédéral pour l'approvisionnement économique du pays
Office vétérinaire fédéral
Secrétariat d'État à l'économie
Surveillance des prix

---

[1] Pour les marchés passés par les offices du Département militaire fédéral mentionnés, voir liste des matériels civils de la défense et de la protection civile en annexe.  (Il en est de même de l'Administration fédérale des douanes en ce qui concerne l'équipement des gardes frontière et des douaniers.)

*29 September 2000 (WT/Let/356)*

A-153

| APPENDIX I | **SWITZERLAND** | ANNEX 1 | *French* | Page 4/9 |
| --- | --- | --- | --- | --- |

8.   <u>Département fédéral de l'environment, des transports, de l'énergie et de la communication (DETEC):</u>

   Secrétariat général du Département fédéral de l'environment, des transports, de l'énergie et de la communication
   Commission fédérale de la communication
   La Poste[2]
   Office fédéral de la communication
   Office fédéral de l'aviation civile
   Office fédéral de l'économie des eaux
   Office fédéral de l'énergie
   Office fédéral de l'environnement, des forêts et du paysage
   Office fédéral des routes
   Office fédéral des transports

---

[2] Pour autant que l'entité ne soit pas en concurrence avec des entreprises auxquelles le présent accord n'est pas applicable.

*29 September 2000 (WT/Let/356)*

| APPENDIX I | **SWITZERLAND** | ANNEX 1 | *French* | Page 5/9 |

### Note relative à l'annexe 1

Le présent accord ne s'applique pas aux marchés passés par des entités énumérées dans cette annexe et portant sur des activités dans les secteurs de l'eau potable, de l'énergie, des transports ou des télécommunications.

*Liste des matériels civils de la défense et de la protection civile soumis à l'accord*

*Chapitre 25*: Sel; soufre; terres et pierres; plâtres; chaux et ciments

*Chapitre 26*: Minerais métallurgiques, scories et cendres

*Chapitre 27*: Combustibles minéraux, huiles minérales et produits de leur distillation; matières bitumineuses; cires minérales

*Chapitre 28*: Produits chimiques inorganiques; composés inorganiques ou organiques de métaux précieux, d'éléments radioactifs, de métaux des terres rares et d'isotopes

*à l'exception de*:

ex 28.09 : explosifs
ex 28.13 : explosifs
ex 28.14 : gaz lacrymogènes
ex 28.28 : explosifs
ex 28.32 : explosifs
ex 28.39 : explosifs
ex 28.50 : produits toxicologiques
ex 28.51 : produits toxicologiques
ex 28.54 : explosifs

*Chapitre 29*: Produits chimiques organiques

*à l'exception de*:

ex 29.03 : explosifs
ex 29.04 : explosifs
ex 29.07 : explosifs
ex 29.08 : explosifs
ex 29.11 : explosifs
ex 29.12 : explosifs
ex 29.13 : produits toxicologiques
ex 29.14 : produits toxicologiques
ex 29.15 : produits toxicologiques
ex 29.21 : produits toxicologiques
ex 29.22 : produits toxicologiques
ex 29.23 : produits toxicologiques
ex 29.26 : explosifs
ex 29.27 : produits toxicologiques
ex 29.29 : explosifs

*29 September 2000 (WT/Let/356)*

| APPENDIX I | **SWITZERLAND** | ANNEX 1 | *French* | Page 6/9 |
| --- | --- | --- | --- | --- |

*Chapitre 30*:        Produits pharmaceutiques

*Chapitre 31*:        Engrais

*Chapitre 32*:        Extraits tannants ou tinctoriaux; tanins et leurs dérivés; matières colorantes, couleurs, peintures, vernis et teintures, mastics, encres

*Chapitre 33*:        Huiles essentielles et résinoïdes;  produits de parfumerie ou de toilette et cosmétiques

*Chapitre 34*:        Savons, produits organiques tensio-actifs, préparations pour lessives, préparations lubrifiantes, cires artificielles, cires préparées, produits d'entretien, bougies et articles similaires, pâtes à modeler et "cires pour l'art dentaire"

*Chapitre 35*:        Matières albuminoïdes; colles, enzymes

*Chapitre 36*:        Poudres et explosifs; articles de pyrotechnie;  allumettes; alliages pyrophoriques; matières inflammables

                        *à l'exception de*:

                        ex 36.01 : poudres
                        ex 36.02 : explosifs préparés
                        ex 36.04 : détonateurs
                        ex 36.08 : explosifs

*Chapitre 37*:        Produits photographiques et cinématographiques

*Chapitre 38*:        Produits divers des industries chimiques

                        *à l'exception de*:

                        ex 38.19 : produits toxicologiques

*Chapitre 39*:        Matières plastiques artificielles, éthers et esters de la cellulose, résines artificielles et ouvrages en ces matières

                        *à l'exception de*:

                        ex 39.03 : explosifs

*Chapitre 40*:        Caoutchouc naturel ou synthétique, factice pour caoutchouc et ouvrages en caoutchouc

                        *à l'exception de*:

                        ex 40.11 : pneus

*Chapitre 43*:        Pelleteries et fourrures, pelleteries factices

*29 September 2000 (WT/Let/356)*

| APPENDIX I | **SWITZERLAND** | ANNEX 1 | *French* | Page 7/9 |

*Chapitre 44:*      Bois, charbon de bois et ouvrages en bois

*Chapitre 45:*      Liège et ouvrages en liège

*Chapitre 46:*      Ouvrages de sparterie et de vannerie

*Chapitre 47:*      Matières servant à la fabrication du papier

*Chapitre 48:*      Papiers et cartons; ouvrages en pâte de cellulose, en papier et en carton

*Chapitre 49:*      Articles de librairie et produits des arts graphiques

*Chapitre 65:*      Coiffures et parties de coiffures

*Chapitre 66:*      Parapluies, parasols, cannes, fouets, cravaches et leurs parties

*Chapitre 67:*      Plumes et duvet apprêtés et articles en plumes ou en duvet; fleurs artificielles; ouvrages en cheveux

*Chapitre 68:*      Ouvrages en pierres, plâtre, ciment, amiante, mica et matières analogues

*Chapitre 69:*      Produits céramiques

*Chapitre 70:*      Verre et ouvrages en verre

*Chapitre 71:*      Perles fines, pierres gemmes et similaires, métaux précieux, plaqués ou doublés de métaux précieux et ouvrages en ces matières; bijouterie de fantaisie

*Chapitre 73:*      Fonte, fer et acier

*Chapitre 74:*      Cuivre

*Chapitre 75:*      Nickel

*Chapitre 76:*      Aluminium

*Chapitre 77:*      Magnésium, beryllium (glucinium)

*Chapitre 78:*      Plomb

*Chapitre 79:*      Zinc

*Chapitre 80:*      Etain

*Chapitre 81:*      Autres métaux communs

*Chapitre 82:*      Outillage; articles de coutellerie et couverts de table, en métaux communs

*Chapitre 83:*      Ouvrages divers en métaux communs

*29 September 2000 (WT/Let/356)*

A-157

| APPENDIX I | **SWITZERLAND** | ANNEX 1 | *French* | Page 8/9 |
|---|---|---|---|---|

*Chapitre 84*:       Chaudières, machines, appareils et engins mécaniques

*Chapitre 85:*      Machines et appareils électriques et objets servant à des usages électrotechniques

               *à l'exception de*:

               ex 85.03 : Piles électriques
               ex 85.13 : Télécommunications
               ex 85.15 : Appareils de transmission

*Chapitre 86*:       Véhicules et matériaux pour voies ferrées;  appareils de signalisation non électriques pour voies de communication

               *à l'exception de*:

               ex 86.02 : Locomotives blindées
               ex 86.03 : autres locoblindées

               ex 86.05 : Wagons blindés
               ex 86.06 : Wagons ateliers
               ex 86.07 : Wagons

*Chapitre 87*:       Voitures automobiles, tracteurs, cycles et autres véhicules terrestres

               *à l'exception de*:

               87.08 : Cars et automobiles blindés
               ex 87.02 : Camions lourds
               ex 87.09 : Motocycles
               ex 87.14 : Remorques

*Chapitre 88*:       Navigation aérienne

               *à l'exception de*:

               ex 88.02 : Avions

*Chapitre 89*:       Navigation maritime et fluviale

*Chapitre 90*:       Instruments et appareils d'optique, de photographie et de cinématographie, de mesure, de vérification, de précision;  instruments et appareils médico-chirurgicaux

               *à l'exception de*:

               ex 90.05 : Jumelles
               ex 90.13 : Instruments divers, lasers
               ex 90.14 : Télémètres
               ex 90.28 : Instruments de mesure électriques ou électroniques

*Chapitre 91*:       Horlogerie

*29 September 2000 (WT/Let/356)*

A-158

| APPENDIX I | **SWITZERLAND** | ANNEX 1 | *French* | Page 9/9 |
|---|---|---|---|---|

*Chapitre 92*:   Instruments de musique; appareils d'enregistrement ou de reproduction du son; appareils d'enregistrement ou de reproduction des images et du son en télévision; parties et accessoires de ces instruments et appareils

*Chapitre 93*:   Armes et munitions

   *à l'exception de*:

   ex 93.01 : Armes blanches
   ex 93.02 : Pistolets
   ex 93.03 : Armes de guerre
   ex 93.04 : Armes à feu
   ex 93.05 : Autres armes
   ex 93.07 : Projectiles et munitions

*Chapitre 94*:   Meubles;  mobilier médico-chirurgical;  articles de literie et similaires

*Chapitre 95*:   Matières à tailler et à mouler, à l'état travaillé (y compris les ouvrages)

*Chapitre 96*:   Ouvrages de brosserie et pinceaux, balais, houppes et articles de tamiserie

*Chapitre 98*:   Ouvrages divers

*29 September 2000 (WT/Let/356)*

A-159

# Exhibit 4

A-160



The Federal Council › FDF › FCA

Shopping cart   Homepage   Contact   Media   Jobs   Site map   DE FR IT EN

Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

**Federal Customs Administration**

News | Topics | Information companies | Information individuals | Customs declaration | Documentation | The FCA

Swiss Customs Administration › The FCA › Mandate

‹ The FCA

**Mandate**

Service level agreement and budget with ITFP

# Mandate

## Tasks of the Federal Customs Administration

The customs and the uniformed and armed border guard corps (BGC) perform various tasks for the state, the economy and the population.

### Contribution towards national security

#### Combat illegal activities

Increased security by way of mobile presence in the border regions; combat of crime and illegal migration (e.g. people and vehicle searches); combat against drug trafficking and document forgery etc.

#### Protecting the population and the environment

Food inspection at the border; protection of animals, plants and endangered species; inspection of traffic carrying hazardous goods and radioactive and poisonous substances; precious metal assaying etc.

#### Public security

Control of the trafficking in arms and combat equipment as well as of goods used for both military and civil aims and explosive substances; enforcement of traffic regulations for incoming and outgoing traffic; enforcement of embargoes etc.

### Economic tasks

#### Protection and checks

Control of the import and export of certain goods, protection of agriculture; protection of trade marks, indications of geographical origin, design and copy rights; national economic supply etc.

#### Taxation

Customs duties; value added tax; mineral oil, car, tobacco and beer taxes; monopoly charges on alcoholic drinks; incentive tax, heavy vehicle tax and national road tax etc.

Various services

1

Statistics on foreign trade and transit traffic etc.

### Cooperation with foreign authorities and organizations

International transit; official and legal assistance; participation in international missions etc.

**Further info**

European Union 🔗

World Customs Organization 🔗

Directorate for European Affairs 🔗

State Secretariat for Economic Affairs SECO 🔗

Customs duties worldwide - Switzerland Global Enterprise (S-GE) 🔗

⌃ Top of page



| News | Topics | Information companies |
|---|---|---|
| Media information | Free trade agreements, origin | Most searched keywords |
| General news | Foreign trade statistics | Customs Tariff - Tares |
| Specialist announcements | Taxes and fees | Taxes and duties |
| Trade show calendar | Precious Metal Control | Exemptions, reliefs, preferential tariffs and export contributions |
| Subscribing to news | Programs and Projects | Bans, restrictions and conditions |
|  | Foreign assignments | Declaring goods |
|  | Referenzparagraphen für Standardinhalte | Transport, travel documents, road taxes |
|  | Alcohol | Opening hours and holidays |
|  | Schengen |  |

| Information individuals | Customs declaration | Documentation |
|---|---|---|
| Most searched keywords | Declaration companies | Legal foundations |
| Documents for travellers and road taxes | Declaration private individuals | Regulations |
| Travel and purchases, allowances and duty-free limit | Customs Tariff - Tares | Fact sheets |
| Online shopping, mail and courier consignments | Support | Publications |
| Personal property, students, holiday homes, getting married and inheritance | Appeals | E-Shop |
| Road vehicles and watercraft |  | E-Learning of the FCA |
| Animals and plants |  | Media informations |
| Bans, restrictions and authorisations |  |  |
| Declaring goods |  |  |
| Opening hours and holidays |  |  |

A-162

**The FCA**

Management

Mandate

Organization

Legal basis

Careers and training

Top-class sport in the FCA

Job opportunities

Customs Museum

Contact

Federal Customs Administration FCA                    Contact   Legal framework   Publication Details

# Exhibit 5



| Federal Administration | FDHA | FOC | | Contact   Homepage   Site map | DE FR IT RM EN |

**Federal Office of Culture**

Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

News | Topics | Cultural Creativity | Languages and society | Cultural heritage | Documentation | The FOC

Federal Office of Culture  >  The FOC  >  Mission

# Mission

**The FOC**

The Director

**Mission**

Annual reports

Organisation

Contact points

Address and map

Vacancies

Electronic invoice

Das BAK in den sozialen Medien

### Contact

Federal Office for Culture
Head of Office
Hallwylstrasse 15
3003 Bern
Phone +41 58 462 92 66
✉ E-mail

🖶 Print contact

The Confederation's cultural activities within Switzerland are essentially based on the interplay of the Federal Office of Culture and Pro Helvetia, the Swiss Arts Council. The Federal Office of Culture is the strategic body responsible for drawing up and implementing the Confederation's culture policy. Its remit covers tasks that are strictly reserved to the Confederation, namely improving the institutional framework, drafting enactments in the culture sector, reviewing the compatibility of enactments in other political areas (value added tax, international free trade, vocational education, languages, etc.) with the needs of culture and - in coordination with the Federal Department of Foreign Affairs (FDFA) - negotiating agreements in the cultural sector, representing Switzerland in multilateral organisations and cultivating international relationships. Its promotion activities comprise two areas: cultural heritage (heritage protection and the preservation of historic monuments, transfer of cultural assets, museums and collections) and cultural creativity (films, prizes and awards, support for cultural organisations), also including promoting the foundations of culture (language and understanding policy, musical education, promotion of reading, travellers, Swiss schools abroad).

### Links

Swiss National Library (NL) ↗

Federal Department of Home Affairs (DHA) ↗

Organisational chart

Last modification 25.11.2016

⌃ Top of page

Last modification 25.11.2016

1

A-165

Exhibit 6

**A-166**

## U.S. CUSTOMS AND BORDER PROTECTION
## BONDED WAREHOUSE

**What is a Customs bonded warehouse?**

A Customs bonded warehouse is a building or other secured area in which imported dutiable merchandise may be stored, manipulated, or undergo manufacturing operations without payment of duty for up to 5 years from the date of importation.   Authority for establishing bonded warehouses is set forth in Title 19, United States Code (U.S.C.), section 1555.  The regulations covered the operation of bonded warehouses is found at 19 CFR 19.

Upon entry of goods into the warehouse, the warehouse proprietor incurs a liability for the merchandise under a warehouse bond. This liability is generally cancelled when the merchandise is:

- Exported;
- Withdrawn for supplies to a vessel or aircraft;
- Destroyed under CBP supervisions; or
- Withdrawn for consumption within the United States after payment of duty.

**Classes of bonded warehouses**

There are eleven different classes of bonded warehouses authorized under 19 C.F.R. 19.1:

1.      Premises that may be owned or leased by the Government, when the exigencies of the service as determined by the port director so require, and used for the storage of merchandise undergoing examination by CBP, under seizure, or pending final release from CBP custody.  Merchandise will be stored in such premises only at CBP direction and will be held under "general order".

2.      Importers private warehouse used exclusively for the storage of merchandise belong to or consigned to the proprietor.   A class 4 or 5 warehouse may be bonded exclusively for the storage of goods imported by the proprietor, in which case it shall be known as a private bonded warehouse.

3.      Public bonded warehouse used exclusively for the storage of imported merchandise.

4.      Bonded yards or sheds for the storage of heavy and bulky imported merchandise; stables, feeding pens, corrals, other similar buildings or limited enclosures for the storage of imported animals; and tanks for storage of imported liquid merchandise in bulk.

5.      Bonded bins or parts of buildings or elevators to be used for the storage of grain.

6.    Bonded warehouses established for the manufacture in bond, solely for exportation, of articles made in whole or in part of imported materials or of materials subject to internal revenue tax; and for the manufacture for domestic consumption or exportation of cigars made in whole of tobacco imported from one country.

7.    Bonded warehouses established for smelting and refining imported metal-bearing materials for exportation or domestic consumption.

8.    Bonded warehouses established for the cleaning, sorting, repacking, or otherwise changing the condition of, but not the manufacturing of, imported merchandise, under CBP supervision, and at the expense of the proprietor.

9.    Bonded warehouses, known as "duty-free stores," used for selling conditionally duty-free merchandise for use outside the Customs territory.  Merchandise in this class must be owned or sold by the proprietor and delivered from the warehouse to an airport or other exit point for exportation by, or on behalf of, individuals departing from the Customs territory or foreign destinations.  These stores may also sell other than duty-free merchandise.

10.   Bonded warehouses for international travel merchandise, goods sold conditionally duty-free aboard aircraft and not at a duty-free store.  This is based on amendments to 19 U.S.C., section 1555(c), approved 11/00.  Regulations governing this type of warehouse are being written.

11.   Bonded warehouses established for the storage of General Order (G.O.) merchandise.  G.O. is any merchandise not claimed or entered for 15 days after arrival in the U.S. (or final U.S. destination for in-bond shipments).

**Advantages of Using a Bonded Warehouse**

Duty is not collected until the merchandise is withdrawn for consumption.  An importer, therefore, has control over use of his money until the duty is paid upon withdrawal of the merchandise.  If no domestic buyer is found for the imported articles, the importer can sell merchandise for exportation, thereby eliminating his obligation to pay duty.

Many items subject to restrictions may or may be stored in a bonded warehouse. Check with the nearest CBP office before assuming that such merchandise may be placed in a bonded warehouse.

Duties owed on articles that have been manipulated are determined at the time of withdrawal from the bonded warehouse.

**How to Establish a Bonded Warehouse**

**Application**

An applicant seeking to establish a bonded warehouse must make written application to the local CBP port director describing the premises, giving the location, and stating the class of warehouse to be established.

Except in the case of a Class 2 or Class 7 warehouse, the application must state whether the warehouse is to be operated only for the storage or treatment of merchandise belonging to the applicant, or whether it is to be operated as a public bonded warehouse.

If the warehouse is to be operated as a private bonded warehouse, the application must also state the general character of the merchandise to be stored therein, with an estimate of the maximum duties and taxes that will be due on the merchandise at any one time.

**Other Requirements**

The application must be accompanied by the following:

- A certificate signed by the president or a secretary of a board of fire underwriters that the building is a suitable warehouse and acceptable for fire-insurance purposes. At ports where there is no board of fire underwriters, certificates should be obtained and signed by officers of agents of two or more insurance companies.

- A blueprint showing measurements of the building or space to be bonded.

If the warehouse to be bonded is a tank, the blueprint should identify all outlets, inlets, and pipelines and be certified as correct by the proprietor of the tank.  A gauge table showing the capacity of the tank in U.S. gallons per inch or fraction of an inch of height, should be included and certified by the proprietor as correct.

When a part or parts of the building are to be used as a warehouse, a detailed description of the materials and construction of all partitions shall be included.

The port director may ask for a list of names and addresses and a set of fingerprints for all company officers, principals, and those individuals with access to the recordkeeping information.

Class 9 warehouses have specific requirements governing their establishment. These requirements include location, exit points, record-keeping systems, and the approval of local governments.

**Bonds Required**

Bonds for each class of warehouse are executed on a CBP Form 301.

**Where are CBP offices located?**

A-169

CBP has more than 300 ports of entry in the United States, Puerto Rico, and the U.S. Virgin Islands.  Please consult your local telephone directory under Federal government listings, Department of Homeland Security, U.S. Customs and Border Protection.

The material contained in this section is for information purposes only. The warehouse proprietor and/or importer must comply with all the legal and technical requirements set forth in the law and in the regulations. CBP is unable to recommend existing bonded warehouses for the use of individual importers.  Any additional questions regarding bonded warehouses operations should be directed to the local CBP office nearest you.

**Please visit the U.S. Customs and Border Protection web site at www.cbp.gov**

Department of Homeland Security
Customs and Border Protection
Washington, D.C. 20229

Revised February 2010

4

A-170

# Exhibit 7

☰ SECTIONS    📰 HOME    🔍 SEARCH    **The New York Times**    SUBSCRIBE NOW    LOG IN    ⚙

 Lin-Manuel Miranda Brings 'Hamilton' to a Troubled but Appreciative Puerto Rico

 A Real-World Battle Over Dancing Avatars: Did Fortnite Steal the Floss?

A WORD WITH
 Matthew Goode Knows How to Charm. Just Ask Lady Mary and Princess...



ARCHIVES | 2004

# Art Dealer Pleads Guilty In Import Case

By BARRY MEIER    JUNE 24, 2004               

A leading antiquities dealer pleaded guilty yesterday to a federal charge that he had falsified a customs document about the origins of an ancient silver ceremonial drinking vessel that his gallery later sold for $950,000.

The dealer, Hicham Aboutaam, the co-owner of Phoenix Ancient Art, acknowledged at a hearing in United States District Court in Manhattan that in 2000 he had falsely claimed that the object, known as a rhyton, had come from Syria when he believed that it was actually from Iran.

The Cleveland Museum of Art announced this week that it had bought what it thinks is an ancient bronze by the Greek sculptor Praxiteles from Phoenix Ancient Art, which has galleries in New York and Geneva.

During the court proceeding, Mr. Aboutaam apologized, saying that he had falsified the document because he had a client who was eager to buy the vessel and that he had been concerned that customs officials might delay approving its importation because of its Iranian origins. (Imports from Iran are severely restricted.)

Mr. Aboutaam was arrested at his Manhattan apartment in December and charged with smuggling, a felony, and with making false statements during the incident.

The charge to which he pleaded guilty is a misdemeanor. At his sentencing next month, Mr. Aboutaam faces a maximum prison term of six months and a fine of up to $5,000, under the guidelines being applied to his case.

At the time of the arrest, the authorities said the piece, shaped like a griffin, might be part of the Western Cave Treasure, hundreds of silver works discovered in the late 1980's in a cave near the Iran-Iraq border. The site was plundered soon after, and many of the pieces, which date to 700 B.C., passed into the market.

Evan Barr, an assistant United States attorney, said that federal officials had not decided what to do with the vessel once the government gained title to it. It was seized from its buyer, Paula Cussi, a collector and a Metropolitan Museum trustee.

Mr. Aboutaam runs Phoenix Ancient Art with his brother, Ali

1

About an art dealer who was found guilty in court in Italy in absentia for antiquities smuggling and sentenced him to 15 years in prison. He has denied any wrongdoing.

The TimesMachine archive viewer is a subscriber-only feature.

We are continually improving the quality of our text archives. Please send feedback, error reports, and suggestions to archive_feedback@nytimes.com.

A version of this article appears in print on June 24, 2004, on Page E00007 of the National edition with the headline: Art Dealer Ruled Guilty in Import Case. Order Reprints | Today's Paper | Subscribe

---

## Top News

Go to the Home Page »



**F.B.I. Opened Inquiry Into Whether Trump Was Secretly Working on Behalf of Russia**



**Trump Tweets Lengthy Attack on F.B.I. Over Inquiry Into Possible Aid to Russia**



**V.A. Seeks to Redirect Billions of Dollars Into Private Care**



NEWS ANALYSIS
**Trump's Wall Stance Upends Washington's Usual Border Bargaining**



**Brexit and the U.S. Shutdown: Two Governments in Paralysis**



**Government Shutdown Squeezes Contractors as Checks Stop and Invoices Stall**

### TRENDING

1. F.B.I. Opened Inquiry Into Whether Trump Was Secretly Working on Behalf of Russia 

2. Who Is MacKenzie Bezos? 

3. Trump Tweets Lengthy Attack on F.B.I. Over Inquiry Into Possible Aid to Russia 

4. Op-Ed Columnist: Nancy Pelosi Spanks the First Brat 

5. The Housecleaning Job That Saved My Life 

6. Trump's Five Craziest Arguments About the Shutdown 

7. Their Warhols Are at the Whitney. Their Ugly Divorce Is on Display, Too. 

8. The 20 Best TV Dramas Since 'The Sopranos' 

9. Trump Claims There Is a Crisis at the Border. What's the Reality? 

10. Julián Castro, Former Housing Secretary, Announces 2020 Presidential Run 

View More Trending Stories »

---

## The New York Times

Go to Home Page »

**NEWS**
World
U.S.
Politics
N.Y.
Business
Tech
Science
Health
Sports
Education
Obituaries
Today's Paper

**OPINION**
Today's Opinion
Op-Ed Columnists
Editorials
Op-Ed Contributors
Letters
Sunday Review
Video: Opinion

**ARTS**
Today's Arts
Art & Design
Books
Dance
Movies
Music
N.Y.C. Events Guide
Television
Theater
Video: Arts

**LIVING**
Automobiles
Crossword
Food
Education
Fashion & Style
Health
Jobs
Magazine
N.Y.C. Events Guide
Real Estate
T Magazine
Travel

**LISTINGS & MORE**
Reader Center
Classifieds
Tools & Services
N.Y.C. Events Guide
Multimedia
Photography
Video
NYT Store
Times Journeys
Subscribe
Manage My Account
NYTCo

**SUBSCRIBE**
🏠 Home Delivery
📱 Digital Subscriptions
✚ Crossword

Email Newsletters
Gift Subscriptions
Group Subscriptions
Education Rate

Mobile Applications
Replica Edition

A-173

# Exhibit 8

NEWS • PRESS RELEASES

# Manhattan District Attorney's Office Returns Three Ancient Statues to Lebanese Republic

DECEMBER 15, 2017



*Pictured (from l-r): Torso E1912; the Bull's Head; and the Calf Bearer.*

Manhattan District Attorney Cyrus R. Vance, Jr., today announced the formation of Manhattan District Attorney's Office's first-ever Antiquities Trafficking Unit and the return of three ancient statues to the Lebanese Republic during a repatriation ceremony attended by the Consul General of Lebanon in New York, Majdi Ramada and ICE Homeland Security Investigations ("HSI") Special Agent-in-Charge Angel M Melendez.

"Since 2012, my Office has recovered several thousand trafficked antiquities collectively valued at more than $150 million, including the beautiful stolen statues being returned to the Lebanese Republic today," said District Attorney Vance. "Whe you put a price tag on these artifacts, however, it is all too easy to forget that these are not just valuable collector's items—these are rare, celebrated remnants of entir civilizations' culture and history. My Office's newly formed Antiquities Trafficking Un is committed to stopping the trade of stolen antiquities from historic sites around th world. I thank our partners in foreign governments and law enforcement, including HSI New York, for their support."

**About the Office**
**Our Work**
**News**
MEDIA COVERAGE
PRESS RELEASES
NEWSLETTERS
EVENTS
REPORTS
SPEECHES
VIDEO
**Victim Resources**
**Careers**
**Contact Us**
SEARCH

Consul General of Lebanon in New York Majdi Ramadan said: "I sincerely apprecia
the efforts of the District Attorney of New York and his Office for their efforts to
enforce the rule of law, to eliminate the illicit trafficking of antiquities, and to
repatriate the three ancient statues to Lebanon."

Angel M. Melendez, Special Agent-in-Charge of HSI New York, said: "These three
pieces have travelled through the underworld of art, being recovered here in New
York. Now it is time that they are returned to Lebanon, their rightful home. The
trafficking of cultural property and art is a lucrative criminal enterprise that
transnational criminal organizations seek to partake of to make a profit; none
the cultural significance and worth of these returned treasures is beyond an
monetary value."

This year, the Manhattan District Attorney's Office seized several artifacts pursuant
search warrants and an ongoing joint investigation with partners in local and
international law enforcement into the trafficking of stolen antiquities, including:

- Torso E1912: In November, a marble torso, circa the 4th century B.C.E., was
  recovered from a private owner who acquired it after the statue was excavated
  the 1970s from the Temple of Eshmun, an ancient place of worship near Sidon i
  southwestern Lebanon. The item was subsequently stolen during the Lebanese
  Civil War and sold by an antiquities dealer before being shipped to New York.
- The Calf Bearer: In October, another marble torso, circa the 6th century B.C.E. a
  valued at approximately $4.5 million, was recovered from a private owner who
  acquired the artifact after it too was excavated from the Temple of Eshmun in th
  1970s, stolen during the Lebanese Civil War, and sold to private collectors.
- The Bull's Head: In July, a marble bull's head, circa 360 B.C.E. and valued at
  approximately $1.2 million, was recovered from the Metropolitan Museum of Art
  where it was on loan for display by a private collector who acquired the statue
  after it was also was excavated from the Temple of Eshmun in the 1960s,
  transferred to the Byblos Citadel in Jubayl, stolen during the Lebanese Civil Wa
  and sold to private collectors.

All of the items were seized pursuant to judicially authorized warrants, but were
thereafter forfeited once the owners were presented with evidence that the artifac
had been stolen from Lebanon.

*Antiquities Trafficking Unit*

To date, the Manhattan District Attorney's Office has recovered several thousand
stolen antiquities collectively valued at more than $150 million, many of which hav
been returned to their rightful owners and repatriated to their countries of origin.
These items include a Roman mosaic excavated from the Ships of Nemi; bronze

2

figurines and pottery pieces; an Etruscan relic stolen from the site of a historic necropolis known as the "City of the Dead"; a marble sarcophagus fragment; a Buddhist sculpture stolen from an archaeological dig site; and a set of ancient Gre coins, among others.

The formation of the Antiquities Trafficking Unit formalizes the collaborative processes and partnerships that led to these successful recoveries. When a new matter is brought to the attention of the assistant district attorneys, analysts, and paralegal who staff the unit, a team is assigned to collect information about of the item in question, potential criminality with respect to its possession, a trafficking network, where applicable, associated with the movement of the From there on, members of the unit work closely with partners in law enforc and foreign governments to gather the evidence needed to seize the item, criminal offenders, and return the artifact to the rightful owner.

Assistant District Attorney Matthew Bogdanos, Senior Trial Counsel, and Assistant District Attorney Christopher Hirsch handled the recovery of the artifacts, with the assistance of Antiquities Trafficking Analysts Mackenzie Priest and Alexa Marino, a Paralegal David Chardack.

District Attorney Vance thanked the following agencies and individuals for their assistance with the matter: the Consulate General of Lebanon in New York; HSI, ar in particular, Special Agents John Paul Labbat and Robert Mancene; the Office of t U.S. Attorney for the Eastern District of New York, and in particular, Assistant U.S. Attorney Karin Orenstein; Professor of Art Law Leila A. Amineddoleh at Fordham University School of Law, St. John's University School of Law, and New York University; Executive Director of the Antiquities Coalition Terressa Davis; Professor Rolf Stucky, former Head of the Department of Classical Archaeology at the University of Basel, Switzerland; and Director of the National Museum of Beirut, Ar Marie Afeiche.

###



## Manhattan District Attorney's Office

**MAIN OFFICE**
One Hogan Place
New York, NY 10013
212.335.9000

**HARLEM OFFICE**
163 West 125th Street
New York, NY 10027
212.864.7884

**WASHINGTON HEIGHTS OFFICE**
530 West 166th Street, Suite 600A
New York, NY 10032
212.335.3320

A-177



**A-178**

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HICHAM ABOUTAAM,<br><br>Plaintiff,<br><br>-*against*-<br><br>L'OFFICE FEDERAL DE LA CULTURE DE<br>LA CONFEDERATION SUISSE, et al.,<br><br>Defendants. | Civ. Action No. 1:18 Civ. 08248 (RA-BCM) |
| LYNDA BEIERWALTES, and<br>WILLIAM BEIERWALTES,<br><br>Plaintiff,<br><br>-*against*-<br><br>L'OFFICE FEDERAL DE LA CULTURE DE<br>LA CONFEDERATION SUISSE, et al.,<br><br>Defendants. | Civ. Action No. 1:18 Civ. 11167 (RA-BCM) |

## DECLARATION OF HANS GEORG NUSSBAUM

Hans Georg Nussbaum, pursuant to 28 U.S.C. § 1746, declares:

1    I am a Swiss attorney, educated at the University of Berne, and was admitted to the Swiss

bar in 1984. I have been head of the Law Section of the L'Administration federale des douanes

de la Confederation Suisse ("Swiss Federal Customs Administration") since 1998. I am not

directly involved in the criminal administrative procedures discussed below.

2    The L'Administration fédérale des douanes de la Confederation Suisse ("Swiss Federal

Customs Administration") is a Directorate of the Swiss Finance Department (Département

1

**A-179**

fédéral des finances) and an integral part of the Swiss Federal Government. The Swiss Federal Office of Culture is part of the Federal Department of Home Affairs (Département fédéral de l'intérieur), and also an integral part of the Swiss Federal Government. Neither is separately incorporated, and both operate under the general supervision of the Swiss Federal Council, which is the head of the Executive Branch of the Swiss Federal Government. They do not have a legal identity separate from that of the Swiss Confederation.

3      Unless qualified for an exception, all articles imported into Switzerland must be declared for assessment of customs duties and value added tax (VAT) pursuant to Articles 21 and 25 of Loi sur les douanes du 19 mars 2005) (the Customs Act of 18 March 2005 ("Customs Act") (SR 631.0). Exhibit 1. In accordance with Articles 50-53 of the Loi fédérale régissant la taxe sur la valeur ajoutée du 12 juin 2009 (Federal Act on Value Added Tax of 12 June 2009) ("VAT Act") (SR 641.20), the customs law applies to the collection of VAT on imports. Exhibit 2.

4      Pursuant to Article 62 of the Customs Act, imported items may be stored in a customs bonded warehouse without payment of duties and VAT, pending export to other countries. If the items are withdrawn for use or sale within Switzerland, or not exported within the time limit of the temporary admission, they must be declared to the customs authorities and payment of duties and taxes is immediately due. Exhibit 1.

5      The Federal Customs Administration is authorized to take enforcement actions against persons suspected of evading customs and tax law obligations pursuant to Article 128 of the Customs Act (Exhibit A) and Article 103 of the VAT Act (Exhibit 2). As prosecuting authority, the Federal Customs Administration applies the Loi fédérale sur le droit pénal administrative (DPA) du 22 mars 1974 (Federal Act on Administrative Criminal Law of 22 March 1974) (SR 313.0). The DPA, among other authorities, allows for the imposition of compulsory measures

**A-180**

such as seizures, search warrants, and the provisional detention or arrest of a person (see art. 45-60 DPA) (Exhibit 3.)

6        A seizure is authorized if an item is needed as an evidence (art. 46. 1 DPA), to prevent another crime or to secure a lien (art. 46. 2 DPA) (Exhibit 3.)  According to Article 82 of the Customs Act, the Swiss Confederation has a lien on goods subject to customs duties and VAT. A seizure under the Customs Act can be lifted after payment of the customs duties and VAT (see art. 84 of the Customs Act) (Exhibit 1). A seizure under the DPA is lifted when the lien is no longer necessary (art. 92.1 DPA) (Exhibit 3).

7        When a formal administrative criminal proceeding has been initiated, as in this case, a seizure by the Federal Customs Administration is subject to appeal to the Federal Criminal Court (see art. 26 DPA) (Exhibit 3).

8        As described in the customs lien seizure order, File No. 71-2016.19036, the Federal Customs Administration ordered a seizure of 111 objects of art and a marble statue on 28 February 2017, all located at the home of Ali and Biliana Kirilova Aboutaam in Geneva, based on suspicion that they were imported without payment of VAT.

9        More specifically, the items at issue were initially stored in a customs bonded warehouse and then had been withdrawn at the request of Phoenix Ancient Art SA, using the customs procedure of temporary admission, in order to be sold. However, the items were not sold, and there is no evidence that they were ever offered for sale.  Instead, they were placed in the home of Mr. Ali Aboutaam in Geneva.  Exhibit 4.

10        The seizure order directed that the objects and statue remain at the Aboutaams' home, and prohibited them from disposing of the articles. As far as the Federal Customs Administration

3

is aware, all of the objects subject to the seizure order remain at the Aboutaams' home in
Geneva.

11      Of the 18 items listed in the Beierwaltes' Complaint, as far as the Federal Customs
Administration is aware, only one was located at the Aboutaam's residence and therefore is
subject to the seizure order by the Federal Customs Administration.  This item is described in the
Complaint as "A terracotta pair of protomes of Greek origin".  This artwork (comprised of two
heads carved from terracotta) was was identified with the code TR.PRO.009 by the Swiss
importer.  Exhibit 4.

12      The Federal Customs Administration sent a formal communication to Mr. Ali Aboutaam
and his attorney on 7 November 2018 assessing the VAT on this item in the amount of 6'400
Swiss Francs, plus interest of 1'309.15 Swiss francs, totaling 7'709.15 Swiss francs, based on the
declared value of the artwork of 80'000 Swiss francs.  Exhibit 4.  This decision has been
appealed on December 14, 2018 to the Federal Customs Administration, based on article 116
para 1$^{bis}$ of the Customs Act.  The appeal is still pending.  If the VAT were paid, the seizure by
the Federal Customs Administration on this item would be lifted.  Any seizure order of the
Public Prosecutor's Office of Geneva that may apply to this same item would have be addressed
separately with that authority.

13      The Aboutaam Complaint does not identify the artworks over which Mr. Hicham
Aboutaam claims ownership, but it appears he does not assert ownership of any of the items that
are covered by seizure order No. 71-2016.19036.

14      The Beierwaltes and Hicham Aboutaam are not the directly accused persons in
Switzerland.  They are nonetheless able to intervene in the Federal Customs Administration
proceedings in Switzerland to assert ownership over particular items and pay the VAT that is

4

owed, if they can establish they are the legal owners of the items seized by the Federal Customs Administration.

15      Administrative criminal procedures for violations of the customs law are administered exclusively by the Federal Customs Administration. The Federal Office of Culture has neither the power of criminal investigation nor the power of seizure. Pursuant to article 27 of the Cultural Property Transfer Act, the Swiss Cantons, including the Canton of Geneva, are responsible for prosecuting and assessing criminal activities pursuant to that Act. The Federal Office of Culture has no authority to direct prosecutions or to give orders to the criminal prosecution authorities under the Cultural Property Transfer Act.

16      Items covered by the seizure order of the Federal Customs Administration were also covered by a seizure ordered by the Public Prosecutor's Office of Geneva. The actions of the Public Prosecutor's Office in Geneva are parallel but legally independent of the actions of the Federal Customs Administration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24 day of January 2019 in Bern, Switzerland

Hans Georg Nussbaum

5

A-183

# Exhibit 1

## Certification of Accuracy

Re: Translation (Art. 21, 25, 62, 84, 116, 128 de 631.0 Loi sur les douanes)

I, Cheryl A. Fain, hereby attest that I am a translator certified by the American Translators Association for French into English, that I have translated the attached document, and that to the best of my knowledge, ability, and belief this translation is a true, accurate, and complete translation of the original French document that was provided to me.



Verify at www.atanet.org/verify

Cheryl A. Fain                    , CT

January 22, 2019

Certification credentials may be verified online at www.atanet.org/verify.

*Cheryl A. Fain, M.A., CT (German and French into English)*
*Embassy of Switzerland*
*2900 Cathedral Avenue, N.W.*
*Washington, D.C. 20008*

*Tel.: (202) 745-7905    E-mail: cherylfain@eda.admin.ch*

631.0

**Customs Act[1]**

**(CA)**

of 18 March 2005 (Status on September 15, 2018)

---

*The Federal Assembly of the Swiss Confederation,*

based on Articles 57, para. 2, 101, 121, para. 1, and 133 of the Constitution[2], having considered the message of the Federal Council of December 15, 2003[3],

*resolves:*

*   *   *

### Art. 21      Obligation to deliver goods

[1] Whoever introduces goods or has goods introduced into the customs territory or assumes responsibility for them later on must deliver them or have them delivered without delay and unchanged to the closest customs office. This obligation also applies to travelers arriving from abroad who purchase goods in a Swiss duty-free shop.[1]

[2] Whoever carries goods or has goods carried toward foreign customs territory must deliver them to the competent customs office beforehand and export them unchanged after assessment.

[3] Transport companies are also subject to the obligation to deliver the goods transported by them to the customs office in so far as travelers or authorized persons do not meet this obligation for their luggage.

*   *   *

### Art. 25      Declaration

[1] The person subject to the obligation to declare must, within the time limit set by the FCA (Federal Customs Administration), declare for the purpose of assessment the delivered, presented and briefly declared goods to the customs office and submit the accompanying documents.

[2] The customs destination must be documented in the customs declaration.

[3] The FCA can direct that, in the interest of customs surveillance, goods be declared at the customs office before being brought into the customs territory or leaving it.

[4] At his own cost and risk, the person subject to the obligation to declare can, before submitting the customs declaration, examine the briefly declared goods or have them examined.

---

[1] Sentence introduced by No. I 1 of the Federal Act of 17 December 2010 on the Purchase of Goods in Duty-free Shops at Airports, in force since June 1, 2011 (Official Compilation of Federal Legislation **2011** 1743; Official Federal Gazette **2010** 1971)

•   •   •

### Art. 62        Definition and purpose

Duty-free warehouses are part of the customs territory or of the premises located on it:

    a.   which are under customs surveillance;
    b.   which are separated from the rest of the customs territory;
    c.   in which goods which are not released for free circulation can be stored.

The goods placed under the export system can be stored in a duty-free warehouse if they are exported after they have been released from storage. The Federal Council can provide for the storage of goods which will not be exported.

The stored goods are subject neither to import duties nor to trade policy measures.

•   •   •

### Art. 84        Release

The goods or the seized things can be released to the entitled person against impounding.

The goods or the things are released without impounding if the owner:

    a.   is not personally liable for the secured customs debt, and
    b.   proves that the goods or the things have been used without his fault to commit an offense or that he acquired the property or the right to become the owner before the seizure without knowing that the customs obligations were not met.

•   •   •

### Art. 116[2]

Decisions of the customs offices can be the subject of an appeal to the customs district directorates.

Decisions of the first instance made by the customs district directorates can be the subject of an appeal to the General Customs Directorate.

The FCA is represented by the General Customs Directorate in proceedings before the Federal Administrative Court and the Federal Supreme Court.

The time limit for an appeal in the first instance against assessment is 60 days from the issuance of the assessment decision.

Moreover, the appeal proceeding is governed by the general provisions on the administration of federal justice.

•   •   •

---

[2] New version under Art. 50 of the Federal Administrative Court Act of 17 June 2005, in force since January 1, 2007 (Official Compilation of Federal Legislation 2006 2197 1069; Official Federal Gazette 2001 4000).

**Art. 128**   Prosecution

¹ Offenses are prosecuted and judged under this law and the Federal Act on Administrative Criminal Law³.

² The competent authority for prosecution and judgment is the Federal Customs Administration.

---

³ New version under Art. 50 of the Federal Administrative Court Act of 17 June 2005, in force since January 1, 2007 (Official Compilation of Federal Legislation **2006** 2197 1069; Official Federal Gazette **2001** 4000).

3                                                                                                          4

**631.0**

Loi
sur les douanes[1]
(LD)

du 18 mars 2005 (Etat le 15 septembre 2018)

*L'Assemblée fédérale de la Confédération suisse,*

vu les art. 57, al. 2, 101, 121, al. 1, et 133 de la Constitution[2], vu le message du Conseil fédéral du 15 décembre 2003[2],

*arrête:*

\* \* \*

### Art. 21   Obligation de conduire les marchandises

[1] Quiconque introduit ou fait introduire des marchandises dans le territoire douanier ou les prend en charge par la suite doit les conduire ou les faire conduire sans délai et en l'état au bureau de douane le plus proche. Cette obligation s'applique également aux voyageurs arrivant de l'étranger qui acquièrent des marchandises dans une boutique hors taxes suisse.[1]

[2] Quiconque achemine ou fait acheminer des marchandises vers le territoire douanier étranger doit préalablement les conduire au bureau de douane compétent et les exporter en l'état après la taxation.

[3] Les entreprises de transport sont également soumises à l'obligation de conduire au bureau de douane les marchandises qu'elles transportent à moins que les voyageurs, pour leurs bagages, ou les ayants droit ne remplissent cette obligation.

\* \* \*

### Art. 25   Déclaration

[1] La personne assujettie à l'obligation de déclarer doit, dans le délai fixé par l'AFD, déclarer en vue de la taxation les marchandises conduites, présentées et déclarées sommairement au bureau de douane et remettre les documents d'accompagnement.

[2] La destination douanière doit être consignée dans la déclaration en douane.

[3] L'AFD peut prévoir, dans l'intérêt de la surveillance douanière, que des marchandises soient déclarées au bureau de douane avant d'être introduites dans le territoire douanier ou sorties de celui-ci.

[4] La personne assujettie à l'obligation de déclarer peut, avant de remettre la déclaration en douane, analyser ou faire analyser à ses frais et à ses risques des marchandises déclarées sommairement.

---

[1] Phrase introduite par le ch. I 1 de la LF du 17 déc. 2010 sur l'achat de marchandises dans les boutiques hors taxes des aéroports, en vigueur depuis le 1er juin 2011 (RO 2011 1743; FF 2010 1971)

1

5

* * *

### Art. 62      Définition et but

[1] Les dépôts francs sous douane sont des parties du territoire douanier ou des locaux situés sur celui-ci:

- a.  qui sont sous la surveillance douanière;
- b.  qui sont séparés du reste du territoire douanier;
- c.  dans lesquels des marchandises qui ne sont pas en libre pratique peuvent être entreposées.

[2] Les marchandises placées sous le régime de l'exportation peuvent être entreposées dans un dépôt franc sous douane si, après leur sortie de l'entrepôt, elles sont exportées. Le Conseil fédéral peut prévoir l'entreposage de marchandises qui ne seront pas exportées.

[3] Les marchandises entreposées ne sont soumises ni aux droits à l'importation ni aux mesures de politique commerciale.

* * *

### Art. 84      Restitution

[1] Les marchandises ou les choses séquestrées peuvent être restituées à l'ayant droit contre sûretés.

[2] Les marchandises ou les choses sont restituées sans sûreté si le propriétaire:

- a.  ne répond pas personnellement de la créance douanière garantie, et
- b.  prouve que les marchandises ou les choses ont été utilisées sans sa faute pour commettre une infraction ou qu'il en a acquis la propriété ou le droit de devenir propriétaire avant le séquestre sans savoir que les obligations douanières n'étaient pas remplies.

* * *

### Art. 116[2]

[1] Les décisions des bureaux de douane peuvent faire l'objet d'un recours auprès des directions d'arrondissement.

[1bis] Les décisions de première instance des directions d'arrondissement peuvent faire l'objet d'un recours auprès de la Direction générale des douanes.

[2] L'AFD est représentée par la Direction générale des douanes dans les procédures devant le Tribunal administratif fédéral et le Tribunal fédéral.

[3] Le délai de recours en première instance contre la taxation est de 60 jours à compter de l'établissement de la décision de taxation.

[4] Au surplus, la procédure de recours est régie par les dispositions générales sur la procédure fédérale.

---

[2] Nouvelle teneur selon l'art. 50 de la L du 17 juin 2005 sur le TAF, en vigueur depuis le 1er janv. 2007 (RO 2006 2197 1069; FF 2001 4000).

2

6

*   *   *

**Art. 128**      Poursuite pénale

[1] Les infractions sont poursuivies et jugées conformément à la présente loi et à la DPA[3].

[2] L'autorité compétente pour poursuivre et juger est l'AFD.

---

[3] Nouvelle teneur selon l'art. 50 de la L du 17 juin 2005 sur le TAF, en vigueur depuis le 1er janv. 2007 (RO 2006 2197 1069; FF 2001 4000).

A-191

# Exhibit 2


Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra



Start  ›  Federal law  ›  Classified compilation  ›  Internal laws  ›  641.20 Federal Act of 12 June 2009 on Value Added Tax (Value Added Tax Act, VAT Act)

# 641.20

*English is not an official language of the Swiss Confederation. This translation is provided for information purposes only and has no legal force.*

## Federal Act on Value Added Tax

## (Value Added Tax Act, VAT Act)

of 12 June 2009 (Status as of 1 January 2019)

*The Federal Assembly of the Swiss Confederation,*

based on Article 130 of the Federal Constitution[1], and having considered the Dispatch of the Federal Council dated 25 June 2008[2],

*decrees:*

## Title 1 General Provisions

**Art. 1** Subject and principles

[1] The Confederation shall levy a general consumption tax based on the system of net all-phase taxation with input tax deduction (Value Added Tax). The purpose of the tax is to tax non-business end use on Swiss territory.

[2] As Value Added Tax, it levies:

a.
　　a tax on goods and services supplied for consideration by taxable persons on Swiss territory (domestic tax);

b.
　　a tax on the acquisition by recipients on Swiss territory of supplies from businesses domiciled abroad (acquisition tax);

c.

in the case of taxable persons under Article 45 paragraph 2 letter a who report on the basis of agreed considerations (Art. 40 para. 1) at the time of receipt of the invoice, and for supplies without invoicing on payment of the consideration.

[2] Prescription of the right to establish the tax and legally binding effect are governed by Articles 42 and 43.

**Art. 49** Joint and several liability, tax succession and substitution

For joint and several liability, tax succession and substitution, the provisions of Articles 15-17 apply.

## Title 4 Import Tax

**Art. 50** Applicable law

For the tax on the import of goods, the customs legislation applies, unless the following provisions provide otherwise.

**Art. 51** Tax liability

[1] Any person who is a customs debtor under Article 70 paragraphs 2 and 3 CustA[1] is liable to the tax.

[2] Joint and several liability under Article 70 paragraph 3 CustA does not apply to persons who file customs declarations commercially (Art. 109 CustA) if the importer:

**a.**

    is entitled to make an input tax deduction (Art. 28);

**b.**[2]

    has the import tax debt charged via the FCA's centralised settlement procedure (CSP) account; and

**c.**

    has commissioned the person who files customs declarations commercially to act as his direct agent.

[3] The FCA may require the person who issues customs declarations commercially to provide evidence of his authority as an agent.[3]

[1] SR **631.0**

[2] Amended by No I of the FA of 30 Sept. 2016, in force since 1 Jan. 2018 (AS **2017** 3575; BBl **2015** 2615).

[3] Amended by No I of the FA of 30 Sept. 2016, in force since 1 Jan. 2018 (AS **2017** 3575; BBl **2015** 2615).

**Art. 52** Taxable object

[1] The taxable object is:

**a.**

the import of goods, including the services and rights contained therein;

**b.**

the release of goods under Article 17 paragraph 1[bis] CustA[1] for free circulation by persons arriving by air from abroad.[2]

[2] If, on the import of data storage media, no market value can be established and if the import is not exempt from tax under Article 53, no import tax is due thereon and the provisions concerning the acquisition tax (Art. 45-49) apply.[3]

[3] The provisions of Article 19 apply to a plurality of supplies.

[1] SR **631.0**
[2] Amended by No I 2 of the FA of 17 Dec. 2010 on the Purchase of Goods in Duty-Free Shops at Airports, in force since 1 June 2011 (AS **2011** 1743; BBl **2010** 2169).
[3] Amended by No I of the FA of 30 Sept. 2016, in force since 1 Jan. 2018 (AS **2017** 3575; BBl **2015** 2615).

**Art. 53** Tax exempt imports

[1] Exempt from the tax is the import of:

**a.**

goods in small quantities, of insignificant value or with an insignificant tax amount; the FDF shall issue more detailed provisions;

**b.**

human organs by recognised medical institutions and hospitals and of human whole blood by persons possessing the necessary licence;

**c.**

works of art that were personally created by painters or sculptors and are brought onto Swiss territory by them or on their behalf, subject to Article 54 paragraph 1 letter c;

**d.**

goods that are exempt from customs duties under Article 8 paragraph 2 letters b-d, g and i-l CustA[1];

**e.**

goods under Article 23 paragraph 2 number 8 that are imported as part of a supply of goods by airlines under Article 23 paragraph 2 number 8 or are brought onto Swiss territory by such airlines, provided they have procured the

Case 19-3457, Document 50, 01/31/2020, 2767011, Page205 of 221

goods prior to import as part of a supply of goods and after the import use them for their own business activities entitling the taxable person to make an input tax deduction (Art. 28);

f.

goods that have been assessed under the export procedure (Art. 61 CustA) and are returned unaltered to the consignor on Swiss territory, provided they have not been exempt from the tax because of export; if the amount of tax is substantial, the tax exemption with credit is granted by reimbursement; the provisions of Article 59 apply by analogy;

g.[2]

electricity in cables, gas via the natural gas distribution network and district heating;

h.

goods that are declared tax free in treaties governed by international law;

i.

goods that are imported onto Swiss territory for temporary admission under Articles 9 and 58 CustA or for inward processing under Articles 12 and 59 CustA under the procedure with entitlement to reimbursement, subject to Article 54 paragraph 1 letter d;

j.

goods that are temporarily imported onto Swiss territory by a person registered on Swiss territory as a taxable person for job processing under a work and labour contract and which are assessed under the procedure for inward processing as being conditionally due for payment (suspensive procedure) (Art. 12 and 59 CustA);

k.

goods that were exported from Swiss territory under Article 9 and 58 CustA for temporary admission or under Articles 13 and 60 CustA for outward job processing under a work and labour contract and are returned to the consignor on Swiss territory, subject to Article 54 paragraph 1 letter e;

l.

goods that have been taken abroad for job processing under a work and labour contract under the export procedure (Art. 61 CustA) and are returned to the consignor on Swiss territory, subject to Article 54 paragraph 1 letter f.

[2] The Federal Council may exempt from the import tax goods that it declares exempt from customs duties under Article 8 paragraph 2 letter a CustA.

A-196

[2] The imposition of a penalty under Article 98 letter a of this Act does not preclude the imposition of a penalty under Articles 96 and 97.

[3] The imposition of a penalty under Article 14 ACLA precludes the imposition of an additional penalty for the same criminal act under Articles 96 and 97 of this Act.

[4] If an act meets the criterion of evasion of import tax or of receipt of untaxed goods as well as offence to be pursued by the FCA against other federal tax decrees, the penalty for the most serious violation shall be imposed; it may be increased appropriately.

[5] If the perpetrator through one or more acts fulfils the requirements for the imposition of two or more penalties that fall within the area of competence of the FTA, the penalty for the most serious violation shall be imposed; it may be increased appropriately.

[1] SR **313.0**

**Art. 102** Self-reporting

[1] If the taxable person reports himself for an offence under this Act before it comes to the attention of the competent authority, he will not be prosecuted if:

**a.**

  the person assists the authority in a reasonable manner in establishing the tax payable or refundable; and

**b.**

  the person makes a serious effort to pay the tax due or refundable.

[2] If a non-taxable person who has committed an offence under this Act or has participated in such an offence reports the offence, he will not be prosecuted.

[3] A legal entity reports itself through its executive bodies or representatives. Joint and several liability under Article 12 paragraph 3 ACLA[1] of the executive bodies or of the representatives does not apply and no prosecution will be brought.

[4] A correction of the return under Article 72 paragraph 2 qualifies as self-reporting.

[1] SR **313.0**

**Art. 103** Prosecution

[1] With the exception of Articles 63 paragraphs 1 and 2, 69 paragraph 2, 73 paragraph 1 last sentence and 77 paragraph 4, the ACLA[1] governs prosecution.

[2] Prosecution is the responsibility of the FTA for domestic tax and acquisition tax, and of the FCA for import tax.

[3] In closely related criminal cases in which both the FTA and the FCA have jurisdiction, the FTA may by agreement with the FCA decide to join the prosecutions under one of the two authorities.

[4] Prosecution may be dispensed with if the level of culpability and the consequences of the crime are negligible (Art. 52 SCC[2]). In these cases a non-intervention or no-proceedings ruling is issued.

[5] If the competent authority must also investigate or judge other offences to which the ACLA applies, paragraph 1 applies to all offences.

[1] SR 313.0
[2] SR 311.0

**Art. 104** Procedural guarantees

[1] The accused has the right to fair criminal proceedings in accordance with the Federal Constitution and the relevant legislation on criminal procedure.

[2] The accused is not obliged to incriminate himself in criminal proceedings.

[3] The information (Art. 68 and 73) given by the accused in the criminal proceedings or evidence from an audit under Article 78 may be used in criminal proceedings only if the accused consents thereto.

[4] The opening of a criminal investigation must be notified in writing to the suspect without delay unless there is good cause for not doing so.

**Art. 105** Prescription of the right to prosecute

[1] The right to initiate a criminal investigation prescribes as follows:

a.

    for infringements of procedural obligations: at the time when the tax claim relating to the offence becomes legally binding;

b.[1]

    in relation to domestic and acquisition tax:

    1.

        in the case of contraventions under Article 96 paragraphs 1-3: six months after the relevant tax claim becomes legally binding,

    2.

        for tax evasion offences under Article 96 paragraph 4: two years after the relevant tax claim becomes legally binding,

    3.

# Exhibit 3

**A-199**

## Certification of Accuracy

Re:  Translation (**Art. 26, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 92 de 313.0 Loi fédérale sur le droit pénal administratif**)

I, Cheryl A. Fain, hereby attest that I am a translator certified by the American Translators Association for French into English, that I have translated the attached document, and that to the best of my knowledge, ability, and belief this translation is a true, accurate, and complete translation of the original French document that was provided to me.



Verify at www.atanet.org/verify

*Cheryl A. Fain*                    , CT
*January 22, 2019*

Certification credentials may be verified online at www.atanet.org/verify.

*Cheryl A. Fain, M.A., CT (German and French into English)*
*Embassy of Switzerland*
*2900 Cathedral Avenue, N.W.*
*Washington, D.C. 20008*

*Tel.: (202) 745-7905   E-mail: cherylfain@eda.admin.ch*

1

313.0

**Federal Act**

**on Administrative Criminal Law**

**(ACLA)**

of 22 March 1974 (Status on January 1, 2019)

---

*The Federal Assembly of the Swiss Confederation,*

based on Articles 64bis, 106 and 114 of the Constitution[1], [2] having considered the message of the Federal Council of April 21, 1971[3],

*resolves:*

\*   \*   \*

### Art. 26

B Appeal
against
investigative acts
I During
coercive
measures

[1] Coercive measures (Art. 45 ff.) and the acts or omissions connected with them can be the subject of an appeal addressed to the Appeals Chamber of the Federal Criminal Court.

[2] The appeal should be filed:

    a.  with the Appeals Chamber if it is directed against a cantonal judicial authority or against the director or head of the administration;

    b.  with the director or head of the administration in other cases.

[3] If, in the cases mentioned in para. 2, subpara. b, the director or the head of the administration corrects the official act or the omission in accordance with the conclusions of the appellant, the appeal lapses; otherwise, he forwards it to the Appeals Chamber, with his observations, by the third working day following that in which it was filed at the latest.

\*   \*   \*

### Art. 45

F Coercive
measures
I General
provisions

[1] A seizure, search, provisional arrest or arrest must be conducted with the proper consideration for the person concerned and his property.

[2] Coercive measures cannot be taken in case of a petty offense,

### Art. 46

II Seizure
1. Object

[1] The investigating official can seize:

    a.  objects that can serve as evidence

    b.  objects and other assets which will probably be confiscated

    c.  gifts and other advantages which will be transferred to the State.

[2] The other objects and assets which served to commit the offense or which are the proceeds of it can be seized if it seems necessary to prevent new offenses or to guarantee a legal lien.

[3] It is prohibited to seize objects and documents concerning contacts between a person and his attorney provided he is authorized to practice legal representation under the Act of 23 June 2000 on Attorneys[1] and does not have the status of an accused person in the same matter.[2]

### Art. 47

2 Procedure

[1] The holder of seized objects and assets is obligated to deliver them to the investigating official against receipt or handing over a copy of the official report on the seizure.

[2] The seized objects and assets are listed in the official report on the seizure and put in a secure place.

[3] When the seized objects are subject to rapid depreciation or require costly maintenance, the administration can auction them or, in the case of an emergency, hold a private sale.

### Art. 48

III House search
and personal
searches
1 Conditions,
competence

[1] A search will be able to be conducted in houses and other premises as well as on enclosed real property directly belonging to a house only if it is probable that the accused is concealing something there or objects or assets subject to seizure or traces of the offense can be found there.

[2] The accused can be searched as needed.  The search must be conducted by a person of the same sex or by a doctor.

[3] The search takes place pursuant to a written warrant from the director or head of the administration.

[4] If there is danger in waiting and a search warrant could not be obtained on time, the investigating official himself can order a search or proceed with one.  Reasons for this measure must be given in the file.

### Art. 49

2 Enforcement

[1] At the beginning of the search, the investigating official must identify himself.

[2] The occupant of the premises must be informed of the reason for the search and be consulted if he is present; if he is absent, a relation or a member of the household should be consulted.  Furthermore, the official designated by the competent cantonal authority or, if the investigating official searches on his own initiative, a member of the municipal authority or an official from the canton, district or municipality who sees to it that the operation does not depart from its original purpose are called upon to be present at the search.  If there is danger in

---

[1] CC 935.61.

[2] Introduced by No. 1 7 of the Federal Act of 28 September 2012 on the Adaptation of Procedural Provisions related to the Professional Secrecy of Attorneys, in force since May 1, 2013 (Official Compilation of Federal Legislation 2013 847; Official Federal Gazette 2011 7509).

waiting or if the occupant of the premises consents to it, the search can take place without the assistance of officials, members of the household or relations.

[3] In general, the search cannot be conducted on Sunday, official holidays and at night except for important matters and in case of imminent danger.

[4] The official report on the search is immediately drawn up in the presence of those who participated in it; at their request, they are provided with a copy of the search warrant and the official report.

### Art. 50

IV Search of papers

[1] The search of papers must be conducted with the greatest regard for private secrets; in particular, the papers will be examined only if they apparently contain documents which are important to the investigation.

[2] The search must be conducted in such a way as to protect official secrecy, as well as secrets confided in clergymen, attorneys, solicitors/notaries, doctors, pharmacists, midwives and in their assistants, in their offices or their profession.

[3] Before the search, each time it is possible, the holder of the papers should be given the right to indicate their contents. If he objects to the search, the papers are placed under seal and deposited in a secure place; the Appeals Chamber of the Federal Criminal Court rules on the admissibility of the search (Art. 25, para. 1).

### Art. 51

V Provisional arrest and appearing before the judge

[1] The investigating official can provisionally arrest a person against whom there are serious presumptions of guilt if there apparently is a cause for arrest under Art. 52 and if there is danger in waiting.

[2] The person who is provisionally arrested or brought before the administration in accordance with Art. 19, para. 4, must be interrogated immediately; he will be given the opportunity to express himself on the existing presumptions and to deny the reason for the provisional arrest.

[3] If a reason for arrest apparently remains, the provisionally arrested person is immediately brought before the competent cantonal judicial authority to issue arrest warrants. If the provisional arrest has been done at a location which is remote or difficult to access or if the judicial authority cannot be reached immediately, the presentation takes place within forty-eight hours.

[4] The judicial authority examines whether there is a reason for arrest; the investigating official and the provisionally arrested person are heard on the topic.

[5] The judicial authority then decides on the arrest or the release, on bail when necessary. The decision can be challenged by an appeal (Art. 26).

[6] If the investigating official immediately announces that he is making a complaint against the release, the provisional arrest is temporarily continued. The director or head of the administration must, within twenty-four hours, inform the judicial authority about the continuation of the complaint. If the complaint is continued, the provisional arrest remains until the decision of the Appeals Chamber, unless otherwise provided by it or its presiding judge.

4

### Art. 52

VI. Arrest
1. Conditions

[1] When the accused is seriously suspected of having committed an offense, an arrest warrant can be issued against him if specific circumstances suggest:

a. that he will abscond from prosecution or from the enforcement of the sentence, or
b. that he will erase the traces of the offense, that he will destroy evidence, that he will induce witnesses or co-accused to make false statements or that he will compromise the result of the investigation in some other way.

[2] An arrest warrant cannot be issued when the importance of the matter does not justify it.

### Art. 53

[1] The investigating official can suggest that an arrest warrant be issued.

2. Arrest warrant
a. Competence,
form

[2] The authorities competent to issue the arrest warrant are the following:

a. in case of provisional arrest: the competent cantonal judicial authority at the place of the arrest
b. in all other cases: the competent cantonal judicial authority according to Art. 22

[3] The arrest warrant is issued in writing and must indicate: the identity of the accused and the offense with which he is charged; the applicable criminal provisions; the reason for the arrest; the place where the accused must be preventively imprisoned; furthermore it must mention the legal channels, the rights of the parties, the conditions of the release on bail and the right to notify family members.

### Art. 54

b. Enforcement,
searching the
accused

[1] A copy of the arrest warrant must be provided to the accused at the time of the arrest.

[2] The prisoner is brought to the competent cantonal authority, which is provided with a copy of the arrest warrant at the same time.

[3] If it is impossible to enforce the warrant, a search is ordered. The warrant can be published.

### Art. 55

c. Taking
testimony from
the prisoner

[1] The authority which issued the arrest warrant takes testimony from the accused if he has not been heard already (Art. 51, para. 4), at the latest by the first working day following the day of the arrest, in order to determine whether there is a reason for arrest; the investigating official is heard on the topic.

[2] If the detention is continued, the reasons for it are communicated to the accused; if the accused is released, Art. 51, para. 6, is applicable by analogy.

4

5

Case 19-3457, Document 50, 01/31/2020, 2767011, Page214 of 221

### Art. 56

3. Notification of close relatives

If the requirements of the investigation allow it, the prisoner has the right to immediately notify his close relatives of his arrest through the investigating official.

### Art. 57

4. Duration of the detention

[1] If the detention is continued, the investigation must be accelerated to the maximum extent possible. In any case, the detention must not exceed the probable duration of an imprisonment or of an imposed sentence converted from a fine.

[2] Unless specifically permitted by the authority which issued the arrest warrant, the preventive detention carried out in accordance with Art. 52, para.1, subpara. b, cannot be continued beyond fourteen days.

### Art. 58

5. Enforcement of the detention

[1] The cantonal authority provides that the detention is enforced properly. The prisoner must not be hindered in his freedom more than is required by the purpose of the detention and the keeping of order in the prison.

[2] The prisoner can communicate orally or in writing with his defense counsel if he is authorized to do so by the investigating official; that official can limit or have those communications stopped only if the interest of the investigation requires it. Limiting or terminating those communications for more than three days requires the approval of the authority which issued the arrest warrant; that approval can be granted each time only for ten days at the most.

[3] Moreover, the enforcement of the detention is governed by Articles 234 to 236 of the Swiss Criminal Procedure Code[3].[4]

### Art. 59

6. Release

[1] The investigating official releases the prisoner as soon as the detention is no longer justified.

[2] The prisoner can ask to be released at any time.

[3] As long as the file has not been transferred to the court for judgment, the authority which issued the arrest warrant decides on the request. That authority questions the investigating official or the administrative authority before which the matter is pending about the subject; Art. 51, para. 5 and 6, are applicable by analogy.

### Art. 60

7. Release on bail

[1] The accused who ought to be arrested or who has been arrested under Art. 52, para. 1, subpara. a,, can, at his request, be released on bail.

---

[3] CC 312.0.
[4] New version according to No. II 11 of Annex 1 to the Swiss Criminal Procedure Code of 5 October 2007, in force since January 1, 2011 (Official Compilation of Federal Legislation 2010 1881; Official Federal Gazette 2006 1057).

Articles 238 to 240 of the Swiss Criminal Procedure Code[5] are applicable by analogy to release on bail.[6] However, the securities must be provided to the Federal Department of Finance[7]; the securities are also matured if the accused avoids paying the fine that was ordered, a possible balance of an account having then passed to the Confederation.

*  *  *

### Art. 92

C. Recovery of
seized objects
realization

[1] The seized objects and assets which have not been either confiscated or transferred to the State and which are not subject to a legal lien are restituted to the entitled person. If that person is unknown and the value of the objects justifies it, it is announced in an official publication.

[2] If no entitled person announces himself within thirty days, the administration can have the objects sold at an auction. If the entitled person announces himself after the realization, the product of that entitled person will be delivered to him after deduction of costs.

[3] The right to recovery of possession of the thing or to delivery of the product lapses five years after the official publication.

[4] If there is a challenge to the person to whom the thing must be recovered or to his product being delivered, the administration can release itself by placing it in the custody of the court.

---

[5] CC 312.0.

[6] New version according to No. II 11 of Annex 1 to the Swiss Criminal Procedure Code of 5 October 2007, in force since January 1, 2011 (Official Compilation of Federal Legislation 2010 1881; Official Federal Gazette 2006 1057).

[7] New name under Art. 1 of the Federal Council Decree of 23 April 1980 concerning the adaptation of provisions of federal law to new names of departments and offices (unpublished).

**313.0**

**Loi fédérale
sur le droit pénal administratif
(DPA)**

du 22 mars 1974 (Etat le 1er janvier 2019)

*L'Assemblée fédérale de la Confédération suisse,*

vu les art. 64bis, 106 et 114 de la constitution[1],[2] vu le message du Conseil fédéral du 21 avril 1971[3],

*arrête:*

*   *   *

### Art. 26

B. Plainte au
sujet des actes
d'enquête
1. A l'occasion
de mesures de
contrainte

[1] Les mesures de contrainte (art. 45 et s.) et les actes ou omissions qui s'y rapportent peuvent être l'objet d'une plainte adressée à la cour des plaintes du Tribunal pénal fédéral.

[2] La plainte est déposée:

> a.  auprès de la cour des plaintes si elle est dirigée contre une autorité judiciaire cantonale ou contre le directeur ou chef de l'administration;
>
> b.  auprès du directeur ou du chef de l'administration dans les autres cas.

[3] Si, dans les cas mentionnés à l'al. 2, let. b, le directeur ou le chef de l'administration corrige l'acte officiel ou remédie à l'omission conformément aux conclusions du plaignant, la plainte devient caduque; sinon, il la transmet à la cour des plaintes, avec ses observations, au plus tard le troisième jour ouvrable suivant celui où elle a été déposée.

*   *   *

### Art. 45

F. Mesures de
contrainte
I. Dispositions
générales

[1] Le séquestre, la perquisition, l'arrestation provisoire ou l'arrestation doivent être opérés avec les égards dus à la personne concernée et à sa propriété.

[2] Des mesures de contrainte ne peuvent être prises en cas d'inobservation de prescriptions d'ordre.

### Art. 46

II. Séquestre
1. Objet

[1] Le fonctionnaire enquêteur met sous séquestre:

> a.  les objets pouvant servir de pièces à conviction;
> b.  les objets et autres valeurs qui seront vraisemblablement confisqués;
> c.  les dons et autres avantages qui seront dévolus à l'Etat.

1

[2] Les autres objets et valeurs qui ont servi à commettre l'infraction ou qui en sont le produit peuvent être séquestrés, lorsque cela paraît nécessaire pour empêcher de nouvelles infractions ou pour garantir un droit de gage légal.

[3] Il est interdit de séquestrer les objets et les documents concernant des contacts entre une personne et son avocat si celui-ci est autorisé à pratiquer la représentation en justice en vertu de la loi du 23 juin 2000 sur les avocats[1] et n'a pas le statut de prévenu dans la même affaire.[2]

### Art. 47

2 Procédure

[1] Le détenteur d'objets et valeurs séquestrés est tenu de les délivrer au fonctionnaire enquêteur contre récépissé ou remise d'une copie du procès-verbal de séquestre.

[2] Les objets et valeurs séquestrés sont désignés dans le procès-verbal de séquestre et mis en lieu sûr.

[3] Lorsque les objets séquestrés sont soumis à une dépréciation rapide ou sont d'un entretien onéreux, l'administration peut les vendre aux enchères ou, s'il y a urgence, de gré à gré.

### Art. 48

III. Perquisition domiciliaire et fouille de personnes
1. Conditions, compétence

[1] Une perquisition pourra être opérée dans des logements et autres locaux ainsi que sur des fonds clos attenant à une maison seulement s'il est probable que l'inculpé s'y dissimule ou s'il s'y trouve des objets ou valeurs soumis au séquestre ou des traces de l'infraction.

[2] L'inculpé peut être fouillé au besoin. La fouille doit être opérée par une personne du même sexe ou par un médecin.

[3] La perquisition a lieu en vertu d'un mandat écrit du directeur ou chef de l'administration.

[4] S'il y a péril en la demeure et qu'un mandat de perquisition ne puisse être obtenu à temps, le fonctionnaire enquêteur peut lui-même ordonner une perquisition ou y procéder. Cette mesure doit être motivée dans le dossier.

### Art. 49

2 Exécution

[1] Au début de la perquisition, le fonctionnaire enquêteur doit justifier de sa qualité.

[2] L'occupant des locaux doit être informé du motif de la perquisition et appelé à y assister s'il est présent; s'il est absent, il est fait appel à un parent ou à une personne du ménage. Est en outre appelé à assister à la perquisition l'officier public désigné par l'autorité cantonale compétente ou, si le fonctionnaire enquêteur perquisitionne de son propre chef, un membre de l'autorité communale ou un fonctionnaire du canton, du district ou de la commune, qui veille à ce que l'opération ne s'écarte pas de son but. S'il y a péril en la demeure ou si l'occupant des locaux y consent, la perquisition peut avoir lieu sans l'assistance d'officiers publics, de personnes du ménage ou de parents.

---

[1] RS 935.61

[2] Introduit par le ch. I 7 de la LF du 28 sept. 2012 sur l'adaptation de dispositions de procédure relatives au secret professionnel des avocats, en vigueur depuis le 1er mai 2013 (RO 2013 847; FF 2011 7509).

[3] La perquisition ne peut en général être opérée le dimanche, les jours de fêtes générales et de nuit que pour des affaires importantes et en cas de danger imminent.

[4] Le procès-verbal de perquisition est dressé immédiatement en présence de ceux qui ont assisté à l'opération; à leur requête, il leur est remis une copie du mandat de perquisition et du procès-verbal.

### Art. 50

IV Perquisition visant des papiers

[1] La perquisition visant des papiers doit être opérée avec les plus grands égards pour les secrets privés; en particulier, les papiers ne seront examinés que s'ils contiennent apparemment des écrits importants pour l'enquête.

[2] La perquisition doit être opérée de manière à sauvegarder le secret de fonction, ainsi que les secrets confiés aux ecclésiastiques, avocats, notaires, médecins, pharmaciens, sages-femmes et à leurs auxiliaires, en vertu de leur ministère ou de leur profession.

[3] Avant la perquisition, le détenteur des papiers est, chaque fois que cela est possible, mis en mesure d'en indiquer le contenu. S'il s'oppose à la perquisition, les papiers sont mis sous scellés et déposés en lieu sûr; la cour des plaintes du Tribunal pénal fédéral statue sur l'admissibilité de la perquisition (art. 25, al. 1).

### Art. 51

V Arrestation provisoire et présentation au juge

[1] Le fonctionnaire enquêteur peut arrêter provisoirement celui contre lequel il y a des présomptions graves de culpabilité, s'il existe apparemment une cause d'arrestation selon l'art. 52 et, s'il y a péril en la demeure.

[2] La personne arrêtée provisoirement ou amenée devant l'administration en vertu de l'art. 19, al. 4, doit être interrogée immédiatement; l'occasion lui sera donnée de s'expliquer sur les présomptions existantes et de contester la cause de l'arrestation provisoire.

[3] S'il subsiste apparemment une cause d'arrestation, la personne arrêtée provisoirement est amenée immédiatement devant l'autorité judiciaire cantonale compétente pour décerner des mandats d'arrêt. Si l'arrestation provisoire a été faite dans un endroit écarté ou difficilement accessible ou si l'autorité judiciaire ne peut être atteinte immédiatement, la présentation a lieu dans les quarante-huit heures.

[4] L'autorité judiciaire examine s'il existe une cause d'arrestation; le fonctionnaire enquêteur et la personne arrêtée provisoirement sont entendus à ce sujet.

[5] L'autorité judiciaire décide ensuite l'arrestation ou la mise en liberté, le cas échéant sous caution. La décision peut être attaquée par la voie de la plainte (art. 26).

[6] Si le fonctionnaire enquêteur annonce immédiatement qu'il dépose plainte contre la mise en liberté, l'arrestation provisoire est maintenue temporairement. Le directeur ou chef de l'administration doit, dans les vingt-quatre heures, informer l'autorité judiciaire du maintien de la plainte. Si la plainte est maintenue, l'arrestation provisoire subsiste jusqu'à la décision de la cour des plaintes, à moins que celle-ci ou son président n'en dispose autrement.

3

### Art. 52

VI Arrestation
1 Conditions

[1] Lorsque l'inculpé est gravement suspecté d'avoir commis une infraction, un mandat d'arrêt peut être décerné contre lui si des circonstances déterminées font présumer:

    a.  qu'il se soustraira à la poursuite pénale ou à l'exécution de la peine, ou

    b.  qu'il effacera les traces de l'infraction, qu'il détruira des pièces à conviction, qu'il induira des témoins ou des coïnculpés à faire de fausses déclarations ou qu'il compromettra de quelque autre façon le résultat de l'enquête.

[2] Un mandat d'arrêt ne peut être décerné lorsque l'importance de l'affaire ne le justifie pas.

### Art. 53

2 Mandat d'arrêt
a. Compétence,
forme

[1] Le fonctionnaire enquêteur peut proposer qu'un mandat d'arrêt soit décerné.

[2] Les autorités compétentes pour décerner le mandat d'arrêt sont les suivantes:

    a.  en cas d'arrestation provisoire: l'autorité judiciaire cantonale compétente au lieu de cette arrestation;

    b.  dans tous les autres cas: l'autorité judiciaire cantonale compétente selon l'art. 22.

[3] Le mandat d'arrêt est décerné par écrit et doit indiquer: l'identité de l'inculpé et le fait qui lui est imputé; les dispositions pénales applicables; la cause de l'arrestation; le lieu où l'inculpé doit être incarcéré préventivement; il doit en outre mentionner les voies de droit, les droits des parties, les conditions de la mise en liberté sous caution et le droit d'avertir les proches.

### Art. 54

b Exécution,
recherche de
l'inculpé

[1] Une copie du mandat d'arrêt doit être remise à l'inculpé au moment de l'arrestation.

[2] Le détenu est amené à l'autorité cantonale compétente, à laquelle est remise en même temps une copie du mandat d'arrêt.

[3] S'il est impossible d'exécuter le mandat, des recherches sont ordonnées. Le mandat peut être publié.

### Art. 55

c Interrogatoire
du détenu

[1] L'autorité qui a décerné le mandat d'arrêt interroge l'inculpé, si celui-ci n'a pas déjà été entendu (art. 51, al. 4), au plus tard le premier jour ouvrable suivant le jour de l'arrestation, afin de déterminer s'il existe une cause d'arrestation; le fonctionnaire enquêteur est entendu à ce sujet.

[2] Si la détention est maintenue, les motifs en sont communiqués à l'inculpé; si l'inculpé est mis en liberté, l'art. 51, al. 6, est applicable par analogie.

### Art. 56

3  Avis aux
proches

Si les exigences de l'enquête le permettent, le détenu a le droit d'avertir immédiatement ses proches parents de son arrestation par l'entremise du fonctionnaire enquêteur.

### Art. 57

4  Durée de la
détention

[1] Si la détention est maintenue, l'enquête doit être accélérée dans toute la mesure possible. La détention ne doit en tous cas pas excéder la durée probable d'une peine privative de liberté ou d'une peine infligée en conversion d'amende.

[2] Sauf autorisation spéciale de l'autorité qui a décerné le mandat d'arrêt, la détention préventive opérée selon l'art. 52, al. 1, let. *b*, ne peut pas être maintenue au-delà de quatorze jours.

### Art. 58

5  Exécution de
la détention

[1] L'autorité cantonale pourvoit à ce que la détention soit exécutée régulièrement. Le détenu ne doit pas être entravé dans sa liberté plus que ne l'exigent le but de la détention et le maintien de l'ordre dans la prison.

[2] Le détenu peut communiquer oralement ou par écrit avec son défenseur s'il y est autorisé par le fonctionnaire enquêteur; celui-ci ne peut limiter ou faire cesser ces communications que si l'intérêt de l'enquête l'exige. La limitation ou la suppression de ces communications pour plus de trois jours exige l'approbation de l'autorité qui a décerné le mandat d'arrêt; cette approbation ne peut être accordée chaque fois que pour dix jours au plus.

[3] Au surplus, l'exécution de la détention est régie par les art. 234 à 236 CPP[3].[4]

### Art. 59

6  Mise en liberté

[1] Le fonctionnaire enquêteur met le détenu en liberté dès que la détention ne se justifie plus.

[2] Le détenu peut demander en tout temps d'être mis en liberté.

[3] Tant que le dossier n'a pas été transmis au tribunal pour jugement, l'autorité qui a décerné le mandat d'arrêt statue sur la requête. Cette autorité interroge à ce sujet le fonctionnaire enquêteur ou l'autorité administrative devant laquelle l'affaire est pendante; l'art. 51, al. 5 et 6, est applicable par analogie.

### Art. 60

7  Mise en liberté
sous caution

[1] L'inculpé qui devrait être arrêté ou qui a été arrêté en vertu de l'art. 52, al. 1, let. *a*, peut, à sa demande, être mis en liberté sous caution.

---

[3] RS 312.0

[4] Nouvelle teneur selon le ch. II 11 de l'annexe 1 au CPP du 5 oct. 2007, en vigueur depuis le 1er janv. 2011 (RO 2010 1881; FF 2006 1057).

[2] Les art. 238 à 240 CPP[5] sont applicables par analogie à la mise en liberté sous caution.[6] Toutefois, les sûretés doivent être fournies au Département fédéral des finances[7]; les sûretés sont également échues si l'inculpé se soustrait au paiement de l'amende prononcée, un éventuel reliquat étant alors dévolu à la Confédération.

\* \* \*

### Art. 92

C  Restitution
des objets
séquestrés ;
réalisation

[1] Les objets et valeurs séquestrés qui n'ont été ni confisqués ni dévolus à l'Etat et qui ne sont pas grevés d'un droit de gage légal sont restitués à l'ayant droit. Si celui-ci est inconnu et que la valeur des objets le justifie, il est procédé à une publication officielle.

[2] Si aucun ayant droit ne s'annonce dans les trente jours, l'administration peut faire vendre les objets aux enchères. Si l'ayant droit s'annonce après la réalisation, le produit de celle-ci lui est remis sous déduction des frais.

[3] Le droit à la restitution de la chose ou à la remise du produit s'éteint cinq ans après la publication officielle.

[4] S'il y a contestation sur la personne à qui la chose doit être restituée ou son produit remis, l'administration peut se libérer par une consignation en justice.

---

[5] RS **312.0**

[6] Nouvelle teneur selon le ch. II 11 de l'annexe 1 au CPP du 5 oct. 2007, en vigueur depuis le 1er janv. 2011 (RO **2010** 1881; FF 2006 1057).

[7] Nouvelle dénomination selon l'art. 1 de l'ACF du 23 avr. 1980 concernant l'adaptation des dispositions du droit fédéral aux nouvelles dénominations des départements et des offices (non publié).