# 19-3457-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

LYNDA BEIERWALTES and WILLIAM BEIERWALTES,

*Plaintiffs-Appellants*,

v.

L'OFFICE FEDERALE DE LA CULTURE DE LA CONFEDERATION SUISSE, FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION, L'ADMINISTRATION FEDERALE DES DOUANES DE LA CONFEDERATION SUISSE, FEDERAL CUSTOMS ADMINISTRATION OF THE SWISS CONFEDERATION, LA REPUBLIQUE ET CANTON DE GENEVE, REPUBLIC AND CANTON OF GENEVA,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF DEFENDANTS-APPELLEES L'OFFICE FEDERALE DE LA CULTURE DE LA CONFEDERATION SUISSE AND L'ADMINISTRATION FEDERALE DES DOUANES DE LA CONFEDERATION SUISSE**

Stephan E. Becker
stephan.becker@pillsburylaw.com
Michael Evan Jaffe
michael.jaffe@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000

# TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................................i

TABLE OF AUTHORITIES ..............................................................................ii

STATEMENT OF ISSUES ................................................................................1

STATEMENT OF THE CASE ............................................................................1

SUMMARY OF ARGUMENT ...........................................................................7

ARGUMENT ......................................................................................................8

 I. THE DISTRICT COURT APPROPRIATELY DISMISSED
  THE COMPLAINT FOR LACK OF SUBJECT MATTER
  JURISDICTION ..............................................................................8

  A. Standard of Review....................................................................8

  B. Appellants Cannot Introduce New Factual Allegations on
   Appeal .......................................................................................9

  C. The District Court Was Correct to Find that It Lacked
   Subject Matter Jurisdiction .....................................................10

  D. In the Alternative, the Act of State Doctrine and
   Principles of International Comity Required Dismissal ..........24

 II. THE DISTRICT COURT PROPERLY DENIED THE
  REQUEST FOR JURISDICTIONAL DISCOVERY........................28

  A. Standard of Review..................................................................28

  B. The District Court Acted Well Within Its Discretion in
   Denying Discovery ..................................................................29

CONCLUSION..................................................................................................32

CERTIFICATE OF COMPLIANCE...................................................................33

CERTIFICATE OF SERVICE ...........................................................................34

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Amorrortu v. Republic of Peru,*
570 F. Supp. 2d 916 (S.D. Tx. 2008)...................................................15

*Arch Trading Corp. v. Republic of Ecuador,*
839 F.3d 193 (2d Cir. 2016) ................................................................28, 29

*Argentine Republic v. Amerada Hess Shipping Corp.,*
488 U.S. 428 (1989).............................................................................10

*Best Med. Belgium, Inc. v. Kingdom of Belgium,*
913 F. Supp. 2d 230 (E.D. Va. 2012) ..................................................15

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
137 S. Ct. 1312 (2017).........................................................................29

*Cassirer v. Kingdom of Spain,*
616 F.3d 1019 (9th Cir. 2009) .............................................................21

*Chettri v. Nepal Rastra Bank,*
834 F.3d 50 (2d Cir. 2016) ..................................................................14, 15, 25

*Dettelis v. Sharbaugh,*
919 F.3d 116 (2d Cir. 2019) ................................................................24

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.,*
809 F.3d 737 (2d. Cir. 2016) ...............................................................24, 25, 27

*Fischer v. Magyar Allamvasutak Zrt.,*
777 F.3d 847 (7th Cir. 2015) ...............................................................28

*Garb v. Republic of Poland,*
440 F.3d 579 (2d Cir. 2006) ................................................................23

*Greenpeace, Inc. v. State of France,*
946 F. Supp. 73 (C.D. Cal. 1996) ........................................................20

*Hilsenrath v. Swiss Confederation,*
No. 07-cv-2782, 2007 WL 3119833 (N.D. Cal. Oct. 23, 2007),
*aff'd* 402 F. App'x 314 (9th Cir. 2010) ............................................15

*Hilton v. Guyot,*
159 U.S. 113, 40 L. Ed. 95, 16 S. Ct. 139 (1895)...............................26

*Jazini v. Nissan Motor Co.,*
148 F.3d 181 (2d Cir. 1998) ..............................................................29

*Kirshner v. Uniden Corp. of Am.*,
842 F.2d 1074 (9th Cir. 1988) ..............................................................9

*Konowaloff v. Metro. Museum of Art,*
702 F.3d 140 (2d Cir. 2012) ..............................................................25

*Maxwell Commc'n Corp. plc, by Homan v. Societe Generale,*
93 F.3d 1036 (2d Cir. 1996) ..............................................................26

*Ministry of Def. & Support for Armed Forces of the Islamic Republic*
*of Iran v. Elahi,*
556 U.S. 366 (2009).............................................................................23

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela,*
863 F.3d 96 (2d Cir. 2017) .................................................................10

*Philipp v. Federal Republic of Germany*,
894 F.3d 406 (D.C. Cir. 2018)............................................................28

*Robinson v. Gov't of Malaysia*,
269 F.3d 133 (2d Cir. 2001) ................................................................9

*Roeder v. Islamic Republic of Iran*,
333 F.3d 228 (D.C. Cir. 2003)............................................................23

*Saudi Arabia v. Nelson*,
507 U.S. 349 (1993).......................................................................10, 11

*Schuler v. Rainforest Alliance, Inc.*,
684 Fed. Appx. 77 (2d Cir. 2017).......................................................27

*Simon v. Republic of Hungary*,
911 F.3d 1172 (D.C. Cir. 2018).........................................................28

iii

*Stowe v. Devoy*,
    588 F.2d 336 (2d Cir. 1978) .................................................................18

*United States v. Toscanino*,
    500 F.2d 267 (2d Cir. 1974) .................................................................18

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Intl.*,
    493 U.S. 400 (1990).............................................................................25

*Wye Oak Tech., Inc. v. Republic of Iraq*,
    666 F.3d 205 (4th Cir. 2011) ...............................................................23

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000) .................................................................12


Constitution and Codes

United States Constitution
    Fourth Amendment, Warrants Clause ....................................................18

United States Code
    Title 22, section 2370(e)(2) ..................................................................25
    Title 28, section 1602.............................................................................2
    Title 28, section 1604...........................................................................10
    Title 28, section 1605(a)(3) ............................................................*passim*


Rules and Regulations

Federal Rules of Appellate Procedure
    Rule 10(a)...............................................................................................9
    Rule 30(b)(1).....................................................................................3, 4

Federal Rules of Civil Procedure
    Rule 30(b)(6)..........................................................................................7

Federal Rules of Criminal Procedure
    Rule 41(g) ......................................................................................18, 19

iv

<u>Other Authorities</u>

Restatement (Fourth) of Foreign Relations Law of the United States
§ 441............................................................................................................24, 25

Defendants-Appellees L'Office Federale De La Culture De La Confederation Suisse ("Federal Office of Culture" or "FOC") and L'Administration Federale Des Douanes De La Confederation Suisse, ("Federal Customs Administration") (collectively, the "Swiss Confederation") respectfully submit this Appellee brief. The Canton of Geneva (La Republique et Canton de Geneve), was a co-defendant in the district court and is a co-appellee on appeal; it is separately represented by other counsel.

## STATEMENT OF ISSUES

1.      Whether the district court's decision correctly dismissed the suit against the Swiss Confederation defendants on the basis that the expropriation exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(3), does not apply, or alternatively should it be affirmed on the independent grounds that the dismissal was correct under the Act of State Doctrine and principles of international comity.

2.      Whether the district court abused its discretion in denying Plaintiffs' request for jurisdictional discovery.

## STATEMENT OF THE CASE

This case is an attempt by Plaintiffs-Appellants Lynda Beierwaltes and William Beierwaltes to undermine a legitimate, ongoing criminal investigation in Switzerland, by asking the U.S. courts to prohibit Swiss officials from exercising

their authority to investigate possible crimes in Switzerland involving property within Swiss borders. After the Swiss Confederation Defendants and the Canton of Geneva filed motions to dismiss, the district court properly dismissed the case for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*[1]

In their Complaint, the Beierwaltes based their claim to jurisdiction on the FSIA's exception for cases arising from "property taken in violation of international law" (the "expropriation exception"). Appendix at 21, ¶ 14 (hereafter "A-__"). To establish that this exception is available, the FSIA requires the Beierwaltes to show: (1) that property was taken from them in violation of international law; and either (2a) the property is "present in the United States" in connection with some commercial activity conducted by the foreign state in the United States, or (2b) the property is "owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in

---

[1]    Plaintiffs-Appellants Lynda Beirwaltes and William Beierwaltes and Plaintiff-Appellant Hicham Aboutaam in the related case in the district court proceedings, *Aboutaam v. L'Office Federale De La Culture De La Confederation Suisse, et al.*, are unrelated parties who were represented by separate counsel in the district court. Their cases were heard together as related cases and resolved by the same opinion, but were not consolidated. The pleadings and evidence on the record of the two cases are not identical, and accordingly the briefs filed by the Swiss Confederation Defendants-Appellees in the two cases, although very similar, are not completely identical.

a commercial activity in the United States."  28 U.S.C. § 1605(a)(3).

In the district court, the Swiss Confederation raised as primary defenses that (i) the Beierwaltes had not plausibly alleged that the Swiss Confederation had taken property in violation of international law, (ii) the property allegedly taken was not in the United States, and (iii) the Federal Office of Culture and the Federal Customs Administration are part of the Swiss central government (i.e., the Swiss Confederation) rather than "agencies or instrumentalities" of the government, and moreover are not engaged in any commercial activities in the United States.  The Swiss Confederation also argued that the Act of State Doctrine and principles of international comity required dismissal.  Supplemental Appendix at 15-24 (hereafter "SA-__").  The district court, having found that there had been no taking in violation of international law, exercised judicial economy and did not reach the other issues.

Rather than confronting the district court's holding, on appeal the Beierwaltes seek to confuse and obfuscate the evidence and arguments that were actually presented to the district court.[2]  Accordingly, it may be helpful to the

---

[2]    Rule 30(b)(1), Fed. R. App. P., requires the appellant to serve on appellee a designation of the parts of the record the appellant intends to include in the appendix within fourteen days after the record is filed, and allows the appellee fourteen days to designate additional parts.  The appellant is required to include all

Footnote continued

Court to have a brief statement of the background facts.

 The Beierwaltes claimed to have consigned their antiquities to the Swiss company Phoenix Ancient Art ("Phoenix") in 2006.  A-26, ¶ 30.  There is no evidence or allegations of when those items were actually imported into Switzerland.

In their Complaint, the Beierwaltes commingled two distinct seizures: one by the Federal Customs administration, and one by the Canton of Geneva.

The Federal Customs Administration seizure order submitted by the Beierwaltes with their Complaint shows that the order was issued when Swiss authorities intercepted a driver for Phoenix driving across the border from France with an undeclared antiquity, and security video revealed that a principal of Phoenix had illegally removed other antiquities from a customs bonded warehouse in Geneva, Switzerland in the middle of the night.  A-63.

According to the order itself, the Federal Customs Administration seizure was based on the importation of undeclared artifacts into Switzerland in an attempt

---

Footnote continued from previous page

designated parts.  The record of the case below was filed on the docket on October 22, 2019, but the Beierwaltes waited until January 21, 2020 to email to the appellees a list of the parts of the record that they intended to include in the appendix, and then refused to include parts of the record designated by the Swiss Confederation Appellees in violation of Rule 30(b)(1).

to evade Swiss customs law and the requirement to pay value-added taxes.  A-63.

The seizure was limited to items stored at the Geneva home of Mr. Ali Aboutaam

(the owner of Phoenix and the brother of Hicham Aboutaam, who is the Plaintiff-

Appellant in the related case) and his wife Biliana Kirilova Aboutaam, both

residents of Switzerland.  The seizure order required that the affected items be kept

in their current location, and the Customs Administration did not take physical

possession of any item.  A-65.  Only one item was identified as potentially

belonging to the Beierwaltes, and with respect to that item, the Federal Customs

Administration had sent a letter to Ali Aboutaam assessing the VAT at 7,709.15

Swiss francs, including interest, based on the value of the item declared by the

importer as 80,000 Swiss francs.  A-181, ¶¶ 11-12.

The Swiss Confederation demonstrated that the Beierwaltes, although not

the subject of the Swiss legal action, had available the possibility to intervene in

the Swiss proceedings, establish their ownership, and pay the VAT owed to secure

release of the item.  A-181-82, Declaration of Hans Nussbaum ¶¶ 12, 14.[3]  In their

opposition to the motions to dismiss submitted to the district court, the Beierwaltes

expressly withdrew their challenge to the above-described seizure by the Federal

---

[3]     Mr. Nussbaum is a Swiss attorney and the head of the legal branch of the
Federal Customs Administration.  A-178, Nussbaum Decl. ¶ 1.

Customs Administration.  SA-62 ("The Beierwaltes are willing to dismiss without prejudice their challenge to that seizure of 111 items, which, according to Customs, includes only one item owned by the Beierwaltes.").

Also according to information in the Complaint, the Prosecutor of the Canton of Geneva issued a separate seizure order to Phoenix and related companies pursuant to the "Loi fédérale sur le transfert international des biens culturels, du 20 juin 2003" ("LTBC"), a Swiss law that prohibits trafficking in stolen cultural artifacts.  A-18, 28, ¶¶ 4 & 36.  That seizure involved items stored by Phoenix and others in warehouses in Geneva.  After dropping the part of their Complaint based on the seizure order issued by the Federal Customs Administration, the Beierwaltes continued their lawsuit against the Swiss Confederation Defendants-Appellees based on the theory that the Swiss federal agencies were partially responsible for the separate seizure order and investigation carried out by the Geneva Prosecutor.  SA-40 (brief in related *Aboutaam* case); SA-61 (Beierwaltes' brief, purporting to incorporate the *Aboutaam* brief by reference).  The Canton of Geneva is named as a separate defendant based on the Geneva Prosecutor's enforcement actions under the LTBC.

On December 14, 2018, the district court issued an order setting a briefing schedule for the defendants' motions to dismiss and stating that the Beierwaltes could submit a letter to the Court if they required jurisdictional discovery.  SA-3.

6

On May 7, 2019, almost five months later, and after the parties had completed briefing on the motions to dismiss, the plaintiffs in the related cases (H. Aboutaam and the Beierwaltes) jointly submitted a barebones request. It did not propose specific interrogatories, did not identify specific documents to be produced and did not identify a person to be deposed or provide a statement of the matters on which a representative of the Swiss Confederation would be examined. A-552; *see also* Fed. R. Civ. P. 30(b)(6) (deposition notice "must describe with particularity the matters for examination").

## SUMMARY OF ARGUMENT

The district court correctly held that, under the FSIA, the court lacked subject matter jurisdiction to hear the claims asserted by the Beierwaltes and Aboutaam in the related cases. Under U.S. law, foreign sovereigns are immune from suit in U.S. courts unless a statutory exception to sovereign immunity applies. The Beierwaltes relied solely on the expropriation exception for a "taking" in violation of international law, but the allegations in their Complaint and the documentary support that they submitted describe a temporary seizure to investigate suspected crimes, which is not, as a matter of law, a taking under international law.

The record before the district court was unequivocal in showing that other conditions for application of the expropriation exception were also lacking: the

property at issue was located in Switzerland (not in the United States) and neither the Federal Office of Culture nor the Federal Customs Administration is an "agency or instrumentality" of the Swiss Confederation. Rather, both are integral parts of the Swiss Confederation. In addition, under the Act of State Doctrine and principles of international comity, foreign governments are entitled to conduct criminal investigations within their borders without the interference of U.S. courts. The district court correctly dismissed the case for lack of subject matter jurisdiction and its judgment should be affirmed.

The district court also acted within its discretion when it denied the Beierwaltes' request for discovery. Despite multiple opportunities, the Beierwaltes never articulated what discovery they intended to pursue or how it would be relevant to the court's determination of the jurisdiction issue. To the contrary, it is clear that discovery would have been to no avail. The district court's decision on the defendants' entitlement to sovereign immunity was based on the allegations in the Complaint, and counsel for the Beierwaltes acknowledged during oral argument that discovery was unnecessary.

## ARGUMENT

### I. THE DISTRICT COURT APPROPRIATELY DISMISSED THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

#### A. Standard of Review

In the Second Circuit, the standard of review applicable to decisions on

8

subject matter jurisdiction under the FSIA is "clear error for factual findings and *de novo* for legal conclusions." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 138 (2d Cir. 2001) (citation omitted).

## B. Appellants Cannot Introduce New Factual Allegations on Appeal

On appeal, Plaintiffs-Appellants Beierwaltes rely extensively on documents and information that are not in the record of the district court proceedings. That reliance is inappropriate in that "papers not filed with the district court or admitted into evidence by that court are not part of the record on appeal." *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988); *see also* Fed. R. App. P. 10(a) (the record on appeal is comprised of "(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk."). Further, it is well-settled law that, absent "manifest injustice," appellate courts will not pass on matters not raised in the trial court. *Robinson*, 269 F.3d at 147.

In the circumstances here, it is improper and unavailing for the Beierwaltes to cite to and rely upon documents not before the district court. The references to the following are especially inappropriate:

- 2017 article from Swiss French language newspaper *Le Temps*, cited at pages 8, 9, 10, 11, 22, 47, and 48 of the Beierwaltes' brief. Not only was

this material not before the district court, but the Beierwaltes only provide a website link with no translation.

- 2019 article from *Le Temps*, cited at page 19, footnote 21; again this material was not before the district court and, at page 22, only a website link is provided, with no translation.

- New and unsupported factual allegations regarding legal proceedings in Switzerland at pages 19 to 20.

All of the Beierwaltes' arguments that are predicated on these items should, without more, be disregarded entirely.

## C. The District Court Was Correct to Find that It Lacked Subject Matter Jurisdiction

The FSIA provides the "sole basis for obtaining jurisdiction over a foreign government." *Argentine Republic v. Amerada Hess Shipping Corp*., 488 U.S. 428, 434 (1989); *accord Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 113 (2d Cir. 2017). A foreign state is "immune from the jurisdiction of the courts of the United States" unless the cause of action falls under a statutory exception. 28 U.S.C. § 1604; *accord Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("Under the [Foreign Sovereign Immunities] Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a

10

claim against a foreign state.").

Section 1605 of the FSIA provides several exceptions to foreign sovereign immunity.  In their Complaint, the Beierwaltes based their claims to jurisdiction on the exception for cases arising from "property taken in violation of international law."  A-21, ¶ 14.  Under the expropriation exception, a foreign state is not immune from suit in the United States where:

> [R]ights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]

28 U.S.C. § 1605(a)(3).

Thus, to avail themselves of the expropriation exception to sovereign immunity, the Beierwaltes were required to present facts:  (1) that property was taken from them in violation of international law; and either (2a) the property is "present in the United States" in connection with some commercial activity conducted by the foreign state in the United States, or (2b) the property is "owned or operated by an agency or instrumentality of the foreign state and that agency or

11

instrumentality is engaged in a commercial activity in the United States."[4]

As discussed below, (i) the Beierwaltes' argument that there was a "taking" in violation of international law is unavailing, and (ii) subject matter jurisdiction was also lacking because the Swiss Confederation Defendants-Appellees are integral parts of the "foreign state" (they are not "agencies or instrumentalities" within the meaning of the FSIA) and the property at issue is not in the United States.

1. **The Beierwaltes Do Not Raise Any Valid Grounds to Reverse the Court's Holding that there Was No Taking in Violation of International Law**

On appeal, Plaintiffs-Appellants Beierwaltes argue that this Court should reverse the district court's decision that they had not described any action by Swiss authorities that amounted to a taking in violation of international law within the meaning of the FSIA. In support of their argument, they attempt to re-argue the facts and introduce new facts, ask this Court to address issues of Swiss domestic law without having submitted any basis for their unique reading of that law, ask the

---

[4] The Second Circuit has distilled the requirements for application of the expropriation exception by stating that the plaintiff must "show that (1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is met." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000).

Court to apply U.S. domestic law to actions of Swiss Confederation officials taken exclusively in Switzerland under Swiss law, and cite a treaty that is not applicable to the actions taken by Swiss authorities.

**(a)     The Beierwaltes Failed to Describe Any Violation of International Law**

The Beierwaltes' arguments regarding the provisional seizure of the property are both confused and confusing.  According to their own complaint, they consigned their property to Phoenix in Switzerland in 2006, and Phoenix has had possession of the property since then.  A-26, ¶ 30.  The Beierwaltes submitted documentation with their Complaint that showed that (i) the items at issue were seized from the individuals and companies that possessed them in Switzerland (A-64, Customs Seizure Order;[5] A-42, Geneva Seizure Order[6]); (ii) the Beierwaltes

---

[5]     The Customs order was applied: "At the home of … Ms. BILIANA KIRILOVA ABOU TAAM, RUE FIRMIN-MASSOT 4, 12-6 GENEVA."  A-64.

[6]     The Geneva order lists as defendants Innana Art Services SA, Ali Aboutaam, Biliana Aboutaam, Alexandre Novo; Cynthia Perotti; Walter Haberkorn; Jeffrey Suckow; Charles Ansermet et al., and is directed at items located at:

"- locations possessed or used directly or indirectly by Inanna Art Services or the companies controlled by Ali ABOU TAAM within the canton of Geneva, in the Freeport or elsewhere, specifically the Inanna Art Services located in the Freeport and Phoenix AncientArt and rue Verdaine;

- other profession locations of the defendants;

- the domiciles or usual places of residence of the defendants, specifically, rue des Battoirs 9 for Jeffrey SUCKOW, rue Firmin-Massot 4 for Ali and Biliana

Footnote continued

are not the subject of any criminal investigation in Switzerland (*id.*); (iii) their only efforts to retrieve their property involved having a U.S. lawyer send threatening letters in English to government officials in Switzerland (where French, German, and Italian are the official languages) (A-76, A-100, A-104, A-108, & A-112); and (iv) although they were invited to provide information to establish their ownership of particular items, they declined to do so (A-82, A-87, A-93; A-120, A-130; *see also* Opinion & Order dated Sept. 24, 2019, at 3 (hereafter "Op. at __").

Having declined to participate in the Swiss legal proceedings, it is beyond the pale for the Beierwaltes to argue that they were somehow denied due process under Swiss law, let alone international law. Further, there is no basis in law for them to claim that the Swiss authorities were prohibited from seizing items suspected of being in the country illegally unless the authorities first determined whether someone from another country unknown to them (the Beierwaltes) might make a claim of ownership of some of the items.

In *Chettri v. Nepal Rastra Bank*, 834 F.3d 50 (2d Cir. 2016), the plaintiff alleged that the freezing of a bank account by the Nepalese Government was a

---

Footnote continued from previous page

> ABOU TAAM, chemin des Râclerets 22 in Chancy for Walther HABERKORN, and rue des Berthoudes 68 to 2000 Neuchâtel for Charles Roland ANSERMET".

A-46.

14

taking in violation of international law within the meaning of 28 U.S.C. § 1605(a)(3). *Chettri,* 834 F.3d at 54. The Second Circuit rejected the argument, explaining as follows:

> We interpret the phrase "taken in violation of international law" to mean the nationalization or expropriation of property without payment of the prompt adequate and effective compensation required by international law, including takings which are arbitrary or discriminatory in nature. Tarala and Wu have not alleged sufficient facts to plausibly establish that the freezing of Wu's account constituted a taking, much less a taking "in violation of international law." Rastra Bank and the Department froze Wu's financial assets in connection with an ongoing money laundering investigation. Unsurprisingly, Tarala and Wu offer no authority for the proposition that a routine law enforcement action such as this constitutes a taking within the meaning of § 1605(a)(3), and the complaint's conclusory criticisms of the manner in which Nepal has conducted its investigation are insufficient to prove a violation of international law.

*Id*. at 58 (internal quotation marks and citation omitted).

Other courts have also concluded that "[i]t is frivolous to claim that freezing assets during a legitimate criminal investigation violated international law." *Hilsenrath v. Swiss Confederation*, No. 07-cv-2782, 2007 WL 3119833, at *4 (N.D. Cal. Oct. 23, 2007), *aff'd* 402 F. App'x 314 (9th Cir. 2010); *see also Best Med. Belgium, Inc. v. Kingdom of Belgium*, 913 F. Supp. 2d 230, 239 (E.D. Va. 2012) (taking of property to satisfy a valid debt is not an illegal taking for purposes of the expropriation exception); *Amorrortu v. Republic of Peru,* 570 F. Supp. 2d 916, 924 (S.D. Tx. 2008) (same).

In particular, because the seizures in Switzerland were directed precisely at the items about which the Swiss authorities had concerns, the Beierwaltes cannot distinguish cases such as *Chettri* and *Hilsenrath.* The Beierwaltes' bold claim that the Swiss authorities should have released all of the items simply because their U.S. lawyer demanded it (without even providing any documentation in support of their claims to the Swiss authorities) is irrational and unsupported by any principle of law.

The Beierwaltes also allege a violation of the UNESCO Convention. App. Br. at 51. But the Beierwaltes themselves concede that the Convention is not self-executing – meaning it has no direct effect under domestic law. App. Br. at 13. In any event, as the district court ruled: "Nothing in the UNESCO Convention … precludes a foreign sovereign from temporarily seizing property within its own borders, pending the outcome of an investigation into suspected violations of that sovereign's laws. To the extent that Plaintiffs argue that their property falls outside the scope of the CPTA (a Swiss federal law), those allegations go to whether the seizure comported with the requirements of Swiss law, but do not suggest that the seizure was arbitrary in violation of international law." Op. at 10.

These defects in the Beierwaltes' case were highlighted during the hearing in the district court. For example, when Judge Abrams asked for a precedent in which a court stated that law enforcement authorities in a foreign country acted

arbitrarily in seizing property, Plaintiffs' counsel responded "I can't think of one

off the top of my head."  A-623, Tr. at 23:10-15.  When Judge Abrams pointed out

that violations of Swiss domestic law would not constitute a violation of

international law, Plaintiffs' counsel[7] answered "That's Swiss federal law,

correct."  *Id.* at 25:11-18.  When the district court asked for support that the seizure

was arbitrary under international law, Plaintiffs' counsel mentioned the

Restatement (Third) of the Foreign Relations Law of the United States, but did not

provide a specific response.  *Id.* at 25:2-16.

### (b)    The Beierwaltes Improperly Request this Court to Interpret and Apply Swiss Law

The Beierwaltes now ask this Court to interpret and apply Swiss law to their

tortured description of the facts.  They make arguments about the burden of proof

and standards of due diligence under Swiss domestic law, without providing any

citations supporting their assertions.[8]  Most importantly, they do not provide any

supportable reason for reversing the district court's conclusions that the seizure

---

[7]    At the oral argument, counsel for Plaintiff-Appellant Aboutaam and for Plaintiffs-Appellants Beierwaltes were referred to as counsel for the "Plaintiffs," without differentiating between Aboutaam and the Beierwaltes.

[8]    The Beierwaltes repeatedly cite a "white paper" authored by their own counsel that does not address Swiss law.  *See, e.g.*, App. Br. at 38 n.29, and at 40 n.30.  The "white paper" is not by any stretch of the imagination probative legal authority and, as such, should be disregarded.

was made in connection with an ongoing criminal investigation, that the seizure was not arbitrary or discriminatory, and that the seizure was temporary. Op. at 7-8. The district court's findings, therefore, cannot be "clear error."

### (c)     The U.S. Constitution Does Not Apply to Actions of the Swiss Government within Switzerland

Plaintiffs-Appellants Beierwaltes argue that the actions taken by the Swiss authorities were inconsistent with the Warrants Clause of the Fourth Amendment to the U.S. Constitution, even though it is obvious that the Swiss authorities did not purport to interpret or apply U.S. law in initiating the criminal investigation under Swiss domestic law. App. Br. at 41-43. The acts of a foreign government within its own territory are not subject to the limitations of the U.S. Constitution, including the Fourth Amendment. *Stowe v. Devoy*, 588 F.2d 336, 341 (2d Cir. 1978) ("the Fourth Amendment exclusionary rule does not apply to arrests and searches made by foreign authorities on their home territory and in the enforcement of foreign law, even if the persons arrested and from whom the evidence is seized are American citizens"); *United States v. Toscanino*, 500 F.2d 267, 280 n.9 (2d Cir. 1974) ("The Constitution, of course, applies only to the conduct abroad of agents acting on behalf of the United States. It does not govern the independent conduct of foreign officials in their own country."). It is particularly unclear why the Beierwaltes cite to Federal Rule of Criminal

Procedure 41(g), which also does not apply to proceedings in Switzerland.

### (d) The Beierwaltes' New Factual Allegations are Unsupported and Cannot be Considered

The Beierwaltes' assertion that the investigation will "take many decades to complete" is pulled from thin air. App. Br. at 43-47. There is no support in the record for this allegation. Moreover, as discussed above the Beierwaltes' arguments based on the Fourth Amendment are unavailing because the U.S. Constitution does not apply to actions of Swiss authorities within Switzerland.

Similarly, the allegation that the warrant and seizure were motivated by a coercive purpose is a construct imagined by the Beierwaltes. For this argument, they rely on a French language newspaper article that is not in the record and in any event is not probative evidence.[9] Plaintiffs-Appellants' footnote 35 also contains new factual allegations nowhere to be found in the district court proceedings. Absent from the trial court proceeding and not otherwise properly before this Court, the coercion argument should be disregarded.

### (e) The Beierwaltes Mischaracterize the District Court's Finding on their Failure to Pursue Relief in Switzerland

Equally unavailing is the Beierwaltes' argument that they were not required

---

[9]     The article appears to be based on an interview with Ali Aboutaam, who is a defendant in the Swiss proceedings. He is not a party in these proceedings.

to pursue remedies in Switzerland – in fact, it misses the point. The district court did not apply the principle of international comity to decline jurisdiction. Rather, it found that Plaintiffs-Appellants Beierwaltes had not established a violation of international law within the meaning of the FSIA's expropriation exception, in part because they had not first pursued and exhausted domestic remedies in Switzerland. Op. at 10 ("a claimant cannot complain that a taking … violates international law[] unless the claimant first pursued and exhausted domestic remedies in the foreign state that is alleged to have caused the injury.") (quoting *Greenpeace, Inc. v. State of France*, 946 F. Supp. 73, 783 (C.D. Cal. 1996)).

In this regard, the record in the district court showed that pursuing remedies in Switzerland did not present any insurmountable hurdle. The Beierwaltes' own submission showed that they were not personally the subject of any investigation in Switzerland. The criminal investigation and seizure were targeted at the persons who imported the items and had possession of them in Switzerland. There was nothing that prevented the Beierwaltes from retaining Swiss counsel to seek release of their alleged property in Switzerland, and indeed they were invited to do so. Instead, they sought to evade Swiss law by suing in a U.S. court. In other words, the Beierwaltes have sought to have U.S. courts actively interfere in a Swiss criminal investigation of Swiss persons located within Switzerland, involving property within Swiss borders.

20

The district court did refer to principles of international comity, but only as part of its discussion of why the Plaintiffs-Appellants' conclusory criticisms of the Swiss authorities' investigation were insufficient to prove a violation of international law. Op. at 9-10. Moreover, the Beierwaltes mischaracterize the Ninth Circuit's ruling in *Cassirer v. Kingdom of Spain* in discussing its conclusions on exhaustion. App. Br. at 49. In that case, there was no dispute that there had been a violation of international law. *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1027 (9th Cir. 2009) ("[N]either Spain nor the Foundation contends that Germany's actions with respect to the painting were not a taking in violation of international law."). Rather, the key issue was whether Spain could be held responsible for a prior violation of international law by another country, Germany. *Cassirer* is not instructive in determining whether there has been a violation of international law in the first place.

In this case, it is undisputed that there is an ongoing investigation in Switzerland involving other parties, that the Beierwaltes could participate in that proceeding to prove ownership and secure the release of specific items, and that they steadfastly declined to do so. Under these circumstances, the appropriateness of the district court's discussion of pursuit and exhaustion is simple and obvious.

**2.     The Expropriation Exception Also Does Not Apply Because the Swiss Confederation Defendants Are the "Foreign State" and the Property Is Not in the United States**

The expropriation exception can only apply in actions against a foreign state when "property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state."  According to the Complaint, all the property at issue is in Switzerland, not the United States.  A-17, n.2 ("The Defendants have not removed the Beierwaltes Property from the Geneva warehouse in which it is stored.").

In the district court, Plaintiffs-Appellants Beierwaltes (indirectly, by purporting to cross-reference a brief filed by counsel for Aboutaam in the related case – *see* SA-61) claimed that the Swiss Confederation Defendants were "agencies or instrumentalities" of the Swiss Federal Government, and not the Swiss "foreign state," hoping to avoid the statutory requirement that the property at issue be in the United States.[10]  More specifically, the second clause of §1605(a)(3)

---

[10]     The Aboutaam plaintiff argued in the district court that the Federal Office of Culture is engaged in a commercial activity in the United States because it has a budget and because some books it publishes are sold on the Amazon website.  SA-48.  The Swiss Confederation Defendants, in response, pointed out that the U.S. Department of Defense has over 7,000 books available on Amazon and that all U.S. government agencies have budgets.  SA-73-74.

22

applies to "property or any property exchanged for such property [that] is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]"

But publicly available information as well as evidence provided by the Swiss Confederation were before the district court. That evidence showed that the Swiss Federal Office of Culture and the Swiss Federal Customs Administration are integral elements of the Swiss Confederation, and that neither is separately incorporated nor does either have a legal identity distinct from the Swiss Confederation. SA-9-11; A-178-79, Nussbaum Decl. ¶ 2. Accordingly, those agencies are the "foreign state" under the FSIA. *See, e.g.*, *Ministry of Def. & Support for Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 370 (2009) (describing the ministry of defense as "an inseparable part of the Iranian State" for purposes of sovereign immunity); *Garb v. Republic of Poland*, 440 F.3d 579, 594-95 (2d Cir. 2006) (affirming district court's holding that Poland's Ministry of Defense is part of the central government and not an agent or instrumentality); *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 214 (4th Cir. 2011) ("[A] foreign state and its armed forces are not legally separate for jurisdictional purposes"); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003) (same as to foreign ministry).

Although the district court did not reach this issue, it would be appropriate

for this court to affirm the district court's ruling on the basis that the expropriation

exception to immunity in §1605(a)(3) does not apply here.  *See Dettelis v.*

*Sharbaugh*, 919 F.3d 116 (2d Cir. 2019) ("We may affirm on any ground that finds

support in the record.").  Because the exception does not apply, the district court

lacked subject matter jurisdiction.

### D.     In the Alternative, the Act of State Doctrine and Principles of International Comity Required Dismissal

Separate from the Foreign Sovereign Immunities Act, the Act of State

Doctrine and principles of international comity both required dismissal of the

Beierwaltes' Complaint.  The district court did not reach these issues, and this

Court also would not need to do so if it agrees the district court lacked subject

matter jurisdiction.

### 1.     Act of State Doctrine

The Act of State Doctrine "precludes any review whatever of the acts of the

government of one sovereign State done within its borders by the courts of another

sovereign State."  *FTE v. Spirits Int'l B.V.*, 809 F.3d 737, 743 (2d Cir. 2016); *see*

*also* Restatement (Fourth) of Foreign Relations Law of the United States (2018)

§ 441, comment a ("[T]he act of state doctrine directs a court in the United States

to treat an official act of a foreign sovereign as conclusive with respect to the rights

and duties addressed by the act.").[11]  The Second Circuit has further explained that "the act of state doctrine 'is not some vague doctrine of abstention but a principle of decision binding on federal and state courts alike'; 'the act within its own boundaries of one sovereign State becomes a rule of decision for the courts of this country.'"  *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 743 (2d. Cir. 2016) (quoting *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990)) (ellipses omitted); *see also Konowaloff v. Metro. Museum of Art*, 702 F.3d 140 (2d Cir. 2012) (affirming dismissal of claim on basis of Act of State Doctrine).

It is difficult to conceive of a situation more directly interfering with Switzerland's sovereignty than the current one, in which Plaintiffs-Appellants

---

[11]      A statute known as the Second Hickenlooper Amendment, 22 U.S.C. § 2370(e)(2), established a narrow exception to the Act of State Doctrine.  It provides in relevant part:

> Notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits . . . in a case in which a claim of title or other right to property is asserted . . . based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of [] state in violation of the principles of international law . . . :  *Provided*, That this subparagraph shall not be applicable … in any case in which an act of a foreign state is not contrary to international law ….

This exception is not applicable here, however, because as discussed above neither Aboutaam nor the Beierwaltes have alleged facts that constitute a taking or a violation of international law.  *See Chettri,* 834 F.3d at 54.

Beierwaltes seek to use the U.S. courts to make a collateral attack on a pending

investigation and enforcement action in Switzerland.

### 2. International Comity

The Second Circuit has explained the principle of international comity as

follows:

> Analysis of comity often begins with the definition proffered by Justice Gray in *Hilton v. Guyot*, 159 U.S. 113, 163-64, 40 L. Ed. 95, 16 S. Ct. 139 (1895): "'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Although Hilton addressed the degree to which a foreign judgment is conclusive in a court of the United States, the principle expressed is one of broad application.
>
> *     *     *
>
> We realize that "international comity" may describe two distinct doctrines: as a canon of construction, it might shorten the reach of a statute; second, it may be viewed as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state, the so-called comity among courts. Whether these are two distinct doctrines – and we need not decide that question – in the context of this case the concepts are not two inconsistent propositions.

*Maxwell Commc'n Corp. plc, by Homan v. Societe Generale*, 93 F.3d 1036, 1046-

47 (2d Cir. 1996).

Applying the principle of international comity in this case, it is obvious that

Switzerland has a much closer connection to the disputes over the subject items

than the United States.  The items are all in Switzerland and are held by persons or entities resident in Switzerland.  The Swiss seizure proceedings arose before these lawsuits were initiated, and indeed these lawsuits have the purpose of interfering with the Swiss proceedings.  Moreover, the Beierwaltes are able to participate directly in the proceedings in Switzerland.

For these reasons, it is appropriate to defer to the ongoing proceedings in Switzerland.  *See Schuler v. Rainforest Alliance, Inc.*, 684 Fed. Appx. 77, 79 (2d Cir. 2017) ("By pursuing their claims here, the Galleys are essentially asking an American court to overrule the Mexican courts' judgment that the Galleys failed to prove ownership of property located in Mexico.  We agree with the district court that principles of comity preclude us from doing so."); *cf. Fed. Treasury Enter. Sojuzplodoimport*, 809 F.3d at 743 ("The declaration of a United States court that the executive branch of the Russian government violated its own law by transferring its own rights to its own quasi-governmental entity (FTE) would be an affront to the government of a foreign sovereign.  Even an inquiry into whether Russian law permitted the Assignment is a breach of comity.").[12]

---

[12]     There is currently a split between the Seventh and D.C. Circuits regarding whether international comity can be considered in a case arising under the FSIA.  In 2015, the Seventh Circuit held that "the comity at the heart of international law required plaintiffs either to exhaust domestic remedies in Hungary or to show a

Footnote continued

## II. THE DISTRICT COURT PROPERLY DENIED THE REQUEST FOR JURISDICTIONAL DISCOVERY

### A. Standard of Review

For a denial of jurisdictional discovery, the standard of review is abuse of discretion, "always mindful that a district court has wide latitude to determine the scope" of discovery. *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016) (citation omitted). The Second Circuit has elaborated as follows:

> Because "sovereign immunity protects a sovereign from the expense, intrusiveness, and hassle of litigation, a court must be 'circumspect' in allowing discovery before the plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA." Accordingly, a district court may deny jurisdictional discovery demands made on a foreign sovereign if the party seeking discovery cannot articulate a "reasonable basis" for the court first to assume

---

Footnote continued from previous page

powerful reason to excuse the requirement." *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 858 (7th Cir. 2015). Later, the D.C. Circuit held that comity-based abstention was precluded in FSIA cases, taking the view that the exercise of comity was a form of immunity not authorized by the FSIA. *Philipp v. Federal Republic of Germany*, 894 F.3d 406, 415 (D.C. Cir. 2018) (*pet'n for cert. pending*, S. Ct. Dkt No. 19-520; *Simon v. Republic of Hungary*, 911 F.3d 1172, 1181 (D.C. Cir. 2018) (*pet'n for cert. pending*, S. Ct. Dkt. No. 18-1447). The Supreme Court recently requested that the United States Government submit its views on the pending petitions for certiorari in these two cases. *See* Jan. 21, 2020 docket entries (in both cases). In amicus briefs previously filed in the D.C. Circuit cases, the United States supported the availability of comity in FSIA cases. USCA Case No. 17-7117, Doc. No. 1750808 (*Phillip*); USCA Case No. 17-7146, Doc. No. 1733875 (*Simon*). The D.C. Circuit cases did not involve situations in which there was an ongoing governmental investigation in the foreign country.

jurisdiction. … *cf. Jazini v. Nissan Motor Co.*, 148 F.3d 181, 183, 185 (2d Cir. 1998) (affirming dismissal for lack of jurisdiction "before discovery" because plaintiffs' allegations "lack[ed] the factual specificity" to show that subsidiary was a "mere department" of foreign corporate parent).

*Arch Trading Corp.*, 839 F.3d at 206-207 (some citations omitted).

## B.     The District Court Acted Well Within Its Discretion in Denying Discovery

The Supreme Court has stated: "consistent with foreign sovereign immunity's basic objective, namely, to free a foreign sovereign from *suit,* the court should normally resolve [jurisdictional] factual disputes and reach a decision about immunity as near to the outset of the case as is reasonably possible." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1317 (2017) (emphasis in original). The Supreme Court added:

> In our view, a party's nonfrivolous, but ultimately incorrect, argument that property was taken in violation of international law is insufficient to confer jurisdiction. Rather, state and federal courts can maintain jurisdiction to hear the merits of a case only if they find that the property in which the party claims to hold rights was indeed "property taken in violation of international law."

*Id.* at 1316.

In this case, the Beierwaltes failed to articulate a reasonable basis for the district court to assume jurisdiction and they failed as well to propose a plan for acquiring relevant facts.  The district court relied upon *Arch Trading*'s guidance that "a court must be circumspect in allowing discovery before the plaintiff has

29

established that the court has jurisdiction over a foreign sovereign defendant under the FSIA", (Op. at 11), and was therefore fully justified to decline the Beierwaltes' request for discovery.

The first request for jurisdictional discovery was made in a letter to the district court dated May 7, 2019 – almost five months after the district court had indicated the Beierwaltes could make such a request on December 14, 2018, and after the parties had completed briefing on the defendants' motions to dismiss. A-552. In the May letter, Plaintiffs-Appellants Beierwaltes listed a variety of general topics on which they wished to conduct discovery, including (i) the functions of the Federal Office of Culture (which are available from its website), (ii) whether the Federal Office of Culture "owns or operates" property temporarily seized by the Geneva Prosecutor and that the Beierwaltes themselves described as held in warehouses, (iii) whether the Canton of Geneva is a separate legal entity from the Government of Switzerland, and (iv) what Plaintiffs-Appellants Beierwaltes described as "arbitrary" behavior by Swiss authorities. A-552.

In their appeal, the Beierwaltes neglect to mention that the district court's description of the factual background is based on their Complaint and exhibits attached thereto (Op. at 2, n.1) and that the district court's opinion did not rely on any evidence submitted by the Defendants-Appellants. In other words, Plaintiffs-Appellants Beierwaltes' justification for seeking to overturn the district court's

decision because they were not allowed discovery is baseless – the district court relied only on their own pleadings and exhibits.

Further, despite a number of opportunities, the Beierwaltes declined to provide the district court with any proposed plan for discovery or description of specific facts that they would seek to obtain through discovery. Indeed, in a reply letter on discovery dated May 21, 2019, Plaintiffs-Appellants Beierwaltes stated that "[W]e do not feel it appropriate to burden the Court with a [discovery] plan, especially as the parties have not conferred." A-586, n.1. In other words, they declined to tell the district court how discovery would assist its review of the jurisdictional issues.

During the hearing, the district court explored this topic. The court asked, "what are you looking for?" (A-629, Tr. 29:14), and when the Beierwaltes' counsel replied that he wanted to explore whether the property was properly evaluated in Switzerland, the court followed up as follows:

> But you could have hired an expert at this point in time. I mean what exactly are you going to seek in jurisdictional discovery? What are you asking for?

*Id.* at 29:20-22. Again, the Beierwaltes' counsel gave a vague response, later adding that "*if the Court needs to make a fact finding on that*, then we want to have discovery as to the degree of coordination and cooperation and control by the Office of Culture over this process," and "… *I'm not even sure discovery is needed*

31

*at this point* because their evidence is overweighed by ours." *Id.* at 30:3-23 (emphasis added).

In the face of Appellants-Appellants Beierwaltes' extremely vague and uncertain request for discovery, it was not only within the discretion of the district court, but in fact incumbent on it, to deny the request. The Beierwaltes' untethered and ill-defined request for open-ended discovery runs counter to the Supreme Court's direction in *Bolivarian Republic of Venezuela.*

In summary, the district court's decision to reject discovery was not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the judgment should be affirmed.

Respectfully submitted,

/s/ Stephan E. Becker
Stephan E. Becker
stephan.becker@pillsburylaw.com
Michael Evan Jaffe
michael.jaffe@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth STREET, N.W.
Washington, D.C. 20036
(202) 663-8000
*Attorneys for Swiss Confederation Defendants*

Dated: May 22, 2020

32

**CERTIFICATE OF COMPLIANCE**

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,582 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

Dated:  May 22, 2020

                                                   /s/ Stephan E. Becker

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit by using the appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.


Dated: May 22, 2020

/s/ Stephan E. Becker