# 19-3457-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT
_____

LYNDA BEIERWALTES and WILLIAM BEIERWALTES,

*Plaintiffs-Appellants*,

v.

L'OFFICE FEDERALE DE LA CULTURE DE LA CONFEDERATION SUISSE, FEDERAL OFFICE OF CULTURE OF THE SWISS CONFEDERATION, L'ADMINISTRATION FEDERALE DES DOUANES DE LA CONFEDERATION SUISSE, FEDERAL CUSTOMS ADMINISTRATION OF THE SWISS CONFEDERATION, LA REPUBLIQUE ET CANTON DE GENEVE, REPUBLIC AND CANTON OF GENEVA,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

## __SUPPLEMENTAL APPENDIX__

SUBMITTED BY APPELLEES L'OFFICE FEDERALE DE LA CULTURE DE LA CONFEDERATION SUISSE AND L'ADMINISTRATION FEDERALE DES DOUANES DE LA CONFEDERATION SUISSE

_____

Stephan E. Becker
Michael Evan Jaffe
Pillsbury Winthrop Shaw Pittman LLLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000

# TABLE OF CONTENTS

Memorandum Endorsement of Parties' Proposed Briefing Schedule
(December 7, 2018) ........................................................................ SA 1

Swiss Confederation Defendants' Memorandum Supporting Motion
to Dismiss (January 25, 2019) ...................................................... SA 4

Hicham Aboutaam's Opposition to Motion to Dismiss in Related
Case (March 29, 2019)................................................................... SA 27

Beierwaltes' Opposition to Motion to Dismiss (March 29, 2019) .................. SA 60

Swiss Confederation Defendants' Reply Supporting Motion to
Dismiss in Related Case (Aboutaam) (April 29, 2019).............................. SA 64

MEMO ENDORSED

December 7, 2018

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/14/18

**VIA ECF**

Honorable Ronnie Abrams, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

> Re:  *Aboutaam v. L'Office Federale de la Culture de la Confederation Suisse, et al.*, 18-cv-8248-RA (S.D.N.Y.); and *Beierwaltes v. L'Office Federale de la Culture de la Confederation Suisse, et al.*, 18-cv-11167-UA (S.D.N.Y.)

Dear Judge Abrams:

The parties in the two cases referenced above jointly submit this letter in response to your Memorandum Endorsement dated November 16, 2018, in the *Aboutaam* case (ECF 18). In the Memorandum Endorsement, you instructed the parties to submit a joint proposed case-management plan and scheduling order by December 7, 2018. Given the common defendants and similar procedural and substantive issues in these cases, as outlined below, the parties have conferred and jointly submit the following case description, offer a proposed briefing schedule on the defendants' upcoming motions to dismiss, and ask the Court to stay discovery, subject to the reservations stated below, pending resolution of the motions to dismiss.

These two cases—*Aboutaam v. L'Office Federale de la Culture de la Confederation Suisse, et al.*, 18-cv-8248-RA (S.D.N.Y.), and *Beierwaltes v. L'Office Federale de la Culture de la Confederation Suisse, et al.*, 18-cv-11167-UA (S.D.N.Y.)—arise from events that took place in Switzerland in 2017 and 2018. They involve common defendants and common issues of law relating to defendants' alleged actions and the properties at issue. The *Aboutaam* case was filed in this Court on September 11, 2018. The *Beierwaltes* case was originally filed in the District of Colorado on August 8, 2018. Given the similarities between the cases and to preserve judicial and party resources, the parties in the *Beierwaltes* case jointly moved to transfer that case from the District of Colorado to this Court for coordination with the *Aboutaam* action. The *Beierwaltes* case was received in this Court on November 30, 2018. The parties in the *Beierwaltes* case have filed a Notice of Relatedness (ECF 22) requesting that the case be assigned to Your Honor. Accordingly, the discussion below relates to both cases.

The cases implicate the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–11. The three defendants are L'Office Federale de la Culture de la Confederation Suisse, L'Administration Federale des Douanes de la Confederation Suisse, and La République et Canton de Genève (collectively, the "Swiss Defendants").

December 7, 2018
Page 2

The Swiss Defendants assert that they are foreign states within the meaning of 28 U.S.C. § 1603(a). The plaintiffs in each case allege in their complaints that each defendant is an agency or instrumentality of a foreign state within the meaning of Section 1603(b).

The gravamen of the two complaints is an allegation that the Swiss Defendants seized collections of antiquities stored in Geneva, Switzerland, in February 2017, asserting concerns regarding the provenance or legality of the antiquities. The plaintiff in *Aboutaam*, Mr. Hicham Aboutaam, claims an interest in approximately 1,200 such antiquities, and the plaintiffs in *Beierwaltes*, Lynda and William Beierwaltes, claim an interest in 18 antiquities. Plaintiffs in both actions allege that the seizure actions were unlawful. Each plaintiff seeks declaratory judgment as to title and asserts claims for conversion and unjust enrichment. The Beierwaltes also assert a claim for civil theft.

The Swiss Defendants contest this Court's subject-matter jurisdiction. The FSIA, in 28 U.S.C. § 1604, provides that a "foreign state shall be immune from the jurisdiction of the courts of the United States … except as provided in sections 1605 to 1607" of Title 28. Plaintiffs rely upon the so-called "expropriation exception" to immunity in Section 1605(a)(3). The Swiss Defendants dispute the applicability of the expropriation exception and assert their immunity from U.S. jurisdiction, among other grounds for dismissal.

The parties agree that threshold questions of jurisdiction should be resolved before this case proceeds further. Consideration of merits discovery and other case logistics would be premature at this time, particularly because the disposition of a motion to dismiss on sovereign immunity grounds is immediately appealable. *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 105 (2d Cir. 2016).

The parties propose the following briefing schedule on the Swiss Defendants' motions to dismiss; this schedule would apply to both cases:

January 25, 2019: Defendants' motions to dismiss

March 15, 2019: Plaintiffs' oppositions

April 15, 2019: Defendants' replies

Plaintiffs do not agree that this schedule would be adequate if Defendants' motions were to raise issues requiring jurisdictional discovery. Accordingly, Plaintiffs respectfully reserve the rights to seek jurisdictional discovery, if necessary, and to request to revise this schedule, with the Court's permission, after receiving Defendants' motions to dismiss. The Swiss Defendants reserve their rights to respond accordingly.

Case 1:18-cv-11167-RA   Document 27   Filed 12/14/18   Page 5 of 80
Case 1:18-cv-08248-RA   Document 26   Filed 12/07/18   Page 3 of 3

SA-3

December 7, 2018
Page 3

     The parties appreciate the Court's consideration of this joint case management plan and respectfully request an order adopting the briefing schedule set forth above and staying merits discovery and case-management deadlines pending resolution of the motions to dismiss.

Respectfully submitted,

For the plaintiffs:

/s/ Kevin N. Ainsworth
Kevin N. Ainsworth
Mintz, Levin, Cohn, Ferris, Glovsky and
   Popeo, P.C.
666 Third Avenue, New York, NY 10017
(212) 692-6745

Georges G. Lederman
Pearlstein McCullough & Lederman LLP
641 Lexington Avenue, Suite 1327
New York, NY 10022
(646) 762-2833

*Counsel for Hicham Aboutaam*


/s/ Andrew C. Lillie
Andrew C. Lillie
Jessica Black Livingston
Andrew Nussbaum
Hogan Lovells US LLP
1601 Wewatta St., Suite 900
Denver CO 80202
(303) 899-7339

*Counsel for Lynda and William
Beierwaltes*

For the defendants:

/s/ Marcus A. Asner
Marcus A. Asner
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710
(212) 836-7222

*Counsel for La République et Canton de
Genève*


/s/ Stephan E. Becker
Stephan E. Becker
Michael Evan Jaffe
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036-3006
(202) 663-8068

*Counsel for L'Office Federale de la
Culture de la Confederation Suisse and
L'Administration Federale des Douanes de
la Confederation Suisse*

Application granted. Briefing on the anticipated motions to dismiss shall follow the schedule outlined above. Discovery is stayed pending resolution of the anticipated motions to dismiss. If Plaintiffs require jurisdictional discovery, they may submit a letter to the Court. The Clerk of Court is respectfully directed to place this Order on the dockets of both related actions, 18-cv-8248 and 18-cv-11167.
SO ORDERED.

Hon. Ronnie Abrams
12/14/2018

Case 19-3457, Document 69, 05/22/2020, 2846503, Page6 of 80
Case 1:18-cv-11167-RA   Document 38   Filed 01/25/19   Page 1 of 23

SA-4

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HICHAM ABOUTAAM, | |
| Plaintiff, | |
| -*against*- | Civ. Action No. 1:18 Civ. 08248 (RA-BCM) |
| L'OFFICE FEDERAL DE LA CULTURE DE LA CONFEDERATION SUISSE, et al., | |
| Defendants. | |
| LYNDA BEIERWALTES, and WILLIAM BEIERWALTES, | |
| Plaintiff, | Civ. Action No. 1:18 Civ. 11167 (RA-BCM) |
| -*against*- | |
| L'OFFICE FEDERAL DE LA CULTURE DE LA CONFEDERATION SUISSE, et al., | |
| Defendants. | |

## MEMORANDUM OF LAW OF DEFENDANTS L'OFFICE FEDERAL DE LA CULTURE DE LA CONFEDERATION SUISSE AND L'ADMINISTRATION FEDERALE DES DOUANES DE LA CONFEDERATION SUISSE IN SUPPORT OF THEIR MOTION TO DISMISS

Stephan E. Becker
Michael Evan Jaffe
John Chamberlain
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:  202.663.8000
Facsimile:  202.663.8007

*Attorneys for Defendants L'office Federal De La Culture De La Confederation Suisse and L'Administration Federale Des Douanes De La Confederation Suisse*

Case 19-3457, Document 69, 05/22/2020, 2846593, Page7 of 80
Case 1:18-cv-11167-RA   Document 38   Filed 01/25/19   Page 2 of 23

SA-5

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

I.      The Swiss Confederation Defendants ............................................................. 2

II.     Swiss Customs Law ........................................................................................ 4

III.    Relevant Events in Switzerland ..................................................................... 5

ARGUMENT ................................................................................................................ 8

I.      The Court Lacks Subject Matter Jurisdiction Under the Foreign Sovereign
Immunities Act ............................................................................................... 8

        A.      Plaintiffs Fail to Plausibly Allege that the Swiss Confederation Has
Taken Property in Violation of International Law ................................ 10

        B.      The Property Allegedly "Taken" Is Not in the United States, and
the Swiss Confederation Defendants Are Not "Agencies or
Instrumentalities" ............................................................................... 12

                1.      The Property Allegedly Taken Was Not Taken in the
United States ......................................................................... 12

                2.      The Swiss Confederation Defendants are Integral Parts of
the Federal Government, and Not "Agents or
Instrumentalities" ................................................................. 13

II.     The Act of State Doctrine and Principles of International Comity Require
Dismissal ....................................................................................................... 14

        A.      Act of State Doctrine ........................................................................... 14

        B.      International Comity ............................................................................. 16

CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Allied Bank Int'l v. Banco Credito Agricola de Cartago,*
    757 F.2d 516 (2d Cir. 1985)......................................................................................15

*Amorrortu v. Republic of Peru,*
    570 F. Supp. 2d 916 (S.D. Tx. 2008) ......................................................................10

*Argentine Republic v. Amerada Hess Shipping Corp.,*
    488 U.S. 428 (1989) ..................................................................................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................1

*Best Med. Belgium, Inc. v. Kingdom of Belgium,*
    913 F. Supp. 2d 230 (E.D. Va. 2012) .....................................................................10

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
    137 S. Ct. 1312 (2017) ........................................................................................9, 10

*Chettri v. Nepal Rastra Bank,*
    834 F.3d 50 (2d Cir. 2016)................................................................................10, 15

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.,*
    809 F.3d 737 (2d. Cir. 2016).............................................................................15, 17

*FTE v. Spirits Int'l B.V.,* 809 F.3d 737 (2d Cir. 2016) ................................................14

*Garb v. Republic of Poland,* 440 F.3d 579 (2d Cir. 2006) ....................................13, 14

*Konowaloff v. Metro. Museum of Art,*
    702 F.3d 140 (2d Cir. 2012)....................................................................................15

*Maxwell Commc'n Corp. plc, by Homan v. Societe Generale,*
    93 F.3d 1036 (2d Cir. 1996)....................................................................................17

*Ministry of Def. & Support for Armed Forces of the Islamic Republic of Iran v. Elahi,*
    556 U.S. 366 (2009) ................................................................................................13

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela,*
    863 F.3d 96 (2d Cir. 2017)........................................................................................8

*Roeder v. Islamic Republic of Iran,*
    333 F.3d 228 (D.C. Cir. 2003).................................................................................13

SA-7

Case 19-3457, Document 69, 05/23/2020, 2846569, Page4 of 80
Case 1:18-cv-11167-RA   Document 38   Filed 01/25/19   Page 4 of 23

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ............................................................................8

*Schuler v. Rainforest Alliance, Inc.*,
  684 Fed. Appx. 77 (2d Cir. 2017) .....................................................17

*Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*,
  2014 WL 288705 (S.D.N.Y. 2014) ....................................................12

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
  493 U.S. 400 (1990) ..........................................................................15

*Wye Oak Tech., Inc. v. Republic of Iraq*,
  666 F.3d 205 (4th Cir. 2011) .............................................................13

## Statutes

22 U.S.C. § 2370 ..................................................................................15

28 U.S.C. §§ 1330, 1602–1611 ...................................................*pasim*

## Rules

19 C.F.R. Section 141.4(a) ......................................................................4

Federal Rule of Civil Procedure 12 ........................................................1

Local Civil Rule 7.1 ...............................................................................1

Local Civil Rule 11.1 .............................................................................1

## Other Authorities

United States/Switzerland Treaty on Mutual Legal Assistance in Criminal
  Matters, 27 U.S.T. 2019 (May 25, 1973) ..........................................16

Barry Meier, *Art Dealer Pleads Guilty In Import Case*, New York Times (June 24, 2004)...........5

Loi fédérale sur le transfert international des biens culturels, LTBC, du 20 juin 2003
  ("LTBC") .............................................................................................7

Restatement (Fourth) of Foreign Relations Law of the United States (2018) § 441,
  comment a. ..........................................................................................14

Defendants L'office Federal De La Culture De La Confederation Suisse ("Swiss Federal Office of Culture") and L'Administration Federale Des Douanes De La Confederation Suisse, ("Swiss Federal Customs Administration") (collectively, the "Swiss Confederation") respectfully submit this memorandum in support of their Motion to Dismiss the separate Complaints filed by the Aboutaam and Beierwaltes Plaintiffs in these two actions.[1] The motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) and Local Rules 7.1 and 11.1.

**INTRODUCTION**

Both the Aboutaam and the Beierwaltes Plaintiffs allege that Swiss government agencies have improperly deprived them of their property.[2] The allegations exaggerate and misstate the facts, but, even if true, they would not provide a basis for subject matter jurisdiction in this Court.[3] Further, as discussed below, the Court should reject jurisdiction on the basis of the Act of State Doctrine and principles of international comity.

More specifically, the Swiss Confederation respectfully asks the Court to dismiss the Complaints for the following reasons: (i) the Court lacks subject matter jurisdiction because the Swiss Confederation is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611; and (ii) the Act of State Doctrine and principles of international comity compel the Court to decline to exercise jurisdiction when, as here, the

---

[1] The Hicham Aboutaam action is denominated Civ. Action No. 1:18-cv-08248 (RA) and the Lynda and William Beierwaltes action is denominated Civ. Action No. 1:18-cv-11167 (RA). The cases have been designated as related.

[2] The Complaint filed by Hicham Aboutaam is cited as "Aboutaam Compl.", and the Complaint filed by Lynda and William Beierwaltes is cited as "Beierwaltes Compl.".

[3] In order to state a claim, Plaintiffs must present "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mere legal conclusions (e.g., that "Defendants violated international law," Beierwaltes Compl. ¶ 3) are not independently sufficient to state a claim.

Case 18-3457, Document 69, 05/22/2019, 2846063, Page11 of 80
Case 1:18-cv-11167-RA   Document 38   Filed 01/25/19   Page 6 of 23

SA-9

property at issue is located in Switzerland and there are ongoing Swiss legal proceedings

concerning that property.

## FACTUAL BACKGROUND

## I.    The Swiss Confederation Defendants

The Swiss Federal Office of Culture and the Swiss Federal Customs Administration are

part of the Swiss federal government.  The Swiss Federal Customs Administration is part of the

Swiss Finance Department (Département fédéral des finances).[4]  The Swiss Federal Office of

Culture is part of the Federal Department of Home Affairs (Département fédéral de l'intérieur).

Declaration of Hans Georg Nussbaum ("Nussbaum Decl.") ¶ 2.[5]  Neither is separately

incorporated, nor does either have a legal identity distinct from the Swiss Confederation.  *Id.*

The mandate of the Federal Customs Administration is described on its website, and

encompasses activities very similar to those of U.S. Customs and Border Protection:

### Tasks of the Federal Customs Administration

The customs and the uniformed and armed border guard corps (BGC)
perform various tasks for the state, the economy and the population.

**Contribution towards national security**

**Combat illegal activities**

---

[4]    *See* Federal Customs Administration, https://www.ezv.admin.ch/ezv/en/home.html ("The
Customs Administration is the largest administration unit in the Finance Department with
4000 employees".)  Declaration of Stephan E. Becker ("Becker Decl."), Ex. 1.

[5]    *See* Federal Office of Culture, https://www.bak.admin.ch/bak/en/home.html.  Becker Decl.,
Ex. 2.   Switzerland is a member of the Government Procurement Agreement ("GPA") of the
World Trade Organization (as is the United States).  As part of their commitments under the
GPA, member countries must list their covered government entities, organized by whether
they are "central government" entities, "sub-central" government entities, or other types of
entities.  Switzerland reported the Federal Customs Administration and the Federal Office of
Culture as "central government" entities. *See* World Trade Organization, Switzerland, Annex
1 to Government Procurement Agreement Coverage Schedules, *available at*
https://www.wto.org/english/tratop_e/gproc_e/gp_app_agree_e.htm.  Becker Decl., Ex. 3.

Increased security by way of mobile presence in the border regions; combat of crime and illegal migration (e.g. people and vehicle searches); combat against drug trafficking and document forgery etc.

**Protecting the population and the environment**

Food inspection at the border; protection of animals, plants and endangered species; inspection of traffic carrying hazardous goods and radioactive and poisonous substances; precious metal assaying etc.

**Public security**

Control of the trafficking in arms and combat equipment as well as of goods used for both military and civil aims and explosive substances; enforcement of traffic regulations for incoming and outgoing traffic; enforcement of embargoes etc.

**Economic tasks**

**Protection and checks**

Control of the import and export of certain goods, protection of agriculture; protection of trade marks, indications of geographical origin, design and copy rights; national economic supply etc.

**Taxation**

Customs duties; value added tax; mineral oil, car, tobacco and beer taxes; monopoly charges on alcoholic drinks; incentive tax, heavy vehicle tax and national road tax etc.

**Various services**

Statistics on foreign trade and transit traffic etc.

**Cooperation with foreign authorities and organizations**

International transit; official and legal assistance; participation in international missions etc.[6]

The mission of the Federal Office of Culture is described on its website as follows:

The Confederation's cultural activities within Switzerland are essentially based on the interplay of the Federal Office of Culture and Pro Helvetia, the Swiss Arts Council. The Federal Office of Culture is the strategic body

---

[6]  Federal Customs Administration, "Mandate," https://www.ezv.admin.ch/ezv/en/home/the-fca/mandate.html.  Becker Decl., Ex. 4.

3

> responsible for drawing up and implementing the Confederation's culture
> policy. Its remit covers tasks that are strictly reserved to the Confederation,
> namely improving the institutional framework, drafting enactments in the
> culture sector, reviewing the compatibility of enactments in other political
> areas (value added tax, international free trade, vocational education,
> languages, etc.) with the needs of culture and – in coordination with the
> Federal Department of Foreign Affairs (FDFA) – negotiating agreements in
> the cultural sector, representing Switzerland in multilateral organisations and
> cultivating international relationships. Its promotion activities comprise two
> areas: cultural heritage (heritage protection and the preservation of historic
> monuments, transfer of cultural assets, museums and collections) and cultural
> creativity (films, prizes and awards, support for cultural organisations), also
> including promoting the foundations of culture (language and understanding
> policy, musical education, promotion of reading, travellers, Swiss schools
> abroad).[7]

Although the Federal Office of Culture lends its expertise to other government agencies, it has no

authority to conduct criminal investigations or make seizures, or to direct prosecutions or

otherwise give orders to prosecutorial authorities. Nussbaum Decl. ¶ 15.

## II.    Swiss Customs Law

As in the United States,[8] Swiss law requires that imported items be declared to the

customs authorities, and that applicable customs tariffs and other taxes, including the value

added tax, be paid at that time. Nussbaum Decl. ¶ 3. Also as in the United States,[9] it is possible

to import items into a customs bonded warehouse, where they can be stored without paying

duties and taxes if they will eventually be reexported. When property is withdrawn from a

---

[7]    Federal Office of Culture, "Mission," https://www.bak.admin.ch/bak/en/home/the-foc/mission.html. Becker Decl., Ex. 5.

[8]    *See, e.g.*, 19 C.F.R. § 141.4(a) ("All merchandise imported into the United States is required to be entered, unless specifically excepted.").

[9]    *See* U.S. Customs and Border Protection, *Bonded Warehouse*, available at https://www.cbp.gov/sites/default/files/documents/bonded_20wh2_2.pdf ("A Customs bonded warehouse is a building or other secured area in which imported dutiable merchandise may be stored, manipulated, or undergo manufacturing operations without payment of duty for up to 5 years from the date of importation."). Becker Decl., Ex. 6.

customs bonded warehouse for disposition within Switzerland, the property must be registered

for customs assessment.  Nussbaum Decl. ¶ 4.

The Federal Customs Administration has the authority to enforce Swiss import

requirements through administrative and criminal proceedings.  Nussbaum Decl. ¶¶ 5-6.[10]

## III.    Relevant Events in Switzerland

Following is the description of the legal basis of the search warrant and lien issued by the

Federal Customs Administration, as set forth in the English translation of the search warrant and

lien appended to the Aboutaam Complaint and the Beierwaltes Complaint, each at Exhibit B[11]:

> Reason: Importation without declaration/ fencing archeological property/
> antiques
>
> On 12/20/2016, at approximately 5:10 PM, Mr. Carlos ALEXANDRE NOVO
> (the driver) and Roben DIB (the passenger) arrived from France in a gray
> Land Rover registered under No. GE777994 to the company Phoenix Ancient
> Art SA, which is located at rue Verdaine 6 in 1204 Geneva.  They entered
> Switzerland using the approved Veyrier traffic route.  A border patrol officer
> stopped them as they were leaving the Veyrier border checkpoint.  An
> inspection of the two people allowed the officer to certify that Mr. DIB was in
> possession of an antique oil lamp that had been fraudulently imported.  An
> inspection of the car revealed the presence of 3 receipts for the rental of two
> storage units at the company Flexbox Self Storage, route du Nant-d'Avril 40
> in 1214 Vernier, in the name of Walter HABERKORN, chemin des Raclerets
> 22 in 1284 Chancy.  These two people were heard within the context of the
> importation without declaration of this lamp, and they were freed at
> approximately 2:15 AM on 12/21/2016.  Our inquiry at the company
> FLEXBOX allowed us to establish that, following this interception, several
> movements of merchandise were certified beginning in the early hours of
> 12/21/2016.  Ms. Biliana Abou Taam was identified on the surveillance
> cameras on this occasion.  There is also a strong suspicion that other
> fraudulent importations of archeological property may have occurred and that
> they were stored on these premises.

---

[10]  U.S. Customs and Border Protection enforces customs infractions involving imported
artworks.  *See, e.g.*, Barry Meier, *Art Dealer Pleads Guilty In Import Case*, New York Times
(June 24, 2004) (involving Plaintiff Aboutaam).  Becker Decl., Ex. 7.

[11]  ECF No. 1-2 at 13 (in both cases).

A criminal customs inquiry is being conducted for:

- Infraction of the customs law dated March 15, 2005 (LD; RS 631.0), as well as for
- Infraction of the law on VAT dated June 12, 2009 (LTVA; RS 641.20), and for
- Infraction of the federal law [d]ated March 22, 1974 on administrative criminal law (DPA; RS 313.0), specifically Article 14, paragraph 4 thereof;

Goal of the search: To investigate and secure:

- Fraudulently imported merchandise,

- Documents and objects related to the undeclared importation of merchandise that constitute evidence[.]

Thus, the Federal Customs Administration issued its search warrant and lien based what appeared to be evasions of the Swiss customs law involving Phoenix Ancient Art SA, Biliana Aboutaam (Ali Aboutaam's spouse) and others.

As acknowledged by Plaintiffs (Beierwaltes Compl. at 2, n.2; Aboutaam Compl. at 3, n.2), the Federal Customs Administration's seizure order requires that the affected items be kept in their current locations; the Federal Customs Administration did not take physical possession of any item.

To the best of the knowledge of the Federal Customs Administration, of the 18 items identified by the Beierwaltes plaintiffs, only one (Art Object TR.PRO.009, comprising two heads of female figures) is subject to the seizure order. Nussbaum Decl. ¶ 11. That artwork was removed from a customs bonded warehouse in 2013 to the home in Geneva of Mr. Ali Aboutaam and Ms. Biliana Kirilova Aboutaam, both residents of Switzerland, with the purported intention of selling it. *Id.* ¶ 9. But the item was never sold, and it remains in the residence of Mr. and Mrs. Ali Aboutaam. *Id.* ¶¶ 9-10. On November 7, 2018, the Federal Customs Administration sent a letter to Ali Aboutaam assessing the VAT on TR.PRO.009 as a total of 7,709.15 Swiss

6

francs, including interest, based on the value of the item declared by the importer as 80,000 Swiss francs. *Id.* ¶ 12. Mr. Aboutaam has appealed that assessment and the appeal remains pending. *Id.*

The Aboutaam Complaint does not identify any items over which Mr. Hicham Aboutaam claims ownership that are subject to the Federal Customs Administration seizure order. Aboutaam Compl. ¶ 34 ("The Swiss Customs Administration's seizure order fails to identify any of the antiquities under suspicion as constituting any part of the Hicham U.S. Property.").

None of the Plaintiffs are the subject of the investigation of the Federal Customs Administration, but under the Swiss customs law, parties with claims to property subject to a customs lien are able to intervene in the administrative enforcement proceedings to assert their interests. Nussbaum Decl. ¶ 14. If an intervening party can establish ownership of the property at issue, the lien and related seizure of the Federal Customs Administration would be released upon payment of the unpaid VAT. Nussbaum Decl. ¶¶ 12, 14.

According to the Aboutaam and Beierwaltes Complaints,[12] a seizure order was issued by the Prosecutor of the Canton of Geneva and the Swiss Customs Administration pursuant to the Loi fédérale sur le transfert international des biens culturels, LTBC, du 20 juin 2003 ("LTBC").[13] But contrary to the allegations in the Complaints, enforcement of the LTBC is not within the purview of the Federal Customs Administration or any other office or part of the Swiss Confederation. Rather, it is the responsibility of the 26 Cantons (Swiss political subdivisions akin to U.S. states) to enforce the LTBC. Nussbaum Decl. ¶ 15. The Cantons and

---

[12]  Aboutaam Compl. ¶ 5; Beierwaltes Compl. ¶ 4.

[13]  According to the Plaintiffs, the LTBC is "unofficially translated as the 'Federal Act on the International Transfer of Cultural Property, CPTA, dated June 20, 2003.'" *Id.*

7

their prosecutors are authorities independent of the federal government.  Nussbaum Decl. ¶¶ 15-

16.[14]

**ARGUMENT**

There are three principal alternative grounds on which the Complaints in these actions

should be dismissed.  Each of the grounds, standing alone, warrants dismissal.

**I.    The Court Lacks Subject Matter Jurisdiction Under the Foreign Sovereign
       Immunities Act**

The FSIA provides the "sole basis for obtaining jurisdiction over a foreign government."

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); *accord Mobil*

*Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 113 (2d Cir. 2017).  A

foreign state is "immune from the jurisdiction of the courts of the United States" unless the cause

of action falls under a statutory exception.  28 U.S.C. § 1604; *accord Saudi Arabia v. Nelson*,

507 U.S. 349, 355 (1993) ("Under the [Foreign Sovereign Immunities] Act, a foreign state is

presumptively immune from the jurisdiction of United States courts; unless a specified exception

applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state.").

The Supreme Court has recently held that "consistent with foreign sovereign immunity's

basic objective, namely, to free a foreign sovereign from *suit,* the court should normally resolve

[jurisdictional] factual disputes and reach a decision about immunity as near to the outset of the

---

[14]  In the United States, investigations and prosecution of illicit trade in artworks can also be
pursued by state and municipal authorities.  For example, the District Attorney for New York
County has established an Antiquities Trafficking Unit specializing in recovering stolen
antiquities for return to their countries of origin.  *See* Manhattan District Attorney, *Manhattan*
*District Attorney's Office Returns Three Ancient Statues to Lebanese Republic*,
https://www.manhattanda.org/manhattan-district-attorneys-office-returns-three-ancient-
statues-lebanese-republic.  Becker Decl., Ex. 8.  *See also In The Matter Of An Application For*
*A Warrant To Search The Premises Located At The Metropolitan Museum Of Art, 1000 5th A*
*Venue, New York, New York 10028 ("The Target Premises")* (involving the Plaintiffs),
https://drive.google.com/file/d/0B5JGBI8bB2Mcc0lUQ3FiNURKS1U/view).

8

Case 19-3457, Document 69, 05/23/2020, 2846993, Page18 of 80
Case 1:18-cv-11167-RA Document 38 Filed 01/25/19 Page 13 of 23

SA-16

case as is reasonably possible." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1317 (2017) (emphasis in original).

Section 1605 of the FSIA provides several exceptions to foreign sovereign immunity. In the Complaints, the Plaintiffs base their claims to jurisdiction on the exception for cases arising from "property taken in violation of international law" (the "expropriation exception"). *See* Aboutaam Compl. ¶¶ 14-24; Beierwaltes Compl. ¶¶ 12–23. Under the expropriation exception, a foreign state is not immune from suit in the United States where:

> [R]ights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]

28 U.S.C. § 1605(a)(3).

Thus, to avail themselves of the expropriation exception to sovereign immunity, Plaintiffs must show: (1) that certain property was taken from them in violation of international law; and either (2a) the property is "present in the United States" in connection with some commercial activity conducted by the foreign state in the United States, or (2b) the property is "owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."

The allegations in the Aboutaam and Beierwaltes Complaints alone fail to establish that the expropriation exception applies. Further, as explained below, the Complaints could not be amended to bring this case within the expropriation exception to foreign sovereign immunity.

A.    **Plaintiffs Fail to Plausibly Allege that the Swiss Confederation Has Taken Property in Violation of International Law.**

In *Chettri v. Nepal Rastra Bank*, 834 F.3d 50 (2d Cir. 2016), the plaintiff alleged that the

freezing of a bank account by the Nepalese Government was a taking in violation of international

law within the meaning of 28 U.S.C. § 1605(a)(3).  *Chettri,* 834 F.3d at 54.  The Second Circuit

rejected this argument, explaining as follows:

> We interpret the phrase "taken in violation of international law" to mean the
> nationalization or expropriation of property without payment of the prompt
> adequate and effective compensation required by international law, including
> takings which are arbitrary or discriminatory in nature.  Tarala and Wu have not
> alleged sufficient facts to plausibly establish that the freezing of Wu's account
> constituted a taking, much less a taking "in violation of international law."
> Rastra Bank and the Department froze Wu's financial assets in connection with
> an ongoing money laundering investigation.  Unsurprisingly, Tarala and Wu
> offer no authority for the proposition that a routine law enforcement action such
> as this constitutes a taking within the meaning of § 1605(a)(3), and the
> complaint's conclusory criticisms of the manner in which Nepal has conducted
> its investigation are insufficient to prove a violation of international law.

*Id*. at 58 (internal quotation marks and citation omitted).

Similarly, it is not a violation of international law for a foreign state to exercise its

authority to enforce its customs and tax laws against persons within that state.  *Cf. Best Med.*

*Belgium, Inc. v. Kingdom of Belgium*, 913 F. Supp. 2d 230, 239 (E.D. Va. 2012) (taking of

property to satisfy a valid debt is not an illegal taking for purposes of the expropriation

exception); *Amorrortu v. Republic of Peru,* 570 F. Supp. 2d 916, 924 (S.D. Tx. 2008) (same).

In the Beierwaltes' Complaint, the sole basis for alleging a "taking" is their allegation

that the Swiss Confederation Defendants "seized the Beierwaltes Property with a view to

repatriating it" to third parties who have yet to be identified.  Beierwaltes Compl. ¶ 25.  This

allegation is factually incorrect and, in any event, insufficient to invoke the exception to

immunity in 28 U.S.C. § 1605(a)(3).  *See Helmerich*, 137 S. Ct. at 1316 (mere allegations of

property taken in violation of international law are "insufficient to confer jurisdiction" if those allegations are "ultimately incorrect"). The Swiss Confederation seized artwork that was illegally, or suspected of illegally, being removed from a bonded customs warehouse in Switzerland without payment of the required VAT. The seizure order prohibits the transfer or disposal of the artwork until the required VAT is paid. Nussbaum Decl. ¶ 10. That is not a "taking," let alone a taking in violation of international law.

Furthermore, the Beierwaltes' property has not been physically seized under either the allegations in the Beierwaltes Complaint or the statements in the seizure order. The Beierwaltes allege that the artwork remains in the Geneva warehouse (Beierwaltes Compl. ¶ 3, n.2). The seizure order states that the items subject to the seizure order are located at the Geneva home of Ali Aboutaam (Plaintiff Aboutaam's brother). Beierwaltes Compl., Ex. B (ECF No. 1-2). Whichever description is credited, there has been no physical seizure of the Beierwaltes' property.

Plaintiff Aboutaam simply asserts that Defendants violated international law by "wrongfully seizing" the "Hicham U.S. Property at a Geneva Warehouse and elsewhere … and by subsequently failing to pay Hicham just compensation for these objects." Aboutaam Compl. ¶ 4. But, as noted above, the Aboutaam Complaint does not identify any items over which Hicham Aboutaam claims ownership that are subject to the Federal Customs Administration seizure order. Plaintiff Aboutaam's own allegations establish that there has not been any action

Case 19-3457, Document 69, 05/23/2020, 2846293, Page 21 of 80
Case 1:18-cv-11167-RA  Document 38  Filed 01/25/19  Page 16 of 23

SA-19

by the Swiss Confederation that could plausibly be characterized as a seizure, much less a seizure in violation of international law.[15]

### B.  The Property Allegedly "Taken" Is Not in the United States, and the Swiss Confederation Defendants are Not "Agencies or Instrumentalities"

Even if Plaintiffs Beierwaltes or Aboutaam had alleged a taking in violation of international law (which they have not), the expropriation exception would still not apply because they do not satisfy either of the additional statutory elements.  Specifically, the Plaintiffs have not shown that any purportedly seized property was "present in the United States" in connection with some commercial activity of the foreign state in the United States, or that the property at issue is "owned … by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."  28 U.S.C. § 1605(a)(3).

### 1.  The Property Allegedly Taken Was Not Taken in the United States

For the exception to immunity in §1605(a)(3) to apply to a foreign state, the property allegedly taken in violation of international law must be "property or any property exchanged for such property [that] is present in the United States in connection with a commercial activity carried on in the United States by the foreign state …."  All the property at issue was at the time of the claimed seizure and is now (according to the Complaints) in Switzerland, not the United States.  Beierwaltes Compl. ¶ 3 & n.2 (stating that all of the property at issue remains in Geneva,

---

[15]  An additional relevant factor is that the seizure order was executed against individuals resident in Switzerland and Swiss national corporations, not any of the Plaintiffs.  "It is widely accepted that the taking of property by a state from its own nationals does not violate international law."  *Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*, 2014 WL 288705, *7 (S.D.N.Y. 2014).

Case 19-3457, Document 69, 05/23/2020, 2846203, Page 22 of 80
Case 1:18-cv-11167-RA   Document 38   Filed 01/25/19   Page 17 of 23

SA-20

Switzerland); Aboutaam Compl., ¶ 3, n.2 ("The Defendants have not removed the Hicham U.S.
Property objects from the Geneva warehouse and elsewhere in which it is stored.").[16]

**2.**   **The Swiss Confederation Defendants are Integral Parts of the Federal Government, and not "Agents or Instrumentalities"**

The second clause of §1605(a)(3) applies to "property or any property exchanged for
such property [that] is owned or operated by an agency or instrumentality of the foreign state and
that agency or instrumentality is engaged in a commercial activity in the United States[.]"  Here,
the Swiss Confederation Defendants are not "agents or instrumentalities" of the Swiss
Confederation.  The named Swiss Confederation Defendants are a part of, and inseparable from,
the Swiss federal government and are therefore the "foreign state" itself for purposes of the
Foreign Sovereign Immunities Act.  *See, e.g.*, *Ministry of Def. & Support for Armed Forces of
the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 370 (2009) (describing the ministry of
defense as "an inseparable part of the Iranian State" for purposes of sovereign immunity); *Garb
v. Republic of Poland*, 440 F.3d 579, 594-95 (2d Cir. 2006) (affirming district court's holding
that Poland's Ministry of Defense is part of the central government and not an agent or
instrumentality); *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 214 (4th Cir. 2011)
("[A] foreign state and its armed forces are not legally separate for jurisdictional purposes");
*Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003) (same as to foreign
ministry).

---

[16] Note also that there is no allegation that the Swiss Confederation Defendants had anything to
do with the property being transferred to Switzerland.  Rather, the Beierwaltes Complaint
alleges that "the Beierwaltes consigned the Beierwaltes Property to a gallery run by their
exclusive art dealer in Geneva, Switzerland."  Beierwaltes Compl. ¶ 2.  Similarly, Plaintiff
Aboutaam states that he inherited the items from his father (who resided in Switzerland) or
acquired them through purchases, and stored them in Geneva.  Aboutaam Compl. ¶¶ 31-32.

13

Case 19-3457, Document 69, 05/23/2020, 2846993, Page23 of 80
Case 1:18-cv-11167-RA   Document 38   Filed 01/25/19   Page 18 of 23

SA-21

The distinction between a foreign state and its agencies and instrumentalities is an

important one.  The first clause of section 1605(a)(3) sets a higher threshold of proof for suing

foreign states in connection with alleged takings by requiring that the property at issue be present

in the United States.  *Garb v. Republic of Poland*, 440 F.3d at 589 (2d Cir. 2006).  The second

clause sets a lower threshold, but does not apply unless the defendant is an "agency or

instrumentality." *Id.*[17]

The inescapable conclusion from the above is that the expropriation exception to

immunity does not apply here, and because the exception does not apply, the Court lacks subject

matter jurisdiction.

## II.     The Act of State Doctrine and Principles of International Comity Require Dismissal

Separate from the Foreign Sovereign Immunities Act, the Act of State Doctrine and

principles of international comity require dismissal of both Complaints.

### A.     Act of State Doctrine

The Act of State Doctrine "precludes any review whatever of the acts of the government

of one sovereign State done within its borders by the courts of another sovereign State." *FTE v.

Spirits Int'l B.V.*, 809 F.3d 737, 743 (2d Cir. 2016); *see also* Restatement (Fourth) of Foreign

Relations Law of the United States (2018) § 441, comment a ("[T]he act of state doctrine directs

a court in the United States to treat an official act of a foreign sovereign as conclusive with

---

[17]  A further point is that Plaintiffs have not alleged, nor could they plausibly do so, that the
Swiss Confederation Defendants "own" any of the property at issue.  One item is simply
frozen pending payment of the VAT.

respect to the rights and duties addressed by the act.").[18]  The Second Circuit has further

explained that "the act of state doctrine 'is not some vague doctrine of abstention but a principle

of decision binding on federal and state courts alike'; 'the act within its own boundaries of one

sovereign State becomes a rule of decision for the courts of this country.'"  *Fed. Treasury Enter.*

*Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 743 (2d. Cir. 2016) (quoting *W.S.*

*Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990)) (ellipses omitted);

*see also Konowaloff v. Metro. Museum of Art*, 702 F.3d 140 (2d Cir. 2012) (affirming dismissal

of claim on basis of Act of State Doctrine).

    In considering the application of the Act of State Doctrine, the Second Circuit has stated

that "the doctrine demands a case-by-case analysis of the extent to which in the context of a

particular dispute separation of powers concerns are implicated."  *Allied Bank Int'l v. Banco*

*Credito Agricola de Cartago*, 757 F.2d 516, 521 (2d Cir. 1985).  "This analysis must always be

tempered by common sense."  *Id.*  In particular:

> [T]he applicability of the doctrine depends on the likely impact on
> international relations that would result from judicial consideration of the
> foreign sovereign's act.  If adjudication would embarrass or hinder the

---

[18]  A statute known as the Second Hickenlooper Amendment, 22 U.S.C. § 2370(e)(2), established
a narrow exception to the Act of State Doctrine.  It provides in relevant part:

> Notwithstanding any other provision of law, no court in the United States
> shall decline on the ground of the federal act of state doctrine to make a
> determination on the merits . . . in a case in which a claim of title or other
> right to property is asserted . . . based upon (or traced through) a
> confiscation or other taking after January 1, 1959, by an act of [] state in
> violation of the principles of international law . . . :  *Provided*, That this
> subparagraph shall not be applicable … in any case in which an act of a
> foreign state is not contrary to international law ….

This exception is not applicable here, however, because as discussed above neither Aboutaam
nor the Beierwaltes have alleged facts that constitute a taking or a violation of international
law.  *See Chettri*, 834 F.3d at 54.

executive in the realm of foreign relations, the court should refrain from inquiring into the validity of the foreign state's act.

*Id.* at 520-21.

It is difficult to conceive of a situation more directly interfering with Switzerland's sovereignty than the current one, in which the Plaintiffs seek to use a court in the United States to make a collateral attack on a pending investigation and enforcement action of the Swiss Confederation. The Swiss Confederation would strongly object and would view the interference as inconsistent with the many years of close cooperation between Switzerland and the United States in supporting each other's criminal investigations.[19]

For these reasons, the Complaints should be dismissed on the basis of the Act of State Doctrine.

### B.    International Comity

The principle of international comity is similar in nature but broader than the Act of State Doctrine. The Second Circuit has explained the principle as follows:

> Analysis of comity often begins with the definition proffered by Justice Gray in *Hilton v. Guyot*, 159 U.S. 113, 163-64, 40 L. Ed. 95, 16 S. Ct. 139 (1895): "'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Although *Hilton* addressed the degree to which a foreign judgment is conclusive in a court of the United States, the principle expressed is one of broad application.
>
> *    *    *

---

[19]  In 1973, Switzerland and the United States signed the Treaty on Mutual Assistance in Criminal Matters ("TMAC"), which entered into force in 1977. 27 U.S.T. 2019 (May 25, 1973). The TMAC authorizes bilateral cooperation in obtaining documents, information, and other assistance in investigating a wide range of crimes, and was the first treaty of its kind for the United States.

> We realize that "international comity" may describe two distinct doctrines: as a canon of construction, it might shorten the reach of a statute; second, it may be viewed as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state, the so-called comity among courts.  Whether these are two distinct doctrines – and we need not decide that question – in the context of this case the concepts are not two inconsistent propositions.

*Maxwell Commc'n Corp. plc, by Homan v. Societe Generale*, 93 F.3d 1036, 1046-47 (2d Cir. 1996).

Applying the principle of international comity in these cases, it is obvious that Switzerland has a much closer connection to the disputes over the subject items than the United States.  The items are all in Switzerland and are held by persons or corporations resident in Switzerland.  The Swiss seizure proceedings arose before these lawsuits were initiated, and indeed these lawsuits have the purpose of interfering with the Swiss proceedings.  Moreover, the Plaintiffs are able to participate directly in the proceedings in Switzerland.  Nussbaum Decl. ¶ 14.

For these reasons, this Court should defer to the ongoing proceedings in Switzerland.  *See Schuler v. Rainforest Alliance, Inc.*, 684 Fed. Appx. 77, 79 (2d Cir. 2017) ("By pursuing their claims here, the Galleys are essentially asking an American court to overrule the Mexican courts' judgment that the Galleys failed to prove ownership of property located in Mexico.  We agree with the district court that principles of comity preclude us from doing so."); *cf. Sojuzplodoimport*, 809 F.3d at 743 ("The declaration of a United States court that the executive branch of the Russian government violated its own law by transferring its own rights to its own quasi-governmental entity (FTE) would be an affront to the government of a foreign sovereign.  Even an inquiry into whether Russian law permitted the Assignment is a breach of comity.").

17

**CONCLUSION**

Based upon the foregoing, the Aboutaam and the Beierwaltes Complaints should be dismissed.

Dated:  January 25, 2019

By:  s/ Stephan E. Becker
Stephan E. Becker (Pro Hac Vice)
Michael Evan Jaffe (Pro Hac Vice)
John Chamberlain
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:  202.663.8000
Facsimile:  202.663.8007

*Attorneys for Defendants L'office Federal De La Culture De La Confederation Suisse and L'Administration Federale Des Douanes De La Confederation Suisse*

**CERTIFICATE OF SERVICE**

On January 25, 2019, I caused the foregoing **MEMORANDUM OF LAW OF**

**DEFENDANTS L'OFFICE FEDERAL DE LA CULTURE DE LA CONFEDERATION**

**SUISSE AND L'ADMINISTRATION FEDERALE DES DOUANES DE LA**

**CONFEDERATION SUISSE IN SUPPORT OF THEIR MOTION TO DISMISS** to be

served upon counsel of record in this matter by filing it with the Court's electronic filing system.

By:  s/ John Chamberlain
John Chamberlain
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:  202.663.8000
Facsimile:  202.663.8007

*Attorney for Defendants L'office Federal De La*
*Culture De La Confederation Suisse and*
*L'Administration Federale Des Douanes De La*
*Confederation Suisse*

Case 18-3457, Document 69, 05/22/2019, 2846991, Page29 of 80
Case 1:18-cv-08248-RA   Document 45   Filed 03/29/19   Page 1 of 33

SA-27

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
                                                        :
HICHAM ABOUTAAM,                                         :
                                                        :
                                    Plaintiff,          :
                                                        :
                        -against-                       :
                                                        :   No.  18-cv-8248-RA
                                                        :
L'OFFICE FEDERALE DE LA CULTURE DE LA                   :
CONFEDERATION SUISSE, Federal Office of                 :
Culture of the Swiss Confederation, *et al*.,           :
                                                        :
                                    Defendants.         :
                                                        :
-----------------------------------------------------------------------x


**MEMORANDUM OF LAW OPPOSING**
**DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT**

Kevin N. Ainsworth (kainsworth@mintz.com)
Peter A. Chavkin (pachavkin@mintz.com)
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Chrysler Center
666 Third Avenue
New York, New York 10017
(212) 935-3000
(212) 983-3115 (facsimile)
*Attorneys for Plaintiff Hicham Aboutaam*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

PRELIMINARY STATEMENT ........................................................................ 1

THE FACTS ................................................................................................... 3

ARGUMENT .................................................................................................. 5

POINT I – DEFENDANTS ARE NOT IMMUNE UNDER THE FSIA BECAUSE
THEIR ACTIONS FALL UNDER THE EXPROPRIATION EXCEPTION ............................... 5

   A. Element 1: Property Rights Were Taken in Violation of International Law ..................... 7

      1. The FSIA Expropriation Exception Does Not Require Permanent Deprivation
of a Plaintiff's Property Rights; It Is Satisfied by an Arbitrary Action that
Injures Those Rights. ........................................................................ 7

         a. No request by bilateral nation ............................................... 9

         b. No evidence that any piece was acquired after 2005 ..................... 10

         c. No articulable suspicion ....................................................... 10

         d. Hicham has not been compensated ......................................... 11

         e. The Convention framework for repatriating items requires the state to
prove theft, not for Hicham to negate it. ................................... 12

   B. Element 2: The Taken Property Is Owned or Operated by an Agency or
Instrumentality of Switzerland – the FOC ................................................. 13

      1. The FOC is an agency or instrumentality ............................................ 14

         a. The FOC is a separate legal person ......................................... 14

         b. The FOC is an organ of the State ............................................ 17

      2. The Taken Property Is "Owned or Operated by" the FOC ........................ 17

   C. Element 3: The FOC engages in commercial activity in the United States ................... 19

   D. None of the Defendants Is Immune Because the FSIA's Expropriation Exemption
Has Been Met By the FOC ................................................................... 20

i

POINT II – GENEVA'S MOTION UNDER RULE 12(b)(2) MUST BE DENIED
BECAUSE THE COURT HAS PERSONAL JURISDICTION OVER IT.................................. 22

POINT III – DEFENDANTS' AFFIRMATIVE DEFENSES SHOULD BE DENIED ............. 22

    A.  The Act of State Doctrine Is Precluded by Statute .......................................................... 22

    B.  Defendants Have Failed to Prove that this Court Should Dismiss this Action on
        the Grounds of Comity....................................................................................................... 23

CONCLUSION.......................................................................................................................... 26

Case 18-3457, Document 69, 05/22/2019, 2846902, Page32 of 80
Case 1:18-cv-08248-RA Document 45 Filed 03/29/19 Page 4 of 33

SA-30

# TABLE OF AUTHORITIES

**Page**

## CASES

*800537 Ontario, Inc. v. World Imps. U.S.A., Inc.*,
145 F. Supp. 2d 288 (W.D.N.Y. 2001) ...................................................................25

*Acadia Tech, Inc. v. United States*,
458 F.3d 1327 (Fed. Cir. 2006) ..........................................................................12

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
729 F. Supp. 2d 141 (D.D.C. 2010) ...................................................................18

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
528 F.3d 934 (D.C. Cir. 2008) ............................................................................19

*Altmann v. Republic of Austria*,
317 F.3d 954 (9th Cir. 2002), *opinion amended on denial of reh'g*, 327 F.3d 1246
(9th Cir. 2003) and *aff'd on other grounds*, 541 U.S. 677 (2004) ..........................11

*Amerisource Corp. v. United States*,
525 F.3d 1149 (Fed. Cir. 2008) ..........................................................................12

*Arch Trading Corp. v. Republic of Ecuador*,
839 F.3d 193 (2d Cir. 2016) ................................................................................19

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
2 F. Supp. 3d 550 (S.D.N.Y. 2014) ......................................................................6

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
__U.S.__, 137 S. Ct. 1312 (2017) ........................................................................6

*Cassirer v. Kingdom of Spain*,
580 F.3d 1048 (9th Cir. 2009) ...............................................................20, 24, 25

*Chettri v. Nepal Rastra Bank*,
834 F.3d 50 (2d Cir. 2016) ..................................................................................12

*De Csepel v. Republic of Hungary*,
714 F.3d 591 (D.C. Cir. 2013) ................................................................15, 19, 23

*De Csepel v. Republic of Hungary*,
808 F. Supp. 2d 113 (D.D.C. 2011) ......................................................................3

Case 19-3457, Document 69, 05/22/2020, 2846991, Page33 of 80
Case 1:18-cv-08248-RA Document 45 Filed 03/29/19 Page 5 of 33

SA-31

*Ema Garp Fund v. Banro Corp.*,
No. 18 CV 1986, 2019 U.S. Dist. LEXIS 27387 (S.D.N.Y. Feb. 21, 2019) ..........................23

*European Cmty v. RJR Nabisco, Inc.*,
764 F.3d 129 (2d Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 2090 (2016)................16, 17

*Fed. Treasury Enter. Sojuzplodoimport v. Spirit Int'l B.V.*,
809 F.3d 737 (2d Cir. 2016)............................................................................................24

*Filler v. Hanvit Bank*,
378 F.3d 213 (2d Cir. 2004)............................................................................................17

*Fischer v. Magyar Allamvasutak Zrt*,
777 F.3d 847 (7th Cir. 2015) ..........................................................................................25

*Freund v. Republic of France*,
592 F. Supp. 2d 540 (S.D.N.Y. 2008)..............................................................................25

*Fuentes v. Shevin*,
407 U.S. 67 (1972).....................................................................................................7, 8

*Garb v. Republic of Poland*,
440 F.3d 579 (2d Cir. 2006)......................................................................................14, 15

*Hilsenrath v. Swiss Confederation*,
No. C 07-02782 WHA, 2007 U.S. Dist. LEXIS 81118 (N.D. Cal. 2007).................12, 13, 16

*Hulton v. Bayerische Staatsgemaldesammlungen*,
346 F. Supp. 3d 546 (S.D.N.Y. 2018)................................................................................8

*Hyatt Corp. v. Stanton*,
945 F. Supp. 675 (S.D.N.Y. 1996) ..................................................................................14

*Leopard Marine & Trading Ltd. v. Easy St. Ltd.*,
896 F.3d 174 (2d Cir. 2018)...........................................................................................24

*Madeiros v. O'Connell*,
150 F.3d 164 (2d Cir. 1998)............................................................................................8

*Nemariam v. Fed. Democratic Republic of Ethiopia*,
491 F.3d 470 (D.C. Cir. 2007)........................................................................................19

*Oui Fin. LLC v. Dellar*,
No. 12 Civ. 7744 (RA), 2013 U.S. Dist. LEXIS 146214 (S.D.N.Y. Oct. 9, 2013) ................24

*Peninsula Asset Mgmt. (Cayman) v. Hankook Tire Co.*,
476 F.3d 140 (2d Cir. 2007 ............................................................................................16

*Philipp v. Fed. Republic of Germany*,
894 F.3d 406 (D.C. Cir. 2018) ...................................................................23

*Republic of Argentina v. NML Capital, Ltd.*,
573 U.S. 134 (2014) ...................................................................................23

*Rukoro v. Fed. Republic of Germany*,
No. 17 CV 62-LTS, 2019 U.S. Dist. LEXIS 36098 (S.D.N.Y. Mar. 6, 2019) ....................3, 19

*Simon v. Republic of Hungary*,
911 F.3d 1172 (D.C. Cir. 2018) ..........................................................7, 23, 24

*Smith Rocke Ltd. v. Republica Bolivariana de Venez.*,
No. 12 Cv. 7316 (LGS), 2014 U.S. Dist. LEXIS 9692 (S.D.N.Y. Jan. 27, 2014)............19, 22

*Williams v. Nat'l Gallery of Art*,
No. 16-CV-6978 (VEC), 2017 U.S. Dist. LEXIS 15445 (S.D.N.Y. Sept. 21, 2017)...........5, 7

*Zappia Middle East Coast Const. Co. v. Emirate of Abu Dhabi*,
215 F.3d 247 (2d Cir. 2000)........................................................................11

## STATUTES AND RULES

28 U.S.C. § 1330(a) ............................................................................................22

28 U.S.C. § 1330(b) ............................................................................................22

28 U.S.C. § 1603(a) ............................................................................................21

28 U.S.C. § 1603(b) ............................................................................................14

28 U.S.C. § 1605(a) ............................................................................................20

28 U.S.C. § 1605(a)(3)................................................................................. *passim*

28 U.S.C. § 1606 ...............................................................................................23

22 U.S.C. § 2370(e)(2).........................................................................................22

Fed. R. Civ. P. 12(b)(1)........................................................................................3

Fed. R. Civ. P. 12(b)(2)......................................................................................22

Fed. R. Civ. P. 12(b)(3)......................................................................................22

Fed. R. Cr. P. 41(g)...........................................................................................25

**FOREIGN LAWS**

Cultural Property Transfer Act ("CPTA") ............................................................ *passim*

Cultural Property Transfer Ordinance ........................................................................18

UNESCO Convention on the Means of Prohibiting and Preventing the Illicit Import,
    Export, and Transfer of Ownership of Cultural Property,
    adopted November 14, 1970 ................................................................... *passim*

**OTHER MATERIALS**

H.R. Rep. No. 94-1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604
    ["House Report"] ........................................................................... passim

Restatement (Third) of the Foreign Relations Law of the U.S. ("Restatement") § 712 ...........8, 11

Plaintiff Hicham Aboutaam ("Hicham" or "Plaintiff") opposes (1) the Motion to Dismiss of The Republic and Canton of Geneva ("Geneva"), and (2) the Motion to Dismiss of Defendants L'Office Federal De La Culture De La Confederation Suisse (the "Federal Office of Culture" or "FOC") and L'Administration Federale Des Douanes De La Confederation Suisse ("Customs") (collectively the "Defendants"), and respectfully submits in support this Memorandum of Law and the accompanying declaration of Kevin N. Ainsworth, dated March 29, 2019 ("Ainsworth Decl."), together with attached exhibits.

## PRELIMINARY STATEMENT

This Court is presented with a question of first impression: whether Defendants' seizure of antiquities owned by a U.S. citizen – an arbitrary seizure unaccompanied by allegations (much less evidence) of wrongdoing, or any request by another country for the return of any antiquity – was compelled by international law (as Geneva argues) or violated international law.

More than two years ago, the Swiss Defendants seized some 12,000 antiquities after the Swiss Office of Culture asserted suspicions regarding only *seven* objects.  Among the 12,000 pieces were 1200 items owned by Hicham.  An antiquity is not *per se* illegal or "stolen property," and its presence in Switzerland is not *per se* evidence of unlawful importation. Yet, Defendants seized the items without any reasonable suspicion that *any* of the antiquities was unlawfully owned or imported. The seizure was demonstrably arbitrary for a number of other reasons: (a) it included an obviously homemade item that Hicham's niece made for her father; and (b) Geneva released 5000 of the seized items on the same date that the Beierwaltes filed their related action.[1]

---

[1]    This Court has accepted as related a lawsuit filed by Lynda and William Beierwaltes against these same Defendants. (Index No. 18-cv-11167.)

Geneva nevertheless argues – contrary to law – that the seizure was compelled by an international law adopted by Switzerland: the UNESCO Convention on the Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property, adopted November 14, 1970 (the "Convention").[2] (Geneva Mem. at 2.)  But Geneva offers no evidence that seizure was appropriate under either the Convention or Switzerland's federal law implementing the Convention, the Cultural Property Transfer Act ("CPTA").[3]  Indeed, that act expressly is not retroactive (and many—if not most—of Hicham's 1200 pieces were acquired long before the Act's adoption) plus a seizure under the CPTA requires suspicion that the cultural property was stolen or illicitly imported into Switzerland (a) from a country with which Switzerland has a bilateral agreement, and (b) after the date of such bilateral agreement.

Thus, for more than two years, Defendants have frozen Hicham's property, worth millions of dollars, without basis. Compounding this travesty: during that time, two unique pieces of Hicham's worth millions disappeared – part of a trove of 23 seized items that are now lost or stolen while under Defendants' exclusive control. Frustrated by the Defendants' contempt for the very law they claim compelled their actions, Hicham has sought the help of the courts of his nation, the United States.  Where the seizure is an indiscriminate dragnet of every antiquity associated with Hicham, and where Defendants cannot safeguard Hicham's property, there is no other place to turn for relief.

At this preliminary stage, this dispute boils down to two propositions: whether the Defendants have immunity from suit in this Court, and if they do not, whether comity considerations should cause this Court to defer.  As we show below, Defendants cannot satisfy their burden on either issue.

---

[2]     A copy of the Convention is Exhibit 1 to the Ainsworth Declaration.
[3]     A copy of the CPTA is Exhibit 3 to the Ainsworth Declaration.

## THE FACTS

When deciding a motion to dismiss, the facts alleged in the complaint are presumed true. *See, e.g., Rukoro v. Fed. Republic of Germany*, No. 17 CV 62-LTS, 2019 U.S. Dist. LEXIS 36098, at *20 (S.D.N.Y. Mar. 6, 2019). "When reviewing a facial challenge to the Court's subject matter jurisdiction pursuant to Rule 12(b)(1), the Court must assume the truth of all factual allegations in the complaint, construing them in the light most favorable to the plaintiff, even if some are subject to dispute by the opposing party." *de Csepel v. Republic of Hungary*, 808 F. Supp. 2d 113, 126 (D.D.C. 2011). Notably, Geneva has provided no affidavits or declarations in support of its motion, and the unsworn statements by Geneva's attorneys in their memorandum of law, which deviate substantially from the facts alleged in the Complaint, must be disregarded.

Hicham is a U.S. citizen and son of one of the most well-known and prolific antiquities dealers in the world, Sleiman Aboutaam. (AC ¶¶29, 31, 42 n.26, 57.)[4] When Sleiman died tragically in a Swiss Air crash in 1998, Hicham inherited part of that collection. (*Id.*) In addition, Hicham has purchased antiquities in his or his company's name since then. (*Id.* ¶29.) He and his brother, Ali Aboutaam, have published lists and catalogs of much of their inventory, available to the world, and exhibited hundreds of pieces in art fairs across the world. (*Id.*) They have taken serious measures to ensure against their possessing stolen objects. (*Id.* ¶30.)

On February 24, 2017, the prosecutor for the Canton of Geneva arbitrarily seized some 12,000 antiquities. (AC ¶4; Ainsworth Decl. Ex. 18-21.) Among them were 1200 objects belonging to Hicham. (AC ¶1.) Following the protocol prescribed by the Convention and

---

[4] "AC ¶___" refers to the complaint of Hicham Aboutaam (ECF No. 1). "Geneva Mem." refers to the memorandum of law filed by Geneva. "Swiss Mem." refers to the memorandum of law filed by the FOC and Customs.

Switzerland's federal law adopting that convention – the CPTA[5] – the seizure was initiated after the Office of Culture forwarded to Customs and the Geneva prosecutor its suspicions over *seven* objects.[6]  (AC Ex. 24.)  Customs and Geneva then acted to seize 12,000 objects associated with Hicham Aboutaam and his brother, Ali.  (AC ¶4.)[7]

Defendants acknowledge that the seizure was carried out under international law, specifically the Convention.  (Geneva Mem. at 16.)  Indeed, Geneva asserts that international law – i.e., the Convention – *compelled* the seizure.  *Id.*  As shown below, nothing in international law compelled the seizure.

To the contrary, none of the requirements prescribed by that Convention has been satisfied.  The Convention and Switzerland's federal law (the CPTA) require (a) a request by a foreign state claiming ownership of an antiquity; (b) that the requesting foreign state is one with which Switzerland has a bilateral treaty[8] on this subject; (c) that the antiquity requested by that foreign state was imported into Switzerland in violation of  a bilateral agreement after the date of that agreement; and (d) that in any event, the antiquity being seized was acquired by its owner after June 1, 2005.  (CPTA arts. 1.5, 7, 9, 33.)  In addition, a seizure under the CPTA requires "suspicion … that the cultural property was stolen, lost against the will of its owner, or illicitly imported into Switzerland [in violation of a bilateral agreement]."  (CPTA arts. 2.5, 20.)  *None of*

---

[5]   The UNESCO Convention of 1970 was created to instill consistency and fairness in the repatriation of antiquities deemed to have been stolen from requesting signatory nations.  Until then, the antiquities field was governed by few rules and fewer questions.  As the Swiss FOC Working Group observed, it "is a charter concerning international protection of cultural objects which aims to protect and preserve the common cultural heritage of humanity through international cooperation of all nations."  (*See* Ainsworth Decl. Ex. 2 at 4.)

[6]   Apart from the Seizure Order issued by the Geneva Prosecutor, the Customs Administration issued a seizure order on February 28, 2017, affecting 111 pieces in the home of Ali Aboutaam.  (AC ¶33 and Ex. B.)  Hicham is willing to dismiss without prejudice his challenge to that seizure.

[7]   The Defendants call the Cultural Property Transfer Act by its French acronym LTBC and its English acronym CPTA.  We will refer to it as CPTA throughout this memorandum.

[8]   The relevant countries and the dates of Switzerland's bilateral agreements are as follows: Italy as of April 27, 2008; Egypt as of February 20, 2011; Greece as of April 13, 2011; Colombia as of August 4, 2011; China as of January 8, 2014; Cyprus as of February 15, 2014; and Peru as of October 19, 2016. Ainsworth Decl. Exs. 5-6. Switzerland had no other bilateral agreements before the seizure of Hicham's Property. *Id.*

Case 19-3457, Document 69, 05/22/2020, 2846203, Page40 of 80
Case 1:18-cv-08248-RA   Document 45   Filed 03/29/19   Page 12 of 33

SA-38

*these requirements has been satisfied here.* Finally, the laws also require that a good faith purchaser/owner receive compensation when forfeiting items to another state. (CPTA art. 9.5.)

It bears repeating what was done to an American citizen: based on the Office of Culture's suspicions about seven pieces, 12,000 (including Hicham's 1200 pieces) were seized and have been held for over two years without any apparent effort to follow international protocol (adopted by Switzerland) and with additional actions underscoring the arbitrariness and unlawfulness of this sweeping seizure: (1) the prosecutor released 5,000 pieces coincident with the filing of the related Beierwaltes lawsuit (surely not a coincidence). (Ainsworth Decl. Exs. 18-20); (2) the seizure included a contemporary homemade artwork bearing the label "With love, for Daddy" (Ainsworth Decl. Exs. 18-19); (3) may of the seized pieces have provenances (histories) going back to the date Hicham inherited them (1998) and earlier (AC ¶29); and (4) Geneva insists that Hicham "defend [the] legality" of his seized pieces – a burden shift that is the exact opposite of what the international law requires. (Geneva Mem. at 2; CPTA art. 9.)

It is against this background that Hicham has turned to a United States court for relief.

## ARGUMENT
### POINT I

### DEFENDANTS ARE NOT IMMUNE UNDER THE FSIA BECAUSE THEIR ACTIONS FALL UNDER THE EXPROPRIATION EXCEPTION

Each Defendant claims that the FSIA robs this Court of jurisdiction.  The analysis of FSIA subject-matter jurisdiction involves "a three-part burden shifting framework." *Williams v. Nat'l Gallery of Art*, No. 16-CV-6978 (VEC), 2017 U.S. Dist. LEXIS 15445, at *6 (S.D.N.Y. Sept. 21, 2017) (citing *Arch Trading Corp. v. Republic of Ecuador,* No.  13 CV 4445 (PAC), 2015 U.S. Dist. LEXIS 69864 at *6 (S.D.N.Y. May 28, 2015).  The movant must first make a prima facie showing that it is a "foreign state" under the Act." *Id.* (citations omitted).  "The plaintiff then 'has the burden of going forward with evidence showing that, under exceptions to

Case 19-3457, Document 69, 05/22/2020, 2846993, Page41 of 80
Case 1:18-cv-08248-RA   Document 45   Filed 03/29/19   Page 13 of 33

SA-39

FSIA, immunity should not be granted.'" *Id.* (citing *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993). The ultimate burden of persuasion "remains at all times with the defendant." *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC,* 2 F. Supp. 3d 550, 555 (S.D.N.Y. 2014) (analyzing FSIA's "commercial activity" exception to sovereign immunity).

Briefly, the Defendants in this case are not immune because of the expropriation exception to the FSIA. Defendants have focused their energies on the wrong provision of that statute. The pertinent exception has these elements:

- Element 1: Were rights in property taken in violation of international law?

- Element 2: Is that property owned or operated by an agency or instrumentality of a "foreign state"?

- Element 3: Is that agency or instrumentality engaged in commercial activity in the United States? (28 U.S.C. §1605(a)(3).)

As shown below, the answer to each of those questions is yes as to Defendant FOC. Therefore, none of the Defendants in this action is immune (once an agency or instrumentality is not immune, the state is not either). (*See* infra Part I.D.) At the very least, however, should the Court determine that it needs more information to make this determination, the Court has the discretion to permit (and should permit), Hicham to conduct jurisdictional discovery. *See Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, _ U.S. _, 137 S. Ct. 1312, 1316 (2017) ("[W]here jurisdictional questions turn upon further factual development, the trial judge may take evidence and resolve relevant factual disputes.")[9]

---

[9]      An order entered in this action has recognized a possible need for jurisdictional discovery. (ECF No. 27.)

### A. Element 1: Property Rights Were Taken in Violation of International Law

In this case some 12,000 antiquities, including 1200 antiquities owned by Hicham, were seized by a prosecutor in Geneva in February 2017 upon the FOC's issuance to Swiss Customs of a "denunciation" regarding *seven* items of suspicious provenance.[10]  In doing so, the FOC, Customs, and Geneva purportedly followed the procedure prescribed by the law they claim compelled them to act: the Convention implemented by the CPTA.  But Defendants collectively failed to comply with any material aspect of that law, rendering the seizure so arbitrary as to constitute expropriation, including utterly failing to compensate Hicham for his property despite (a) its being inaccessible for over two years, and (b) the disappearance of two valuable pieces.

Defendants' argument that an ordinary seizure in aid of routine criminal investigation is not a "taking" under the United States Constitution,[11] fails on two grounds: *first,* because the statute and its history do not require that "taken" be understood outside its ordinary meaning; and *second,* because even if "taken" typically is not satisfied by a temporary seizure, the law is clear that any temporary seizure that is arbitrary and injures a defendant's property rights becomes an expropriation under the FSIA.

#### 1. The FSIA Expropriation Exception Does Not Require Permanent Deprivation of a Plaintiff's Property Rights; It Is Satisfied by an Arbitrary Action that Injures Those Rights.

Defendants' argument that a seizure in aid of an investigation can *never* be a "taking" satisfying the FSIA exception, is misdirected and unsupported.  In essence, Defendants claim

---

[10]   Hicham has asserted claims for declaratory judgment as to title, conversion, unjust enrichment, all of which are proper subject matter for the FSIA's expropriation exception.  *See Simon v. Republic of Hungary*, 911 F.3d 1172, 1178 (D.C. Cir. 2018) ("the FSIA's expropriation exception … encompassed the types of common-law claims of conversion, unjust enrichment, and restitution asserted by the Survivors.").

[11]   Even in the US, certain seizures can be takings (*see, e.g., Williams*, 2017 U.S. Dist. LEXIS 154445, at *10 (stating "FSIA covers takings – *i.e.*, seizures – of property by sovereigns").  Moreover, unlawful seizures give rise to Due Process claims in the United States. *See, e.g., Fuentes v. Shevin,* 407 U.S. 67, 80-83 (1972) (discussing procedural due process and the importance of a pre-seizure hearing to prevent arbitrary deprivation of property).  In other words, whether one calls the detention of the property purportedly injured a seizure or taking, suits seeking compensation for that injury are cognizable.

Case 19-3457, Document 69, 05/22/2020, 2846203, Page43 of 80
Case 1:18-cv-08248-RA   Document 45   Filed 03/29/19   Page 15 of 33

SA-41

that absent a permanent deprivation of property, property has not been "taken" as the FSIA requires.

*First,* the FSIA does not define the term "taken," and nothing in the statute suggests it was meant in any way other than its ordinary meaning, which includes momentary deprivations that have serious consequences.  As the Restatement itself recognizes, states can be liable for injuries that result from "arbitrary … acts … that impair property or other economic interests of a national of another state."  (Restatement §712 (a state is responsible for injury resulting from "a taking by the state" without compensation *or* for arbitrary acts that impair property interests).

*Second,* the history of the FSIA indicates that an arbitrary denial of access to property (like a seizure in aid of investigation) qualifies as a taking, and the word "arbitrary" has no time limitation.[12]  *See Hulton v. Bayerische Staatsgemaldesammlungen*, 346 F. Supp. 3d 546, 550 (S.D.N.Y. 2018); H.R. Rep. No. 94-1487, at 19-20 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6614 ["House Report"] ("taken in violation of international law" includes seizures that are "arbitrary or discriminatory in nature"); Restatement §712 Reporter's Note 11 ("[Arbitrary] refers to an act that is unfair and unreasonable, and inflicts serious injury to established rights of foreign nationals ….".)  The Restatement (Third) of the Foreign Relations Law of the U.S. also provides that "[a] state is responsible for an expropriation of property … when it subjects alien property to … action that is confiscatory, *or* that prevents, *unreasonably* interferes with, or unduly delays, effective enjoyment of an alien's property …."  (*Id.* Comment g (emphasis added).)[13]  That would not be surprising: even under U.S. Constitutional jurisprudence, the arbitrary deprivation of property is improper.  *Cf. Fuentes,* 407 U.S. at 80-83 ("well settled that a

---

[12]   To the extent Defendants' argument is that the seizure is insulated from challenge because it is the exercise of police power, there is ample authority permitting challenges to the arbitrary exercise of police powers.  *See, e.g., Medeiros v. O'Connell,* 150 F.3d 164, 169-70 (2d Cir. 1998).

[13]   Even if there were a temporal requirement, Hicham's claims satisfy that requirement because Defendants' actions have permanently deprived him of two valuable objects that are now lost or stolen.

temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *Id.* at 84 (citations omitted)).

The arbitrariness of the seizure of Hicham's property is obvious from comparing the Defendants' actions to the requirements of the law that they say compelled them to act.[14]

*First,* repatriation of antiquities under the Convention and CPTA requires a request for the return of an antiquity made by another nation with which Switzerland has entered a bilateral treaty. (CPTA arts. 1.5, 7, 9; Convention art. 9; Ainsworth Decl. Exs. 5-6.)

*Second,* the antiquity must have been acquired after 2005 (CPTA art. 33) and must have been "unlawfully imported" into Switzerland in violation of a bilateral agreement. (CPTA arts. 1.5, 7, 9.)[15]

*Third,* a seizure must be preceded by articulable grounds for "suspicion … that the cultural property was stolen, lost against the will of the owner or illicitly imported into Switzerland [in violation of a bilateral agreement]." (CPTA arts. 2.5, 20.)

*Fourth,* compensation must be paid for repatriated items (CPTA art. 9.5)

*Fifth,* the burden is on the requesting state to prove theft (CPTA art. 9).

### a. No request by bilateral nation

Beyond the fact that Defendants have never offered a single fact to suggest that any of Hicham's 1200 pieces are suspicious, no foreign nation has requested the return of any of those items. (AC ¶26.) And a request alone would not be sufficient: the piece must have been illicitly imported into Switzerland *after* the requesting state entered into a bilateral agreement, the piece must be significantly important to the cultural heritage of the requesting state, and that state must

---

[14] The arbitrariness of the Defendants' actions is not surprising given the history of the Geneva prosecutor who issued the seizure order. Roughly a year ago, he was removed from an unrelated case due to his demonstrated lack of impartiality. (*See* Ainsworth Decl. Ex. 16.)

[15] When an antiquity is repatriated to a requesting state, the requesting state must pay compensation to the owner. (CPTA art. 9; Convention art. 7(b)(ii).)

make the request within *one year* after gaining knowledge of the property. (CPTA arts. 7, 9.4.) There is literally no evidence or even allegation that any of those requirements has been met.

### b. No evidence that any piece was acquired after 2005

In addition, the Defendants have never suggested that any of Hicham's 1200 pieces were acquired after June 1, 2005, despite the plain language of the CPTA stating that it does not apply to items acquired before that date. (CPTA art. 33.). The FOC has emphasized the importance of having clear rules, and this surely is one of them. (Ainsworth Decl. Ex. 2 at 5.)

### c. No articulable suspicion

Despite these very clear standards, at no time has anyone connected to the seizure of Hicham's 1200 pieces ever articulated a reason to suspect the legitimacy of any piece. In fact, it has been publicized that the larger seizure of 12,000 pieces (of which Hicham's was a part) included a child's artwork and was followed by the precipitous release of 5000 pieces when the related Beierwaltes action was filed – underscoring the arbitrariness and impropriety of the overall seizure. (Ainsworth Decl. Exs. 18-19.) A purported "investigation" has been ongoing for *more than two years* yet not one antiquity among the thousands of seized antiquities has been identified as allegedly stolen or imported in violation of the Convention and CPTA.

An antiquity is not, *per se*, illegal or "stolen property." And its presence in Switzerland is not *per se* evidence of an unlawful importation. To the contrary, museums throughout the world, including the Metropolitan Museum of Art in New York and the British Museum in London, are filled with priceless relics, often the subject of claims by foreign nations.[16] Those relics remain with those museums unless a claim is made and substantiated by a state. Indeed, antiquities were acquired for centuries with little regulation. It was not until 1970, with the creation of the Convention, that standards started to become uniform and collectors, galleries, and museums

---

[16]   *See* Ainsworth Decl. Exs. 10, 11 (news articles describing disputes over antiquities).

were put on notice that their collections might be subject to scrutiny.[17]  But the key point is that an antiquity, no matter who held it or when acquired, is not *per se* illegal like drugs.  Even the foremost museums in the world do not simply surrender items because some nation might want them.[18]

As mentioned earlier, the absence of articulated suspicion is especially meaningful where the property is not obviously unlawful.

### d.  Hicham has not been compensated

Hicham's property rights were taken more than two years ago without just compensation. That deprivation of his enjoyment of his property is a violation of international law.

"[A]n otherwise valid taking is illegal without the payment of just compensation." *Altmann v. Republic of Austria*, 317 F.3d 954, 968 (9th Cir. 2002), *opinion amended on denial of reh'g*, 327 F.3d 1246 (9th Cir. 2003), and *aff'd on other grounds*, 541 U.S. 677 (2004) (citations omitted); *see also Zappia Middle East Coast Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) (stating that a taking is a deprivation without adequate compensation); Restatement §712(1).  The Restatement provides: "A state is responsible under international law for injury resulting from … a taking by the state of the property of a national of another state that … is not accompanied by provision for just compensation …." (Restatement §712(1).)

It will not do for the Defendants to counter by arguing that once their process is completed, they can compensate.  The process already has exceeded two years and in that period, priceless objects have been stolen from the Defendants' custody. (AC ¶42 n.26).  Yet Hicham has not been compensated for even those stolen objects.

---

[17]  A Report of the Association of Art Museum Directors Task Force on the Acquisition of Archaeological Materials and Ancient Art (revised 2008), states: "The AAMD recognizes that the acquisition of archaeological materials and ancient art has in recent years become an increasingly complex task that requires the careful consideration of a number of different and, at times, seemingly contradictory goals." (Ainsworth Decl. Ex. 9 (AAMD Guidelines 2013) at 3.)

[18]  *See* Ainsworth Decl. Exs. 10, 11 (collection of articles).

### e. The Convention framework for repatriating items requires the state to prove theft, not for Hicham to negate it.

During the past two plus years, the Swiss (notably, the Geneva prosecutor) has demanded proof from Hicham that these pieces have adequate provenances.  (*See* Geneva Mem. at 2.)  That reverses the burden placed on the Defendants *expressly* by the law that they concede compels them to act.  (*See* Convention art. 13; CPTA art. 9.) Indeed, the prosecutor has requested that Hicham be deposed in Switzerland when there is no basis in Swiss law to depose a U.S. citizen in the absence of formal legal proceedings in court there.  (AC ¶36.)

*   *   *

Defendants offer nothing to counter the above. The cases cited by the Defendants do not involve arbitrary actions by the state.

The cases involving takings in the U.S. arose in a context where seizures by U.S. law enforcement either (a) were presumed to be lawful seizures (*see Acadia Tech, Inc. v. United States*, 458 F.3d 1327, 1331 (Fed.  Cir. 2006)); or (b) had not been challenged (*see Amerisource Corp. v. United States*, 525 F.3d 1149, 1150, 1155, 1156 (Fed.  Cir. 2008)). Hicham is challenging the legality and arbitrariness of the seizure of his property.

Defendants also cite two cases in the FSIA context where the foreign seizures of bank accounts were supported by evidence of improper activities, *Chettri v. Nepal Rastra Bank*, 834 F.3d 50 (2d Cir. 2016), and *Hilsenrath v. Swiss Confederation*, No. C 07-02782 WHA, 2007 U.S. Dist. LEXIS 81118 (N.D. Cal. 2007).  In *Chettri¸* the court cited *evidence of irregularities* regarding an international wire transfer, which prompted the bank to freeze those funds while investigating, and those plaintiffs were later charged with violating money laundering laws. *Chettri*, 834 F.3d at 54.  In *Hilsenrath*, the plaintiff pled guilty to securities fraud and tax evasion, and in his plea agreement, he agreed to "repatriate all remaining money and assets presently held by the Swiss authorities or frozen by the Swiss authorities in other jurisdictions."

Case 19-3457, Document 69, 05/22/2020, 2846903, Page 48 of 80
Case 1:18-cv-08248-RA Document 45 Filed 03/29/19 Page 20 of 33

SA-46

*Hilsenrath*, 2007 U.S. Dist. Lexis 81118, at *13-14. As discussed above, Hicham's situation could not be more different: it was a seizure of 12,000 pieces including Hicham's 1200, unaccompanied by any articulated suspicion of criminal activity as to any of his property; a purported "investigation" that has gone on for two plus years without any request by another state for the return of any item or any determination that a single item was stolen or illegally imported; and a release of 5000 pieces (including art made by Hicham's niece for her father) coinciding with the filing of the related Beierwaltes' lawsuit. Against this backdrop and the Convention and CPTA, Geneva demands that Hicham offer answers to "the legality" of his property (Geneva Mem. at 2) – blatantly repudiating the protocol of international law, as adopted by Switzerland. The actions here are the very essence of arbitrariness.

In short, this Court need not decide whether the "seizure" in this case is a "taking" under the U.S. Constitution. There is ample reason to hold that Hicham's "rights in property" were "taken in violation of international law" because of the arbitrary nature of the seizure.

## B. Element 2: The Taken Property Is Owned or Operated by an Agency or Instrumentality of Switzerland – the FOC

The second element of the expropriation exception requires that the taken property be "owned or operated by an agency or instrumentality of the foreign state." 28 U.S.C. §1605(a)(3). For purposes of this element of the FSIA, the defendant must (i) be an agency or instrumentality, and (ii) own or operate the property in question. Hicham's Property is owned or operated by the FOC, which as shown below, is an agency or instrumentality of Switzerland. (While this section focuses on the FOC, it is critical to recognize that under the FSIA, none of the "State" Defendants (here, Customs and Geneva) can claim immunity once the FSIA's expropriation exception has been met by the FOC. *See infra* Part I.D.)

Case 19-3457, Document 69, 05/22/2020, 2846093, Page49 of 80
Case 1:18-cv-08248-RA  Document 45  Filed 03/29/19  Page 21 of 33

SA-47

### 1. The FOC is an agency or instrumentality

The FSIA defines an "agency or instrumentality" as any entity:

> (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in [28 U.S.C. § 1332(c) and (e)] nor created under the laws of any third country.

28 U.S.C. § 1603(b). Thus, to be an agency or instrumentality, the defendant must be a separate legal person which is an organ or political subdivision of the foreign state, and not a US citizen nor created under the laws of a country other than Switzerland.

### a. The FOC is a separate legal person

The case law offers essentially two different tests to discern whether a body is an agency or instrumentality: (i) what are the *legal characteristics* of the defendant, and (ii) what is its *core function*. The FOC qualifies under either test.

### i. The legal characteristics test

The test most faithful to the statutory language is the "legal characteristics test," which "derives directly from specific language in the House Report [on the FSIA]." *Garb v. Republic of Poland*, 440 F.3d 579, 599-600 (2d Cir. 2006) (Straub, J., dissenting) (citing House Report). Judge Mukasey described the legal characteristics test as follows: "an entity is an agency or instrumentality if, under the law of the foreign state where it was created, the entity can sue and be sued in its own name, contract in its own name, or hold property in its own name." *Hyatt Corp. v. Stanton*, 945 F. Supp. 675, 681 (S.D.N.Y. 1996)) (citing House Report at 15); *see also Garb,* 440 F.33d at 599-600. The question to be answered is whether the entity "can function legally independent of the state." *Hyatt Corp.*, 945 F. Supp. at 683-84.

The FOC's functions are independent of Switzerland: it owns property and has published materials in which it identifies itself as the owner of the copyrights.  (Ainsworth Decl. Exs. 2, 12-14, 21.)  It has registered a copyright in the U.S. in its own name. (*Id.* Ex. 12.)  It also publishes an annual report of its efforts, including its budget.[19] Moreover, the FOC is the named author, publisher, and/or editor on at last 35 publications currently for sale via Amazon.  (*Id.* Exs. 12-14.)  And it has entered into contracts in connection with those publications *in its own name*. (*Id.* Exs. 12-13.)

### ii.  the "Core Function Test"

In *Garb*, the Second Circuit applied a different test, focusing on the core function of the entity – "whether the core functions of the foreign entity are predominantly governmental or commercial." *Garb,* 440 F.3d at 594.  The FOC has made no assertions about its core function. Its core function is commercial, including publishing, editing, and authoring publications, and promoting Swiss culture. (AC ¶¶10, 21; Ainsworth Decl. Exs. 12-14, 21, 22.)

Commercial activity can exist despite (a) the absence of a profit motive and/or (b) presence of a sovereign objective.  *See de Csepel v. Republic of Hungary,* 714 F.3d 591, 599 (D.C. Cir. 2013) (evaluating commercial activity exception and citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992).)  The inquiry to be made is whether the activity is the "type of actions by which a private party engages in trade and traffic or commerce." *Id.*

The FOC purchases art, promotes Swiss film, artists, and authors, and promotes Swiss cultural enterprises. (AC ¶21; Ainsworth Decl. Exs. 21, 22.)  It owns copyrights.  (Ainsworth Decl. Exs. 2, 12, 13, 21.)  It "produces a large number of publications" and is named as publisher, editor, and/or author on at least 35 books currently for sale in the United States via

---

[19]    https://www.bak.admin.ch/bak/en/home/the-foc/annual-reports/jahresbericht-2017--bundesamt-fuer-kultur.html (last viewed Mar. 26, 2019); Ainsworth Decl. Ex. 21 (excerpts of 2017 Annual Report translated into English).

Amazon.[20] (Ainsworth Decl. Exs. 13, 14.)  It is responsible for commissioning, collecting and publishing studies and reports on cultural policy, cultural statistics and cultural economy.[21] It recently commissioned the Institut für Finanzdienstleistungen Zug (IFZ) of the University of Lucerne Switzerland to carry out a special study concerning crowdfunding in the field of culture.[22] It also publishes an annual report of its efforts, including its budget.[23] According to its mission statement, it "negotiates agreements in the cultural sector," and engages in promotional activities in "two areas: cultural heritage (heritage protection and the preservation of historic monuments, transfer of cultural assets, museums and collections) and cultural creativity (films, prizes and awards, support for cultural organisations) ….."[24]

The presence of some governmental functions does not change its core function.  Many courts, including the Second Circuit, have held that bodies having governmental functions are agencies and instrumentalities of the State, including The Swiss Office of the Attorney General. *See Hilsenrath*, 2007 U.S. Dist. LEXIS 81118, at *8 (Swiss Office of Attorney General); *European Cmty v. RJR Nabisco, Inc*., 764 F.3d 129, 143 (2d Cir. 2014) (the European Community), *rev'd on other grounds*, 136 S. Ct. 2090 (2016); *Peninsula Asset Mgmt. (Cayman) v. Hankook Tire Co.*, 476 F.3d 140, 143-44 (2d Cir. 2007) (the Financial Supervisory Service of the Republic of Korea, which performs traditional government functions).  As the House Report accompanying the FSIA observed, an agency or instrumentality can assume "a variety of forms,

---

[20]  https://www.bak.admin.ch/bak/en/home.html (last viewed Mar. 26, 2019). A number of the FOC's publications are viewable on its website: https://www.bak.admin.ch/bak/de/home/dokumentation/aktuelle-publikationen/publikationen-2018.html (last viewed Mar. 26, 2019).

[21]  https://www.bak.admin.ch/bak/fr/home/themes/statistiques-culturelles.html (last viewed Mar. 26, 2019).

[22]  https://www.bak.admin.ch/bak/fr/home/actualites/nsb-news.msg-id-61024.html (last viewed Mar. 26, 2019).

[23]  https://www.bak.admin.ch/bak/en/home/the-foc/annual-reports/jahresbericht-2017--bundesamt-fuer-kultur.html (last viewed Mar. 26, 2019); Ainsworth Decl. Ex. 21 (excerpts of 2017 Annual Report translated into English).

[24]  https://www.bak.admin.ch/bak/en/home/the-foc/mission.html (last viewed Mar. 26, 2019).

including a state trading corporation…a governmental procurement agency or a department or ministry which acts and is suable in its own name."  House Report at 15-16.

### b.  The FOC is an organ of the State

The FOC is undeniably an organ of Switzerland.  In fact, the FOC asked this Court to find that it is an integral part of the Swiss Federal Government.  (Swiss Mem. at 13.)  That alone is sufficient to find the FOC to be an organ of Switzerland.

The FSIA does not define "organ" but the Second Circuit has identified four factors to make that determination, not all of which need be satisfied:

> (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the [foreign] country; and (5) how the entity is treated under foreign state law

*Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004); *see also European Cmty*, 764 F.3d at 144-45, 146.  FOC's assertion that it is an integral part of the Swiss Federal Government suggests that at least factors 1, 2, and 5 are met, and it is likely that 3 and 4 are as well.

### c.  The FOC Is Not a Citizen of the US or Created Under Laws of a Third Country

The FOC clearly is neither a citizen of a State of the United States nor created under the laws of any third country.

* * *

In short, the FOC meets all elements of the FSIA's definition of "agency or instrumentality" of Switzerland.

### 2.  The Taken Property Is "Owned or Operated by" the FOC

Once it is clear that a defendant is an agency or instrumentality, it must be shown that it owns or operates the property in question.  The FOC fulfills that "owned or operated" requirement.

The FSIA phrase "owned or operated" is satisfied by possession.  *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n,* 729 F. Supp. 2d 141, 147 (D.D.C. 2010) ("possession is sufficient to satisfy the 'owned or operated' requirement ….") (citing *Nemarian v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470, 480-81 (D.C. Cir. 2007).  Under the pertinent Swiss statute – the CPTA – the FOC possesses Hicham's Property.

The Cultural Property Transfer Ordinance ("CPTO") provides that the FOC is responsible for repatriating any property under the Convention *and for determining the storage location of seized property until repatriation*.  (CPTO art. 27.3.)[25] The FOC administers prosecutions arising under the CPTA, initiating and overseeing the seizure of Hicham's property.  (AC ¶24.)  In fact, the FOC invoked the CPTA when it issued the complaint giving rise to the seizure of the Hicham's Property.  (AC ¶¶10, 24.)  The CPTA required the FOC to issue such a complaint only if it had "reasonable suspicion" of criminal activity under the CPTA.  (CPTA art. 17.2.)  No such basis for "reasonable suspicion" has been articulated.

Moreover, the FOC's role did not end after initiating the process.  Concerted action among the Defendants is required by Swiss federal law.  (AC at 8 n.10.)  The CPTA mandates the interagency relationship between the Federal Office of Culture, on the one hand, and the Customs Administration and the Geneva Prosecutor, on the other.  (*Id.*)  As the prosecutor in this matter apparently has stated publicly with respect to an antiquity ultimately returned to Turkey: "cooperation between Swiss customs, the Federal Police Office, *the Federal Office for Culture* and the scientific community was excellent."[26]  Thus, the FOC owns or operates Hicham's property within the meaning of the FSIA expropriation exception.[27]

---

[25]    A copy of the CPTO is attached to the Ainsworth Declaration as Ex. 4.

[26]    Ainsworth Decl. Ex. 15.

[27]    The FOC and Customs Administration argue that there was no physical seizure of Hicham's property because the Defendants did not move the property to another location.  (Swiss Mem. at 11-12.)  Defendants have

In short, the property in question was seized (and taken) by a process initiated by FOC and that must be administered by the FOC should that seizure result in a forfeiture. Its role is so integral that it joins in the operation of the property here.

### C.  Element 3: The FOC engages in commercial activity in the United States

The expropriation exception lastly requires that the agency or instrumentality be engaged in commercial activity in the US. The FOC is plainly engaged in commercial activity here, including selling books and pursuing cinematic awards.

The term "commercial activity" means "either a regular course of commercial conduct or a particular commercial transaction or act." *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 200 (2d Cir. 2016)*; see also Agudas Chasidei Chabad of U.S. v. Russian Fed'n,* 528 F.3d 934, 946-48 (D.C. Cir. 2008) (applying Section 1603(d) to second prong of the takings exception). As discussed above, commercial activity can exist despite (a) the absence of a profit motive and/or (b) presence of a sovereign objective. *See de Csepel,* 714 F.3d at 599. The inquiry to be made is whether the activity is the "type of actions by which a private party engages in trade and traffic or commerce." *Id.*

Here, the FOC purchases art from United States artists and museums, displays art in the US, promotes Swiss film to American audiences, entered a film in the Academy Awards in 2016, and promotes Swiss cultural enterprises in the U.S. (AC ¶21.)[28] Moreover, the FOC has a copyright registered in the U.S. and is named as publisher, editor, and/or author on at least 35 books currently for sale in the United States via Amazon. (Ainsworth Decl. Exs. 13, 14.) That

---

undeniably impaired Hicham's rights in his property, and that is sufficient. *See, e.g., Smith Rocke Ltd. v. Republica Bolivariana de Venez.*, No. 12 Cv. 7316 (LGS), 2014 U.S. Dist. 9692, at * 15 (S.D.N.Y. Jan. 27, 2014) (holding that rights in property under the FSIA includes intangible rights, such as a right to payment under a note); *Nemariam v. Fed. Democratic Republic of Ethiopia*, 491 F.3d at 480 (holding that the FSIA expropriation exception applies to intangible rights including bank accounts). The key is that Hicham has been deprived of the rights to access, use, and dispose of his physical property.

[28]   Plaintiff's allegations are assumed to be true for purposes of this motion. *See Rukoro v. Fed. Republic of Germany*, No. 17 CV 62-LTS, 2019 U.S. Dist. LEXIS 36098, at *20 (SDNY Mar. 6, 2019).

satisfies the requirement for "commercial activity" in the U.S. *See de Csepel*, 808 F.Supp.2d at 132.

* * *

In short, the taking of Hicham's 1200 pieces of antiquity and the FOC's role and activities satisfy the expropriation exception to the FSIA.  Accordingly, the FOC is not immune. Because of this, neither are the other two Defendants in this case.

### D.  None of the Defendants Is Immune Because the FSIA's Expropriation Exemption Has Been Met By the FOC

Because the FOC meets the expropriation exception, as discussed above, Customs and Geneva also are not immune in this action.

Section 1605 of the FSIA provides that a "*foreign state* shall not be immune" when the requirements of any of the subsections are satisfied.  28 U.S.C. §1605(a) (emphasis added.) Courts have interpreted this provision to mean precisely what it says on its face: once the expropriation exemption has been met by the activity of an agency or instrumentality of a foreign state, the *foreign state* itself also has no immunity.  *See* 28 U.S.C. §1605(a)(3).  As the Ninth Circuit observed:  "We consider for the first time whether the expropriation exception … applies when the foreign state (against whom a claim is made) is not the entity that expropriated the property in violation of international law.  We hold that it does."  *Cassirer v. Kingdom of Spain*, 580 F.3d 1048, 1052 (9th Cir. 2009).  In other words, because the FOC meets the expropriation exemption, it necessarily follows under a literal reading of that statute that Switzerland (*i.e.*, Customs) and Geneva cannot claim immunity in this action.  *See  id.*

Recognizing this danger to its status, Geneva has argued, based purportedly on the House Report, that the second clause of the expropriation exception "applied *only* to an 'agency or instrumentality of a foreign state.'" (Geneva Mem. at 17-18, emphasis added) (citing House Report at 19).  But the House Report says nothing of the kind.  It says, instead, that the

20

expropriation exception "would, in two categories of cases, deny immunity where 'rights in property taken in violation of international law are in issue,'" and it describes those two categories where immunity is *not* available, using words that mirror the elements of Section 1605(a)(3) as enacted.  (House Report at 19.)  In other words, Geneva's memorandum of law adds the word "only," because without that word, Geneva's argument is unsupportable.

As a result, the expropriation exception of the FSIA removes immunity for the foreign state – here, Customs and Geneva.  Customs is not immune because it claims to be part of the State ("part of the Swiss federal government") (Swiss Mem. at 2).[29]  Similarly, Geneva is a political subdivision of Switzerland and therefore is included in the FSIA's definition of the "foreign state."  (Geneva Mem. at 3, 17, 18-19; *see also* 28 U.S.C. §1603(a) (defining "foreign state" to include its "political subdivisions").  In fact, the Swiss Constitution emphasizes how intertwined the Confederation and its cantons are, requiring, for example, that their sovereignty be "limited by the Federal Constitution" and that they "implement federal law in accordance with the Federal Constitution and federal legislation."  (Ainsworth Decl. Ex. 7 arts. 3 and 46.)  Accordingly, under the FSIA, Geneva also is Switzerland and is not immune.

This result is logically compelled; the FOC is inextricably bound up with the actions of Customs and Geneva here.  The FOC "regulates the transfer of cultural property" and operates a "specialized body" for purposes of the CPTA and the CPTO. (CPTO arts. 22 and 28; CPTA art. 18.)  The FOC's "specialized body" is responsible for filing a complaint with criminal authorities "[w]hen the body has reasonable suspicion that criminal activity is present under this Act."  (CPTA art. 17.)  Every seizure by criminal authorities must be reported immediately to the FOC's specialized body.  (CPTA art. 20.2.)  And, the FOC is equally integral and indispensable

---

[29]   While the arguments put forth by Customs apparently focus on the seizure of 111 items for alleged failure to pay a value added tax (Swiss Mem. at 1-7, 11), Hicham named Customs (and hence Switzerland) because of the improper seizure of *all* of Hicham's Property.

to the disposition of any property ultimately repatriated.  (CPTO art. 27.3.)  The FOC is, in other

words, indispensable at the start and the end of the repatriation process.

## POINT II

### GENEVA'S MOTION UNDER RULE 12(b)(2) MUST BE DENIED BECAUSE THE COURT HAS PERSONAL JURISDICTION OVER IT

While Geneva, in its notice of motion, states that its motion is also pursuant to Rule

12(b)(2) (personal jurisdiction), Geneva's memorandum of law does not address this issue.

By statute, personal jurisdiction over a foreign sovereign exists when the Court has

original jurisdiction and service has been effected. 28 U.S.C. §1330(b). This Court has original

jurisdiction "as to any claim for relief in personam with respect to which the foreign state is not

entitled to immunity under [the FSIA]." 28 U.S.C. §1330(a). Plaintiff's proof of service is in the

record (ECF No. 30), and Geneva has not raised an issue concerning it. Accordingly, the Court

also has personal jurisdiction over Geneva.

## POINT III

### DEFENDANTS' AFFIRMATIVE DEFENSES SHOULD BE DENIED

Each Defendant asserts arguments characterized as "act of state" and "comity," which

they apparently intended to include under the rubric of "venue."[30]  The defense of "act of state"

is barred by statute here.  As for comity, Defendants have failed to meet their burden.

### A.  The Act of State Doctrine Is Precluded by Statute

Defendants' argument ignores a significant statutory limitation on the Act of State

doctrine: the "Second Hickenlooper Amendment" expressly provides that the Act of State

doctrine does not apply to claims of takings in violation of international law.  22 U.S.C.

§2370(e)(2); *Smith Rocke Ltd. v. Republica Bolivariana de Veneze.*, No. 12 Cv. 7316 (LGS),

2014 US Dist. LEXIS 9692, at *26 (S.D.N.Y. Jan. 27, 2014).  Thus, because Hicham has

---

[30]    While each Defendant, in its notice, states that its motion is also under 12(b)(3) (improper venue), no
defendant mentions venue in its memorandum of law except in the context of comity.  Geneva's motion cites
Rule 12(b)(6), but presents no argument why the Complaint should be dismissed under that rule.

asserted a claim based upon a taking in violation of international law (as mentioned, the Defendants even claim they were compelled to make their seizures under international law), the Act of State doctrine does not apply as a defense in this action.

### B. Defendants Have Failed to Prove that this Court Should Dismiss this Action on the Grounds of Comity

Defendants have failed to meet their burden to show that comity requires dismissal.

Preliminarily, comity is an affirmative defense. *de Csepel*, 714 F.3d at 607 (reversing dismissal of claims on comity grounds). Defendants bear the burden of proving that dismissal on this basis is appropriate. *Id.; Ema Garp Fund v. Banro Corp.*, No. 18 CV 1986, 2019 U.S. Dist. LEXIS 27387, at *9 (SDNY Feb. 21, 2019) (citing *Allstate Life Ins. Co. v. Linger Group Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993).) Defendants cannot meet their burden.[31]

*First,* the comity argument and its subsidiary argument, exhaustion, are precluded by FSIA Section 1606, which provides: "As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the *same extent as a private individual under like circumstances* ...." 28 U.S.C. §1606 (emphasis added); *see also Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 141 (2014). Comity is not a defense available to a private individual. *See Philipp v. Federal Republic of Germany*, 894 F.3d 406, 415-16 (D.C. Cir. 2018) (rejecting arguments of comity and exhaustion and affirming denial of motion to dismiss). Accordingly, this Court must exercise the jurisdiction provided under the FSIA. *Id.; see also Simon*, 911 F.3d at 1181 ("Under the FSIA, courts are duty-bound to enforce the standards outlined in the statute's text, and when jurisdiction exists ..., courts "have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them.") (citing *W.S. Kirkpatrick & Co. v.*

---

[31] Moreover, "as long as a plaintiff's potential 'rejoinder to the affirmative defense [is not] foreclosed by the allegations in the complaint,' dismissal at the Rule 12(b)(6) stage is improper." *de Csepel*, 714 F.3d at 608.

*Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 409 (1990)).  As the court of appeals recognized in *Simony*, forcing Hicham to litigate his claims in Switzerland would enable Defendants later to argue that Hicham is precluded, by operation of *res judicata*, from challenging the outcome in a Swiss proceeding.  *See Simon*, 911 F.3d at 1180. That "would improperly result in a judicial grant of immunity from jurisdiction in the U.S. courts." *Id.*[32]

*Second,* even if this Court were to hold that a comity defense was available to a non-immune defendant, "'[t]he mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Leopard Marine & Trading Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 190 (2d Cir. 2018) (citations omitted). The Second Circuit has stated: "In order for a court to decline jurisdiction on grounds of international comity, it must find 'exceptional circumstances exist that justify the surrender of that jurisdiction.'" *Id.* (citations omitted). Defendants have failed to provide any.

Defendants have not identified parallel Swiss proceedings to which they believe this Court owes deference.[33] The investigation – pursuant to which Hicham's property was seized more than two years ago without any basis – is not a "parallel foreign proceeding."  In addition, this Court is just as capable of determining issues of international law as any Swiss court.

The Defendants cite to five distinguishable cases in support of their comity argument. None addresses the holdings in *Simon* or *Philipp* rejecting the concept of comity in FSIA cases.

In *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 743 (2d Cir. 2016), the court was unwilling to review internal Russian government laws and decisions affecting only Russian entities.  In *Oui Fin. LLC v. Dellar*, No. 12 Civ. 7744 (RA), 2013 U.S.

---

[32]    Geneva (and only Geneva) also raised the topic of exhaustion of remedies as a principle of comity.  But the FSIA itself imposes no exhaustion requirement. *See Cassirer*, 580 F.3d at 1060-61. And, as discussed above, an exhaustion requirement is contrary to the FSIA's terms.

[33]    As noted in footnote 2 above, the Customs proceeding involving the 111 items is not at issue here.

Dist. LEXIS 146214 (S.D.N.Y. Oct. 9, 2013), the court (in a lengthy analysis of comity principles) deferred to foreign bankruptcy proceedings. The decision in *800537 Ontario, Inc. v. World Imps. U.S.A., Inc*., 145 F. Supp. 2d 288, 291 (W.D.N.Y. 2001), involved related criminal proceedings in another country, but the court nevertheless did not dismiss the claims. And in *Freund v. Republic of France*, 592 F. Supp. 2d 540 (S.D.N.Y. 2008), the Court's finding that it lacked subject matter jurisdiction (*id.* at 544) made its discussion of comity is dicta. Plus the court's statement that it would have deferred to a French commission was made where "France [was already] intricately involved in parallel proceedings within its borders that seek to compensate the class of victims of which some of the Plaintiffs are members." *Id.* at 575. Finally, *Fischer v. Magyar Allamvasutak Zrt*, 777 F.3d 847, 854, 857 (7th Cir. 2015) involved Hungary taking property from *its own nationals.*

In short, the Defendants' case law does not suggest that principles of comity merit consideration here. But even if a comity analysis were required, "domestic" remedies need not be pursued if it would be futile to do so. *Id.* at 858. Futility exists where "local remedies [are] ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Cassirer, 580 F.3d at 1063*. Geneva (the only Defendant that mentions exhaustion) has failed to identify any meaningful domestic procedure that Hicham allegedly should have invoked in lieu of this action. To the contrary, Geneva suggests that the prosecutor's Search and Seizure Order was subject to judicial review if Hicham had filed "written and justifiable conclusions within a period of 10 days of being notified of [the Search and Seizure Order]" (Geneva Mem. at 6) – an incredibly short time frame that long ago passed.[34]

---

[34] By comparison, there appears to be no time limit on a F.R.Cr.P. Rule 41(g) request in the U.S.

**CONCLUSION**

For the reasons stated above, the Defendants' motion to dismiss the Complaint should be

DENIED in all respects.  Alternatively, jurisdictional discovery should be granted.

Dated: March 29, 2019
        New York, New York

MINTZ LEVIN COHN FERRIS
 GLOVSKY and POPEO, P.C.


By:_____
        Kevin N. Ainsworth (kainsworth@mintz.com)
        Peter A. Chavkin (pachavkin@mintz.com)
        Chrysler Center – 666 Third Avenue
        New York, New York 10017
        (212) 935-3000
        (212) 983-3115 (facsimile)
        *Attorneys for Plaintiff Hicham Aboutaam*

Case 18-3457, Document 69, 05/22/2020, 2846005, Page62 of 80
Case 1:18-cv-11167-RA   Document 46   Filed 03/29/19   Page 1 of 4

SA-60

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
                                                                     :
LYNDA BEIERWALTES, and WILLIAM                                       :
BEIERWALTES,                                                         :
                                                                     :
                                       Plaintiffs,                   :
                                                                     :
                        -against-                                    :   No. 18-cv-11167-RA
                                                                     :
                                                                     :
L'OFFICE FEDERALE DE LA CULTURE DE LA                                :
CONFEDERATION SUISSE, Federal Office of                              :
Culture of the Swiss Confederation, *et al*.,                        :
                                                                     :
                                       Defendants.                   :
------------------------------------------------------------------- x


# MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT


Nathaniel Z. Marmur
Law Offices of Nathaniel Z. Marmur, PLLC
500 Fifth Avenue, 40th Floor
New York, NY 10110
nmarmur@marmurlaw.com
Phone: 212-257-4894
*Attorney for Plaintiffs*


Dated: March 29, 2019

Case 19-3457, Document 69, 05/22/2020, 2846065, Page 63 of 80
Case 1:18-cv-11167-RA   Document 46   Filed 03/29/19   Page 2 of 4

SA-61

Plaintiffs Lynda Beierwaltes and William Beierwaltes submit this memorandum of law and the accompanying declaration of Kevin N. Ainsworth, dated March 29, 2019 ("Ainsworth Decl."), together with attached exhibits, in opposition to the Motions to Dismiss of (i) Defendant The Republic and Canton of Geneva ("Geneva") and (ii) Defendants L'Office Federal De La Culture De La Confederation Suisse and L'Administration Federale Des Douanes De La Confederation Suisse ("Customs") (collectively "Defendants"),

## FACTS AND ARGUMENT

This Court has accepted this action as related to another pending action, *Aboutaam v. L'Office Federal De La Culture De La Confederation Suisse*, No. 18-cv-08248-RA (the "Related Action").  To preserve judicial resources, the Beierwaltes expressly incorporate all arguments made by Aboutaam in his memorandum of law filed today, and will address here only those facts and legal arguments unique to the Beierwaltes.

The Beierwaltes are married United States citizens who reside in Colorado. (BC ¶8.)[1] Since the 1990s, they have been involved in the curation, display, publication and sale of a valuable collection of antiquities.  (BC ¶28.)  Most of these antiquities originated from ancient Greek, Roman and Egyptian civilizations.  (BC ¶28.)

In June 2006—two years before Switzerland's first bilateral agreement with any country regarding cultural property—the Beierwaltes entered into an Exclusive Dealer Agreement that listed the Beierwaltes' inventory of antiquities and included eighteen items that are the subject of their Complaint.  (BC ¶30.)  The Beierwaltes consigned those items to a gallery in Geneva, Switzerland. (BC ¶2.)  They delivered three of those eighteen objects to the gallery in August and October 2006, prior to the effective date of any of Switzerland's bilateral agreements.  (BC at 17 n.17.)  Since Switzerland had no bilateral agreement at that time, those three objects cannot

---

[1]    "BC ¶_" refers to the Complaint filed in this action.

be subject to a claim of illicit importation. (CPTA arts. 2.5 and 20.)  The Beierwaltes delivered fifteen additional objects to the gallery at later dates.

On February 24, 2017, the prosecutor for the Canton of Geneva arbitrarily seized some 12,000 antiquities, including the 18 antiquities owned by the Beierwaltes.  (BC ¶33.)  The value of the Beierwaltes' seized property is approximately $8 million.  (BC ¶8.)

The Beierwaltes have asserted claims against Defendants for declaratory judgment as to title of their property, conversion, unjust enrichment, and civil theft (a claim asserted under Colorado law).  (BC ¶¶45-88.)

Separate from the Seizure Order issued by the Geneva Prosecutor, the Customs Administration issued a seizure order on February 28, 2017, freezing 111 pieces.  (BC ¶36 and Ex. B.)  The Beierwaltes are willing to dismiss without prejudice their challenge to that seizure of 111 items, which, according to Customs, includes only one item owned by the Beierwaltes. The Beierwaltes nevertheless maintain their claims related to the seizure of thousands of antiquities that included the Beierwaltes' other 17 items.

For the reasons explained in the memorandum of law filed by Aboutaam in the Related Action, Defendants are not immune from this suit, the Court has jurisdiction to hear the Beierwaltes's claims, and the Defendants' reliance on the "Act of State" doctrine and generalized notions of "comity" should be rejected.

## **CONCLUSION**

For the reasons stated above and in the Aboutaam Memorandum of Law, Defendants'

motions to dismiss the Complaint should be DENIED in all respects.

Dated: March 29, 2019
        New York, New York

LAW OFFICES OF NATHANIEL Z. MARMUR, PLLC

By: /s/ Nathaniel Z. Marmur
        Nathaniel Z. Marmur
        500 Fifth Avenue, 40th Floor
        New York, NY 10110
        nmarmur@marmurlaw.com
        Phone: 212-257-4894
        *Attorney for Plaintiffs*

Case 19-3457, Document 69, 05/22/2020, 2846031, Page66 of 80
Case 1:18-cv-08248-RA   Document 43   Filed 04/29/19   Page 1 of 15

SA-64

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

HICHAM ABOUTAAM,

          Plaintiff,

      *-against-*

L'OFFICE FEDERAL DE LA CULTURE DE
LA CONFEDERATION SUISSE, et al.,

        Defendants.

Civ. Action No. 1:18-cv-08248 (RA-BCM)

### REPLY OF DEFENDANTS L'OFFICE FEDERAL DE LA CULTURE DE LA
### CONFEDERATION SUISSE AND L'ADMINISTRATION FEDERALE DES DOUANES
### DE LA CONFEDERATION SUISSE IN SUPPORT OF THEIR MOTION TO DISMISS

Stephan E. Becker
Michael Evan Jaffe
John Chamberlain
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:  202.663.8000
Facsimile:  202.663.8007

Attorneys for Defendants L'Office Federal De La
Culture De La Confederation Suisse and
L'Administration Federale Des Douanes De La
Confederation Suisse

# TABLE OF CONTENTS

I.     PLAINTIFF HAS ABANDONED ITS CLAIMS RELATING TO THE SEIZURE BY THE SWISS FEDERAL CUSTOMS ADMINISTRATION .....................1

II.    PLAINTIFF HAS NOT ALLEGED FACTS SUFFICIENT TO STATE A CLAIM THAT THE SWISS CONFEDERATION DEFENDANTS ARE RESPONSIBLE FOR THE SEIZURE CARRIED OUT BY THE GENEVA PROSECUTOR .................................................................................1

III.   THE FEDERAL OFFICE OF CULTURE IS NOT AN "AGENCY OR INSTRUMENTALITY" ....................................................................4

IV.   THE FEDERAL OFFICE OF CULTURE AND THE CANTON OF GENEVA ARE DISTINCT LEGAL ENTITIES ...............................8

V.    ACT OF STATE DOCTRINE ..............................................................9

VI.   INTERNATIONAL COMITY ...........................................................10

CONCLUSION......................................................................................10

Case 19-3457, Document 69, 05/22/2020, 2846021, Page68 of 80
Case 1:18-cv-08248-RA Document 43 Filed 04/29/19 Page 3 of 15

SA-66

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Arch Trading Corp. v. Republic of Ecuador,*
839 F.3d 193 (2d Cir. 2016)...............................................................................9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................2, 3

*United States v. Blasius,*
397 F.2d 203 (2d Cir. 1968)..............................................................................7

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
137 S. Ct. 1312 (2017)......................................................................................4

*Cassirer v. Kingdom of Spain,*
461 F. Supp. 2d 1157 (C.D. Cal. 2006) ...........................................................9

*Cassirer v. Kingdom of Spain,*
580 F.3d 1048 (9th Cir. 2009) ......................................................................8, 9

*Chettri v. Nepal Bangl. Bank, Ltd.,*
2014 U.S. Dist. LEXIS 122731 (S.D.N.Y. Sept. 2, 2014)................................5

*Empresa Cubana Exportadora, Inc. v. Lamborn & Co.,*
652 F.2d 231 (2d Cir. 1981)..............................................................................9

*European Community v. RJR Nabisco, Inc.,*
764 F.3d 129 (2d Cir. 2014)..............................................................................7

*Garb v. Republic of Poland,*
440 F.3d 579 (2d Cir. 2006)......................................................................4, 5, 8

*Hilsenrath v. Swiss Confederation,*
2007 U.S. Dist. LEXIS 81118 (N.D. Cal. 2007) .............................................7

*Homan v. Societe Generale,*
93 F.3d 1036 (2d Cir. 1996)............................................................................10

*Kuo v. Gov't of Taiwan,*
2019 U.S. Dist. LEXIS 2843 (S.D.N.Y. Jan. 4, 2019)......................................5

*Magness v. Russian Federation,*
247 F.3d 609 (5th Cir. 2001) ............................................................................4

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)........................................................................2

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran*
   *v. Cubic Def. Sys., Inc.*,
   495 F.3d 1024 (9th Cir. 2007......................................................................5

*Oui Fin. LLC v. Dellar*,
   2013 U.S. Dist. LEXIS 146214 (S.D.N.Y. Oct. 9, 2013) ........................10

*Peninsula Asset Management (Cayman) v. Hankook Tire Co.*,
   476 F.3d 140 (2d Cir. 2007)........................................................................7

*Republic of Argentina v. NML Capital, Ltd.*,
   573 U.S. 134 (2014)..................................................................................10

*Schuler v. Rainforest Alliance, Inc.*,
   684 Fed. Appx. 77 (2d Cir. 2017)..............................................................10

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   30 F.3d 148 (D.C. Cir. 1994)......................................................................4

<u>Other Authorities</u>

H.R. 244 - Consolidated Appropriations Act, 2017
   115th Congress (2017-2018)........................................................................7

https://bookstore.gpo.gov/products/iditarod-national-historic-trail-poster ....................6

Defendants L'Office Federal De La Culture De La Confederation Suisse ("Federal Office of Culture") and L'Administration Federale Des Douanes De La Confederation Suisse, ("Federal Customs Administration") (collectively, the "Swiss Confederation") respectfully submit this Reply in support of their Motion to Dismiss (ECF No. 35).

## I.      PLAINTIFF HAS ABANDONED ITS CLAIMS RELATING TO THE SEIZURE BY THE SWISS FEDERAL CUSTOMS ADMINISTRATION

Although not displayed prominently in the Opposition, at footnote 6 Plaintiff makes the following concession: "Apart from the Seizure Order issued by the Geneva Prosecutor, the Customs Administration issued a seizure order on February 28, 2017, affecting 111 pieces in the home of Ali Aboutaam. (AC ¶ 33 and Ex. B.)  Hicham is willing to dismiss without prejudice his challenge to that seizure."[1]  There is no adequate factual predicate for challenging the February 28, 2017 seizure order that – as the documentation presented with the Swiss Confederation's Motion shows – was based on a failure to pay value added taxes.  In these circumstances, Plaintiff's claims relating to the Federal Customs Administration's February 28, 2017 seizure should be dismissed with prejudice.

## II.     PLAINTIFF HAS NOT ALLEGED FACTS SUFFICIENT TO STATE A CLAIM THAT THE SWISS CONFEDERATION DEFENDANTS ARE RESPONSIBLE FOR THE SEIZURE CARRIED OUT BY THE GENEVA PROSECUTOR

Throughout the Opposition, Plaintiff ignores the evidence presented by the Swiss Confederation that neither the Swiss Federal Office of Culture nor the Swiss Federal Customs Administration directed, or had the authority to direct, the Geneva prosecutor to proceed with the

---

[1]  Opp'n, ECF No. 45, at 4, n.6.  Plaintiff also states "the Customs proceeding involving the 111 items is not at issue here"  *Id*. at 24, n.33.

seizure that is at the focus of the Plaintiff's lawsuit.[2]  With a blind eye toward that evidence, Plaintiff relies on mere allegations that the Swiss Confederation defendants were directly responsible for the seizure made by Geneva.

As regards the Federal Customs Administration, there are no factual allegations that it seized any of Plaintiff's property under the Federal Act on the International Transfer of Cultural Property.  Plaintiff writes that "Customs and Geneva … acted to seize 12,000 objects associated with Hicham Aboutaam and his brother, Ali," but Plaintiff's only support is a sentence in his own Complaint that simply says:  "The Defendants violated international law by wrongfully seizing the Hicham U.S. Property at a Geneva warehouse and elsewhere on or about February 24, 2017 and by subsequently failing to pay Hicham just compensation for these objects."  Opp'n at 4 (citing Compl. ¶ 4).

Unsubstantiated allegations in the Complaint that the Customs Administration caused the seizure by the Genera prosecutor are outweighed by the sworn statement of Hans Georg Nussbaum that the actions of the Public Prosecutor's Office in Geneva are independent of the actions of the Federal Customs Administration.  Nussbaum Decl., ECF No. 38 ¶ 16.  Beyond that, the Plaintiff has not met his burden to present "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Unsupported legal conclusions (e.g., that "Defendants violated international law") are not sufficient to state a claim, even if there were no unrefuted counter evidence, as is the case

---

[2]  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court … may refer to evidence outside the pleadings.  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

here.  On the record, it is plain that no actions of the Federal Customs Administration can be a predicate for an exception to foreign sovereign immunity.

Plaintiff similarly fails in his attempts to argue that the Federal Office of Culture seized the artworks at issue.  Here again, the conclusory allegations of the Complaint do not rebut Mr. Nussbaum's sworn statement that the Federal Office of Culture had no authority to direct prosecutions or give orders to criminal prosecution authorities under the Cultural Property Transfer Act.  Nussbaum Decl. ¶ 15.  In fact, Article 27 of that law makes the Swiss Cantons responsible for prosecutions.  *Id.*[3]  Plaintiff did not challenge this evidence.

Plaintiff observes that the Federal Office of Culture sent its suspicions regarding seven items to the Federal Customs Administration,[4] but does not allege any other specific action by that Office relating to Plaintiff's purported property.  Instead, Plaintiff argues that that the Office of Culture should be considered to have directed Geneva's actions in detaining the artworks stored at the Geneva warehouse because the Office expressed suspicions regarding a few items; because it is responsible for arranging the return of stolen artworks that have been adjudged by criminal enforcement authorities as permanently seized (which has not happened in this case);[5] and because it has coordinated such returns with Cantonal authorities in unrelated matters in the past.[6]  Opp'n at 17–18.  That leap of faith is not only contrary of the Swiss Confederation's evidence and basic principles of agency, but also falls well short of the "well-pleaded facts"

---

[3]  *See* Ainsworth Decl. Ex. 3, ECF No. 46-3 (unofficial English translation of Cultural Property Transfer Act ("CPTA") ("The Cantons are responsible for prosecuting and assessing criminal activities pursuant to this Act.").

[4]  Opp'n at 4, 7.  Plaintiff cites to "AC Ex. 24," but the Complaint had only eight exhibits.  *Id.* at 4.

[5]  *See* CPTA Art. 28, Ainsworth Decl. Ex. 3, ECF No. 46-3; Cultural Property Transfer Ordinance Art. 27, Ainsworth Decl. Ex. 4, ECF No. 46-4.

[6]  Plaintiff himself submitted as an exhibit the seizure order, which clearly states that the order was given by the Geneva prosecutor.  Compl. Ex. 1, ECF No. 1-1.

requirement of *Iqbal*.  It also comes nowhere close to satisfying the Supreme Court's

requirement that in a case involving the Foreign Sovereign Immunities Act (FSIA), the plaintiff

must make claims that are not only nonfrivolous but also correct.  *Bolivarian Republic of*

*Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312 (2017).

Because Plaintiff has not shown that this Court has jurisdiction, its claims against the

Swiss Confederation Defendants must be dismissed.

## III.    THE FEDERAL OFFICE OF CULTURE IS NOT AN "AGENCY OR INSTRUMENTALITY"

To bolster its claim that the Federal Office of Culture should be considered an "agency or

instrumentality," Plaintiff cites the *dissenting* opinion in *Garb v. Republic of Poland*, 440 F.3d

579 (2d Cir. 2006) in support of what is calls the "legal characteristics test."  That test was

expressly rejected by the majority.  *Id.* at 597, n.24 ("By placing determinative weight on three

characteristics of a public entity – namely, whether it 'can sue and be sued in its own name,

contract in its own name or hold property in its own name,'… our colleague would permit a far

greater range of suits against state sovereigns than Congress intended when it codified the

'restrictive theory' of sovereign immunity in the FSIA ….").

In fact, the Second Circuit has adopted the "core function test" – an analytical approach

that is binding on this Court, but which the Opposition attempts to evade.  In *Garb*, the Second

Circuit adopted the reasoning of *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148

(D.C. Cir. 1994), a case that considered whether the Bolivian Air Force was a "foreign state" or

an "agency or instrumentality" for purposes of the FSIA's service of process provisions.  The

*Transaero* court concluded that whether a party is a foreign state or an agency or instrumentality

is determined by "whether the core functions of the foreign entity are predominantly

governmental or commercial." *Id.* at 151. *Transaero* held that an entity with predominantly governmental characteristics is <u>not</u> an agency or instrumentality under the FSIA. *Id.*

The *Garb* court also cited with approval the Fifth Circuit's holding that "whether an entity is a 'separate legal person' depends upon the nature of its 'core functions' – governmental vs. commercial – and whether the entity is treated as a separate legal entity under the laws of the foreign state." *Garb*, 440 F.3d at 591, *citing Magness v. Russian Federation*, 247 F.3d 609, 613 n.7 (5th Cir. 2001). The *Magness* court held that the Russian Ministry of Culture had to be served under the rules of the FSIA for a "foreign state" and not those for an "agency or instrumentality." *Id.*

The Ninth Circuit has also adopted the core function test. *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 495 F.3d 1024 (9th Cir. 2007), *rev'd on other grounds*, *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009). In finding that the Iranian Ministry of Defense was part of the foreign state, the Ninth Circuit noted:

> [Plaintiff] has presented no evidence that MOD is a "separately constituted legal entity" distinct from the Iranian state. … He has not established that MOD is "primarily responsible for its own finances," that it is run as a "distinct economic enterprise," that it operates with "independence from close political control," or that it exhibits any of the traits – other than the capacity to sue and be sued – that the Court has identified as characteristic of a "separately constituted legal entity." … As such, Elahi has failed to overcome the presumption that MOD constitutes an inherent part of the state of Iran.[7]

---

[7]  More recent cases within the Second Circuit have consistently categorized government ministries and departments as part of the foreign state. *See, e.g.*, *Kuo v. Gov't of Taiwan*, 2019 U.S. Dist. LEXIS 2843, *6 (S.D.N.Y. Jan. 4, 2019) ("[B]oth the Government of Taiwan and its Ministry of National Defense are properly treated as 'foreign state' defendants."); *Chettri v. Nepal Bangl. Bank, Ltd.*, 2014 U.S. Dist. LEXIS 122731, *42 (S.D.N.Y. Sept. 2, 2014), *aff'd*, 2016 U.S. App. LEXIS 11070 (2d Cir. June 20, 2016) ("the [Department of Revenue Investigation] is a department within Nepal's Ministry of Finance and is a political subdivision of the Government of Nepal.").

495 F.3d at 1035–36.  In this case, Plaintiff has similarly not overcome the clear evidence that the Federal Office of Culture is an integral part of the Swiss Confederation.

The Swiss Confederation presented uncontradicted evidence that the Federal Office of Culture is part of the Federal Department of Home Affairs and a part of the Swiss Federal Government, that it is not separately incorporated, and that it operates under the supervision of the Swiss Federal Council, which is the head of the Executive Branch of the Swiss Federal Government.  Nussbaum Decl. ¶ 2.  The Swiss Confederation also presented evidence that the official mission of the Office "covers tasks that are strictly reserved to the Confederation." Becker Decl., Ex. 5, ECF No. 37-5.  The activities described in its mission – such as "drafting enactments in the culture sector, reviewing the compatibility of enactments in other political areas (value added tax, international free trade, vocational education, languages, etc.) with the needs of culture and – in coordination with the Federal Department of Foreign Affairs (FDFA) – negotiating agreements in the cultural sector, representing Switzerland in multilateral organisations and cultivating international relationships" – are self-evidently governmental functions.[8]

Plaintiff ignores this evidence, and asks the Court to conclude that the Office of Culture's function is commercial because it publishes or authors books, some of which are for sale online through Amazon.  Opp'n at 15.  But many core U.S. government agencies, such as the U.S. Department of Defense, publish books that are sold on Amazon's website.[9]  Plaintiff also claims

---

[8]  For reasons that are left unexplained, Plaintiff claims that commissioning and publishing studies and reports on cultural policy, cultural statistics and cultural economy, as well as promoting the preservation of historic monuments, are commercial activities.  Opp'n at 16.  Those activities are no less a governmental function than the U.S. Department of Agriculture's publishing a poster celebrating the Iditarod National Historic Trail.  *See* https://bookstore.gpo.gov/products/iditarod-national-historic-trail-poster.

[9]  Amazon lists over 7,000 books with the Department of Defense as the author.  Becker Decl., Ex. 1.

6

it is somehow relevant that the Office of Culture publishes an annual report that sets out the

categories of its spending. Opp., at 15. But the U.S. government itself provides a budget for

many subdivisions, offices and bureaus within each department of the federal government.[10]

Under Plaintiff's approach, contrary to established principles of statutory construction, "foreign

state" would be stripped of all meaning. *See United States v. Blasius*, 397 F.2d 203, 207, n.9 (2d

Cir. 1968) (statutes should be construed in a way that gives each provision meaning).

The cases cited by Plaintiff do not support his position. In *Hilsenrath v. Swiss

Confederation*, 2007 U.S. Dist. LEXIS 81118 (N.D. Cal. 2007), the court granted the Swiss

Confederation defendants' motion to dismiss the plaintiff's claims, finding no applicable

exception to sovereign immunity under the FSIA. In the opinion, without explanation or

discussion, the court commented that the Office of the Attorney General is an "agency or

instrumentality" of Switzerland. The comment played no role in the court's decision and is no

authority for characterizing the Swiss Confederation defendants as agencies or instrumentalities.

The entity at issue in *Peninsula Asset Management (Cayman) v. Hankook Tire Co.*, 476

F.3d 140 (2d Cir. 2007) was separately established from the South Korean government, and in

particular, the government did not pay the salaries of the entity's employees or require the hiring

of public employees. *Id.* at 143–44. The holding in *European Community v. RJR Nabisco, Inc.*,

764 F.3d 129 (2d Cir. 2014) – that the European Community is an agency or instrumentality of

the nations that are members of the European Community – has no bearing here. The issue in

*European Community* was not whether the European Community was itself a foreign state but

whether its creation by the member states meant that it was an agency or instrumentality of those

---

[10]  For example, the Justice Department's U.S. Attorneys Offices, the Federal Bureau of Investigation,
and the U.S. Marshall's Service each receive their own budgets. Consolidated Appropriations Act,
2017, P.L. 115-31 (excerpt), Becker Decl., Ex. 2.

states. In none of the cases relied upon by the Plaintiff did a court hold that a government department that was an integral part of the foreign nation's central government was an "agency or instrumentality" rather than the "foreign state" itself.

Because the Federal Office of Culture is part of the "foreign state" of the Swiss Confederation, the first clause of the expropriation exception applies, and requires that the property allegedly taken in violation of international law be present in the United States. *Garb*, 440 F.3d at 589 (2d Cir. 2006). It is undisputed that the property at issue here is in Switzerland, and therefore the expropriation exception to immunity is not available.[11]

## IV. THE FEDERAL OFFICE OF CULTURE AND THE CANTON OF GENEVA ARE DISTINCT LEGAL ENTITIES

Plaintiff's argument that activities of the Federal Office of Culture can be attributed to Geneva is based exclusively on a mischaracterization of the holding in *Cassirer v. Kingdom of Spain*, 580 F.3d 1048 (9th Cir. 2009), *aff'd,* 616 F.3d 1019 (9th Cir. 2010) (*en banc*). In that case, the plaintiff sued the Kingdom of Spain and the Thyssen-Bornemisza Collection Foundation to recover a painting that had previously been taken in violation of international law by an agent of the government of Nazi Germany. The issue was whether a taking in violation of international law by a different country – Germany – could be a basis for applying the expropriation exception to the Spanish defendants. The Ninth Circuit held that it could. *Id*. at 1057. Contrary to Plaintiff's assertion, the Ninth Circuit did not hold that the Kingdom of Spain could be deemed liable because a separate entity – the Foundation – was engaged in commercial activity in the United States. The district court had separately addressed the treatment of the

---

[11]  The Swiss Confederation strongly disputes Plaintiff's claim that the Federal Office of Culture "owns or operates" the artworks that he allegedly owns. But it is unnecessary to reach that issue because the Federal Office of Culture is part of the foreign state and not an agency or instrumentality.

Kingdom of Spain as a "foreign state" (*Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157, 1175 (C.D. Cal. 2006)), and the Ninth Circuit did not reach that issue.[12]  The circumstances of *Cassirer* bear no relation to this case.

## V.    ACT OF STATE DOCTRINE

Plaintiff complains that the Federal Office of Culture gave information to the Federal Customs Administration expressing suspicions about seven artworks, and the Customs Administration passed along those concerns to the Geneva prosecutor.  Opp'n at 1, 3-4, 18. Plaintiff asserts, without explanation, that the Federal Office of Culture lacked a basis for "reasonable suspicion."  *Id*. at 18.  Plainly, the Act of State Doctrine prohibits the Court from seeking to second-guess the authority of the Federal Customs Authorities or the Federal Office of Culture to alert law enforcement authorities to suspicious activities within Switzerland.

Plaintiff argues that the Second Hickenlooper Amendment precludes application of the Act of State Doctrine, but the sending of a letter to the Geneva prosecutor does not constitute a "taking," let alone one in violation of international law.  Also importantly,  the Second Hickenlooper Amendment applies only when the expropriated property is in the United States. *Empresa Cubana Exportadora, Inc. v. Lamborn & Co.*, 652 F.2d 231, 237 (2d Cir. 1981).  For these reasons, the Second Hickenlooper Amendment is not relevant to application of the Act of State Doctrine in this case.

Plaintiff asserts that "Defendants have not identified parallel Swiss proceedings to which they believe this Court owes deference." Opp'n at 24.  However, the Swiss Confederation identified the customs-related proceedings in its Motion to Dismiss, after which Plaintiff abandoned its complaint regarding the customs seizure.  With regard to the seizure by the Geneva prosecutor, Plaintiff himself submitted evidence identifying the pending criminal

---

[12]  *See Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016) (Ninth Circuit in *Cassirer* did not make "independent analysis" of jurisdiction over Spain).

procedure, with the identification number P/2949/2017 MSC.  Compl. Exs. 1 & 8, ECF Nos. 1-1 & 1-8; Ainsworth Decl. Ex. 20, ECF No. 46-20.[13]

Plaintiff's attempt to "end run" the Swiss investigation is precisely the sort of maneuver that the Act of State Doctrine is intended to counter.  Accordingly, the Swiss Confederation Defendants urge this Court to decline to interfere in the Geneva criminal proceedings.

## VI.    INTERNATIONAL COMITY

Plaintiff's arguments regarding international comity are misplaced.  First, Plaintiff's claim that "comity is not a defense available to a private individual" is unsupportable, as comity is a principle predominantly applied in cases not involving governments as parties, such as in *Oui Fin. LLC v. Dellar*, 2013 U.S. Dist. LEXIS 146214 (S.D.N.Y. Oct. 9, 2013) (discussed in the Opposition) and *Schuler v. Rainforest Alliance, Inc.*, 684 Fed. Appx. 77, 79 (2d Cir. 2017) (discussed in the Swiss Confederation's memorandum in support of its motion).

Second, although the Supreme Court has declined to restrict a U.S. court's authority to order international discovery on the basis of comity, the Court did not reverse its other jurisprudence on international comity.  *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014).  In the instant case, international comity would not be applied to extend the reach of sovereign immunity, but as an exercise in deference to the Swiss criminal investigation of property in Switzerland that was already pending when this lawsuit was filed.  The principles of *Homan v. Societe Generale*, 93 F.3d 1036, 1046-47 (2d Cir. 1996) remain fully applicable, and require dismissal.

## CONCLUSION

Based upon the foregoing, the Complaint should be dismissed.

---

[13]  Plaintiff also submitted Swiss news articles regarding the pending case, which discuss that the artworks belong to Plaintiff's brother Ali and that Ali is represented by Swiss counsel in the proceedings.  Ainsworth Decl. Exs. 18 & 19, ECF Nos. 46-18 & 46-19.

Dated:  April 29, 2019

By:  /s/  Stephan E. Becker
     Stephan E. Becker (Pro Hac Vice)
     Michael Evan Jaffe (Pro Hac Vice)
     John Chamberlain
     Pillsbury Winthrop Shaw Pittman LLP
     1200 Seventeenth Street, NW
     Washington, DC 20036
     Telephone:  202.663.8000
     Facsimile:  202.663.8007

     *Attorneys for Defendants L'Office Federal De*
     *La Culture De La Confederation Suisse and*
     *L'Administration Federale Des Douanes De La*
     *Confederation Suisse*